1  Samuel A. Schwartz, Esq.
   Nevada Bar No. 10985
2  saschwartz@nvfirm.com
   SCHWARTZ LAW, PLLC
3  601 East Bridger Avenue
   Las Vegas, NV 89101
4  Telephone: 702.385.5544
   Facsimile: 702.442.9887
5
6  *Proposed Attorneys for the Debtor*

7              **UNITED STATES BANKRUPTCY COURT**
8                     **DISTRICT OF NEVADA**

9   In re:                          )  Case No.: 22-14422-NMC
                                     )
10  MUSCLEPHARM CORPORATION,         )  Chapter 11
                                     )
11      Debtor.                      )
                                     )  Hearing Date: January 24, 2023
12                                   )  Hearing Time: 9:30 AM PST
                                     )
13  _____     )

14  **APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO EMPLOY**
15  **AND RETAIN STRETTO AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

16      MusclePharm Corporation (the "**Debtor**"), the debtor and debtor-in-possession in the

17  above-captioned Chapter[1] 11 case (the "**Chapter 11 Case**"), by and through its proposed counsel,

18  Schwartz Law, PLLC, hereby submits this application (the "**Application**") for the entry of an order,

19  substantially in the form attached hereto as **Exhibit 1**, appointing Stretto[2] as claims, noticing, and

20  solicitation agent ("**Claims and Noticing Agent**") in the Chapter 11 Case pursuant to this Court's

21  *Guidelines for a Claim Noticing Agent* (the "**Claims Agent Guidelines**") and the Services

22  Agreement attached hereto as **Exhibit 2**.

23      This Application is made and based upon the points and authorities provided below, the

24  Declaration of Sheryl Betance, Managing Director of Corporate Restructuring at Stretto (the

25  _____

26  [1]    Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States
   Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall
27  be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy
   Procedure 1001-9037. "**Local Rule**" or "**LR**" references are to the Local Rules of Bankruptcy Practice of
   the United States Bankruptcy Court, District of Nevada.

28  [2]    Stretto is the trade name of Bankruptcy Management Solutions, Inc. and its subsidiaries.

                                    1

"**Betance Declaration**"), the papers and pleadings on file with the Court in the Chapter 11 Case, judicial notice of which is respectfully requested, and any oral arguments the Court may allow at the hearing on this Application.

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as Local Rule 1001(b)(1). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (M).

2.      Venue of the Debtor's Chapter 11 Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Local Rule 9014.2, the Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

4.      The statutory predicates for the relief requested in this Application are 28 U.S.C. § 156(c), Sections 105(a), 327, 328(a), 503(b), 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 2002(f), 2014(a), 2016, and 6003, LR 2002, and the Claims Agent Guidelines.

**BACKGROUND**

5.      The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 15, 2022 (the "**Petition Date**"), thereby commencing the Chapter 11 Case.

6.      The Debtor continues to operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no such officer has been appointed in the Debtor's Chapter 11 Case.

7.      Information regarding the Debtor's business, assets and liabilities, and Chapter 11 Case is set forth in the *Omnibus Declaration of Ryan Drexler in Support of Debtor's Emergency Petition, First Day Motions and Related Relief* (the "**First Day Declaration**").

**RELIEF REQUESTED**

8.      The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Retention Order**"), authorizing the Debtor to employ and retain Stretto as the

2

Claims and Noticing Agent in this Chapter 11 Case under the terms of the Services Agreement attached hereto as **Exhibit 2** and the Claims Agent Guidelines pursuant to 28 U.S.C. § 156(c) and Sections 327, 328(a), 503(b), 1107, and 1108 of the Bankruptcy Code.

9.    The Debtor seeks to employ Stretto to, among other things: (a) mail notices to the estate's creditors, equity security holders, and other parties in interest; (b) provide computerized claims, objection, solicitation, and balloting-related services; (c) host and maintain a confidential data room in connection with the sale(s) of assets; and (d) provide expertise, consultation, and assistance in claim and ballot processing and other administrative services with respect to the Chapter 11 Case, as more specifically set forth in the Services Agreement.

## BASIS FOR RELIEF REQUESTED

10.    The Debtor's initial list of creditors, indenture trustees, equity security holders, and other parties in interest entitled to notice in the Chapter 11 Case under Bankruptcy Rule 2002 totals over 500 parties.

