Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Proposed Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: January 24, 2023<br>Hearing Time: 9:30 AM PST |

**APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C.
§§ 327(a), 328, 330, AND 331 AND FED. R. BANKR. P. 2014 AND 2016
AUTHORIZING THE EMPLOYMENT AND RETENTION OF PORTAGE
POINT PARTNERS, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTOR**

MusclePharm Corporation, a Nevada corporation (the "**Company**" or "**Debtor**"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby submits this application (the "**Application**") for the entry of an order authorizing and approving the employment and retention of Portage Point Partners, LLC ("**Portage Point**") as the Debtor's restructuring advisors in its bankruptcy case, with the appointment of Jeffrey Gasbarra ("**Gasbarra**") as the Debtor's Chief Restructuring Officer (the "**CRO**") and with respect to all matters related thereto pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall refer to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure 1001-9037. "**Civil Rule**" references are to the Federal Rules of Civil Procedure 1-86. "**Local Rule**" or "**LR**" references are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada.

1

This Application is made and based on the *Declaration of Ryan Drexler in Support of Debtor's Chapter 11 Petition, First Day Motions, and Related Relief* (the "**First Day Declaration**") and the *Declaration of Jeffrey Gasbarra in Support of Debtor's Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328, 330, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Portage Point Partners, LLC as Restructuring Advisors for the Debtor* (the "**Gasbarra Declaration**"), filed contemporaneously herewith, the points and authorities set forth below, the pleadings and papers contained in this Court's file, judicial notice of which is respectfully requested, and any evidence or oral argument presented at the time of the hearing on this Application.

**JURISDICTION**

1. This Court has original and exclusive jurisdiction over the matter presented in this Application under to 28 U.S.C. §§ 157(b)(2)(A) and 1334(e)(2), LR 1001(b)(1), and the order of reference of all bankruptcy cases by the United States District Court for the District of Nevada to the Bankruptcy Court. Adjudication of this Application constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (b)(2)(O).

2. Venue of the Debtor's Chapter 11 case (the "**Chapter 11 Case**") and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

**BACKGROUND**

4. On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

5. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee for Region 17 (the "**UST**") has not appointed any case trustee or examiner in the Chapter 11 Case.

6. To date, the UST has not appointed a committee of unsecured creditors in the Chapter 11 Case. *See* Docket, Case No. 22-14422-NMC.

7. A detailed description of the Debtor's financial obligations, events leading up the Petition Date, and other matters are set forth in the First Day Declaration of Ryan Drexler.

8. Additional facts supporting the relief requested by Debtor through the Application are set forth herein and in the Gasbarra Declaration.

## RELIEF REQUESTED

9. By this Application, the Debtor seeks entry of an order, pursuant to Sections 327(a) and 328 of the Bankruptcy Code, and Bankruptcy Rules 2014 and 2016, authorizing the employment and retention of Portage Point to serve as the Debtor's restructuring advisors in connection with prosecution of the Chapter 11 Case and all matters related thereto, and the appointment of Gasbarra as the Debtor's CRO according to the terms and conditions of the letter agreement dated December 21, 2022 (the "**Engagement Agreement**"), a copy of which is attached to the Gasbarra Declaration as **Exhibit 1**.[2]

10. The designation of Jeffrey Gasbarra as CRO is subject to, and will be effective only upon, the Debtor's compliance with Indemnification & D&O provisions of the Engagement Letter, including as it relates to acceptable insurance coverage for Portage Point personnel serving as directors or officers of the Debtor.

