# EXHIBIT 2

# EXHIBIT 2

**GARMAN TURNER GORDON**

7251 AMIGO STREET
SUITE 210
LAS VEGAS, NV 89119
WWW.GTG.LEGAL

PHONE: 725 777 3000
FAX: 725 777 3112

January 12, 2023

Gregory E. Garman
Email: ggarman@gtg.legal
William M. Noall
Email: wnoall@gtg.legal
Mark M. Weisenmiller
Email: mweisenmiller@gtg.legal

**VIA E-MAIL AND REGULAR MAIL**
Carlyon Cica CHTD.
Candace Carlyon
265 East Warm Springs Road Suite 107
Las Vegas, Nevada 89119
ccarlyon@clarkhill.com

Steinhilber Swanson LLP
Michael Richman
122 W. Washington Avenue, Suite 850
Madison, WI 53703-2732
mrichman@steinhilberswanson.com

      RE:    Breaches of Intercreditor Agreement by Ryan Drexler.

Ms. Carlyon,

Garman Turner Gordon LLP represents Empery Tax Efficient, LP ("Empery") in the Chapter 11 case of *In re MusclePharm Corporation*, Bankruptcy Case No. 22-14422-NMC ("Chapter 11 Case"). This correspondence concerns Ryan Drexler's ("Drexler") brazen disregard for his contractual obligations to Empery in the Chapter 11 Case.

On October 13, 2021, Empery on behalf of the October Noteholders,[1] Debtor, and Drexler executed an *Intercreditor Agreement* ("Intercreditor Agreement"). On March 8, 2022, Empery on behalf of the buyers party to the Securities Purchase Agreement, Debtor, and Drexler executed the *First Amendment to Intercreditor and Subordination Agreement* ("First Amendment"). The

---

[1] Capitalized terms not defined herein shall be ascribed the definitions set forth in the Silver Declaration [ECF No. 52], the Intercreditor Agreement, or First Amendment, as applicable.

Intercreditor Agreement and the First Amendment provide broad protections to Empery and strictly prohibit Drexler in any capacity from taking certain actions against the interests of Empery.

Drexler's conduct as a creditor of Debtor with respect to the Chapter 11 Case has implicated several provisions of the Intercreditor Agreement, many of which he has plainly violated. First, Drexler is prohibited from agreeing to any subordination with respect to the Subordinated Debt[2] [Intercreditor Agreement, § 4(w)] and Empery has the sole authority to consent to any subordination on Drexler's behalf [Intercreditor Agreement, § 16]. Section 16 of the Intercreditor Agreement provides that:

> 16. If Subordinated Creditor has any claim against Borrower or any of its subsidiaries in any Insolvency Proceeding, ***Subordinated Creditor hereby irrevocably makes, constitutes and appoints Senior Creditor as Subordinated Creditor's attorney in fact, and grants to Senior Creditor a power of attorney with full power of substitution, in the name of Subordinated Creditor or in the name of Senior Creditor, without notice to Subordinated Creditor, and authorizes Senior Creditor*** (a) to file, in the name of Subordinated Creditor, such claim on behalf of Subordinated Creditor, if Subordinated Creditor does not do so prior to 10 days before the expiration of the time to file claims in such proceeding and if Senior Creditor elects, in its sole discretion, to file such claim or claims, (b) to enforce such claim, either in its own name or in the name of Subordinated Creditor, by proof of claim, suit or otherwise, (c) ***to vote such claim to accept or reject any plan of reorganization***, and (d) ***to take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement***, and any sums received by Senior Creditor in connection with such claim shall be applied to the Senior Debt. Senior Creditor shall remit to Subordinated Creditor any funds remaining after those sums have been so applied, to the extent permitted by applicable law or the proceedings governing any such bankruptcy. In no event shall Senior Creditor be liable to Subordinated Creditor for any failure to prove the Subordinated Debt, to exercise any right with respect thereto or to collect any sums payable thereon.

Intercreditor Agreement, § 16 (emphasis added). Thus, Empery is Drexler's attorney-in-fact, with a power of attorney with full power of substitution to take any action in the Chapter 11 Case on behalf of Drexler. To be clear, Empery does not consent to any subordination of the Subordinated Debt and any subordination agreed to by Drexler is a breach of the Intercreditor Agreement.

---

[2] Section 3 of First Amendment defines Subordinated Debt as "All loans, advances, debts, liabilities, obligations, debit balances, covenants and duties at any time or times owed by Borrower or any of its subsidiaries to Subordinated Creditor, including all obligations of the Borrower under Unsecured Revolving Promissory Note, dated as of March 8, 2022 (the "Permitted Note"), or to any Person owned or controlled by Subordinated Creditor under the Subordinated Notes, the Subordinated Security Agreement, the other Subordinated Loan Documents or otherwise …."

