John D. Fiero (*admitted pro hac vice*)
Jason H. Rosell (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA  94104
Tel: (415) 263-7000
E-mail:  jfiero@pszjlaw.com
          jrosell@pszjlaw.com

-and

Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
LARSON & ZIRZOW LLC
850 W. Bonneville Ave.
Las Vegas, NV 89101
Tel:  (702) 382-1170
Email:  mzirzow@lzlawnv.com
          zlarson@lzlawnv.com

[Proposed] Counsel to the Official
Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | **LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE INTERIM COMPENSATION MOTION** |
| | **Related Docket No. 23** |

The Official Committee of Unsecured Creditors of MusclePharm Corporation (the "Committee") hereby submits this limited objection (the "Limited Objection") to the *Motion for Administrative Order, Pursuant to 11 U.S.C. §§ 105(a), 330, 331, 1107, and 1108, and Bankruptcy Rule 2016(a), Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Docket No. 23] (the "Motion") filed by the above-captioned debtor (the "Debtor").  In support of this Limited Objection, the Committee respectfully states as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**LIMITED OBJECTION**

The Committee does not object to the substantive relief requested in the Motion.  However, the Committee requests that, to the extent the Court approves the Motion over the objection of the United States Trustee [Docket No. 114], the form of order be revised to: (1) extend the deadline for the filing of monthly fee statements, (2) identify the correct Reviewing Parties (as defined in the Motion), (3) clarify that the failure to file a monthly fee statement is without prejudice to the rights of any professional to seek compensation at a later date, (4) explicitly permit Committee members to seek reimbursement of expenses (if any), and (5) limit the amount of compensation payable to professionals to the amount authorized in any order of the Court approving any postpetition financing.

A revised form of order approving the Motion is attached hereto as <u>Exhibit A</u> (the "<u>Revised Order</u>").  A comparison of the Debtor's form of order, attached as <u>Exhibit 1</u> to the Motion, to the Revised Order is attached hereto as <u>Exhibit B</u>.

**CONCLUSION**

**WHEREFORE**, the Committee requests that the Court approve the Motion, as modified pursuant to the Revised Order, and grant such other relief as is proper under the circumstances.

*[Remainder of page is intentionally left blank]*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS_SF:108403.1

Dated:  January 17, 2023

LARSON & ZIRZOW, LLC

*/s/ Matthew C. Zirzow*
Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
850 W. Bonneville Ave.
Las Vegas, NV 89101
Tel:  (702) 382-1170
Email:  mzirzow@lzlawnv.com
          zlarson@lzlawnv.com

-and

PACHULSKI STANG ZIEHL & JONES LLP
John D. Fiero (*pro hac vice pending*)
Jason H. Rosell (*pro hac vice pending*)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA  94104
Tel: (415) 263-7000
E-mail:  jfiero@pszjlaw.com
            jrosell@pszjlaw.com

[Proposed] Counsel to the Official Committee
of Unsecured Creditors

DOCS_SF:108403.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**EXHIBIT A**

**Revised Order**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887
*Proposed Attorneys for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| In re: | ) | Case No.: 22-14422-nmc |
|---|---|---|
| | ) | |
| MUSCLEPHARM CORPORATION, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | Interim Hearing Date: January 13, 2023 |
| | ) | Interim Hearing Time: 9:30 a.m. |

**SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION
FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING
THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING
SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III)
DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE
AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor and debtor in

possession herein ("**MusclePharm**" or the "**Debtor**") before this court ("**Court**") seeks entry of

---

[1]     Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the
Motion.

1

interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001 to, among other matters, authorize the Debtor to obtain emergency credit and incur debt on an interim basis. The Debtor negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court on January 6, 2023 [ECF No. 65] between the Debtor, as borrower, and the DIP Secured Parties and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP Agent, Empery Tax Efficient, L.P. ("**Empery**"), and collectively with the DIP Secured Parties and DIP Factoring Parties, "**Lender**"), as lender, in lieu of White Winston Select Asset Funds, LLC, the originally proposed lender in the Motion, with Lender proposing the requested financing on the terms set forth in the First Interim Term Sheet. Sufficient notice of the Motion and a first interim hearing (the "**First Interim Hearing**") was provided under the circumstances by the Debtor; and further, the Court continued the First Interim Hearing from January 5, 2023, at 9:30 a.m. to January 6, 2023, at 9:30 a.m. to provide more time for all to review the First Interim Term Sheet, and the Court thereafter entered its first interim order (the "**First Interim Order**") on January 9, 2023 [ECF No. 74], and continued the Motion for a second interim hearing (the "**Second Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be held on January 13, 2023, at 9:30 a.m.  On January 12, 2023, Debtor substituted a revision to the First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**").  After considering the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, including all formal and informal objections to the Motion, and the argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and others at the Second Interim Hearing; the Court has found and determined that, subject to the terms of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion (as amended and supplemented by the Term Sheet) on an interim basis, to the extent provided below, is in the

---

[2]    Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A. **Debtor's Chapter 11 Case**. On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**"). The Debtor is continuing to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B. **Jurisdiction; Venue**. This Court has subject matter jurisdiction to consider and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001. Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Notice**. Notice of the First Interim Hearing and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3, 2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S. Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii) the Lender and counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security interests in the assets of the Debtor, and (v) all other parties entitled to notice under Bankruptcy Rule 2002 (the "**Noticed Parties**"). Notice of the Second Interim Hearing was provided by the Court on the record in open court at the First Initial Hearing and also on the written record [See, ECF No. 66]. Under all of the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearings has complied with Bankruptcy

---

[3] To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

Rule 4001(b), (c) and (d) and the Local Rules.  <u>The final hearing ("**Final Hearing**") will be held</u> <u>pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023,</u> <u>at 10:30</u> a.m.

D.    **Debtor's Need for DIP Financing**.  Based pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business and affairs without the DIP Financing and authorized use of cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain business relationships with its suppliers and customers, pay for human resources, purchase materials and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the going concern value of the Debtor's business and ultimately maximizing the value of its estate for the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing is in the best interests of the Debtor, its estate, and its creditors.

E.    **Budget for Necessary DIP Financing**.  Attached hereto as **Exhibit A** is a revised 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing January 9, 2023 (the "**Budget**"). The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by the Lender and the Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, the "**Approved Budget**"). The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts, and the Budget accounts for operational disbursements, fees, costs and other expenses that are anticipated to be payable, incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely

4

paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget. Funding of the Budget will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

F.    **Financing under Section 364**.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to obtain sufficient financing from a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code; or (ii) secured credit under Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in the Term Sheet without granting a super-priority priming lien.

G.    **Good Faith Lender and Lending and Good Cause**.  The Lender (who together with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders) agreed to provide postpetition financing secured by (i) valid, binding, enforceable and non-avoidable consensual senior postpetition security interests and liens (collectively, the "**DIP Liens**") with the same priority as the Prepetition Secured Parties' (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and senior to all other liens existing on and after the Petition Date with the exception of Prestige's prepetition liens and security interests in its prepetition collateral as provided in the prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the Debtor and the Prepetition Secured Parties, (ii) superpriority claims under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), and (iii) the other protections set forth in the Motion and the Term Sheet, in each case limited only by this Second Interim Order.  As of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the Term Sheet to the extent provided in this Second Interim Order and the Approved Budget.  After considering all of its alternatives, including alternative sources of debtor in possession financing,

the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing provided by Lender represents the best proposed financing available to the Debtor under Debtor's circumstances.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate will be immediately and irreparably harmed.  Accordingly, good cause has been shown that entry of this Second Interim Order is in the best interest of the Debtor's estate, employees, and creditors and other parties in interest and that the implementation and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral as further provided below) in accordance with this Second Interim Order and the Term Sheet is in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties.  Based on the  pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended pursuant to this Second Interim Order to the Debtor by the Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code.

H.    **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget to continue to operate its business, pay wages, maintain business relationships with members, suppliers and customers, make capital expenditures, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor adequate time to effectively reorganize.

I.    **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers filed with and evidence submitted to this Court in connection with the Motion, and the record made at the Interim Hearings, the Court has determined to grant the Motion on an interim basis and

approve the Debtor's entry into and performance under the DIP Financing under the Term Sheet, as further provided herein, thereby authorizing postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring line shall not exceed $10,000,000) and related relief, as provided in the Term Sheet and this Second Interim Order.

Based on the foregoing, and upon the record made before this Court at the Interim Hearings, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      **Interim Approval**.  The DIP Financing pursuant to the DIP Facilities (as that term is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to obtain postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring Facility shall not exceed $10,000,000), on an interim basis as provided in the Term Sheet and Second Interim Order.

2.      **Interim Approval of Term Sheet; Relief Reserved to Final Hearing**.  The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and herein is approved for all postpetition lending by Lender to Debtor made prior to entry of the Final Order. The Debtor is expressly authorized, empowered, and directed to perform all of its direct and indirect obligations under the Term Sheet and this Second Interim Order including the execution of  such additional documents, instruments and agreements reasonably required or requested by the Lender to implement the terms or effectuate the purposes of the Term Sheet and this Second Interim Order, except as limited hereby (collectively, the "**DIP Obligations**").  In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is modified to the extent necessary, to perform all acts and to

make, execute and deliver all instruments and documents and to pay all reasonable fees (when applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Term Sheet and this Interim Order.  In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet).  Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing:

a)  Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

b)  Roll-up;

c)  Releases;

d)  The Prepetition Secured Parties' allowed claim;

e)  The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

f)  The good faith finding for DIP Financing other than during the Interim Period; and

g)   The ultimate DIP Documents (as defined in the Term Sheet).

3.    **Authorization to Borrow/Use of Cash Collateral**.  Pursuant to this Second Interim Order, the Debtor is immediately authorized to (a) borrow and factor accounts receivable and purchase orders from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of purchase orders (collectively, the "**Advance**"), all subject to and in accordance with the terms of this Second Interim Order and the Term Sheet and (b) use the proceeds of the DIP Financing and the Collateral (including the Cash Collateral) in accordance with the terms of the

Term Sheet, this Second Interim Order and the Budget (and any subsequent Approved Budget) consistent with the terms of this Second Interim Order.

4. **Cash Collateral**.  The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender and the Prepetition Secured Parties (the "**Cash Collateral**").  The Debtor may use the Cash Collateral to pay postpetition ordinary course of business expenses to the extent allowed and permitted to be paid herein, by other Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.  The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.  All of Lender's Cash Collateral shall be subject to the first priority senior DIP Liens on the DIP Collateral, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5. **Maturity and Termination.**  Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier of (x) the Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (y) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, and the U.S. Trustee, unless any such event is waived, cured or extended with the written consent of the Lender.

6. **Interest on DIP Financing**.  The rate of interest to be charged on advances under the DIP Financing shall be: (i) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Note Facility; and (ii) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order,

plus two percent (2%) for the DIP Factoring Facility.

7. **Payment of DIP Fees and Expenses**. The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided in the Term Sheet. None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8. **Superpriority Claim**. In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim under Section 364(c)(1) (the "**Superpriority Claim**") for the DIP Obligations against the Debtor, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the

Debtor.  Except as set forth in this Second Interim Order and Final Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Case.

9.    **DIP Liens**.  As security for all DIP Obligations pursuant to this Second Interim Order, the Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise), the DIP Liens on all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Note Parties, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor and/or jointly-owned subsidiaries (if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "**DIP Collateral**").  The DIP Liens will not be subject to challenge.  Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

10.    **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender pursuant to this Second Interim Order shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige that are senior to those prepetition liens of Lender pursuant to the Prestige Intercreditor Agreement.  To the extent this Second Interim Order grants any other rights postpetition to Lender (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11

11.    **Carve Out**.  The DIP Liens and Superpriority Claim granted under this Second Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) all reasonable and documented fees and expenses up to $250,000 incurred by professionals employed by Debtor; and (ii) all reasonable and documented fees and expenses of up to $250,000 for the Committee.  The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals and $25,000 for the Committee.

12.    **Restrictions on Granting Postpetition Liens**.  Except as otherwise provided in this Second Interim Order and the Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other DIP Obligations are outstanding without the prior written consent of the Lender.  Except as expressly permitted by the Second Interim Order and the Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without the prior written consent of the Lender or if the grant of such liens or security interests results in the satisfaction of the DIP Obligations having been irrevocably paid in immediately available funds in full.  Unless all DIP Obligations shall have indefeasibly been paid in full in immediately available funds (or as otherwise provided in this Second Interim Order and the Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of this Second Interim Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  DIP Collateral shall be

free and clear of other liens, claims and encumbrances, except as provided in the Term Sheet and the Interim Orders for so long as any portion of the DIP Financing (or refinancing thereof) is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the Term Sheet and this Second Interim Order without further order of this Court.

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all stakeholders, is approved.

16.    **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or

deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance the DIP Financing to the Debtor, negotiating and entering into the Term Sheet, and this Second Interim Order, administering the DIP Financing, consenting to the Approved Budget, or taking any other actions permitted by the Interim Orders or the Term Sheet, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of the Debtor.

17. **Binding Effect**. The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate). To the extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Second Interim Order.

18. **Survival**. The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in full in immediately available funds, the DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code, or otherwise); (b) converting the Chapter 11 Case to a chapter 7 case; or (c) dismissing the Chapter 11 Case. The terms and provisions of this Second Interim Order, as well as the DIP Obligations and the DIP Liens granted pursuant to this Second Interim Order and the Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order. The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the Term Sheet, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of

14

the DIP Obligations from those set forth in the Term Sheet without the written consent of the Lender.  Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing the Chapter 11 Case.

19. **Modifications of Term Sheet**.  The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the Term Sheet and this Second Interim Order, any non-material modifications of the Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to counsel for the Committee and the U.S. Trustee.

20. **Protection Under Section 364(e)**.  If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Term Sheet with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Second Interim Order, and the Term Sheet with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21. **Choice of Law; Jurisdiction; Standing**.  The DIP Financing and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, (and the rights and obligations of the parties thereto) shall be governed by, and construed in accordance with, the laws of the State

of Nevada, without regard to the conflict of law principles thereof. Each party to the DIP Documents will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy Court for so long as the Chapter 11 Case remains open and, thereafter, the state and federal courts set forth in the ultimate loan documents executed between and among the parties. The Lender shall have standing, as a party-in-interest under Section 1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Case.

22.    **Findings of Fact and Conclusions of Law**. This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof. Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23.    **Second Interim Order Effective**. This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24.    **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that the Term Sheet and any paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Second Interim Order.

25.    **First Interim Order Superseded; Final Hearing**. The First Interim Order is superseded by this Second Interim Order. The Bankruptcy Court shall hold a hearing to determine the final approval of the DIP Financing (including proposed DIP loan documents), the Approved Budget and the relief requested by the Debtor in the Motion at the Final Hearing.

26.    **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Interim Order.

**IT IS SO ORDERED.**

1

2  Submitted by:

3  SCHWARTZ LAW, PLLC

4  By: /s/ *Samuel A. Schwartz*

5  Samuel A. Schwartz, Esq.
   601 East Bridger Avenue

6  Las Vegas, NV 89101

7  *Proposed Attorneys for the Debtor*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **LR 9021 CERTIFICATION**

2      In accordance with LR 9021, counsel submitting this document certifies that the order

3 accurately reflects the court's ruling and that:

4      ☐      The court has waived the requirement set forth in LR 9021(b)(1).

5
       ☐      No party appeared at the hearing or filed an objection to the motion.
6

7      ☐      I have delivered a copy of this proposed order to all counsel and any unrepresented
       parties who appeared at the hearing, except those as to whom review was waived on the
8      record at the hearing, and each has approved or disapproved the order, or failed to
       respond, as indicated below:
9

10
       ☐      I certify that this is a case under Chapter 7 or 13, that I have served a copy of this
11     order with the motion pursuant to LR 9014(g), and that no party has objected to the form
       or content of this order.
12                                              ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT B**

### **Comparison of Original Order to Revised Order**

1
2
3
4
5
6
7
8  Samuel A. Schwartz, Esq.
   Nevada Bar No. 10985
9  saschwartz@nvfirm.com
   SCHWARTZ LAW, PLLC
10 601 East Bridger Avenue
   Las Vegas, NV 89101
11 Telephone: 702.385.5544
   Facsimile: 702.442.9887
12 *Proposed Attorneys for the Debtor*

13                **UNITED STATES BANKRUPTCY COURT**
                    **FOR THE DISTRICT OF NEVADA**
14

15 In re:                          )  Case No.: 22-14422-nmc
                                   )
16 MUSCLEPHARM CORPORATION,        )  Chapter 11
                                   )
17                                 )
                                   )  Interim Hearing Date: January 13, 2023
18         Debtor.                 )  Interim Hearing Time: 9:30 a.m.
   _____)

19

20 [~~*PROPOSED*~~] **SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION
   FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
21 363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING
   THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING
22 ~~PRIMING~~ SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS,
   (III)
23 DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE
   AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

24

25 ~~Upon the~~The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor

26 and debtor in possession herein ("**MusclePharm**" or the "**Debtor**")~~, for~~ before this court

27

28 _____
   [1]    Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the
   Motion.

                      1

("**Court**") seeks entry of interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001~~, requesting the Court~~ to, among other ~~things~~matters, authorize the Debtor to obtain emergency credit and incur debt on an interim basis ~~(the "DIP Financing"), and the~~. The Debtor ~~having~~ negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court on January 6, 2023 ~~(~~[ECF No. 65~~)~~] between the Debtor, as borrower, and the DIP Secured Parties and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP Agent, Empery Tax Efficient, L.P. ("**Empery**"~~ or the~~), and collectively with the DIP Secured Parties and DIP Factoring Parties, "**Lender**"), as ~~Lender~~lender, in lieu of White Winston ~~as~~Select Asset Funds, LLC, the originally proposed lender in the Motion~~; to provide the DIP Financing,~~, with Lender proposing the requested financing on the terms set forth in the First Interim Term Sheet~~; and sufficient~~. Sufficient notice of the Motion and ~~the~~a first interim hearing (the "**First Interim Hearing**") ~~having been~~was provided under the circumstances by the Debtor; and further, the Court ~~having~~ continued the First Interim Hearing from January 5, 2023, at 9:30 a.m. to January 6, 2023, at 9:30 a.m.~~;~~ to provide more time for all to review the First Interim Term Sheet, and the Court ~~having~~thereafter entered ~~a~~its first interim order (the "**First Interim Order**") on January 9, 2023 ~~(~~[ECF No. 74~~)~~]~~,~~ and ~~having~~ continued the Motion ~~to~~for a second interim hearing (the "**Second Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be held on January 13, 2023, at 9:30 a.m.~~; and after~~ On January 12, 2023, Debtor substituted a revision to the First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**"). After considering the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, including ~~any~~all formal and informal objections to the Motion, and the argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and others at the Second Interim Hearing; ~~and~~

---

[2]    Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

the Court ~~having~~has found and determined that, subject to the terms of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion~~, (~~as amended and supplemented by ~~the substitution of~~ the Term Sheet) on an interim basis, to the extent provided below, is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A.    **Debtor's Chapter 11 Case**.  On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**").  The Debtor is continuing to operate its business and manage its ~~financial~~ affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B.    **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider ~~this matter~~and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  ~~This~~Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought ~~herein~~by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001~~(b)~~, 6004, and 9014, and Local Rule 4001.  Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    ~~Interim Approval of the Motion.  Based upon the Motion, all~~ relevant pleadings ~~filed with this Court, and the record made at the Interim Hearings, the Court~~ granted the Motion ~~on an interim basis and approved the Debtor's entry into and performance under the DIP Financing, Term Sheet and related loan documents (collectively, the "~~**Loan Documents**~~"), authorized post-petition~~ financing of up to $750,000 ~~for the DIP Note Facility (as defined in the Term Sheet), and $2,000,000 for the DIP Factoring Facility (as defined in the Term Sheet), each~~

---

[3]    To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

1    ~~on an interim basis, and granted related relief~~**Notice**.  Notice of the First Interim ~~Hearings~~Hearing

2    and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight

3    courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3,

4    2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S.**

5    **Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii)  the Lender and

6    counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security

7    interests in the assets of the Debtor, and (v)  all other parties entitled to notice under Bankruptcy

8    Rule 2002 (the "**Noticed Parties**").  Notice of the Second Interim Hearing was provided by the

9    Court on the record in open court at the First Initial Hearing and also on the written record [See,

10   ECF No. 66].  Under all of the circumstances, such notice of the Motion, the relief requested

11   therein and the Interim ~~Hearing complies~~Hearings has complied with Bankruptcy Rule 4001(b),

12   (c) and (d) and the Local Rules.  The final hearing ("**Final Hearing**") will be held pursuant to the

13   authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023, at 10:30 a.m.

14        D.    **Debtor's Need for DIP Financing**.  Based pleadings and papers filed with, and

15   evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11

16   Case, the Debtor does not have sufficient available sources of working capital and financing to

17   carry on the operation of its business and affairs without the DIP Financing and authorized use of

18   cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a

19   result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to

20   meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain

21   business relationships with its suppliers and customers, pay for human resources, purchase

22   materials and otherwise finance its operations is essential to the Debtor's continued viability.  The

23   Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the

24   going concern value of the Debtor's business and ultimately maximizing the value of its estate for

25   the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing

26   is in the best interests of the Debtor, its estate, and its creditors.

27        E.    ~~D.~~ **Budget for Necessary DIP Financing**.  Attached hereto as **Exhibit A** is ~~the~~a

28   revised 13-week cash flow forecast setting forth all projected cash receipts and cash

disbursements (by line item) for a 13-week period beginning in the week commencing January ~~1~~9, 2023 (the "**Budget**").  The Budget may be modified or supplemented from time to time~~, in accordance with the terms of the Loan Documents,~~ by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by ~~(i)~~ the Lender ~~pursuant to the Loan Documents and (ii)~~ the ~~Official~~ Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, ~~an~~the "**Approved Budget**").  The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts~~,~~ and ~~allows~~the Budget accounts for operational disbursements, fees, costs and other expenses that ~~will~~are anticipated to be payable, incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget.  ~~The~~Funding of the Budget will allow the Debtor to operate in ~~its~~the Chapter 11 Case and pay postpetition administrative expenses ~~as they come due~~in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

~~E.    **Need for Funding**.  Based upon the pleadings and proceedings of record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the DIP Financing and authorized use of Cash Collateral.  As a result of the Debtor's financial condition, which deteriorated for an extended period of time prior to the Petition Date, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain business relationships with its members, suppliers and customers, pay its employees, purchase materials and provide services, and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11~~

1    ~~Case is essential to preserving the going concern value of the Debtor's business and ultimately~~

2    ~~maximizing the value of its estate for the benefit of all stakeholders, and approval of the DIP~~

3    ~~Financing is in the best interests of the Debtor, its estate, and its creditors.~~

4        F.    ~~No Credit on More Favorable Terms~~**Financing under Section 364**.  Based

5    ~~upon~~on the pleadings and ~~proceedings of~~papers filed with, and evidence submitted to, this Court

6    in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to

7    obtain sufficient financing from ~~sources other than from the Lender on terms and subject to~~

8    ~~conditions more favorable than under the DIP Financing and the Loan Documents, and is not able~~

9    ~~to obtain~~a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit

10   allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy

11   Code~~.  The Debtor is also unable to obtain~~; or (ii) secured credit under Sections 364(c)(1),

12   364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in the ~~Loan Documents~~Term Sheet

13   without granting ~~to the~~a super-priority priming lien.

14       G.    **Good Faith Lender and Lending and Good Cause**.  The Lender (who together

15   with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders)

16   agreed to provide postpetition financing secured by (i) ~~co-priority,~~ valid, ~~biding~~binding,

17   enforceable and non-avoidable ~~post-petition~~consensual senior postpetition security interests and

18   liens (collectively, the "**DIP Liens**")~~,~~ with ~~co-~~the same priority ~~with~~as the Prepetition Secured

19   Parties~~'~~ (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and

20   senior to all other liens existing on and after the Petition Date ~~in all of~~with the exception of

21   Prestige's prepetition liens and security interests in its prepetition collateral as provided in the

22   prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the

23   Debtor~~'s assets~~ and the Prepetition Secured Parties, (ii) ~~a~~ superpriority ~~claim~~claims under Section

24   364(c)(1), (iii) automatically perfected liens under 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), and

25   (iii)  the other protections set forth in the Motion and the Term Sheet, in each case ~~under the~~

26   ~~terms and conditions set forth in~~limited only by this Second Interim Order~~ and the Loan~~

27   ~~Documents~~.

28

G.    ~~Use of Cash Collateral.   An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Budget to continue to operate its business, pay wages, maintain business relationship with members, suppliers and customers, make capital expenditures, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor adequate time to effectively reorganize.~~

H.    **Good Cause; Best Interests**.   The Lender has indicated a willingness to provide post-petition secured financing but solely on the terms and conditions set forth in ~~this Second Interim Order, the Loan Documents, and the Budget, and as~~<u>As</u> of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the <u>Term Sheet to the extent provided in this</u> Second Interim Order <u>and the Approved Budget</u>.  After considering all of its alternatives, <u>including alternative sources of debtor in possession financing,</u> the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing provided by Lender represents the best <u>proposed</u> financing ~~presently~~ available to the Debtor <u>under Debtor's circumstances</u>.  Based ~~upon~~<u>on</u> the pleadings and ~~proceedings of~~<u>papers filed with, and evidence submitted to, this Court in connection with the Motion, and the</u> record in the Chapter 11 Case, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate will be immediately and irreparably harmed.  Accordingly, good cause has been shown ~~and~~<u>that</u> entry of this Second Interim Order is in the best interest of the Debtor's estate<u>, employees, and creditors and other parties in interest and that the implementation and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral</u> <u>as further provided below</u>) in accordance with this Second Interim Order~~, the Loan Documents,~~ and the ~~other Loan Documents are~~<u>Term Sheet is</u> in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties.

I.    **Good Faith**.  Based ~~upon~~<u>on</u> the  pleadings and ~~proceedings of~~<u>papers filed with,</u>

and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended pursuant to this Second Interim Order to the Debtor by the Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code. This Court concludes that good cause has been shown and that entry of

H.      **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget to continue to operate its business, pay wages, maintain business relationships with members, suppliers and customers, make capital expenditures, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor adequate time to effectively reorganize.

I.      **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers filed with and evidence submitted to this Court in connection with the Motion, and the record made at the Interim Hearings, the Court has determined to grant the Motion on an interim basis and approve the Debtor's entry into and performance under the DIP Financing under the Term Sheet, as further provided herein, thereby authorizing postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring line shall not exceed $10,000,000) and related relief, as provided in the Term Sheet and this Second Interim Order is in the best interest of the Debtor's estate, employees and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's businesses and enhance the Debtor's prospects for a successful reorganization.

Based on the foregoing, and upon the record made before this Court at the Interim

HearingHearings, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      **Interim Approval**.  The DIP Financing pursuant to the DIP Facilities (as that term is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to borrowobtain postpetition financing of up to $750,000 forunder the DIP Note Facility and factor accounts receivable and purchase orders in an aggregate amount up to $2,000,000 for(as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring Facility shall not exceed $10,000,000), each on an interim basis as provided in the Term Sheet and Second Interim Order.

2.      Interim **Approval of** the Loan Documents.  Effective upon**Term Sheet; Relief Reserved to Final Hearing**.  The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and herein is approved for all postpetition lending by Lender to Debtor made prior to entry of this Second Interimthe Final Order, the Loan Documents are hereby approved and are incorporated herein by reference. The Debtor is expressly authorized to execute the Loan Documents, and the Debtor is authorized, empowered, and directed to perform all of its direct and indirect obligations under the Loan DocumentsTerm Sheet and this Second Interim Order including the execution of  such additional documents, instruments and agreements reasonably required or requested by the Lender pursuant to the Loan Documents to implement the terms or effectuate the purposes of the Term Sheet and this Second Interim Order, except as applicablelimited hereby (collectively, the "**DIP Obligations**").  In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is liftedmodified to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all reasonable fees (when applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Loan Documents andTerm Sheet and this Interim Order.

In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet). Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing:

a) Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

b) Roll-up;

c) Releases;

d) The Prepetition Secured Parties' allowed claim;

e) The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

f) The good faith finding for DIP Financing other than during the Interim Period; and

g) The ultimate DIP Documents (as defined in the Term Sheet).

3. **Authorization to Borrow/Use of Cash Collateral**. Pursuant to this Second Interim Order and subject to the terms and conditions set forth in the Loan Documents, the Debtor is immediately authorized to (a) borrow and factor accounts receivable and purchase orders from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $2,000,000 10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of purchase orders (collectively, the "**Advance**"), all subject to and in accordance with the terms of this Second Interim Order and the Loan Documents Term Sheet and (b) Debtor is authorized to use the proceeds of the DIP Financing and the Collateral (including the Cash Collateral) in accordance with the terms of the Loan Documents Term Sheet, this Second

Interim Order, and the Budget (and any subsequent Approved Budget) consistent with the terms of this Second Interim Order.

4.    **Cash Collateral**.   The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender and the Prepetition Secured Parties (the "**Cash Collateral**").   The Debtor may use the Cash Collateral to pay postpetition ordinary and necessarycourse of business and administrative expenses to the extent allowed and permitted to be paid herein, by other Court order or pursuant to the Bankruptcy Code, and in accordance with, and limited by, anthe Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.  The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, anthe Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.  All of Lender's Cash Collateral shall be subject to the first priority priming lienssenior DIP Liens on the DIP Collateral in accordance with Section 364(d), and shall be subject to the terms of this Second Interim Order, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5.    **Maturity and Termination.**  Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier to occur of (a) the earlier of (x) the effective date of a plan of reorganization with respect to the Debtor or (y) the date Debtor sells or otherwise disposes of the Lender's collateral (the "**Maturity Date**").Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (by) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, counsel to the Committee, and the U.S. Trustee, unless

any such event is waived, cured or extended with the written consent of the Lender.

6. **Interest on DIP Financing**.  The rate of interest to be charged on advances under the DIP Financing shall be: (i) ~~zero~~the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (~~0.0~~2%) for the DIP Note Facility; and (ii)  the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Factoring Facility~~, and shall accrue as payment in kind except the Lender's fees and costs, which shall be paid as set forth in the Loan Documents~~.

7. **Payment of DIP Fees and Expenses**.  The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the ~~Loan Documents~~Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the ~~Loan Documents~~Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided in the Term Sheet.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to ~~the~~any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

~~8.    **Validity of Loan Documents**.  The Loan Documents shall constitute, and are hereby deemed on a final basis to be, the legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the Loan Documents for all purposes during this Chapter 11 Case, in any subsequently converted Chapter 11 Case of the Debtor under chapter 7 of the Bankruptcy Code or after dismissal of this Chapter 11 Case.  None of the validity, perfection, priority, extent or enforceability of the DIP Obligations or the DIP~~

1   Liens shall be subject to any challenge by or on behalf of any Debtor or its estate, including,

2   without limitation, an effort to equitably subordinate or avoid the DIP Liens.  Proceeds of the DIP

3   Financing and the Cash Collateral shall be applied only to fund allowed postpetition

4   administrative expenses, the Debtor's working capital, and such other amounts as are required or

5   permitted to be paid pursuant to the Loan Documents, this Second Interim Order and any other

6   orders of this Court, all subject to, limited by, and in accordance with, an Approved Budget.  No

7   obligation, payment, transfer or grant of security under the Loan Documents or this Second

8   Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy

9   Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff,

10  recoupment or counterclaim.

11      8.      9. **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy

12  Code, the Lender shall have superpriority administrative expense claim for the DIP Obligations

13  under this Second Interim Order Section 364(c)(1) (the "**Superpriority Claim**") for the DIP

14  Obligations against the Debtor, with priority in payment over any and all administrative expenses,

15  adequate protection claims, diminution claims and all other claims against the Debtor, now

16  existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all

17  administrative expenses or other claims of the kinds specified or ordered pursuant to any

18  provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364,

19  503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting

20  from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, whether or not

21  such expenses or claims may become secured by a judgment lien or other non-consensual lien,

22  levy or attachment; provided, however, that the Superpriority Claim shall be subject to the

23  Carve-Out.  Forfor purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority

24  Claim shall be considered an administrative expense allowed under Section 503(b) of the

25  Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all

26  prepetition and postpetition property of the Debtor.  Except as set forth in this Second Interim

27  Order and the Final Order, no other superpriority claims shall be granted or allowed in thisthe

28

Chapter 11 Case.

9. ~~10.~~ **DIP Liens**.   As security for all DIP Obligations pursuant to this Second Interim Order, the Lender is hereby granted (~~effective upon the date of this Second Interim Order,~~ without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise) ~~valid, binding and fully perfected, security interests in and liens (,~~ the "DIP Liens"~~)~~ ~~with co-priority with the Prepetition Secured Parties (as defined in the Term Sheet) upon~~ on all present and after- acquired property ~~of the Debtor of any nature whatsoever, real or personal,~~(whether tangible, intangible, real, personal or mixed~~, now existing or hereafter acquired, whether existing prior to the Petition Date or arising thereafter, and all other property of the estate within the meaning of Section 541 of the Bankruptcy Code~~) of the Note Parties, wherever located, including, without limitation, ~~the Cash Collateral and the Prepetition Collateral the "Collateral"); however, which Collateral does not include (i)~~all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor~~'s commercial tort claims,~~ and/or jointly-owned subsidiaries ~~(ii) bankruptcy claims and~~if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action ~~arising~~ under ~~Sections~~Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550~~, and~~ or 553 ~~of the Bankruptcy Code and~~or any other avoidance actions under the Bankruptcy Code ~~and state law equivalents and~~or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "~~Avoidance Actions"), consisting of:~~

a)   ~~Co-Priority Lien on Unencumbered Property.   Pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected co-priority lien with the Prepetition Secured Parties upon and security interest in all of the Debtor's right, title and interest in, to and under all Collateral.~~

~~The liens granted post-petition by the Debtor to Empery pursuant to this First~~ ~~Interim~~ ~~Order shall not impair nor have any priority over, and are subject to, the~~ ~~pre-petition liens of~~ ~~Prestige Capital Finance, LLC ("~~**Prestige**~~") that are senior to those~~ ~~pre-petition liens of Empery~~ ~~pursuant to the parties' pre-petition intercreditor agreement.  To the extent this First~~ ~~Interim~~ ~~Order grants any other rights~~ ~~post-petition to Empery (including but not limited to the~~ ~~super-priority administrative expense status), those rights shall not impair nor have any priority~~ ~~over, and are subject to, the prepetition liens of Prestige~~**DIP Collateral"**).  The DIP Liens will not be subject to challenge ~~and the Collateral will be free and clear of other liens, claims and~~ ~~encumbrances~~.  Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; <u>provided</u>, <u>however</u>, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

<u>10.</u>     **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender <u>pursuant to this Second</u> Interim Order shall not impair nor have any priority over, and are subject to, the <u>prepetition liens of Prestige</u> that are senior to those <u>prepetition liens of Lender pursuant to the  Prestige Intercreditor Agreement.  To the extent this Second</u> Interim Order grants any other rights <u>postpetition to Lender</u> (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11.     **Carve Out**. The DIP Liens and Superpriority Claim granted under this Second Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) ~~an amount not to exceed $250,000 of any allowed but unpaid~~<u>all reasonable and documented</u> fees~~, costs~~ and expenses ~~of the Debtor's counsel and restructuring advisor~~<u>up to $250,000 incurred by professionals employed by Debtor</u>; and (ii) ~~an amount not to exceed $250,000 of any allowed but unpaid~~<u>all reasonable and documented</u> fees~~, costs,~~ and expenses of

up to $250,000 for the Committee.  The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals~~.~~ and $25,000 for the Committee.

12.    **Restrictions on Granting Post-~~Petition~~petition Liens**.    Except as otherwise provided in ~~the~~this Second Interim ~~Orders or~~Order and the ~~Loan Documents~~Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other ~~Obligation is~~DIP Obligations are outstanding without the prior written consent of the Lender.  Except as expressly permitted by the Second Interim ~~Orders~~Order and the ~~Loan Documents~~Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without the prior written consent of the Lender or if the grant of such liens or security interests ~~are~~results in the satisfaction of the DIP Obligations having been irrevocably paid in immediately available funds in full.  Unless all DIP Obligations shall have indefeasibly been paid in full in ~~cash~~immediately available funds (or as otherwise provided in ~~the~~this Second Interim ~~Orders~~Order and the ~~Loan Documents~~Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of ~~the~~this Second Interim ~~Orders~~Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.    The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  ~~All~~DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the ~~Loan Documents~~Term Sheet and the Interim Orders for so long as any portion of the DIP

Financing (or refinancing thereof) is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the ~~Loan Documents~~Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the ~~Loan Documents~~Term Sheet and ~~the~~this Second Interim ~~Orders~~Order without further order of this Court. ~~Following an event of default notice~~

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the ~~Lender, the~~ Debtor ~~the Committee, and the U.S. Trustee shall be entitled to seek an emergency hearing exclusively before this Court.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition~~Nicholas Rubin, will have sole and exclusive responsibility for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or ~~continuance of the automatic stay as provided hereunder~~sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all

stakeholders, is approved.

16.    ~~15.~~ **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance the DIP Financing to the Debtor, negotiating and entering into the ~~Loan Documents~~Term Sheet, and this Second Interim Order, administering the DIP Financing, consenting to the ~~Budget or any future~~ Approved Budget, or taking any other actions permitted by the Interim Orders or the ~~Loan Documents~~Term Sheet, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of the Debtor.

17.    ~~16.~~ **Binding Effect**.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate).  To the extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Second Interim Order.

18.    ~~17.~~ **Survival**.  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in full in ~~cash~~immediately available funds, the DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code~~)~~, or otherwise);

(b) converting ~~this case~~the Chapter 11 Case to a chapter 7 case~~.~~; or (c) dismissing ~~this case~~the Chapter 11 Case.  The terms and provisions of this Second Interim Order, as well as the DIP Obligations and the DIP Liens granted pursuant to this Second Interim Order and the ~~Loan Documents~~Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order.  The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the ~~Loan Documents~~Term Sheet, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the ~~Loan Documents~~Term Sheet without the written consent of the Lender.  Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing ~~this case~~the Chapter 11 Case.

19.   ~~18.~~ **Modifications of ~~Loan Documents~~Term Sheet**.  The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the ~~Loan Documents~~Term Sheet and this Second Interim Order, any non-material modifications of the ~~Loan Documents~~Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to ~~the U.S. Trustee and~~ counsel ~~to~~for the Committee and the U.S. Trustee.

20.   ~~19.~~ **Protection Under Section 364(e)**.  If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the ~~Loan Documents~~Term Sheet with respect to any DIP Obligations.  Notwithstanding any such reversal, modification,

vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the ~~other Loan Documents~~Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Second Interim Order, and the ~~Loan Documents~~Term Sheet with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21.    ~~20.~~ **Choice of Law; Jurisdiction; Standing**.  The DIP Financing and the ~~Loan Documents~~Term Sheet and any paperwork issued pursuant to and in conformance therewith, (and the rights and obligations of the parties thereto) shall be governed by, and construed ~~and interpreted~~ in accordance with, the laws of the State of Nevada, ~~and,~~without regard to the ~~extent applicable,~~conflict of law principles thereof. Each party to the DIP Documents will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy ~~Code.  This~~Court ~~shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either~~for so long as the Chapter 11 Case remains open and, thereafter, the ~~DIP Financing or the Loan Documents~~state and federal courts set forth in the ultimate loan documents executed between and among the parties.  The Lender shall have standing, as a party-in-interest under Section 1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Case.

22.    ~~21.~~ **Findings of Fact and Conclusions of Law**.  This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.  Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23.    ~~22.~~**Second Interim Order Effective**.  This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24.    ~~23.~~ **Failure to Specify Provisions**.    The failure specifically to include any particular provisions of the ~~Loan~~Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that the ~~Loan Documents~~Term Sheet and any ~~related Loan Documents~~paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Second Interim Order.

25.    ~~24.~~ **First Interim Order Superseded; Final Hearing**.    The First Interim Order is superseded by this Second Interim Order.  The Bankruptcy Court shall hold a hearing to determine the final approval of the ~~Loan Documents~~DIP Financing (including proposed DIP loan documents), the Approved Budget and the relief requested by the Debtor in the Motion ~~on _____, 2023, at _____.m., which hearing shall include that the relief approved in this Interim Order is approved in accordance with the Final Order.  Objections, if any, to the Motion on a final basis shall be filed with the Court and served on counsel to the Debtors, counsel to the Lender, counsel to the Committee, and the U.S. Trustee on or before _____, 2023, at _____.m.~~at the Final Hearing.

26.    ~~25.~~ **Retention of Jurisdiction**.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Interim Order.

**IT IS SO ORDERED.**

Submitted by:

SCHWARTZ LAW, PLLC

By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Proposed                    Attorneys                    for                    the                    Debtor*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐      The court has waived the requirement set forth in LR 9021(b)(1).

☐      No party appeared at the hearing or filed an objection to the motion.

☐      I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐      I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###

Document comparison by Workshare Compare on Monday, January 16, 2023
2:02:43 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/108377/2 |
| Description | DOCS_SF-#108377-v2-MusclePharm_-_Second_Interim_DIP_Order |
| Document 2 ID | PowerDocs://DOCS_SF/108377/3 |
| Description | DOCS_SF-#108377-v3-MusclePharm_-_Second_Interim_DIP_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 297 |
| Deletions | 244 |
| Moved from | 23 |
| Moved to | 23 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 587 |