Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
blindsey@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Proposed Attorneys for the Debtor*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: BK-22-14422-NMC |
| | ) | |
| MUSCLEPHARM CORPORATION, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## EX PARTE MOTION FOR ORDER SHORTENING TIME FOR
## HEARING ON FORM OF SECOND INTERIM DIP FINANCING ORDER

MusclePharm Corporation, the debtor in the above-referenced Chapter 11 case ("**Debtor**"), by and through its proposed counsel of record, Schwartz Law, PLLC, hereby files this ex parte motion (the "**Motion**") for an emergency hearing on the form of that certain Second Interim Order Pursuant to Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed. R. Bankr. P. 4001(B) and 4001(D): (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Senior Secured Liens and Administrative Expense Claims, (III) Determining Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief (the "**Second Interim DIP Financing Order**").

This Application is made pursuant to Bankruptcy Rule 9006, Local Rule 9006, the declaration of Samuel A. Schwartz, Esq. (the "**Schwartz Declaration**"), attached hereto as **Exhibit 1**, the points and authorities set forth below, and the pleadings and papers and other records

1

contained in this Court's file, judicial notice of which is respectfully requested.

**BACKGROUND**

1.      On January 13, 2023, this Court held a second interim hearing on the Debtor's Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed. R. Bankr. P. 4001(B) and 4001(D): (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Senior Secured Liens and Administrative Expense Claims, (III) Determining Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief (the "**DIP Financing Motion**"), and approved the DIP Financing Motion on an interim basis, with a final hearing to be held on February 9, 2023, at 10:30 a.m.

2.      On Monday, January 16, 2023, counsel for the Debtor circulated a proposed form of the Second Interim DIP Financing Order.

3.      Between Monday, January 16, 2023, and Thursday, January 19, 2023, the Debtor's counsel collected comments from all parties who appeared at the hearing and requested to sign off on the Second Interim DIP Financing Order.

4.      While Empery Tax Efficient, L.P. ("**Empery**") and White Winston Select Asset Funds, LLC ("**WW**") had competing views over certain provisions and comments to the Second Interim DIP Financing Order, the Debtor ultimately adopted the comments from counsel for Empery and circulated a final proposed Second Interim DIP Financing Order on Thursday, January 19, 2023.

5.      Counsel for Empery, the Office of the United States Trustee, the Official Committee of Unsecured Creditors and Prestige Capital Finance, LLC, all approved and signed off on the Second Interim DIP Financing Order.  Counsel for WW disapproved.  A copy of the final Second Interim DIP Financing Order is attached hereto as **Exhibit 2**.  A copy of the redlined Second Interim DIP Financing Order, which compares the proposed Second Interim DIP Financing Order to the version submitted by WW, is attached hereto as **Exhibit 3**.

6.      As the Debtor has an immediate need for financing, the Debtor does not have the time for allow for the normal time periods under Local Rule 9021 to run its course (e.g. five (5) business days for WW to lodge an objection to the proposed Second Interim DIP Financing Order

and another five (5) business days for replies thereto).

7.    Accordingly, the Debtor respectfully requests that this Court set an emergency hearing as soon as possible to resolve the WW's objection to the Second Interim DIP Financing Order.

## LEGAL ARGUMENT

Section 105 of the Bankruptcy Code allows this court to issue such orders as are necessary to carry out the provisions of this title. Bankruptcy Rule 9006(c)(l) permits a bankruptcy court, for cause shown and, in its discretion, to reduce the period during which any notice is given in accordance with the bankruptcy rules. Bankruptcy Rule 9006(c)(l) provides as follows:

> Except as provided in paragraph 2 of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may, in its discretion with or without motion or notice order the period reduced.

Fed. R. Bankr. P. 9006(c)(1).

The operative section of the Bankruptcy Code's rules of construction set forth in 11 U.S.C. § 102(1) define the phrase "after notice and a hearing," or similar phrases used throughout the Bankruptcy Code and Bankruptcy Rules as follows:

> (A) … after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but (B) authorizes an act without an actual hearing if such notice is given properly and if – (i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such an act must be done, and the court authorizes such an act.

11 U.S.C. § 102(1); *see also* Fed. R. Bankr. P. 9001 (making the Bankruptcy Code's rules of construction applicable to the Federal Rules of Bankruptcy Procedure).

Relief under Bankruptcy Rule 9006(c)(1) is committed to the Court's discretion. *See, e.g., In re Phila. Newspapers, LLC*, 690 F.3d 161, 171 (3d Cir. 2012). "In exercising that discretion, [the Court] should consider the prejudice to parties entitled to notice and weigh this against the reasons for hearing the motion on an expedited basis." *Id.*

Local Rule 9006 provides further authority for shortening the time for a hearing. According

to Local Rule 9006(b), every application for an order shortening time must be accompanied by a declaration stating the reasons for an expedited hearing.

As set forth above and in the Schwartz Declaration, there are compelling reasons for an expedited hearing on the motions identified above.  The Debtor needs financing, the Debtor needs to make payroll and other business operational expenses.  Accordingly, the Debtor does not have the time to wait for the procedures under Local Rule 9021 to run, which could run up to two weeks.

WHEREFORE, the Debtors respectfully submit that cause exists both under 11 U.S.C. § 102(1) and under Bankruptcy Rule 9006(c)(1) to grant the relief requested herein, and respectfully prays that the Court set an emergency hearing on the proposed form of Second Interim DIP Financing Order at the Court's earliest convenience.

Dated: January 19, 2023.

SCHWARTZ LAW, PLLC


By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Bryan A. Lindsey, Esq.
601 East Bridger Avenue
Las Vegas, NV  89101

*Proposed Attorneys for the Debtor*

4

# EXHIBIT 1

# EXHIBIT 1

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
blindsey@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No.: BK-22-14422-NMC |
| | ) |
| MUSCLEPHARM CORPORATION, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**<u>DECLARATION OF SAMUEL A. SCHWARTZ, ESQ.</u>**

Samuel A. Schwartz, being duly sworn, deposes and says:

1.    I, Samuel A. Schwartz, am the principal of Schwartz Law, PLLC ("**SL**"), and I am duly licensed to practice law in the State of Nevada and this Court. I make this declaration based on my own personal knowledge except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

2.    I make this Declaration in support of the *Debtor's Ex Parte Application for Order Shortening Time for Hearing on Form of Second Interim DIP Financing Order* (the "**Ex Parte Motion**"), to which this Declaration is attached as Exhibit 1.

3.    On January 3, 2023, the Debtor filed its Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Priming Liens and Administrative Expense Claims, (III) Authorizing the Debtor's Use of Cash Collateral, (IV)

1

Modifying the Automatic Stay, and (V) Granting Related Relief (the "**DIP Financing Motion**"). *See* ECF No. 33.

4.      On January 13, 2023, this Court held a second interim hearing on the Debtor's DIP Financing Motion, and approved the DIP Financing Motion on an interim basis, with a final hearing to be held on February 9, 2023, at 10:30 a.m.

5.      On Monday, January 16, 2023, I circulated a proposed form of the Second Interim DIP Financing Order to all parties who appeared at the hearing and requested to sign off on the Second Interim DIP Financing Order.

6.      Between Monday, January 16, 2023, and Thursday, January 19, 2023, counsel collected comments from all parties who appeared at the hearing and requested to sign off on the Second Interim DIP Financing Order.

7.      While Empery Tax Efficient, L.P. ("**Empery**") and White Winston Select Asset Funds, LLC ("**WW**") had competing views over certain provisions and comments to the Second Interim DIP Financing Order, the Debtor ultimately adopted the comments from counsel for Empery and circulated a final proposed Second Interim DIP Financing Order on Thursday, January 19, 2023.

8.      Counsel for Empery, the Office of the United States Trustee, the Official Committee of Unsecured Creditors and Prestige Capital Finance, LLC, all approved and signed off on the Second Interim DIP Financing Order.  Counsel for WW disapproved.  A copy of the final Second Interim DIP Financing Order is attached to the Ex Parte Motion as **Exhibit 2**.  A copy of the redlined Second Interim DIP Financing Order, which compares the proposed Second Interim DIP Financing Order to the version submitted by WW, is attached to the Ex Parte Motion as **Exhibit 3**.

9.      As the Debtor has an immediate need for financing, the Debtor does not have the time for allow for the normal time periods under Local Rule 9021 to run its course (e.g. five (5) business days for WW to lodge an objection to the proposed Second Interim DIP Financing Order and another five (5) business days for replies thereto).

10.    Accordingly, I believe sufficient cause exists for an order shortening time for this Court to set an emergency hearing as soon as possible to resolve the WW's objection to the Second Interim DIP Financing Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 19, 2023.

/s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.

3

# EXHIBIT 2

# EXHIBIT 2

1

2

3

4

5

6

7

8    Samuel A. Schwartz, Esq.
     Nevada Bar No. 10985
9    saschwartz@nvfirm.com
     SCHWARTZ LAW, PLLC
10   601 East Bridger Avenue
     Las Vegas, NV 89101
11   Telephone: 702.385.5544
     Facsimile: 702.442.9887
12   *Proposed Attorneys for the Debtor*

13
                        **UNITED STATES BANKRUPTCY COURT**
14                        **FOR THE DISTRICT OF NEVADA**

15   In re:                                    )   Case No.: 22-14422-nmc
                                               )
16   MUSCLEPHARM CORPORATION,                  )   Chapter 11
                                               )
17                                             )
                                               )
18                    Debtor.                  )   Interim Hearing Date: January 13, 2023
                                               )   Interim Hearing Time: 9:30 a.m.
19   _____

20            **SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION**
          **FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362,**
21   **363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING**
          **THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING**
22        **SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III)**
            **DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE**
23            **AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

24        The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor and debtor in

25   possession herein ("**MusclePharm**" or the "**Debtor**") before this court ("**Court**") seeks entry of

26

27   _____

28   [1]      Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the
     Motion.

                                               1

interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001 to, among other matters, authorize the Debtor to obtain emergency credit and incur debt on an interim basis. The Debtor negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court on January 6, 2023 [ECF No. 65] between the Debtor, as borrower, and the DIP Secured Parties and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP Agent, Empery Tax Efficient, L.P. ("**Empery**"), and collectively with the DIP Secured Parties and DIP Factoring Parties, "**Lender**"), as lender, in lieu of White Winston Select Asset Funds, LLC ("**WW**"), the originally proposed lender in the Motion, with Lender proposing the requested financing on the terms set forth in the First Interim Term Sheet. Sufficient notice of the Motion and a first interim hearing (the "**First Interim Hearing**") was provided under the circumstances by the Debtor; and further, the Court continued the First Interim Hearing from January 5, 2023, at 9:30 a.m. to January 6, 2023, at 9:30 a.m. to provide more time for all to review the First Interim Term Sheet, and the Court thereafter entered its first interim order (the "**First Interim Order**") on January 9, 2023 [ECF No. 74], and continued the Motion for a second interim hearing (the "**Second Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be held on January 13, 2023, at 9:30 a.m.  On January 12, 2023, Debtor substituted a revision to the First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**").  After considering the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, including all formal and informal objections to the Motion, and the argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and others at the Second Interim Hearing; the Court has found and determined that, subject to the terms of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion (as amended and supplemented by the Term Sheet) on an interim basis, to the extent provided below,

[2] Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A. **Debtor's Chapter 11 Case**. On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**"). The Debtor is continuing to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B. **Jurisdiction; Venue**. This Court has subject matter jurisdiction to consider and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001. Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Notice**. Notice of the First Interim Hearing and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3, 2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S. Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii) the Lender and counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security interests in the assets of the Debtor, and (v) all other parties entitled to notice under Bankruptcy Rule 2002 (the "**Noticed Parties**"). Notice of the Second Interim Hearing was provided by the Court on the record in open court at the First Initial Hearing and also on the written record [See, ECF No. 66]. Under all of the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearings has complied with Bankruptcy

---

[3]      To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

Rule 4001(b), (c) and (d) and the Local Rules.  <u>The final hearing ("**Final Hearing**") will be held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023, at 10:30 a.m.</u>

D.    <u>**Debtor's Need for DIP Financing**</u>.  Based upon pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business and affairs without the DIP Financing and authorized use of cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain business relationships with its suppliers and customers, pay for human resources, purchase materials and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the going concern value of the Debtor's business and ultimately maximizing the value of its estate for the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing is in the best interests of the Debtor, its estate, and its creditors.

E.    <u>**Budget for Necessary DIP Financing**</u>.  Attached hereto as **Exhibit A** is a revised 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing January 9, 2023 (the "**Budget**"). The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by the Lender and the Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, the "**Approved Budget**"). The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts, and the Budget accounts for operational disbursements, fees, costs and other expenses that are anticipated to be payable, incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely

4

paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget. Funding of the Budget will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

F.      **Financing under Section 364**.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to obtain sufficient financing from a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code; or (ii) secured credit under Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in the Term Sheet without granting a super-priority priming lien.

G.      **Good Faith Lender and Lending and Good Cause**.  The Lender (who together with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders) agreed to provide postpetition financing secured by (i) valid, binding, enforceable and non-avoidable consensual senior postpetition security interests and liens (collectively, the "**DIP Liens**") with the same priority as the Prepetition Secured Parties' (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and senior to all other liens existing on and after the Petition Date with the exception of Prestige's prepetition liens and security interests in its prepetition collateral as provided in the prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the Debtor and the Prepetition Secured Parties, (ii) superpriority claims under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), and (iii) the other protections set forth in the Motion and the Term Sheet, in each case limited only by this Second Interim Order.  As of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the Term Sheet to the extent provided in this Second Interim Order and the Approved Budget.  After considering all of its alternatives, including alternative sources of debtor in possession financing,

5

1    the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing

2    provided by Lender represents the best proposed financing available to the Debtor under Debtor's

3    circumstances.  Based on the pleadings and papers filed with, and evidence submitted to, this Court

4    in connection with the Motion, and the record in the Chapter 11 Case, the terms and conditions of

5    the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business

6    judgment, and are supported by reasonably equivalent value and fair consideration.  Absent

7    granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate

8    will be immediately and irreparably harmed.  Accordingly, good cause has been shown that entry

9    of this Second Interim Order is in the best interest of the Debtor's estate, employees, and creditors

10    and other parties in interest and that the implementation and consummation of the DIP Financing

11    and authorization of the use of the Collateral (including the Cash Collateral as further provided

12    below) in accordance with this Second Interim Order and the Term Sheet is in the best interests of

13    the Debtor's estate and consistent with the Debtor's fiduciary duties.  Based on the  pleadings and

14    papers filed with, and evidence submitted to, this Court in connection with the Motion, and the

15    record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's

16    length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other

17    financial accommodations extended pursuant to this Second Interim Order to the Debtor by the

18    Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning

19    of Section 364(e) of the Bankruptcy Code.

20         H.    **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to

21    use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget

22    to continue to operate its business, pay wages, maintain business relationships with members,

23    suppliers and customers, make capital expenditures, generally conduct its business affairs so as to

24    avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor

25    adequate time to effectively reorganize.

26         I.    **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers

27    filed with and evidence submitted to this Court in connection with the Motion, and the record made

28    at the Interim Hearings, and WW having withdrawn its objection on an interim basis only, the Court

has determined to grant the Motion on an interim basis and approve the Debtor's entry into and performance under the DIP Financing under the Term Sheet, as further provided herein, thereby authorizing postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility to factor Accounts (as those terms are defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring Purchase Orders (as that term is defined in the Term Sheet) during the Interim Period and related relief, as provided in the Term Sheet and this Second Interim Order.

Based on the foregoing, and upon the record made before this Court at the Interim Hearings, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1. **Interim Approval**. The DIP Financing pursuant to the DIP Facilities (as that term is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to obtain postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring Facility shall not exceed $10,000,000), on an interim basis as provided in the Term Sheet and Second Interim Order.

2. **Interim Approval of Term Sheet; Relief Reserved to Final Hearing**. The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and herein is approved for all postpetition lending by Lender to Debtor made prior to entry of the Final Order. The Debtor is expressly authorized, empowered, and directed to perform all of its direct and indirect obligations under the Term Sheet and this Second Interim Order including the execution of such additional documents, instruments and agreements reasonably required or requested by the Lender to implement the terms or effectuate the purposes of the Term Sheet and this Second Interim Order, except as limited hereby (collectively, the "**DIP Obligations**"). In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is modified to the extent necessary, to perform all acts and to

make, execute and deliver all instruments and documents and to pay all reasonable fees (when applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Term Sheet and this Interim Order.  In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet).  Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing:

    a)  Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

    b)  Roll-up;

    c)  Releases;

    d)  The Prepetition Secured Parties' allowed claim;

    e)  The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

    f)  The good faith finding for DIP Financing other than during the Interim Period; and

    g)  The ultimate DIP Documents (as defined in the Term Sheet).

    3.    **Authorization to Borrow/Use of Cash Collateral**.  Pursuant to this Second Interim Order, the Debtor is immediately authorized to (a) borrow and factor Accounts and Purchase Orders from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of Purchase Orders during the Interim Period, all subject to and in accordance with the terms of this Second Interim Order and the Term Sheet and (b) use the proceeds of the DIP Financing  and the Collateral (including the Cash Collateral) in accordance with the terms of the Term Sheet, this

Second Interim Order and the Budget (and any subsequent Approved Budget) consistent with the terms of this Second Interim Order.

4.    **Cash Collateral**.   The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender, the Prepetition Secured Parties and Prestige (the "**Cash Collateral**").   The Debtor may use the Cash Collateral to pay postpetition ordinary course of business expenses to the extent allowed and permitted to be paid herein, by other Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.   The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.   All of Lender's Cash Collateral shall be subject to the first priority senior DIP Liens on the DIP Collateral, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties and Prestige shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5.    **Maturity and Termination**.   Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier of (x) the Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (y) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, and the U.S. Trustee, unless any such event is waived, cured or extended with the written consent of the Lender.

6.    **Interest on DIP Financing**.   The rate of interest to be charged on advances under the DIP Financing shall be: (i) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Note Facility; and (ii) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order,

plus two percent (2%) for the DIP Factoring Facility.

7.    **Payment of DIP Fees and Expenses**.  The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided  in the Term Sheet.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8.    **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim under Section 364(c)(1) (the "**Superpriority Claim**") for the DIP Obligations against the Debtor, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the

10

Debtor.  Except as set forth in this Second Interim Order and Final Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Case.

9.    **DIP Liens**.  As security for all DIP Obligations  pursuant to this Second Interim Order, the Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise), the DIP Liens on all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Note Parties, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor and/or jointly-owned subsidiaries (if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "**DIP Collateral**").  The DIP Liens will not be subject to challenge.  Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

10.    **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender and the Prepetition Secured Parties pursuant to this Second Interim Order shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige that are senior to those prepetition liens of Lender and the Prepetition Secured Parties pursuant to the Prestige Intercreditor Agreement.  To the extent this Second Interim Order grants any other rights postpetition to Lender (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11.    **Carve Out**.  The DIP Liens and Superpriority Claim granted under this Second Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) all reasonable and documented fees and expenses up to $250,000 incurred by professionals employed by Debtor; and (ii) all reasonable and documented fees and expenses of up to $250,000 for the Committee.  The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals and $25,000 for the Committee.

12.    **Restrictions on Granting Postpetition Liens**.  Except as otherwise provided in this Second Interim Order and the Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other DIP Obligations are outstanding without the prior written consent of the Lender.  Except as expressly permitted by the Second Interim Order and the Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without either (i) first obtaining the prior written consent of the Lender or (ii) irrevocably satisfying the DIP Obligations in full in immediately available funds as a condition to the granting of such liens.  Unless all DIP Obligations shall have indefeasibly been paid in full in immediately available funds (or as otherwise provided in this Second Interim Order and the Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of this Second Interim Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  DIP Collateral shall be

12

free and clear of other liens, claims and encumbrances, except as provided in the Term Sheet and the Interim Orders for so long as any portion of the DIP Financing (or refinancing thereof) is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the Term Sheet and this Second Interim Order without further order of this Court.

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility with respect to the Debtor for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all stakeholders, is approved.

16.    **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or

deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance the DIP Financing to the Debtor, negotiating and entering into the Term Sheet, and this Second Interim Order, administering the DIP Financing, consenting to the Approved Budget, or taking any other actions permitted by the Interim Orders or the Term Sheet, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of the Debtor.

17. **Binding Effect**.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate).  To the extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Second Interim Order.

18. **Survival**.  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in full in immediately available funds, the DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code, or otherwise); (b) converting the Chapter 11 Case to a chapter 7 case; or (c) dismissing the Chapter 11 Case.  The terms and provisions of this Second Interim Order, as well as the DIP Obligations and the DIP Liens granted pursuant to this Second Interim Order and the Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order.  The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the Term Sheet, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of

the DIP Obligations from those set forth in the Term Sheet without the written consent of the Lender. Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing the Chapter 11 Case.

19.    **Modifications of Term Sheet**.  The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the Term Sheet and this Second Interim Order, any non-material modifications of the Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to counsel for the Committee and the U.S. Trustee.

20.    **Protection Under Section 364(e)**.  If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Term Sheet with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Second Interim Order, and the Term Sheet with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21.    **Choice of Law; Jurisdiction; Standing**.  The DIP Financing and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, (and the rights and obligations of the parties thereto) shall be governed by, and construed in accordance with, the laws of the State

15

of Nevada, without regard to the conflict of law principles thereof. Each party to the DIP Documents will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy Court for so long as the Chapter 11 Case remains open and, thereafter, the state and federal courts set forth in the ultimate loan documents executed between and among the parties. The Lender shall have standing, as a party-in-interest under Section 1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Case.

22.     **Findings of Fact and Conclusions of Law**.  This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.  Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23.     **Second Interim Order Effective**.  This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24.     **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that the Term Sheet and  any paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Second Interim Order.

25.     **First Interim Order Superseded; Final Hearing**.  The First Interim Order is superseded by this Second Interim Order.  The Bankruptcy Court shall hold a hearing to determine the final approval of the DIP Financing (including proposed DIP loan documents), the Approved Budget and the relief requested by the Debtor in the Motion at the Final Hearing.

26.     **Retention of Jurisdiction**.  The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Interim Order.

/ / /

/ / /

/ / /

/ / /

16

1    **IT IS SO ORDERED.**

2    Submitted by:

3    SCHWARTZ LAW, PLLC

4    By: /s/ *Samuel A. Schwartz*

5    Samuel A. Schwartz, Esq.
     601 East Bridger Avenue

6    Las Vegas, NV 89101

7    *Proposed Attorneys for the Debtor*

8    **Approved**/~~Disapproved~~:                    **Approved**/~~Disapproved~~:

9    TRACY HOPE DAVIS
10   UNITED STATES TRUSTEE              PACHULSKI STANG ZIEHL & JONES
                                        LLP
11   By:  /s/ Jason A. Day
     Jared A. Day, Esq.               By:  /s/ Jason Rosell
12   United States Department of Justice   John Fiero, Esq.
     Attorney for the United States Trustee   Jason Rosell, Esq.
13                                      Attorneys for the Official Committee
                                        of Unsecured Creditors
14   **Approved**/~~Disapproved~~:

15   GARMAN TURNER GORDON             **Approved**/~~Disapproved~~:

16   By:  /s/ Mark M. Weisenmiller       LEWIS ROCA ROTHGERBER CHRISTIE
     Gregory Garman, Esq.              LLP
17   William Noall, Esq.
     Mark M. Weisenmiller, Esq.        By:  /s/ Ogonna Brown
18   Attorneys for Empery Tax Efficient, L.P.   Ogonna Brown, Esq.
                                        Attorneys for Prestige Capital Finance, LLC
19
     ~~Approved~~/**Disapproved**:
20
     JEFFREY D. STERNKLAR LLC
21
     By:  /s/ Jeffrey D. Sternklar
22   Jeffrey D. Sternklar, Esq.
     Attorneys for White Winston Select
23   Asset Funds, LLC

24

25

26

27

28

17

1

## **LR 9021 CERTIFICATION**

2          In accordance with LR 9021, counsel submitting this document certifies that the order

3   accurately reflects the court's ruling and that:

4          ☐        The court has waived the requirement set forth in LR 9021(b)(1).

5
          ☐        No party appeared at the hearing or filed an objection to the motion.
6

7          ☒        I have delivered a copy of this proposed order to all counsel and any unrepresented
           parties who appeared at the hearing, except those as to whom review was waived on the
8          record at the hearing, and each has approved or disapproved the order, or failed to
           respond, as indicated above:
9

10
           ☐        I certify that this is a case under Chapter 7 or 13, that I have served a copy of this
11         order with the motion pursuant to LR 9014(g), and that no party has objected to the form
           or content of this order.
12                                                      ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

# EXHIBIT 3

1

2

3

4

5

6

7

8
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
9
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
10
601 East Bridger Avenue
Las Vegas, NV 89101
11
Telephone: 702.385.5544
Facsimile: 702.442.9887
12
*Proposed Attorneys for the Debtor*

13

14
**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

15
In re:                                    )   Case No.: 22-14422-nmc
                                          )
16
MUSCLEPHARM CORPORATION,                  )   Chapter 11
                                          )
17                                        )
                                          )
18
            Debtor.                       )   Interim Hearing Date: January 13, 2023
                                          )   Interim Hearing Time: 9:30 a.m.
19
_____

20
        **SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION**
21
**FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362,**
**363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING**
22
**THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING**
**SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III)**
23
**DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE**
**AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**
24
        The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor and debtor in
25
possession herein ("**MusclePharm**" or the "**Debtor**") before this court ("**Court**") seeks entry of
26

27
_____
[1]        Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the
28
Motion.

1

interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001 to, among other matters, authorize the Debtor to obtain emergency credit and incur debt on an interim basis. The Debtor negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court on January 6, 2023 [ECF No. 65] between the Debtor, as borrower, and the DIP Secured Parties and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP Agent, Empery Tax Efficient, L.P.  ("**Empery**"), and collectively with the DIP Secured Parties and DIP Factoring Parties, "**Lender**"), as lender, in lieu of White Winston Select Asset Funds, LLC, ("**WW**"), the originally proposed lender in the Motion, with Lender proposing the requested financing on the terms set forth in the First Interim Term Sheet. Sufficient notice of the Motion and a first interim hearing (the "**First Interim Hearing**") was provided under the circumstances by the Debtor; and further, the Court continued the First Interim Hearing from January 5, 2023, at 9:30 a.m. to January 6, 2023, at 9:30 a.m. to provide more time for all to review the First Interim Term Sheet, and the Court thereafter entered its first interim order (the "**First Interim Order**") on January 9, 2023 [ECF No. 74], and continued the Motion for a second interim hearing (the "**Second Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be held on January 13, 2023, at 9:30 a.m.  On January 12, 2023, Debtor substituted a revision to the First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**").  After considering the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, including all formal and informal objections to the Motion, and the argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and others at the Second Interim Hearing; the Court has found and determined that, subject to the terms of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion (as amended and supplemented by the Term Sheet) on an interim basis, to the extent provided below,

---

[2]    Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A.    **Debtor's Chapter 11 Case**.  On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**").  The Debtor is continuing to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B.    **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001.  Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Notice**.  Notice of the First Interim Hearing and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3, 2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S. Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii)  the Lender and counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security interests in the assets of the Debtor, and (v)  all other parties entitled to notice under Bankruptcy Rule 2002 (the "**Noticed Parties**").  Notice of the Second Interim Hearing was provided by the Court on the record in open court at the First Initial Hearing and also on the written record [See, ECF No. 66].  Under all of the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearings has complied with Bankruptcy

---

[3]    To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

3

Rule 4001(b), (c) and (d) and the Local Rules.  <u>The final hearing ("**Final Hearing**") will be held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023, at 10:30 a.m.</u>

D. **Debtor's Need for DIP Financing**. ~~The Debtor presented evidence that it~~<u>Based upon pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor</u> does not have sufficient available sources of working capital and financing to carry on the operation of its business and affairs without the DIP Financing and authorized use of cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs. The Debtor's ability to maintain business relationships with its suppliers and customers, pay for human resources, purchase materials and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the going concern value of the Debtor's business and ultimately maximizing the value of its estate for the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing is in the best interests of the Debtor, its estate, and its creditors.

E. **Budget for Necessary DIP Financing**.  Attached hereto as **Exhibit A** is a revised 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing January 9, 2023 (the "**Budget**"). The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by the Lender and the Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, the "**Approved Budget**"). The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts, and the Budget accounts for operational disbursements, fees, costs and other expenses that are anticipated to be payable,

4

incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget. Funding of the Budget will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

F.    **Financing under Section 364**.  ~~The Debtor submitted evidence that it~~Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to obtain sufficient financing from a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code; or (ii) secured credit under Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in the Term Sheet without granting a super-priority priming lien. ~~White Winston Select Asset Funds, LLC ("WW") asserts otherwise, and avers that the Motion with respect to Empery must be denied pursuant to 11 U.S.C. § 364(d). Nevertheless, WW represented in open court that it does not oppose granting relief as set forth below on an interim basis only, and all matters relating to whether the Motion may be approved on a final basis, including pursuant to Section 364(d) of the Bankruptcy Code, are preserved for determination at the Final Hearing.~~

G.    **Good Faith Lender and Lending and Good Cause**.  The Lender (who together with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders) agreed to provide postpetition financing secured by (i) valid, binding, enforceable and non-avoidable consensual senior postpetition security interests and liens (collectively, the "**DIP Liens**") with the same priority as the Prepetition Secured Parties' (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and senior to all other liens existing on and after the Petition Date with the exception of Prestige's prepetition liens and security interests in its prepetition collateral as provided in the prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the Debtor and the Prepetition Secured Parties, (ii)

5

superpriority claims under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), and (iii) the other protections set forth in the Motion and the Term Sheet, in each case limited only by this Second Interim Order.  As of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the Term Sheet to the extent provided in this Second Interim Order and the Approved Budget.  After considering all of its alternatives, including alternative sources of debtor in possession financing, the Debtor has concluded, in an exercise of its sound business judgment, and WW disputes, that the DIP Financing provided by Lender represents the best proposed financing available to the Debtor under Debtor's circumstances.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate will be immediately and irreparably harmed.  Accordingly, good cause has been shown that entry of this Second Interim Order is in the best interest of the Debtor's estate, employees, and creditors and other parties in interest and that the implementation and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral as further provided below) in accordance with this Second Interim Order and the Term Sheet is in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties.  Based on the  pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended pursuant to this Second Interim Order to the Debtor by the Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code.

H.    **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget to continue to operate its business, pay wages, maintain business relationships with members,

1    suppliers and customers, make capital expenditures, generally conduct its business affairs so as to

2    avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor

3    adequate time to effectively reorganize.

4       I. **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers

5    filed with and evidence submitted to this Court in connection with the Motion, and the record made

6    at the Interim Hearings, and WW having withdrawn its objection on an interim basis only, the Court

7    has determined to grant the Motion on an interim basis and approve the Debtor's entry into and

8    performance under the DIP Financing ~~to obtain the Advance (as defined below).~~<u>under the Term</u>

9    <u>Sheet,</u> as further provided herein, thereby authorizing postpetition financing of up to $750,000

10   under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP

11   Factoring Facility ~~(as~~<u>to factor Accounts (as those terms are</u> defined in the Term Sheet), with up to

12   $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring ~~purchase orders~~

13   ~~(provided~~<u>Purchase Orders (as</u> that ~~when such factored purchase orders convert to receivables~~<u>term</u>

14   <u>is defined in</u> the ~~DIP Factoring line shall not exceed $10,000,000)~~<u>Term Sheet) during the Interim</u>

15   <u>Period</u> and related relief, as provided in the Term Sheet and this Second Interim Order.

16      Based on the foregoing, and upon the record made before this Court at the Interim Hearings,

17   and good and sufficient cause appearing therefore,

18     **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

19      1. **Interim Approval**.  The DIP Financing pursuant to the DIP Facilities (as that term

20   is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to obtain

21   ~~the Advance in the amount~~<u>postpetition financing</u> of up to $750,000 ~~on an interim basis,~~<u>under the</u>

22   <u>DIP Note Facility (as defined in the Term Sheet),</u> and ~~further~~<u>$10,000,000 under the DIP Factoring</u>

23   <u>Facility (as defined in the Term Sheet), with</u> up to $2,000,000 of the $10,000,000 ~~Advance~~<u>DIP</u>

24   <u>Factoring Facility</u> available for factoring purchase orders (provided that when such factored

25   purchase orders convert to receivables the ~~Advance~~<u>DIP Factoring Facility</u> shall not exceed

26   $10,000,000), on an interim basis as provided in the Term Sheet and Second Interim Order.

27      2. **Interim Approval of ~~Advance~~<u>Term Sheet</u>; Relief Reserved to Final Hearing**.

28   The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and

herein is approved for ~~each Advance to the extent made~~all postpetition lending by Lender to Debtor made prior to entry of the Final Order. The Debtor is expressly authorized, empowered, and directed to perform all of its direct and indirect obligations under the Term Sheet and this Second Interim Order ~~with respect to the Advance only,~~ including the execution of~~-~~ such additional documents, instruments and agreements reasonably required or requested by the Lender to implement the terms or effectuate the purposes of the Term Sheet ~~only as authorized in~~and this Second Interim Order, ~~including, without limitation,~~except as limited hereby (collectively, the "**DIP Obligations**").   In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is modified to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all reasonable fees (when applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Term Sheet and this Interim Order ~~with respect to the Advance.~~.  In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet).  Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing ~~(without limiting any other relief the Court may determine at the Final Hearing):~~:

    a)  Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

    b)  Roll-up;

    c)  Releases;

    d)  The Prepetition Secured Parties' allowed claim;

    e)  The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

    f)   The good faith finding for DIP Financing other than during the Interim Period; and

    g)   The ultimate DIP Documents (as defined in the Term Sheet).

    3.    **Authorization to Borrow/Use of Cash Collateral**.  Pursuant to this Second Interim Order, the Debtor is immediately authorized to (a) borrow and factor ~~accounts receivable~~Accounts and ~~purchase orders~~Purchase Orders from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of ~~purchase orders (collectively, the **"Advance"**).~~Purchase Orders during the Interim Period, all subject to and in accordance with the terms of this Second Interim Order and the Term Sheet and (b) use the proceeds of the ~~Advance~~DIP Financing  and the Collateral (including the Cash Collateral) in accordance with the terms of the Term Sheet, this Second Interim Order and the Budget (and any subsequent Approved Budget) consistent with the terms of this Second Interim Order.

    4.    **Cash Collateral**.  The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender, the Prepetition Secured Parties and Prestige (the "**Cash Collateral**").  The Debtor may use the Cash Collateral to pay postpetition ordinary course of business expenses to the extent allowed and permitted to be paid herein, by  other Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.  The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.  All of Lender's Cash Collateral shall be subject to the first priority senior DIP Liens on the DIP Collateral, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties and Prestige shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5.      **Maturity and Termination.**  Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier of (x) the Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (y) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, and the U.S. Trustee, unless any such event is waived, cured or extended with the written consent of the Lender.

6.      **Interest on DIP Financing**.  The rate of interest to be charged on advances under the DIP Financing shall be: (i) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Note Facility; and (ii) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Factoring Facility.

7.      **Payment of DIP Fees and Expenses**.  The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided  in the Term Sheet.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8.      **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim under Section 364(c)(1) (the "**Superpriority Claim**") for the DIP Obligations against the Debtor, with priority in payment

over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor.  Except as set forth in this Second Interim Order and Final Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Case.

9.    **DIP Liens**.  As security for all ~~Advances~~DIP Obligations  pursuant to this Second Interim Order, the Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise), the DIP Liens on all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Note Parties, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor and/or jointly-owned subsidiaries (if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "**DIP Collateral**").  The DIP Liens will not be subject to challenge.  Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the

11

Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

10.    **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender and the Prepetition Secured Parties pursuant to this Second Interim Order shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige that are senior to those prepetition liens of Lender and the Prepetition Secured Parties pursuant to the Prestige Intercreditor Agreement. To the extent this Second Interim Order grants any other rights postpetition to Lender (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11.    **Carve Out**. The DIP Liens and Superpriority Claim granted under this Second Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) all reasonable and documented fees and expenses up to $250,000 incurred by professionals employed by Debtor; and (ii) all reasonable and documented fees and expenses of up to $250,000 for the Committee. The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals and $25,000 for the Committee.

12.    **Restrictions on Granting Postpetition Liens**.- Except as otherwise provided in this Second Interim Order and the Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other DIP Obligations are outstanding without the prior written consent of the Lender.- Except as expressly permitted by the Second Interim Order and the Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral senior or *pari passu* with the DIP Liens to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without either (i) first obtaining the prior written consent of the Lender or if the grant of such liens or security interests results in the satisfaction of the Advances having been(ii) irrevocably paidsatisfying the DIP Obligations in full in immediately available

funds ~~in full.~~ as a condition to the granting of such liens.  Unless all ~~Advances~~DIP Obligations shall have indefeasibly been paid in full in immediately available funds (or as otherwise provided in this Second Interim Order and the Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of this Second Interim Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided ~~inthe~~in the Term Sheet and the Interim Orders for so long as any portion of the ~~Advances~~DIP Financing (or refinancing thereof) ~~are~~is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the Term Sheet and this Second Interim Order ~~with respect to the Advances~~ without further order of this Court.

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board

member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility, ~~as provided for under applicable law,~~ with respect to the Debtor for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all stakeholders, is approved.

16.    **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance the DIP Financing to the Debtor, negotiating and entering into the Term Sheet, and this Second Interim Order, administering the DIP Financing, consenting to the Approved Budget, or taking any other actions permitted by the Interim Orders or the Term Sheet, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of the Debtor.

17.    **Binding Effect**.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate).  To the extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of

this Second Interim Order.

18.    **Survival**.    The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in full in immediately available funds, the ~~Advances~~DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code, or otherwise); (b) converting the Chapter 11 Case to a chapter 7 case; or (c) dismissing the Chapter 11 Case.    The terms and provisions of this Second Interim Order, as well as the ~~Advances~~DIP Obligations and the DIP Liens granted pursuant to this Second Interim Order and the Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order.  The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the Term Sheet, and to the maximum extent permitted by law, until all of the ~~Advances~~DIP Obligations are indefeasibly paid in full and discharged.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the ~~Advances~~DIP Obligations from those set forth in the Term Sheet without the written consent of the Lender.  Unless all ~~Advances~~DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing the Chapter 11 Case.

19.    **Modifications of Term Sheet**.    The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the Term Sheet and this Second Interim Order, any non-material modifications of the Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to counsel for the Committee~~, counsel to WW~~ and the U.S. Trustee.

20.    **Protection Under Section 364(e)**.    If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal,

modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to ~~this Second Interim Order~~the Term Sheet with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Second Interim Order, and the Term Sheet ~~on an interim basis~~ with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21.    **Choice of Law; Jurisdiction; Standing**.  The DIP Financing and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, (and the rights and obligations of the parties thereto) shall be governed by, and construed in accordance with, the laws of the State of Nevada, without regard to the conflict of law principles thereof. Each party to the DIP Documents will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy Court for so long as the Chapter 11 Case remains open and, thereafter, the state and federal courts set forth in the ultimate loan documents executed between and among the parties.  The Lender shall ~~and WW each~~ have standing, as a party-in-interest under Section 1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Case.

22.    **Findings of Fact and Conclusions of Law**.  This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.  Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23.    **Second Interim Order Effective**.  This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the

16

1  Lender, that the Term Sheet and any paperwork issued pursuant to and in conformance therewith,

2  are authorized and approved in their entirety with such amendments thereto as may be made by the

3  parties in accordance with this Second Interim Order.

4       25.    **First Interim Order Superseded; Final Hearing**.  The First Interim Order is

5  superseded by this Second Interim Order.  The Bankruptcy Court shall hold a hearing to determine

6  the final approval of the DIP Financing (including proposed DIP loan documents), the Approved

7  Budget and the relief requested by the Debtor in the Motion at the Final Hearing.

8       26.    **Retention of Jurisdiction**.  The Court shall retain jurisdiction to hear and determine

9  all matters arising from the implementation of this Second Interim Order.

10      **IT IS SO ORDERED.**

11  Submitted by:

12  SCHWARTZ LAW, PLLC

13  By: /s/ *Samuel A. Schwartz*
14  Samuel A. Schwartz, Esq.
    601 East Bridger Avenue
15  Las Vegas, NV 89101

16  *Proposed Attorneys for the Debtor*

17  Approved/Disapproved:                          Approved/Disapproved:

18  TRACY HOPE DAVIS
19  UNITED STATES TRUSTEE                          PACHULSKI STANG ZIEHL & JONES
                                                   LLP
20  By:  /s/_____
    Jared A. Day, Esq.                             By:  /s/_____
21  United States Department of Justice            John Fiero, Esq.
    Attorney for the United States Trustee         Jason Rosell, Esq.
22                                                 Attorneys for the Official Committee
                                                   of Unsecured Creditors
23  Approved/Disapproved:

24  GARMAN TURNER GORDON                           Approved/Disapproved:

25  By: /s/_____                  LEWIS ROCA ROTHGERBER CHRISTIE
    Gregory Garman, Esq.                           LLP
26  William Noall, Esq.
    Mark M. Weisenmiller, Esq.                     By:  /s/_____
27  Attorneys for Empery Tax Efficient, L.P.       Ogonna Brown, Esq.
                                                   Attorneys for Prestige Capital Finance, LLC
28

                                    17

1

## **LR 9021 CERTIFICATION**

2          In accordance with LR 9021, counsel submitting this document certifies that the order

3    accurately reflects the court's ruling and that:

4          ☐          The court has waived the requirement set forth in LR 9021(b)(1).

5
          ☐          No party appeared at the hearing or filed an objection to the motion.
6

7          ☒          I have delivered a copy of this proposed order to all counsel and any unrepresented
          parties who appeared at the hearing, except those as to whom review was waived on the
8          record at the hearing, and each has approved or disapproved the order, or failed to
          respond, as indicated above:
9

10
          ☐          I certify that this is a case under Chapter 7 or 13, that I have served a copy of this
11          order with the motion pursuant to LR 9014(g), and that no party has objected to the form
          or content of this order.
12                                                    ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28