11.    The Debtor anticipates that a significant number of notices will need to be promptly served in the Chapter 11 Case, including the Notice of Commencement of the Debtor's Chapter 11 Case. In view of the large number of parties in interest requiring notice in the Debtor's Chapter 11 Case, the Debtor submits that the appointment of Stretto will relieve the Debtor and/or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of the administrative burden of serving notice and administering claims, ensure the prompt delivery of notices, and provide the most effective and efficient means of solicitation of a plan and tabulation of ballots. Furthermore, the retention of Stretto will facilitate the sale process by expediting the service of notices to the relevant parties in interest and relieving the Debtor of the burden of hosting and maintaining a confidential data room in connection with the sale.

12.    The Court may appoint Stretto as Claims and Noticing Agent in the Chapter 11 Case pursuant to 28 U.S.C. § 156(c), which authorizes the Court to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases where the estate pays the costs of such services. Specifically, 28 U.S.C. § 156(c) provides:

Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

13.     Further, Bankruptcy Rule 2002, which prescribes the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. *See* Fed. R. Bankr. P. 2002. Under Local Rule 2002(c), debtors are required to serve certain notices in cases with over 200 creditors or parties in interest.

14.     With respect to tasks other than those that the Clerk is authorized to perform, the Court may approve Stretto's retention on behalf of the Debtor under Sections 327(a), 328(a), 1107, and 1108 of the Bankruptcy Code. *See In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487 (Bankr. S.D.N.Y. 2022) (discussing distinction between activities performed *as an agent of the Clerk* under 28 U.S.C. § 156(c) and those performed on behalf of the debtor). With respect to hosting a data room, solicitation, balloting, and tabulation services, and other administrative, technical, and consulting services that fall outside the scope of 28 U.S.C. § 156(c), the Debtor seeks approval of Stretto's retention under Sections 327(a), 328(a), 1107, and 1108 of the Bankruptcy Code.

15.     The Debtor submits that the appointment and retention of Stretto as the Claims and Noticing Agent will help to expedite and more efficiently facilitate the administration of the Chapter 11 Case, relieve the Clerk and the Debtor of administrative burdens, and facilitate an expeditious sale process, and is in the best interest of the Debtor's estate. Moreover, the Debtor submits that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

**STRETTO'S QUALIFICATIONS**

16.    Stretto is a Chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of Chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of Chapter 11 cases to ensure the efficient, orderly, and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases in this District include *In re Front Sight Mgmt. LLC*, Case No. 22-11824 (ABL) (Bankr. D. Nev. June 1, 2022), *In re Splash News & Picture Agency, LLC*, Case No. 21-11377 (ABL) (Bankr. D. Nev. Apr. 19, 2021), and *In re Alpha Guardian Corp.*, Case No. 20-11016 (MKN) (Bankr. D. Nev. Feb. 25, 2020). *See* Betance Declaration, ¶ 3.[3]

**PROFESSIONAL COMPENSATION**

17.    Debtor respectfully requests that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of Debtor's Chapter 11 estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A), and be paid in the ordinary course of business pursuant to the Stretto Services Agreement without further application to or order of the Court. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on Debtor, the Office of the United States Trustee, counsel for Debtor, counsel for any official committee monitoring the expenses of Debtor, and any party in interest who specifically requests service of

---

[3]    Other active and former cases include: *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.*, Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); and *In re Century 21 Department Stores LLC*, Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020). *See* Betance Declaration, ¶ 3.

the monthly invoices. If any dispute arises relating to the Stretto Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

18.    Under the terms of the Services Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting from Stretto's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or Retention Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in the Chapter 11 Case.

## DISINTERESTEDNESS

19.    Stretto has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of Stretto's knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto neither holds nor represents any interest materially adverse to the Debtor or its estate in connection with any matter on which Stretto would be employed.

20.    To the best of the Debtor's knowledge and except as otherwise set forth in the Betance Declaration, Stretto is a "disinterested person" as that term is defined in Section 101(14), as modified by Section 1107(b), as Stretto represents in the Betance Declaration, among other things, that:

        a.  Stretto is not a creditor of Debtor;

        b.  Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Case;

        c.  By accepting employment in the Chapter 11 Case, Stretto waives any rights to receive compensation from the United States government in connection with the Chapter 11 Case;

    d.  In its capacity as the Claims and Noticing Agent in the Chapter 11 Case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

    e.  Stretto will not employ any past or present employees of Debtor in connection with its work as the Claims and Noticing Agent in the Chapter 11 Case;

    f.  Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

    g.  In its capacity as Claims and Noticing Agent in the Chapter 11 Case, Stretto will not intentionally misrepresent any fact to any person;

    h.  Stretto shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

    i.  Stretto will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.  None of the services provided by Stretto as Claims and Noticing Agent in the Chapter 11 Case shall be at the expense of the Clerk.

21.    Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

22.    To the extent that there is any inconsistency between this Application, the Retention Order, and the Services Agreement, the Retention Order shall govern.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## **CONCLUSION**

2        WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form

3    attached hereto as **Exhibit 1**, authorizing Stretto to act as Claims and Noticing Agent for Debtor

4    and granting such other relief as may be appropriate.

5        Dated: December 27, 2022.

6                                              Respectfully Submitted,

7                                              SCHWARTZ LAW, PLLC

8                                              */s/ Samuel A. Schwartz*

                                          Samuel A. Schwartz, Esq.

9                                              Nevada Bar No. 10985

                                          601 East Bridger Avenue

10                                             Las Vegas, NV 89101

11                                             *Proposed Attorneys for the Debtor*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Proposed Attorneys for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 22-14422-NMC |
| | ) |
| MUSCLEPHARM CORPORATION, | ) Chapter 11 |
| | ) |
| Debtor. | ) Hearing Date: January 24, 2023 |
| | ) Hearing Time: 9:30 AM PST |
| | ) |
| | ) |

### [*PROPOSED*] ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN STRETTO AS CLAIMS, NOTICING, AND SOLICITATION AGENT

This matter having come before the Court upon the *Application for Entry of an Order Authorizing Debtor to Employ and Retain Stretto as Claims, Noticing, and Solicitation Agent* (the "**Application**")[1] filed by Debtor MusclePharm Corporation (the "**Debtor**"), seeking an order: (i) authorizing the Debtor to retain Stretto as Claims and Noticing Agent; (ii) approving the terms of the Services Agreement; and (iii) granting such other and further relief as is appropriate, all as more

---

[1] All capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the Application.

1

1  fully set forth in the Application; and upon the Betance Declaration submitted in support of the

2  Application; and it appearing that the relief requested is in the best interests of the Debtor's estate,

3  its creditors, and other parties in interest; and it appearing that Stretto does not represent an interest

4  adverse to the Debtor's estate with respect to the matter on which Stretto is to be employed; and it

5  appearing that the terms and conditions of Stretto's employment as further described in the

6  Application are reasonable; and this Court having jurisdiction over this matter pursuant to 28 U.S.C.

7  §§ 157 and 1334; and this Court having found that venue of this proceeding and the Application in

8  this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this

9  is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that Debtor's

10  notice of the Application and opportunity for a hearing on the Application were appropriate under

11  the circumstances and no other notice need be provided; and this Court having reviewed the

12  Application and having heard the statements in support of the relief requested therein at a hearing,

13  if any, before this Court (the "**Hearing**"), appearances having been noted on the record at the

14  Hearing; the Court having stated its findings of fact and conclusions of law on the record at the

15  Hearing on the Application, which findings of fact and conclusions of law are incorporated herein

16  by this reference in accordance with Fed. R. Civ. P. 52, as made applicable by Bankruptcy Rule

17  9014; and this Court having determined that the legal and factual bases set forth in the Application

18  and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings

19  had before this Court; and after due deliberation and sufficient cause appearing:

20         **IT IS HEREBY ORDERED THAT:**

21         1.      The Application is **GRANTED** in full except as modified on the record at the

22  Hearing and by this Order;

23         2.      The Debtor is authorized to retain and appoint Stretto as Claims and Noticing Agent

24  under the terms of the Services Agreement, attached to the Betance Declaration as Exhibit A, and

25  as set forth in this Order and pursuant to the *Guidelines for a Claim Noticing Agent* (the "**Claims**

26  **Agent Guidelines**"). Stretto is authorized and directed to perform noticing and balloting services

27  and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter

28  11 Case, and other related tasks as described in the Application, the Services Agreement, and

Claims Agent Guidelines and this Order. The Clerk shall provide Stretto with ECF credentials that allow Stretto to receive ECF notifications and file certificates of service;

3.      Stretto as Claims and Noticing Agent relieves the Clerk's office of all noticing under applicable Bankruptcy Rules;

4.      Stretto shall administer proofs of claim as set forth in Paragraph C of the Claims Agent Guidelines;

5.      Stretto is authorized to take such other action to comply with all duties and services set forth in the Application;

6.      Stretto shall prepare and serve required notices of judgments or orders pursuant to Local Rule 9022;

7.      Notwithstanding Sections 330 and 331 and Bankruptcy Rule 2016, the Debtor is authorized to compensate Stretto in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses;

8.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. With respect to services provided prior to entry of an order confirming a Chapter 11 plan in this Chapter 11 Case, Stretto shall serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests services of the monthly invoices;

9.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved;

10.      Without further order of the Court, pursuant to Section 503(b)(1)(A), the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtor's estate;

3

11.      Stretto shall not be entitled to charge the estate late fees;

12.      Stretto shall not be entitled to payment of attorneys' fees or expenses;

13.      The Debtor shall indemnify Stretto under the terms of the Services Agreement, as modified pursuant to this Order;

14.      Stretto shall not be entitled to indemnification for its own negligence;

15.      Stretto shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

16.      Notwithstanding anything to the contrary in the Services Agreement, the Debtor shall have no obligation to indemnify Stretto, or provide contribution or reimbursement to Stretto, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen solely from Stretto's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of the fiduciary duty (if any) as provided in this Order; (b) for contractual dispute in which the Debtor alleges the breach of Stretto's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (c) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (d) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Stretto should not receive indemnity contribution, or reimbursement under the terms of the Services Agreement as modified by this Order;

17.      If, before the earlier of (a) the entry of an order confirming a Chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing this Chapter 11 Case, Stretto believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, Stretto must file an application therefor in this Court, and the Debtor may not pay any such amounts to Stretto before the entry of an order by this Court approving

4

the payment.  All parties in interest shall retain the right to object to any demand by Stretto for indemnification, contribution, or reimbursement;

18.    In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtor's attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advance and consent of the Clerk and the Debtor's attorney;

19.    After entry of an order terminating Stretto's services, upon the closing of this Chapter 11 Case, or for any other reason, Stretto shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and shall be compensate by the Debtor in connection therewith;

20.    Stretto shall not cease providing claims processing services during this Chapter 11 Case for any reason, including nonpayment, without an order of the Court;

21.    In the event of any inconsistency between the Services Agreement, the Application, the Claims Agent Guidelines, and this Order, this Order and the Claims Agent Guidelines shall govern;

22.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a);

23.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry;

24.    The Debtor and Stretto are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    25.    This Court retains exclusive jurisdiction with respect to all matters arising from or

2    related to the implementation, interpretation, and enforcement of this Order.

3    **IT IS SO ORDERED.**

4    Respectfully Submitted,

5    SCHWARTZ LAW, PLLC

6    */s/ Samuel A. Schwartz*

7    Samuel A. Schwartz, Esq.
     Nevada Bar No. 10985

8    601 East Bridger Avenue
     Las Vegas, NV 89101

9

10   *Proposed Attorneys for the Debtor*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those who waived review on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:


☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

*###*

# EXHIBIT 2

# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of December 27, 2022 between Stretto, Inc. ("**Stretto**") and MusclePharm (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]    The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

1

as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c)   In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d)   The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e)   The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f)   The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g)   Upon execution of this Agreement, the Company shall pay Stretto an advance of $0.00. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses.  Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h)   Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i)   Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.   Retention in Bankruptcy Case**

(a)   If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b)   If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c)   If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

2

4.  **Confidentiality**

    (a)  The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

    (b)  If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5.  **Property Rights**

    Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6.  **Bank Accounts**

    At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7.  **Term and Termination**

    (a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

    (b)  If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

    (c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

3

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. California Consumer Privacy Act.

(a) Definitions.  In this Section,

(i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;

(ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and

(iii) "**Commercial Purposes**," "**Sell**," "**Business,**" and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

## 13. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial

or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

## 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

## 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:          Stretto

6

410 Exchange, Ste. 100
Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Company:        _____
                          _____
                          _____
                          _____
                          _____

With a copy to:           _____
                          _____
                          _____
                          _____
                          _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.


Stretto

_____
By:

Title:


MusclePharm

_____
By:

Title:



**Exhibit A**

## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS**,

(A)    The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)    The Company acts as a Controller of the Company Personal Data.

(C)    The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)    The Company instructs the Processor to process Company Personal Data.

(E)    The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.    **Definitions.** The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)    "**Addendum**" shall mean this GDPR Addendum;

(b)    "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)    "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)    "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)    "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

1

(f)     "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)     that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

2

(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

    i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.     any accidental or unauthorized access; and

    iii.     any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)     to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)     to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)     that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.     Obligations after Termination of Personal Data Processing Services.**

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

3

(b)    The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.    **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.