## BASIS FOR RELIEF REQUESTED

11. The Debtor selected Portage Point as its restructuring advisors and Gasbarra as the Debtor's CRO because Portage Point and Gasbarra are well-qualified to advise the Debtor in connection with the types of financial advisory services that will be required by the Debtor in its Chapter 11 Case, including efforts to stabilize and reorganize the Debtor's assets. Portage Point is an advisory firm that specializes in financial and operational corporate restructuring, investment banking and asset sales, valuation, forensic accounting, complex litigation support, and computations involved in court proceedings and dispute resolution. Portage Point serves, among others, middle-market companies and their creditors, stakeholders, and professionals in roles

---

[2] Portage Point has agreed to reduce the retainer set forth in the Engagement Agreement from $150,000 to $75,000.

including financial advisor, interim manager, chief restructuring officer, trustee, expert witness, investment banker, and M&A advisor. Accordingly, the Debtor believes that Portage Point is both well-qualified and able to advise it in its Chapter 11 Case in an efficient and timely manner.

12. Since its retention, Portage Point's professionals have held numerous calls and reviewed numerous documents to become familiar with the Debtor's operations, assets, liabilities, expenses, and many of the potential financial and business issues that may arise in this Chapter 11 Case. In providing its services to the Debtor, Portage Point has worked closely with the Debtor, its professionals (both internal and external), and counsel. Accordingly, Portage Point has the experience, expertise, and relevant knowledge regarding the Debtor's financial affairs, operations, and assets to enable it to provide efficient and cost-effective financial advisory services to the Debtor. Accordingly, Portage Point has the relevant experience, expertise, and relevant knowledge regarding the Debtor's business and financial affairs to assist the Debtor in its Chapter 11 Case in an efficient and timely manner.

## SERVICES TO BE RENDERED

13. Subject to the Court's approval of this Application and as memorialized in the Engagement Agreement, Portage Point has agreed to render such professional services to the Debtor:

*CRO and Restructuring Advisory:*

(a) CRO shall be responsible for daily requirements of managing and administering the Company's Chapter 11 Case including, without limitation, serving as declarant and/or fact witness (as necessary and appropriate);

(b) evaluating and/or developing a short-term cash flow model and/or related liquidity management tools for the Company for such purpose(s) as the Company may require;

(c) evaluating and/or developing a business plan and/or such other related forecasts and analyses for the Company for such purpose(s) as the Company may require;

(d) evaluating and/or developing various strategic and/or financial alternatives and financial analyses for such purpose(s) as the Company may require;

(e) engaging and negotiating with the Company's various constituents, including, without limitation, holders of the Company's debt or equity, the Company's employees, and the Company's customers, vendors, and other commercial counterparties (collectively, "Constituents"), which assistance may include, without limitation, meeting with Constituents, developing presentations, and providing management with financial analytical assistance necessary to facilitate such negotiations;

4

(f) developing and distributing other information that may be required by the Company or the Constituents;

(g) obtaining and presenting information required by parties in interest in the Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "**Bankruptcy Court**");

(h) preparing other business, financial and/or other reporting related to the Chapter 11 Case, including, but not limited to, development and execution of asset sales, a chapter 11 plan of reorganization for the Company (a "**Plan**"), and a disclosure statement for the Plan; and

(i) providing the Company with assistance on such other matters as may be requested by the Company that are within Portage Point's expertise and otherwise mutually agreeable to Portage Point and the Company.

*General Services:*

(a) assisting the Company in preparing documentation within Portage Point's area of expertise that is required in connection with any Financing, Restructuring and/or Sale Transaction;

(b) attending Board meetings with respect to matters on which Portage Point has been engaged to advise hereunder;

(c) providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in the Chapter 11 Case; and

(d) providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and Portage Point.

14. In addition, the Debtor has retained, and may further retain, estate professionals during the term of the engagement contemplated by the Application and Engagement Agreement. Portage Point will work cooperatively with such other estate professionals, as is otherwise appropriate under applicable law and as authorized by Debtor, to avoid any unnecessary duplication of services and their related fees, costs, and charges on behalf of Debtor's bankruptcy estate.

## **PROFESSIONAL COMPENSATION**

15. The Debtor has agreed to pay professional fees based on the actual hours charged at Portage Point's standard hourly rates then in effect when the services are rendered. The following are the standard hourly rates of the professionals anticipated to provide services to Debtor in and related to the Chapter 11 Case:

| Title | Hourly Rate |
|---|---|
| Managing Partner | $945 |
| Service Line Leader | $875 |
| CRO | $790 |

|  |  |
|---|---|
| Managing Director | $765 - $795 |
| Director | $645 - $695 |
| Vice President | $545 - $630 |
| Associate | $390 - $425 |

16.    Portage Point generally adjusts its hourly rates on an annual basis and the above rates reflect rates for 2022.[3]

17.    In addition to professional fees, Portage Point will be reimbursed for direct out-of-pocket expenses including, but not limited to, travel, costs of reproduction, research, communications, legal counsel, any applicable sales or excise taxes, and other direct expenses.

18.    Portage Point will file an application with the Bankruptcy Court for an award and allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the U.S. Trustee, and the terms of any order establishing procedures for interim compensation that may be entered in the Chapter 11 Case. Portage Point's compensation for services rendered on Debtor's behalf shall be fixed by the Bankruptcy Court after due application, subject to the hourly rate structure and other terms set forth in the Engagement Agreement pursuant to 11 U.S.C. § 328(a).

## DISCLOSURES AND DISINTERESTEDNESS

19.    Section 327(a) incorporates a general disinterestedness standard, and Bankruptcy Rule 2014 requires that an application for employment disclose all connections with the Debtor, its estate, the Debtor's other professionals, creditors, other interested parties, and the U.S. Trustee. Based on the Debtor's disclosure of its equity security holders, officers, directors, affiliates, creditors, customers, and other parties in interest, Portage Point undertook a robust review to determine whether it had any conflicts or relationships and has not identified any connection with the Debtor, its insiders, creditors, any other party or parties in interest, their respective attorneys

---

[3]    The hourly rates set forth herein are the 2022 hourly rates of Portage Point. Portage Point is currently in the process of reviewing and setting its 2023 hourly rates, and will file a supplement to the retention application when such rates are set.

and accountants, or any person employed in the Office of the United States Trustee, other than those set forth in the Gasbarra Declaration. *See* Gasbarra Decl., ¶ 14.

20. To the best of the Debtor's knowledge, information, and belief, and based upon and subject to disclosures made in the Gasbarra Declaration, Portage Point and its professionals are "disinterested" persons within the meaning of Sections 101(14) and 327 of the Bankruptcy Code, as modified by Section 1107(b). Neither Portage Point nor any of its professionals:

   a. Holds or represents any interest adverse to the Debtor's estate;

   b. Is a prepetition creditor, equity holder, or insider of the Debtor;

   c. Is or has been, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor;

   d. Has any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; or

   e. Is related, through its partners or employees, to the United States Trustee or a Bankruptcy Judge seated on the Bankruptcy Court.

*See* Gasbarra Decl., ¶15.

21. To the extent that Portage Point discovers any connection with any interested party or enters into any new relationship with any interested party, Portage Point will promptly supplement its disclosures to the Bankruptcy Court. In addition, if any new material relevant facts or relationships are discovered or arise, Portage Point will promptly file a supplemental declaration in accordance with Bankruptcy Rule 2014(a). *See* Gasbarra Decl., ¶ 17.

22. No promises have been received by Portage Point, nor any employee or independent contractor thereof, as to payment or compensation in connection with the Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees and independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors

has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016. *See* Gasbarra Decl., ¶ 18.

### APPROVAL OF ENGAGEMENT AGREEMENT TERMS UNDER SECTION 328(a)

23. In accordance with the terms of the Engagement Agreement and subject to Bankruptcy Court approval, the Debtor seeks approval of the fee structure described herein pursuant to Section 328 of the Bankruptcy Code. Section 328 provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

24. Section 328(a) therefore permits the Court to approve the fee structure proposed in the Engagement Agreement in connection with the Debtor's retention of Portage Point, subject to Portage Point's filing of fee applications under Sections 330 and 331 of the Bankruptcy Code.

25. The fee structure outlined in the Engagement Agreement and summarized above is consistent with the typical arrangement Portage Point and other firms enter into when rendering similar services under similar circumstances and is the product of arm's-length negotiations. The fee structure is consistent with Portage Point's practices and no less favorable than the fee structure customarily employed by Portage Point and generally accepted by its clients. Portage Point's fee structure is reasonable, market-based, and designed to compensate Portage Point for its work in a fair and equitable manner. Furthermore, because Portage Point's experience and expertise will inure to the collective benefit of Debtor, its respective bankruptcy estate, its creditors, and other parties in interest in the Chapter 11 Case, and the value of Portage Point's services to the Debtor derives in substantial part from that experience and expertise, the structure and amount of the fees is reasonable within the meaning of 11 U.S.C. § 328(a), regardless of the number of hours to be expended by Portage Point's professionals in the performance of the services to be provided hereunder.

26. Accordingly, the Debtor requests that the Bankruptcy Court approve the terms of the Engagement Agreement as reasonable under 11 U.S.C. § 328(a).

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form attached hereto as **Exhibit 1**: (i) authorizing the Debtor to employ and retain Portage Point as its restructuring advisors according to the terms and conditions set forth in this Application and the Engagement Agreement; (ii) appoint Jeffrey Gasbarra as the CRO for the Debtor; and (iii) granting such other and further relief as is just and proper.

Dated: January 3, 2023.

By: */s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101

*Proposed Attorneys for Debtor*

# EXHIBIT 1

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: January 24, 2023<br>Hearing Time: 9:30 AM PST |

**[*PROPOSED*] ORDER AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF PORTAGE POINT PARTNERS, LLC**
**AS RESTRUCTURING ADVISORS FOR THE DEBTOR**

MusclePharm Corporation, the debtor and debtor-in-possession (the "**Debtor**"), filed its *Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328, 330, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Portage Point Partners, LLC as Restructuring Advisors for the Debtor* [ECF No. ___] (the "**Application**"),[1] which came on for hearing before the above-captioned Court on January 24, 2023, at 9:30 AM PST. All appearances

---
[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Application.

1

were duly noted on the record at the hearing on the Application.

The Court, having reviewed the Application, the Declaration of Jeffrey Gasbarra filed in support of the Application, and other pleadings and papers in the Court's file, and being satisfied with the representations made in the Application and the Gasbarra Declaration that Portage Point Partners, LLC ("**Portage Point**") represents no interest adverse to the Debtor's estate, that Portage Point is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and that Portage Point's retention is necessary and in the best interests of the Debtor's estate, its creditors, and other parties in interest; and it appearing this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court has exclusive jurisdiction over the subject matter of the Application pursuant to 28 U.S.C. § 1334(e)(2); and it appearing that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the hearing held on the Application; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and after due deliberation thereon, and all parties appearing having an opportunity to be heard; and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED** that:

1. The Application is GRANTED.

2. The Debtor's retention of Portage Point as its restructuring advisors pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, and subject to the terms of the Engagement Agreement, is hereby authorized and approved.

3. Jeffrey Gasbarra of Portage Point is hereby appointed as the chief restructuring officer of the Debtor.

4. Portage Point shall be compensated in accordance with Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and other applicable Bankruptcy Rules, Local Rules, and orders of the Court.

5. Portage Point's hourly rates, including periodic increases of the same as contemplated by the Application and Engagement Agreement, are hereby approved under 11

U.S.C. § 328(a).

    6.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS SO ORDERED.**

Prepared and submitted by:

SCHWARTZ LAW, PLLC

By: */s/ Samuel A. Schwartz*
    Samuel A. Schwartz, Esq.
    Nevada Bar No. 10985
    601 East Bridger Avenue
    Las Vegas, Nevada 89101

    *Proposed Attorneys for Debtor*

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐  The court has waived the requirement set forth in LR 9021(b)(1).

☐  No party appeared at the hearing or filed an objection to the motion.

☐  I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###