GARMAN TURNER GORDON

January 12, 2023
Page 3

Second, Drexler's agreements in the WW DIP Proposal [ECF No. 33, Ex. 2] violated the Intercreditor Agreement in a number of ways. Drexler: (1) agreed to subordinate the Subordinated Debt to White Winston [Intercreditor Agreement, § 4(w)]; (2) assigned his claims against Debtor to White Winston [Intercreditor Agreement, § 4(w)]; and (3) sought payment of $150,000 from the WW DIP Proposal before Empery received full payment [Intercreditor Agreement § 4(z), 7, 15.1 & 15.2].

Third, Drexler is prohibited from objecting, directly or indirectly, to Empery's debtor-in-possession financing proposals under the Intercreditor Agreement. Section 15.4 of the Intercreditor Agreement provides that:

> 15.4 **Subordinated Creditor agrees that Senior Creditor may consent to the use of cash collateral of, or provide debtor-in-possession financing to, Borrower or any of its subsidiaries on such terms and conditions and in such amounts as Senior Creditor, in its sole discretion, may decide and, in connection therewith, Borrower or any of its subsidiaries may grant (or continue to grant) to Senior Creditor liens and security interests upon all of the property of Borrower or any of its subsidiaries, which liens and security interests (a) shall secure payment of all Senior Debt owing to Senior Creditor (whether such Senior Debt arose prior to the commencement of such Insolvency Proceeding or at any time thereafter) and all other financing provided by Senior Creditor during such Insolvency Proceeding and (b) shall be superior in priority to all liens and security interests in favor of Subordinated Creditor on the property of Borrower or any of its subsidiaries. <u>Subordinated Creditor agrees that he/it will not object to or oppose any such cash collateral usage, any debtor-in-possession financing</u>** or any sale or other disposition of any property securing all or any part of the Senior Debt free and clear of security interests, liens, or other claims of Subordinated Creditor under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code, if Senior Creditor has consented to such sale or disposition. Subordinated Creditor agrees not to assert any right he/it may have to "adequate protection" in such Insolvency Proceeding and agrees that he/it will not seek to have the automatic stay lifted in any Insolvency Proceeding. Subordinated Creditor agrees that he/it will not provide, or offer to provide, any debtor-in-possession financing to Borrower or any of its subsidiaries without the prior written consent of Senior Creditor.

Intercreditor Agreement, § 15.4 (emphasis added). Drexler breached Section 15.4 of the Intercreditor Agreement when Drexler raised objections to and sought to delay approval of Empery's debtor-in-possession loan facilities at the January 6, 2023 hearing.

Fourth, Drexler is prohibited from challenging Empery's claims against Debtor. See Intercreditor Agreement, § 15.3 ("Subordinated Creditor, agrees not to initiate, prosecute or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection or priority of

G<span style="font-variant:small-caps">arman</span> T<span style="font-variant:small-caps">urner</span> G<span style="font-variant:small-caps">ordon</span>

January 12, 2023
Page 4

any portion of the Senior Debt or any liens or security interests securing any portion of the Senior Debt.").[3]

Fifth, Drexler is prohibited from voting for any plan that does not provide for the prior payment in full in cash of the Senior Debt or is inconsistent with Drexler's covenants and agreements in the Intercreditor Agreement. <u>See</u> Intercreditor Agreement, § 15.5 ("Subordinated Creditor agrees not to vote for any plan of reorganization that does not provide for the prior payment in full in cash of the Senior Debt or otherwise vote its claims or interests in such Insolvency Proceeding (including voting for, or supporting, confirmation of any plans of reorganization) in a manner that would be inconsistent with Subordinated Creditor's covenants and agreements contained herein; provided that nothing herein shall prevent Subordinated Creditor from voting in a manner consistent with how Senior Creditor votes in such Insolvency Proceeding.").

We expect your client will comply with his clear contractual obligations from this time forward. We further reserve all rights on account of existing breaches.

Sincerely,

GARMAN TURNER GORDON LLP

*/s/ Mark M. Weisenmiller*

MARK M. WEISENMILLER

---

[3] <u>See also</u> Section 10 of Intercreditor Agreement, which provides:

"10. Subordinated Creditor will not (and hereby waives any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement. Senior Creditor will not (and hereby waives any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Subordinated Debt or the Liens of Subordinated Creditor in respect of any of the Collateral or the provisions of this Agreement. Subordinated Creditor agrees that Subordinated Creditor will not take any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents. Subordinated Creditor hereby waives any and all rights he may have as a junior creditor or otherwise to contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral."