James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   jshea@shea.law
              blarsen@shea.law
              kwyant@shea.law

-and-

**JEFFREY D. STERNKLAR LLC**
Jeffrey D. Sternklar, Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 549561
101 Federal Street, Suite 1900
Boston, Massachusetts 02110
Telephone:   (617) 207-7800
Email:  jeffrey@sternklarlaw.com

*Attorneys for Creditor White Winston*
*Select Asset Funds, LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>MUSCLEPHARM CORPORATION<br><br>Debtor. | Chapter 11<br><br>Case No.: 22-14422-nmc |

**WHITE WINSTON SELECT ASSET FUNDS, LLC OBJECTION TO FORM OF SECOND INTERIM DIP FINANCING ORDER**

    White Winston Select Asset Funds, LLC ("***WW***"), by and through its undersigned attorneys,

submits this Response to the Motion[1] and further state as follows:

---

[1] Unless otherwise indicated, capitalized terms have the meanings ascribed to them in the Motion.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

WW objects to the form of the proposed Second Interim DIP Financing Order because Empery and Debtor have included findings that were not stated by the Court.  Specifically, Empery and Debtor have included findings which seemingly hope to preclude certain issues from being addressed at the Final Hearing regarding DIP financing, including, but not limited to, a finding that no other credit or funding is available to Debtor pursuant to 11 U.S.C. § 364(d)(1).

Empery's financing contemplates financing secured by a lien of equal priority to prepetition liens and would be "on property of the estate that is subject to a lien."  Absent consent, 11 U.S.C. §364(d)(1) provides that this Court may authorize the Debtor to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien (such as the proposed Empery financing here) ***only if*** the Debtor "is unable to obtain such credit otherwise."  11 U.S.C. §364(d)(1).  This means that the Debtor "must show that it cannot obtain this credit under less onerous terms."  In re Olde Prairie Block Owner, LLC, No. 10 B 22668, 2011 Bankr. LEXIS 936, at *22 (Bankr. N.D. Ill. Mar. 11, 2011).  At the Final Hearing, WW will be prepared to present evidence that the Debtor cannot make this showing.

However, by way of the proposed Second Interim Order, Empery urges the Court to resolve this issue prior to the Final Hearing.  Indeed, Empery has included a finding in paragraph "F" of the proposed Second Interim DIP Financing Order as follows:

> **F.  Financing under Section 364**.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to obtain sufficient financing from a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code; or (ii) secured credit under Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in and the funds advanced pursuant to the Term Sheet without granting a super-priority priming lien.

The Court did not directly or by fair implication make any finding remotely resembling proposed paragraph F and the issue of whether Debtor is unable to obtain such credit otherwise pursuant to 11 U.S.C. § 364(d)(1) is unresolved.  As is clear from the redlined form of order attached as Exhibit C to the Motion, Empery rejected WW's proposed comments to make clear that this finding was not made.  Later, Empery rejected WW's proposal to leave the finding in the order, but include a "carve-

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

out" to make clear issues arising under 11 U.S.C. §364(d)(1) are not determined by the proposed Second Interim DIP Financing Order, and hence are not preclusive on WW on that issue. Empery must not be allowed to enter an order resolving issues that remain outstanding.

WW objects to entry of any form of order that either (i) includes paragraph F, or alternatively, (ii) does not make clear that the finding is not preclusive on WW at the Final Hearing. Empery claims WW's proposed edits are improper because (i) they deprive Empery of protections the Court awarded them (presumably, Empery is referring to the 364(d)(1) argument), and (ii) WW's rights are protected fully in any event in paragraph 2 of the Order. Both assertions are false.

First, as stated above, the Court did not make this finding. WW continuously attempted to ensure that Empery was not granted any more rights than ordered by the Court and to preserve the issue of other financing pursuant to 11 U.S.C. § 364(d)(1) until the final hearing on DIP financing. Indeed, in the *Interim Objection of Creditor White Winston Select Asset Fund, LLC to Approval of Debtor in Possession financing by Empery Tax Efficient, L.P.*" [ECF 88] ("***Interim Objection***") WW made clear it would not object "to substantially the same form of order entered by the Court after the January 6 hearing, that provides any Empery financing . . . (ii) is secured by a co-priority lien in prepetition assets, and (iii) authorizes Empery to purchase postpetition accounts and make advances to factor them."[2] WW further made clear that "among other things WW objects" to Final Allowance on a variety of grounds, including, that "the uncontroverted evidence mandated denial of the [Empery financing] under 11 U.S.C. §364, particularly section 364(d)(1)."[3]

At the January 13, 2023 hearing (the "***Second Interim Hearing***") WW reiterated that it would not object to a "clean" DIP "which gives [Empery] a co-priority lien on the prepetition assets and the right to purchase post-petition receivables an no other goodies. . . ."[4] A "clean DIP" meant nothing more would be granted to Empery other than "the co-priority lien on the prepetition assets, the right to purchase receivables . . . period."[5] Empery confirmed that "we have a consensual hearing

---

[2] *See* Interim Objection, [ECF No. 88], ¶ 2.

[3] *Id.* at ¶ 3(d).

[4] *See* Transcript of Second Interim Hearing, pp. 8-11, attached hereto as **<u>Exhibit A</u>**.

[5] *Id.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

today . . . and that the priming lien was "on a consensual basis."[6]  The only additional items Empery requested in the Second Interim Order were (i) adequate protection rollover liens,[7] (ii) a good-faith finding to the extent that [Empery] advance money on an interim basis."[8]  Empery assured the Court that it would "work with the debtor on a reasonable interim order as excluding with specificity the things that we just identified.  And I think this is going to be a pretty vanilla and pretty straightforward."[9]  Empery further sought to allay concerns by noting "rest assured, Empery is not seeking to overreach on an interim basis with those things that [Empery agrees] would come at a final hearing."[10]  Nowhere did Empery push back or object, either directly or by implication, to WW's consent to a "clean DIP" on an interim basis.[11]  As such, the proposed Second Interim DIP Financing Order must reflect Empery's statements and the Court's ruling, which did not including any finding regarding 11 U.S.C. §364(d)(1) such as the proposed by Empery and Debtor in the proposed Second Interim DIP Financing Order at paragraph F that is the subject of this Objection.

Second, Empery's assertion that paragraph 2[12] of the proposed Second Interim DIP Financing Order fully protects WW's rights at the final hearing is false as well.  Nothing in the proposed paragraph 2 expressly preserves whether the Court may permit the Empery financing at all at the Final Hearing under section 364(d)(1).  Nothing preserves WW's right to argue, as a threshold matter, that **no** financing from Empery on the terms Empery proposes may be allowed, regardless of the outcome of disputes on the issues set forth in paragraph 2, because **all** financing on these terms is prohibited under 11 U.S.C. §364(d)(1). WW attempted to ensure such a protection was included with the proposed Second Interim DIP Financing Order, but Empery and Debtor rejected such language.

---

[6] *Id.* at p. 23.

[7] *Id.* at p. 25.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] After much discussion, the Court allowed further interim financing.  There was much debate about the need for a good faith finding to Empery under 11 U.S.C. §364(e), and the Court found either the good faith finding was consensual and alternatively overruled the objections to the good faith finding.  Id. at 38.

[12] *See* proposed Second Interim DIP Financing Order, pp. 7-8.

Accordingly, the finding in paragraph "F" must be deleted and replaced with language consistent with what the Court actually found at the Second Interim Hearing. Attached as ***Exhibit B*** is a competing form of order (and attached as ***Exhibit C*** is a redline from the latest form of order Empery proposed) that deletes entirely the finding in paragraph F, and replaces it with the following:

> **F.    <u>Financing under Section 364</u>**.  The grant of a priming lien and a superpriority administrative expense to Empery solely on an interim basis, and solely with respect to the funds Empery advances on an interim basis under this Order, is consensual.  Accordingly, the Court makes no findings under 11 U.S.C. §364(c) and (d).  All issues relating to whether the Court may authorize additional financing by Empery on a final basis under 11 U.S.C. §364 (c) and (d) are reserved for any necessary determination at the Final Hearing.

Alternatively, if the Court decides to allow paragraph F to be entered as proposed by Debtor and Empery, then, to avoid even the risk that such finding will be preclusive against WW on theories such as *re judicata* and collateral estoppel, the Second Interim Order should contain a new paragraph 27 which reads as follows:

> **27.    <u>No Preclusive Effect on Final Approval</u>.**  Nothing in this Order is intended to or shall be construed as a determination of the extent, priority and validity of Empery's liens and security interests except with respect to the funds advanced pursuant to this Order, and nothing in this Order shall preclude or estop any party from challenging the extent, priority or validity of Empery's liens and security interests in connection with the Final Hearing and whether the Court may authorize further financing from Empery (other than the interim financing authorized by this Second Interim Order) pursuant to Section 364(d)(1) of the Bankruptcy Code

This alternative language was also proposed to and rejected in part by Empery.

///
///
///
///
///
///
///
///
///
///

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1    Based on the foregoing, WW respectfully requests that the Court decline to enter the Second

2    Interim Order as proposed by Empery and instead enter either the form of the Second Interim Order

3    attached hereto as Exhibit B or alternatively include a new paragraph 27 in the Second Interim Order

4    as set forth above, either of which would more accurately reflect this Court's ruling than the proposed

5    Second Interim DIP Financing Order that has been submitted to the Court by Empery and Debtor.

6    Dated this 22nd day of January, 2023.

7                                                    SHEA LARSEN

8                                                    /s/ Bart K. Larsen, Esq.
                                                     James Patrick Shea, Esq.
9                                                    Nevada Bar No. 405
                                                     Bart K. Larsen, Esq.
10                                                   Nevada Bar No. 8538
                                                     Kyle M. Wyant, Esq.
11                                                   Nevada Bar No. 14652
                                                     1731 Village Center Circle, Suite 150
12                                                   Las Vegas, Nevada 89134
                                                     Telephone: (702) 471-7432
13                                                   Fax: (702) 926-9683
                                                     Email: jshea@shea.law
14                                                            blarsen@shea.law
                                                            kwyant@shea.law
15
                                                     -and-
16
                                                     JEFFREY D. STERNKLAR LLC
17                                                   Jeffrey D. Sternklar, Esq. (*Admitted Pro*
                                                     *Hac Vice*)
18                                                   Massachusetts Bar No. 549561
                                                     101 Federal Street, Suite 1900
19                                                   Boston, Massachusetts 02110
                                                     Telephone:    (617) 207-7800
20                                                   Email:  jeffrey@sternklarlaw.com

21                                                   *Attorneys for Creditor White Winston*
                                                     *Select Asset Funds, LLC*
22

23

24

25

26

27

28

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2023, I electronically transmitted the foregoing **WHITE WINSTON SELECT ASSET FUNDS, LLC OBJECTION TO FORM OF SECOND INTERIM DIP FINANCING ORDER** to the Office of the Clerk of the Bankruptcy Court, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

```
                                  .
IN RE:                            .  Case No. 22-14422-nmc
                                  .  Chapter 11
MUSCLEPHARM CORPORATION,          .
                                  .  300 S. Las Vegas Blvd
                                  .  Las Vegas, NV 89101
                Debtor.           .
                                  .  Friday, January 13, 2023
. . . . . . . . . . . . . . . . . .  9:36 a.m.
```

TRANSCRIPT OF MOTION REGARDING CHAPTER 11 FIRST DAY MOTIONS,
EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS; (I)
AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (II)
GRANTING PRIMING LIENS AND ADMINISTRATIVE EXPENSE CLAIMS,
(III), AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (IV)
MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF
WITH PROPOSED ORDER FILED BY SAMUEL A. SCHWARTZ ON BEHALF OF
MUSCLEPHARM CORPORATION [33]
**BEFORE THE HONORABLE NATALIE M. COX**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:            Schwartz Law, PLLC
                           By:  SAMUEL A. SCHWARTZ, ESQ.
                                BRYAN A. LINDSEY, ESQ.
                           601 East Bridger Avenue
                           Las Vegas, NV 89101
                           (702) 802-2207

APPEARANCES CONTINUED.

Audio Operator:            Benji Rawling, Remote ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
ZOOM APPEARANCES (Continued):

For the Official            Pachulski Stang Ziehl & Jones
Committee of Unsecured      By:  JOHN FIERO, ESQ.
Creditors:                       JASON ROSELL, ESQ.
                           One Sansome Street, Suite 3430
                           San Francisco, CA 94104
                           (415) 263-7000


For Ryan Drexler:          Carlyon Cica Chtd.
                           By:  DAWN CICA, ESQ.
                           265 E. Warm Springs, Suite 107
                           Las Vegas, NV  89119
                           (702) 685-4444


                           Steinhilber Swanson LLP
                           By:  MICHAEL RICHMAN, ESQ.
                           122 W. Washington Avenue, #850
                           Madison, WI 58703
                           (608) 406-6508


For Empery Tax             Garman Turner Gordon
Efficient, LP:             By:  GREG GARMAN, ESQ.
                                MARK WEISENMILLER, ESQ.
                                WILLIAM M. NOALL, ESQ.
                           7251 Amigo Street, Suite 210
                           Las Vegas, NV 89119
                           (725) 777-3000


For Prestige Capital       Lewis Roca Rothberger Christie
Corporation:               By:  OGONNA BROWN, ESQ.
                           3993 Howard Hughes Parkway
                           Suite 600
                           Las Vegas, NV 89169
                           (702) 474-2622


                           Mandelbaum Barrett, Attorneys at Law
                           By:  VINCENT J. ROLDAN, ESQ.
                           3 Becker Farm Road, Suite 105
                           Roseland, NJ 07068
                           (973) 974-9815


For the U.S. Trustee:      Office of the United States Trustee
                           By:  JARED DAY, ESQ.
                           300 Booth Street
                           Room 3009
                           Reno, NV 89509
                           (775) 784-5335
```

For White Winston
Select Asset Funds,
LLC

BART K. LARSEN, ESQ.
1731 Village Ctr. Cr., Suite 150
Las Vegas, NV  89134
(702) 471-7432

Jeffrey D. Sternklar, LLC
By:  JEFFREY D. STERNKLAR, ESQ.
101 Federal Street, Suite 1900
Boston, MA 02210
(617) 396-4515

1          (Proceedings commence at 9:36 a.m.)

2          THE CLERK:  On this morning's calendar is MusclePharm

3   Corporation case number 22-14422.

4          THE COURT:  All right.  Good morning.  I'm going to

5   start with appearances.  I'm going to go through those that are

6   showing up right now in video, and then I'll just ask for other

7   appearances, if there are any.  I'll start.

8          Mr. Fiero, do you want to make an appearance?

9          MR. FIERO:  Good morning, Your Honor.  John Fiero of

10  Pachulski Stang Ziehl & Jones appearing for the Official

11  Committee of Unsecured Creditors.  With me here today, Your

12  Honor, is Jason Rosell of my office.  Our pro hoc applications

13  are on file, Your Honor, and we trust that they're in order and

14  it'll be okay for us to speak this morning.

15         THE COURT:  You may speak this morning.  I haven't --

16  I didn't look at my orders this morning, so I haven't signed

17  anything yet, but that's fine.  You can speak today.

18         MR. FIERO:  Thank you.

19         THE COURT:  Thank you.  All right, Mr. Day.

20         MR. DAY:  Good morning, Your Honor.  Jared Day,

21  Department of Justice appearing for the U.S. Trustee's Office.

22         THE COURT:  Mr. Roldan.

23         MR. ROLDAN:  Good morning, Your Honor.  Vince Roldan

24  at Mandelbaum Barrett.  Counsel to Prestige -- main counsel.

25  My local counsel here, Ogonna, is on the line as well.  With

1    respect to my pro hoc application, my office is still waiting

2    for good standing certificates.  I can represent on the record

3    that I am in good standing and at the bars of the Court of New

4    Jersey and New York, State and Federal.  And I request

5    admission pro hoc just for today, at the very least, until I

6    can file a formal pro hoc application.

7          THE COURT:  Yes, that's fine.

8          MS. BROWN:  Good morning, Your Honor.

9          THE COURT:  All right.  Ms. Brown, since you were

10    mentioned, why don't you go ahead and make your appearance?

11          MS. BROWN:  Good morning, Your Honor.  Ogonna Brown

12    from the law firm of Lewis Roca, Bar Number 7589, local counsel

13    for Prestige Capital Finance, LLC.

14          THE COURT:  Thank you.  Ms. Cica.

15          MS. CICA:  Good morning, Your Honor.  Dawn Cica on

16    behalf of Ryan Drexler.  And I also have Mr. Michael Richman on

17    the phone.  Who is Mr. Drexler's New York counsel, and his pro

18    hoc papers will be filed shortly.

19          THE COURT:  All right.  Thank you.

20          All right, Mr. Garman.

21          MR. GARMAN:  Good morning, Your Honor.  Greg Garman

22    for Empery Tax Efficient LP.  The Empery team is here.  In the

23    room with me is Mr. Noall and Mr. Weisenmiller.  And then on

24    the phone or video is Mr. Silver, our declarant, and also

25    Mr. Ryan Lane, who's a principal with Empery.

1          THE COURT:  Thank you.  All right, Mr. Schwartz.

2          MR. SCHWARTZ:  Good morning, Your Honor.  Sam

3   Schwartz and Bryan Lindsay.  On behalf of the debtor

4   MusclePharm.  I believe also on the line is our director,

5   Mr. Paul Karr.  I understand that Mr. Eric Hillman, our inbound

6   CEO, is in the waiting room, I believe.  Also on the line, I

7   believe, are Mr. Gasbarra and Mr. Williams from Portage Point

8   Partners.  And then I also understand the debtor's proposed

9   independent director, Mr. Nicholas Reuben, is also on the line.

10  He may too be in the waiting room, Your Honor.  And I believe

11  that is everyone with respect to the debtor today.

12         THE COURT:  There's an empty chair.  I'm not sure if

13  that's counsel or who that is, and so I'll let them speak up

14  later if they want to make an appearance.  Mr. -- let's see.  I

15  lost my -- my screens, moved here.  Hold on one second, please.

16         Mr. Larsen, there you are.  Do you want to make your

17  appearance?

18         MR. LARSEN:  Yes, Your Honor.  Bart Larsen, local

19  counsel for White Winston Select Asset Company.  And I believe

20  our lead counsel, Jeffrey Sternklar is on the line this morning

21  as well.

22         MR. STERNKLAR:  Yes, Your Honor.  I apologize I could

23  not be on Zoom, but this is Jeffrey Sternklar for White

24  Winston.

25         THE COURT:  Thank you.  Let's see.  I don't think

1   I've missed anybody that's actually showing up on video.  Is

2   there anyone else that wants to make an appearance that I've

3   not already called?

4           All right.  I don't hear or see anybody making an

5   effort to jump in, so good morning to everyone.  I have

6   recently looked at the docket and I've received -- I think the

7   last thing that I had seen on here was the supplement that the

8   debtor had filed.

9           Mr. Schwartz, do you want to just start with a brief

10  status of what's going on at this point?

11          MR. SCHWARTZ:  Sure.  Thank you, Your Honor.  We made

12  good use of the week between last week and this week.  As you

13  may have noted from our amended supplement, there's been

14  several term sheets that have gone back and forth between the

15  debtor, Empery, and White Winston.  I'm happy to inform the

16  Court those negotiations, in connection with input from the

17  Committee, have resulted in what I think is a markedly improved

18  proposal in front of you for interim financing today.  That I

19  think is generally laid out in the summary.

20          I'm prepared to run through what I think are the

21  improvements, what really hasn't changed, and maybe a couple of

22  the key points for you, and then where I think the evidence is,

23  when the Court is prepared.  But the status, Your Honor, is

24  that I believe we're ready to move forward today.  Again, still

25  with Empery, where we had landed at the prior hearing; however,

1  the terms have improved and I want to walk you through that,

2  Your Honor and then maybe give you a little bit of where

3  everything's headed.

4          I would also add, Your Honor, I do understand that

5  Prestige, whose counsel is here, has also been talking to the

6  lenders, and there are various negotiations going on between

7  those parties.  The debtor is not a party to those discussions.

8  I believe that has to do with the factoring.  So I would like

9  to highlight that I think there has been a fairly robust series

10 of negotiations between the parties over the course of last

11 week.

12         THE COURT:  Thank you.  Just before we get into that,

13 I wanted to -- let's see, let me make sure I've got the right

14 parties here.  Mr. Larsen, is it going to be you or

15 Mr. Sternklar that will be speaking?

16         MR. LARSEN:  I believe it will be Mr. Sternklar that

17 will be arguing on behalf of White Winston.

18         THE COURT:  All right, thanks.  Mr. Sternklar, I just

19 want to touch base, and I had read the interim objection of

20 your client.  Are you still proceeding on that objection?

21         MR. STERNKLAR:  Well, Your Honor, yes.  I think that

22 for the interim order, if it's a clean, we don't have any

23 objections and everything else we can wait for the final

24 hearing to fight about.  And if that's what Your Honor wants to

25 do, at the end of this hearing, I suppose we need to set dates

1  for the final hearing, and we'll take it from there.  We think

2  that while this term sheet may be improved, it's the equivalent

3  of going from, you know, 100 feet to 90 feet underwater.

4  They're still drowning.  There's still some problems.

5        So we will ultimately want to be heard on what we

6  call the "poison pills."  But for purposes of the interim

7  hearing, to avoid irreparable and immediate harm to the debtor,

8  if we have a clean debt, which gives them a co-priority lien on

9  the prepetition assets and the right to purchase post-petition

10  receivables and no other goodies, I don't think we're going to

11  object to the interim allowance.  Thank you.

12        THE COURT:  All right.  And when you say "clean," if

13  I pull your stuff up, I understand that you are okay with the

14  factoring, the purchase of the post-petition accounts and so

15  on.  So would clean to you mean then no disbursements of the --

16  what's on the budget now is 150,000 on day one and 600,000 in

17  the second week?

18        MR. STERNKLAR:  No.  No, Your Honor, what I mean by

19  clean, are benefits of the lender, particularly no roll-up of

20  the prepetition debt, no planned treatment that gives Empery

21  it's coveted sale.  Nothing that addresses in any way their

22  prepetition claim.  No releases with litigation pending,

23  nothing.  Just give them lien -- the co-priority lien on the

24  prepetition assets, the right to purchase receivables in such

25  amount as you deem appropriate as necessary to preserve

1  immediate irreputable harm, period.  We have no position on the

2  disbursements.  The debtor can use the disbursements.

3          THE COURT:  All right.  So let's talk about that.

4  The roll-up, the poison pills, which I think what you're

5  referring to is like the -- what I've been referring to as in

6  my notes as the acceptable plan language.

7          MR. STERNKLAR: Right.

8          THE COURT:  All of those didn't happen even before,

9  as I understand it, and somebody can correct me for sure if I'm

10 wrong there, but I think those are all things that would happen

11 well beyond a final hearing on this anyway, correct?

12         MR. STERNKLAR:  Well, no, I think they would get the

13 roll-up on the final hearing.  They'd get the commitment to do

14 the plan procedures on the final hearing.  They'd get the

15 releases on the final hearing.  The actual implementation of

16 the acceptable plan wouldn't occur until a later date, but they

17 would receive an obligation, presumably embodied in a court

18 order, that requires the debtor -- or at least provides that if

19 the debtor doesn't propose an acceptable plan, it has the

20 consequences that are in the term sheet.  And, you know, we

21 have issues with that.

22         So we don't want any commitments to do anything.  We

23 don't want any releases, we don't want any roll-ups, nothing at

24 the final -- until at the earliest the final hearing on an

25 interim basis.

1          THE COURT:  But what you just got done saying is that

2   that's when it would be.  So the Court would have to approve

3   those things and you would be given an opportunity for a full

4   or, you know, not on an emergency basis hearing to do that.

5   I'm just trying to --

6          MR. STERNKLAR:  Right.  That would be fine.  That

7   would be fine with us, Your Honor.  We don't have an objection

8   to the interim allowance, which I just want to be -- again, I

9   filed the objection before the papers were filed, but so long

10  as it's only a co-priority lien on the prepetition assets and

11  only a right to purchase post-petition assets and that's all

12  that they get, and the acceptable plan, the roll-up, the

13  releases, everything else that the lender supposedly gets under

14  this term sheet is deferred until the final hearing, we don't

15  have an objection.

16          THE COURT:  Well, again, I'm somewhat playing devil's

17  advocate, just trying to feel this out and make sure I

18  understand the budget.  If they don't get to do anything but

19  purchase, do the factoring, then unless I'm reading the budget

20  wrong, that 150,000 and 600,000 doesn't take place, they're

21  going to be underwater significantly.

22          MR. STERNKLAR:  No.  No, I apologize for not being

23  clear.  No, we don't object to the interim DIP or a loan in

24  addition to the factoring on the interim basis that I just

25  outlined.  We do not object to that.

1          THE COURT:  All right.  Well, thank you.  I think I

2    understand better the position.  And just as a highlight, I

3    wanted to understand first what we were up against in terms of

4    an objection and so on before we get going.

5          Mr. Schwartz, I am going to ask you to go over the

6    supplemental term sheet and the differences from the previous

7    one.  I will highlight for you, though, my calculations, in

8    looking at the budget, show that in the interim period, I don't

9    think that full 600,000 would be necessary because I'm not

10   going to authorize any professional fees or disbursements prior

11   to any employment.  I mean, that hasn't even happened yet, and

12   not prior to any final hearing.  So I think that would cut down

13   what's absolutely necessary in this period before a final

14   hearing.  But we can get into that more as we go along here.

15         Any housekeeping matters before Mr. Schwartz gets

16   into the nuts and bolts?  All right.  Go ahead, Mr. Schwartz.

17         MR. SCHWARTZ:  Well, thank you, Your Honor.  I think

18   you're certainly right.  If what would be retainers that were

19   negotiated by the professionals that would be held or what had

20   alternatively been proposed as a funding of a professional fee

21   reserve with respect to the initial dollars that were out,

22   you're right.  I think that there would be excess cash.  If --

23   you know, depending on when the final hearing is set, Your

24   Honor, I think -- so -- and what we do with those, because no

25   one was advocating or asking for any advanced payment, just to

1   touch on that point you raised, Your Honor, just simply that

2   the money would be set aside.  There's about an $80,000

3   cushion, it looks like, in the first, you know, five weeks or

4   so.

5          Let me run through, you know, what I think are the

6   highlights, Your Honor, and maybe spring-boarding from the

7   prior hearing.  At the prior hearing, certainly we had some

8   robust argument, you know, went into the background of how we

9   got here, what this case is about, why January is important,

10  and certainly I want to tell you what we've been able to

11  accomplish in the first week.

12         I think, as even Mr. Sternklar acknowledged, that the

13  proposal that's in front of you today is better than the one

14  that was in front of you last week.  Those improvements include

15  a half a million dollars of more cash overall in the lending, a

16  quarter of a million dollars that would be available in this

17  interim period; as opposed to $500,000, and would be 750-

18  available.  Again, Your Honor, subject to what we just

19  discussed with respect to professional fee retainers.

20         There has been $123,861.31 advanced in the last week.

21  I know Your Honor authorized up to 150-.  We didn't use it.  We

22  got close.  And that all went to director and officer

23  insurance, general liability insurance and payroll.  So the

24  places that we discussed have been funded and those are often

25  moving.  So generally, I think that we were effective in this

1    last week.  There is still $2 million of factoring, which

2    allows up to about $1.8 million of funding, if the Court

3    recalls.

4            The new proposal shows that the company is cash flow

5    positive throughout the 13 weeks.  The lenders fees and costs

6    under the Empery proposal are now paid in kind at confirmation.

7    They are not -- well, paid in kind, I should say, through the

8    course of the case, Your Honor, they'd be payable pursuant to

9    an acceptable plan at confirmation.  So it allows for what

10   would arguably be, you know, I think we talked about likely a

11   year from now when we're at confirmation, if we have the final

12   plan by September 30.  And so that would give the estate a year

13   of reprieve from the debtor's fees and costs.

14           We think, Your Honor, that the overall -- when we

15   talk about the acceptable plan and some of the things that are

16   in front of you, if you recall, the prior Empery proposal

17   started at 10 million to be paid at confirmation.  It had a

18   $2 million loan and a $2 million roll-up.  We think when you

19   look at the overall proposal now, the new deal has -- requires

20   that the two-and-a-half-million-dollar loan that we would

21   receive through this transaction, as well as it has now a two-

22   and-a-half-million-dollar roll-up.  So where it was, you know,

23   a $4 million DIP before, it's now a $5 million DIP.

24           We anticipate, Your Honor, that when we got to

25   confirmation, that the total amount owed under that facility is

1   probably going to be closer to 6 million.  Just to walk you

2   through that very quickly, it now does have interest.  If you

3   remember, the prior transaction was interest free.  This one

4   does have interest.  Interest is prime plus 2 percent.  That's

5   close to a 10 percent interest rate is what it looks like if

6   you look at prime today.  So at half a million dollars between

7   the roll-up and the financing, the half million dollars

8   facility at 10 percent in a year, that's a half million

9   dollars, that's easy.

10          We expect, you know, the lenders' attorneys' fees and

11   costs will easily be a half million dollars a year from now.

12   So there's probably a $6 million amount that would have to be

13   funded at confirmation.  That's the number that, you know, when

14   we hear the expression "poison pill," which I think, Your

15   Honor, is not how we view it, but that's essentially what we

16   think the deal looks like today.  We think that's a marked

17   improvement of four-and-a-half to five-and-a-half million

18   dollars of what was in the prior proposal.  So what the debtor

19   has to pay at confirmation has moved down substantially.

20          And then also Empery's proposal does not require

21   payment of the balance over five years.  So not only does it

22   allow for a lower amount to be paid at confirmation, which, you

23   know, we can all debate whether that could be financed or how

24   much cash would be available at that point in time, but it also

25   allows for just whatever is 1129 treatment that the debtor can

1   obtain.  It doesn't have any prescribed treatment for a balance

2   of what that claim might be.  So we do think that there's a

3   marked improvement in what's been able to be negotiated at the

4   confirmation.

5          There now also are carve-outs for both the debtor's

6   professionals and the Committee's professionals at a quarter of

7   a million dollars each.  We're still negotiating how those

8   carve-outs are triggered and applied, Your Honor.  But

9   nevertheless -- there was a concern, if you recall, that there

10  was only $100,000 set aside for the Committee and the first

11  term sheet, which had to do really just for the review of

12  Empery's claims, but that has now been adjusted.  Also Empery

13  must file a proof of claim.  So I think if parties were

14  concerned about what are they owed and how do they calculate

15  it, we were able to negotiate the removal of that provision.

16  So we think, Your Honor, generally those are the improvements,

17  if you will.

18         So the changes, the principal changes other than

19  those -- again the DIP facility has interest at prime plus 2

20  percent.  There's now instead of 2 million of lending, two-and-

21  a-half million dollars of lending.  Instead of 2 million in

22  roll-up there's two-and-a-half million dollars of roll-up.  So

23  the facility is now 5 million instead of 4-.

24         Things that did not change:  still no fees and cost,

25  Your Honor, if you will.  There isn't like an unconventional

1  lending fee or a closing fee or a facility fee.  Those types of

2  things are not here.  Still have priming, however.  That's

3  still in place.  Empery still has a super priority claim.

4  There still are advances are still done at prime plus 2 percent

5  so the way that the factoring is done is the same.  And to be

6  clear about that, up to a million dollars can be borrowed at

7  100 percent of purchase orders or accounts receivable; and then

8  up to a second million -- so 2 million, can be borrowed at 80

9  percent of purchase orders and accounts receivable.  And then

10 after that, of the $10 million factoring facility, the last

11 8 million is on accounts receivable only.  I want to make sure

12 that's clear.  But that's also unchanged.

13         I think, Your Honor, you have the same flexibility

14 with the budget that we negotiated before that we're not really

15 held to a budget in variances until March 15 is the date.  So

16 we have some time for the inbound CEO to be seated, for the CRO

17 to really get rolling and we give ourselves a couple of months

18 from now to have comfort about what our forecasts look like and

19 expenses.

20         Your Honor, the appointment of an independent

21 director is still the same.  So the Court is aware, the debtor

22 has proposed Mr. Nicholas Rueben, again, he's on the line

23 today.  I understand that both the Committee and Empery do not

24 object to Mr. Reuben.  So I believe, Your Honor, subject to how

25 things go today, we'll also have our independent director

1  seated next week -- as early as next week.  Which will, I

2  think, help, Your Honor, in the interim period, to the extent

3  we have other issues to negotiate, we'll have an independent

4  director to help with that.

5          And then, Your Honor, what's also not changed, if an

6  acceptable plan is not filed within nine months, then we would

7  swing to a sale.  So that provision is still in the Empery term

8  sheet.  A couple of points there, Your Honor, before we talk to

9  the evidentiary record.

10          The debtor certainly does not read the acceptable

11 plan language that's in the term sheet the way that perhaps

12 White Winston does.  Your Honor, if you were to look at Docket

13 102, page 19 of 63, which is the term sheet that's in front of

14 you today for approval.

15          THE COURT:  All right.  I've got that up.

16          MR. SCHWARTZ:  So in the middle, Your Honor, you see

17 an acceptable plan.  If you recall, it was half the page last

18 hearing.  It's two bullets now, which is payment in full in

19 cash of the obligations under the DIP loan facility, including

20 the roll-up.  That's the $5 million principle that I think will

21 be 6 million at least, Your Honor, when we get to confirmation.

22 And then be acceptable to the DIG agent, that's Empery, in its

23 reasonable discretion with respect to the treatment of the

24 prepetition secured parties, DIP note purchasers, and DIP

25 factoring purchasers.  I don't think, Your Honor, that forsages

1    is a whole lot.  I think this will be in front of you a year

2    from now.

3           I think it's pretty clear that, you know, 1129 will

4    control.  In my mind, Your Honor, 1129 will control, and you'll

5    be -- the Court, Your Honor, will decide whether we're being

6    reasonable and whether we're compliant with 1129.  So I do

7    think that the concept of an acceptable plan -- the hurdle we

8    have to hop, if you will, Your Honor, what it looked like last

9    week versus the size of the hurdle this week, it's a much

10   easier hurdle.

11          So that's not to say it's, you know, 1129 is an easy

12   hurdle at all, Your Honor, by any stretch, but certainly what's

13   been set or proposed today -- and again, I think this is all

14   subject to final approval -- I think the burden is much better.

15   So I would submit to Your Honor that there's a much better

16   record today, much better transaction, much more approachable,

17   more money, more flexibility.  The right parties are moving

18   into -- are lining up, if you will, Your Honor, including the

19   independent director.

20          And I would submit, Your Honor, just, you know,

21   what's in front of you, evidentiary, so you have ECF 90, which

22   is Mr. Paul Karr's declaration, our sole director at the

23   moment, which was set in place with respect to the first

24   interim order that you entered on Monday.  You have my

25   declaration, Your Honor, that has a true and correct copy of

1   the term sheet and the budget that's in front of you.  You have

2   Mr. Weisenmiller's declaration at Docket 93.  You also have

3   originally, Your Honor, from last week, you have ECF 34, which

4   is Mr. Shirshac's declaration, the company CFO.  You have my

5   prior declaration at Docket 45, Your Honor, which was just

6   again to verify certain documents were in front of you.

7          So I think as we sit here today, we do have the

8   concerns raised by White Winston.  I think, Your Honor, that

9   all this is intended to be interim.  The roll-up certainly

10  wouldn't be final, and I would, you know, probably pass the

11  microphone to Mr. Garman next, but the roll-up, is my

12  understanding, wouldn't be final naturally until we had final

13  approval.  Plan treatment, again, Your Honor, not nearly as

14  onerous as it was a week ago.  And, you know, at least the

15  agreement of the debtor in that regard would not be final until

16  the final hearing, an allowance of claim releases, that's all

17  subject to final approval.

18          And I would finally like to note, Your Honor, that

19  there is a 60-day window in here for the Committee to review

20  and raise objections.  So it's not as if the estate is giving

21  up all of its potential claims or objections with respect to

22  Empery's debt and a full allowance.  It's just doing what we

23  typically do in these cases, is that the debtor agrees to pass

24  that responsibility to the Committee.

25          THE COURT:  Mr. Schwartz, that's one area that I had

1   for comment on that.  I'd like to see language in there that

2   also included any possible trustee appointed in the -- during

3   the review period so that if, in the unfortunate event this is

4   converted, for example, or there's a Chapter 11 trustee

5   appointed in that time frame, that they also have an

6   opportunity to review.

7           MR. SCHWARTZ:  Your Honor, I don't know that I have

8   an objection to that.  I think that would be a default, as you

9   would expect under the financing, so you know, if it was in the

10   interim period, I think none of that would be final, Your

11   Honor.  So I think that would naturally be where we would land.

12   I don't know that, you know, from the debtor's perspective,

13   Your Honor, that that is certainly obviously a possibility.  I

14   would defer to Empery in terms of how they would treat that

15   from a default perspective, whether they would fund, you know,

16   what would happen in terms of where the process would land.

17   But, Your Honor, if that's what the Court would prefer.

18           THE COURT:  Well, yeah, I mean, it certainly may not

19   ever come to fruition, and other things may happen as a result

20   of that, but I don't know.

21           Mr. Garman, would your client be agreeable to that?

22           MR. GARMAN:  Yes, Your Honor.  As I understand it,

23   what's being asked is if, during the review period for the

24   Committee, a trustee were appointed, we consent that that

25   trustee would step into the shoes of the Committee with the

1  ability to review our claim.

2          THE COURT:  That's what I'm asking, is if your client

3  is okay --

4          MR. GARMAN:  We consent to that, Your Honor.  Yes.

5          THE COURT:  All right.  All right.  Thank you.

6          Mr. Schwartz, were you done?

7          MR. SCHWARTZ:  Your Honor, yes, I was.  I think

8  that's what's different from last week to this week.  And so,

9  subject to questions from the Court, I think, Your Honor -- and

10  given Mr. Sternklar's statements earlier, certainly subject to

11  other party's comments, I think I would -- it probably would

12  make sense for us to hear from Empery next.  But, Your Honor,

13  yes, I'm done.  I think you have sufficient evidence and a

14  record in front of you to grant interim approval, again,

15  perhaps subject to the Court's comments with respect to the

16  budget and going through those finally.

17          THE COURT:  Is there anybody on the call that wanted

18  to cross-examine witnesses?  Okay.  I don't hear any.

19          Mr. Garman, do you want to be heard?

20          MR. GARMAN:  Yes, Your Honor.  Greg Garman on behalf

21  of Empery.

22          Your Honor, I think we are in a much better position

23  than we were last week from a mechanical perspective, in that I

24  think we have a more fulsome record as to the business judgment

25  which was exercised by the debtor.  We understand what they

1  did.  We understand the conclusion they came to.  We have a

2  Committee that has been involved in the process.  We've spent

3  time with the Committee.  I know the debtor has spent time with

4  the Committee.  I think we have a consensual hearing today, but

5  I'd like to go through and clean that up a little bit because,

6  you know, vanilla, whatever the words were used as to the

7  interim order, I think we need a little more meat on the bone

8  as to what we would like and expect to see from an order.

9        As a threshold matter, this is a priming lien, but

10  it's on a consensual basis, and we've added to the record

11  inter-creditor agreements that permit us to prime junior

12  creditors to us.  And so I believe that the Court has before it

13  a record that demonstrates that we are priming ourselves, plus

14  those we have contractual rights to prime.  And so I think that

15  makes this much easier.

16        It's important, Your Honor, to know that we inherited

17  the budget that we all talked about last Friday, and we saw the

18  same flaws in it that the Court did, which were it didn't even

19  show the ability to fund the company over the interim period.

20  That has been solved.  I think that has been solved because our

21  business folks concluded that the debtor wasn't asking for

22  enough money.  And so we volunteered, and they eagerly accepted

23  an amount that shows that this debtor can operate on an interim

24  basis.

25        And what I think shouldn't be lost on the Court is --

1    I don't want to become argumentative to the extent that we have

2    a consensual interim DIP here, but we don't see this as an

3    onerous poison pill DIP.  We see this as quite favorable.  And

4    the reason we think it's so favorable is, I cannot stress

5    enough how Empery believes that this debtor needs to become

6    operational again.  And if we don't get this debtor in an

7    operational state in the coming days, we are going to miss this

8    important January window that Mr. Schwartz has talked about.

9    And I don't know if this estate could recover.

10          So from our perspective, we have proposed more

11    favorable terms in an effort to ensure that when we got here

12    today, we didn't have more delay, we didn't have more sort of

13    auctions taking place in Court, because all of those slow the

14    process down and we think impair the ability of this debtor to

15    survive, and so this is interim.

16          I will note that I think we're on day 29 or 30 of the

17    case, so it doesn't quite feel like it should be as interim or

18    as emergency as we are.  But having said that, I acknowledge

19    that this is interim.  There are things that we definitely

20    acknowledge don't take place until a final hearing.  And those

21    -- this is a binding term sheet, but we plan to come forward

22    with the estate definitive loan documents, but this is a

23    binding term sheet that this Court can enforce upon both sides.

24    So we would expect the final hearing to have definitive

25    documents.

1          We would expect, and we consent and agree, that the

2    law is that an acceptable plan, that's final treatment.  The

3    milestones, those are final treatment.  The releases, those are

4    final treatment.  Our allowed claim, that's a final hearing.

5    The roll-up, that's a final hearing.  Those are the things that

6    I believe that have been identified by the parties that we

7    would not get as a benefit to this loan on an interim basis.

8    And we agree that's the law, and we're not asking for those

9    things.

10          Now, I will say, I don't quite know what has been

11   requested by way of an order.  And so, for example, we would

12   get post-petition liens to the extent that we advanced money.

13   We would get adequate protection to the extent that we advance

14   money.  We need a good-faith finding to the extent that we

15   advance money on an interim basis.  And so there are very

16   customary terms that go in interim orders.  And interim orders

17   don't say things like, you know, you can borrow this on an

18   emergency basis with no protections or a lender.  Those things

19   I just identified are contained in every interim order, and we

20   work with the debtor on a reasonable interim order as excluding

21   with specificity the things that we just identified.  And I

22   think this is going to be pretty vanilla and pretty

23   straightforward.  And obviously, to the extent any party

24   objects to it, we can have that discussion.  But rest assured,

25   Empery is not seeking to overreach on an interim basis with

1  those things that we agree would come at a final hearing.

2         And so I think that the concessions we made in the

3  name of expediency, the healthy dialogue and relationship that

4  I think we've established with the Committee, the independence

5  of the board, and most importantly, the record, Your Honor, has

6  before you in connection with the business judgment of the

7  debtor the arm's length nature of the transaction put us in a

8  place in which it's fairly easy and straightforward on this

9  emergency basis to put the interim DIP in place.  And all of

10 those things that we've identified, we agree would be subject

11 to a final hearing that we would ask you to set today and so

12 that we can get this debtor moving.

13        THE COURT:  All right.  Thank you, Mr. Garman.

14        All right.  Let me see.  Let me go back to my list.

15 I apologize.  Mr. Sternklar, did you want to be heard in

16 response to that?

17        MR. STERNKLAR:  Yes, Your Honor.  In a rare point of

18 agreement between White Winston and Empery, I would agree that

19 we, too, want to see this debtor operational.  And to that end,

20 we do not object to money being injected into this debtor by

21 Empery as necessary to grant [sic] immediate and irreparable

22 harm to get them operating.  We don't object to the things that

23 Mr. Garman outlined.  Certainly, he's going to have a

24 post-petition lien for money he advances.  He'll have adequate

25 protection lien, whatever that's worth, because I don't think

1    there was much, if any, cash collateral that the adequate lien

2    would protect.  I don't know, I didn't keep a list of all the

3    things he said, but again, I'd probably reserve all rights on

4    the order.  I don't anticipate, when I see a draft, we're going

5    to have a problem with any of that.

6          We do think -- there's two points I think, that are

7    worth noting.  One is, you know, we do think there are problems

8    with how this is structured.  We don't completely agree with

9    Mr. Schwartz's characterization of what an acceptable plan has

10   to look like, and we're not willing to suspend disbelief as to

11   what Empery and the debtor may do in such a plan.  But

12   obviously, all of that will be heard at the final hearing.

13         The second thing I'd like to notice is what you don't

14   know, but what I think most, if not all, the others in this

15   courtroom know -- virtual courtroom know, is White Winston is

16   still negotiating with the debtor.  It has proposed financing

17   at a number that is multiples, the DIP, and we look forward to

18   trying to work out the details of that with the debtor and the

19   Committee.  Whether that will be -- what you will hear at the

20   final DIP hearing is approval of that, or whether Empery will

21   fund and then they'll come in at a later date with that

22   financing or any fee, but this is by no means a finished work

23   and I wanted to alert you to that.

24         In terms of a final hearing, I would propose --

25   suggest -- I have not discussed this with Mr. Schwartz,

1    Mr. Garman, or anyone else, so they may disagree and that's

2    fine, but I would propose that we have it no earlier than

3    sometime in the last couple of weeks of February and that we

4    all have whatever rights we need to take expedited discovery so

5    we can complete any discovery in that period of time.  Thank

6    you, Your Honor.

7            THE COURT:  All right.  Thank you.  Let's see.  Does

8    the Committee want to respond at all?

9            MR. FIERO:  Yes, Your Honor.  This is John Fiero for

10   the Committee.  Your Honor, my internet connection is somewhat

11   unstable.  If it really breaks up, I've asked Mr. Rosell to

12   step in for me, but I'm going to go ahead and try and make the

13   presentation.

14           Your Honor, I'd like to echo the optimism of both

15   Mr. Schwartz and Mr. Garman.  This is an improved situation,

16   and we look forward to getting to a final hearing.

17           Two comments, Your Honor.  The first is with regard

18   to the interim nature of this order.  There are a couple --

19   there is no order before the Court this morning, no formal

20   order, but there is a term sheet.  And the term sheet lacks

21   some things that the Committee would ask for in a final order,

22   including relating to consent rights with respect to any third

23   director who's appointed.  And we'll be happy to take that up

24   later.  We don't need to raise it today.  We just want to

25   advise the Court that obviously this is an interim order and

1  should be treated as such, and that the Committee may need to

2  take a slightly different position at a final hearing.

3          The other matter is with respect to the funding of

4  professional fees, Your Honor.  Your Honor, to be very candid,

5  the professionals have the exact same concern that the Court

6  has with regard to turning over control of the challenge period

7  to a Chapter 7 trustee in the event that things go sideways

8  here.  Your Honor, we think it is ordinary and customary to

9  fund into a trust account, not to spend, not to appropriate,

10  but to provide security for the fees that my firm and

11  Mr. Schwartz's firm are incurring in good faith as we go

12  forward here.

13          And so we would ask the Court to reconsider the

14  question of whether or not funding of such amounts, as set

15  forth in the budget, wasn't a reasonable response to the rocky

16  nature of the origins of this case.  And also, frankly, Your

17  Honor, we think it's somewhat customary.  This money is not

18  going anywhere.  What it alleviates is exactly the thing the

19  Court was concerned about, which is, after the fact, trying to

20  extract money promised to professionals from Empery in the

21  instance that, you know, this thing goes horribly wrong.

22          So we'd like to avoid that, and we'd like to ask the

23  Court to reconsider on that question.  Otherwise, Your Honor,

24  we're good to go.  And we appreciate all the hard work of the

25  parties to date, including the work of Mr. Sternklar and his

1    clients.

2              THE COURT:  All right.  Thank you.

3              Looks like, Mr. Roldan, you have your hand up.

4              MR. ROLDAN:  Thank you, Your Honor.  I wanted to make

5    one clarifying point on behalf of Prestige.  The prior DIP

6    order had language preserving our prepetition liens.  I think

7    made clear that our prepetition liens were not being primed.  I

8    don't believe there is any intent here.  I just wanted to make

9    -- that's what I'll be looking for when I see the next DIP

10   order or the next interim DIP order that we are a prepetition

11   factor and our position should remain the same.  I don't

12   believe there's any intent to prime us based on Mr. Schwartz or

13   Mr. Garman's presentation.  I just wanted to make that clear.

14             THE COURT:  Well, I was going to actually ask about

15   that.  So Paragraph 4 in the interim order, I think, addresses

16   that.  And I'm assuming that that's the language that you would

17   be looking for again in another interim order?

18             MR. ROLDAN:  Correct.  I think that was my language

19   from that first interim order.  I'd be looking for that same

20   language.

21             THE COURT:  All right.  Mr. Day, did you want to be

22   heard?

23             MR. DAY:  Just briefly, Your Honor.  Thank you.

24   Given the representations that we're just looking at a pretty

25   basic interim order again this time around, I think most of the

1    items that the U.S. Trustee would note are not necessarily

2    relevant at this time.  I'll just go through just a few of

3    them.

4           It does look like the indemnification provisions are

5    properly limited with carve-outs for gross negligence or

6    willful misconduct.  It doesn't appear that there's any liens

7    on avoidance actions.  I saw the carve-out in the agreement for

8    that.  If I'm understanding the proposed DIP lender, they are

9    requesting a 364(e) good-faith finding, but only as to the

10   interim amounts that have been approved at this time and may

11   seek final approval of a good-faith finding under 364E as part

12   of the final hearing.

13          The roll-up has been fully disclosed, and it doesn't

14   look like it's being approved at this time in terms of interim

15   relief.  And that's what we typically ask for.  Same thing with

16   (indiscernible).  And then I think we have the same concern

17   with professional fees, but I certainly understand what

18   Mr. Fiero is requesting of the Court there, and I don't know

19   that we -- that our concern would continue after hearing his

20   comments.

21          And then lastly, I don't know if I'm interpreting the

22   agreement correctly, but there does appear to be a 506(c)

23   waiver.  We typically object to that.  We believe that the

24   surcharge right belongs to the estate and would ask the Court

25   not approve a 506(c) waiver.  But again, I don't think that's

1   being requested today in terms of the interim order.  And I

2   think those are the only comments that we have for today, Your

3   Honor.

4           THE COURT:  All right.  Thank you.  All right.  Is

5   there anyone else that wants to be heard that hasn't already

6   been heard?

7           Mr. Garman, go ahead.

8           MR. GARMAN:  Yeah, just to respond.  I think Mr. Day

9   nailed it.  I need a bit more time to think about the 506(c).

10  I think we had contemplated that on an interim basis, but as I

11  sit here in open court, I'm not quite prepared to figure that

12  out, I think.  But the remainder of what he said, we're in

13  agreement with, and that's the order that we would expect.

14          I'll note I completely understand the professionals'

15  position.  I just want to highlight for the Court that we have

16  now carved out of our collateral 250,000 for the debtor and

17  250,000 for the Committee.  And so I'm optimistic that on an

18  interim basis, we couldn't find ourselves in any trouble.  But

19  having said that, as a bankruptcy professional myself, I'm

20  appreciative of having money in an account.  It's better than

21  having a carve-out.  But I wouldn't want to see that issue,

22  given, I think, the generous nature of what we've done in the

23  last week, I wouldn't want to see that issue tie up our order

24  to make sure we get the company started.

25          THE COURT:  All right.  Thank you.  I was just

1   looking to see in the papers if I could find the 506(c).  I

2   thought I had seen it, but I'm not finding it now.

3           MR. GARMAN:  Your Honor, not to interrupt, just to be

4   clear, I think the way we solve this is our collateral -- our

5   liens that we get on a post-petition basis for the advances

6   that we make, we definitely do not want to see the liens that

7   we get surcharged based on what we advance on an interim basis.

8   And I think that's a reasonable and market condition.

9           MR. SCHWARTZ:  If I may, Your Honor, Sam Schwartz for

10  the debtor.  In Docket 102, Page 27 of 63, the last bullet of

11  the defaults has the allowance of any claim under 560(c).  That

12  is the place, I think, where surcharge is addressed.  It's a

13  default, if it's allowed.

14          THE COURT:  I'm looking at -- I'm not sure which

15  version I'm looking at here.  I'm at Docket 102, Page 21 of the

16  exhibit with the term sheet and under "waivers."

17          Mr. Day, maybe you actually can point us in to where

18  you were referring.  Is that where you're referring to what I

19  just said?  Page 21 of Docket 102.

20          MR. DAY:  I think the Court might be looking at the

21  same language we were.  I'm looking at Page 30 of 63 of Docket

22  102.

23          THE COURT:  Yes, I think --

24          MR. DAY:  But, yes, I think it's that same waiver

25  provision.  And then we also did notice what Mr. Schwartz

1  pointed out is that it's a default trigger event as well.

2         THE COURT:  It does talk -- it does -- let me read

3  this.  Waiver of the ability to surcharge the collateral and

4  subject to entry of the final order.  The collateral security

5  and prepetition notes, including under Section 506(c).  So

6  waiver of the equities, a waiver of the ability to surcharge.

7  So it looks like it's subject to entry of final DIP order there

8  already.

9         MR. GARMAN:  Your Honor, respectfully, I think the

10  provision begins with the DIP orders in the plural fashion.

11  The DIP orders shall provide for.  And just to be clear, we are

12  getting liens on account of the money that we are providing

13  and, you know, defaults are defaults.  But this money that

14  we're providing on an emergency interim basis, I think we

15  should be protected in, and that is what we proposed.  And I

16  find that to be reasonable protections for a DIP lender on what

17  they advance on an emergency basis.

18         THE COURT:  Right, I understand.  That's how I'm

19  reading that now, too.  All right.  Have I missed anybody that

20  wanted to be heard?

21         MR. SCHWARTZ:  I have a few replies, Your Honor, when

22  you're ready, but other than that.

23         THE COURT:  All right.  Go ahead, Mr. Schwartz.

24         MR. SCHWARTZ:  Thank you, Your Honor.  Starting where

25  we left off, usually the trade is the 506(c) waiver in exchange

1  for carve-outs and funding.  So I think, you know, it depends

2  on how the Court ultimately rules with respect to the

3  professional fee line items in the interim budget.  I think if

4  the Court approves that, I think there should be a 506(c)

5  waiver to the extent the Court allows funding of professional

6  fees to trust accounts, certainly that payment, but just

7  holding of the money, I don't think it'd be equitable for

8  Empery to be funding money, professional fees, and then still

9  be liable for surcharge.

10        So that trades -- if the Court denies it, Your Honor,

11 and says you're not going to allow any funding of trust account

12 money, then certainly the debtor's counsel would like its right

13 to surcharge, if need be.  So I think either of those results,

14 Your Honor, is workable today.

15        I do think, Your Honor, Mr. Day is right, there

16 should be a 364(e) finding, as I was going through some of my

17 notes, as we're going through discussion this morning.  I do

18 believe, given this -- in particular, the week of negotiation

19 that's going on, I think the Court is gaining an appreciation

20 of how much negotiation is going on.  And, you know, I

21 appreciate Mr. Garman's point about how far into the case we

22 are.  We were working on these loans, Your Honor, through both

23 the Christmas and New Year holidays.  So I do think, Your

24 Honor, there's been ample arm's length negotiation to support a

25 364(e) finding.  I think with respect to Mr. Roldan's comments,

1    the issues with Prestige's liens, that there's no intent to

2    prime.

3          And then, Your Honor, just one point with respect to

4    Mr. Fiero's comment about the directors.  The debtor certainly

5    reserves and maintains that it has control over its corporate

6    governance.  And the only party, I think here, that rightfully

7    would have the ability to potentially comment would be the

8    Court.  While the debtor wanted to be conciliatory and agreed

9    that the Committee certainly could and I think has consented to

10   the appointment of an independent director, that being

11   Mr. Reuben, who, again, we hope will be seated next week, the

12   debtor is not at all today, or does it intend to consent to the

13   right of any party beyond the independent director to oversee

14   and comment on its governance or consent to the debtor's

15   governance internally outside of its documents.

16          So while I don't think that's an issue for today, I

17   just want to highlight for the Court.  I appreciate the

18   comments of the Committee, but certainly we think the

19   governance of the debtor is subject to state law, its governing

20   documents, and again, outside of the agreement of the parties

21   to the independent director, the balance of those issues should

22   stop there.

23          THE COURT:  All right.  Thank you.  Any last

24   comments?

25          MR. DAY:  Your Honor, Jared Day for the U.S. Trustee.

1    I just want to make sure I was clear on the Section 364(e)

2    finding.  Typically, that's something we're objecting to on an

3    interim basis, and I just want to make sure everybody is on the

4    same page.  To the extent one is included in the order, it

5    would only apply to the interim advance and that is all.

6              THE COURT:  Mr. Garman --

7              MR. GARMAN:  Mr. Garman, on behalf of Empery, I

8    agree.

9              THE COURT:  What's that?

10             MR. GARMAN:  On behalf of Empery, I agree -- I agree

11   that that's right.  It would only apply on an interim basis to

12   what we advance at this point in time, and it would be subject

13   to the final hearing for any future advances.

14             THE COURT:  And Mr. Garman, can you just point me to

15   the support that you're relying on for the good-faith finding?

16   Can you just read the number that -- tell me the numbers of all

17   the declarations that you have on file?

18             MR. GARMAN:  Sure.  So I think that you have the

19   declaration of Paul Karr, which is Docket 90.  I think that you

20   have the declaration of Mr. Schwartz, which is Docket 91.  I

21   think that Mr. Weisenmiller's two declarations identify term

22   sheets that went back and forth, which are Docket 94 and Docket

23   53.  And then you have the declaration of Mr. Silver, which is

24   Docket 52.  And so I can't tell you I covered the entire

25   universe, but those are the, I think, fairly expansive record I

1  have before me with docket citations.

2            THE COURT: All right.  And I've not heard any

3  objection to the good-faith finding on the interim based on --

4  with respect to any interim disbursements.  It sounds like this

5  is consensual.  To the extent it's not, I would overrule the

6  objections.  I think here, in light of all of the

7  representations that have been made today, the Court's review

8  of the docket, and the evidence before it, and the entire

9  record before the Court based on today's hearing, as well as

10 the last one, believe that the debtor has satisfied its burden.

11            I had mentioned concern about the disbursements of

12 the what we call them the "trust fund" money for the

13 professionals.  I've been convinced otherwise.  I will -- and I

14 have not heard an objection to it either, so I will be allowing

15 this interim relief under the terms, again, that were described

16 here on the record, and it will include, or allow, for the full

17 amount that is set forth in the budget during the interim

18 period.

19            As to a final hearing, I was looking at Thursday, the

20 February 9.  I have a 9:30 calendar, but I have one small

21 matter and it actually maybe dismissed before then at 10.  So I

22 would set the final for 10 o'clock.  We'll go ahead and set it

23 as a Zoom.

24            MR. STERNKLAR:  Your Honor?

25            THE COURT:  Yes.

1          MR. STERNKLAR:  Excuse me, Your Honor.  I apologize.

2    This is Jeffrey Sternklar.  Is there any chance we could do it

3    the week of the 20th?  I think the 9th is not going to give us

4    all time we need to take discovery and do other things we need

5    to do.

6          THE COURT:  I'm not inclined to let it continue to go

7    on too much further.  I mean we have -- I had two hearings last

8    week.  I realize that the newest term sheet didn't come out

9    until just recently, but that's pretty common in terms of

10   getting last minute revisions and so on.  I'm going to stay

11   with the February 9th date.  If you find yourself coming upon

12   that date and absolutely believe that there is a basis for

13   continuance, you know, please file something.  The Court will

14   certainly consider it, but at this point, I'm going to stick

15   with the February 9th date.  I believe that's 28 days out.

16         In the meantime, we will have met for the I think the

17   24th is when all of the employment applications are set to be

18   heard.  And 10 o'clock, I'm sorry.  I don't know if I said

19   that, but 10 o'clock on the 9th; you'll be getting a Zoom link

20   from my courtroom deputy.

21         MR. FIERO:  Your Honor, this is John Fiero.  I'm a

22   law professor, and I teach a class from 9 to 10 on Thursdays.

23   Could we start at 10:30?

24         THE COURT:  Yes, that's fine.  I have the rest of

25   that after that morning and afternoon free, so 10:30 would be

1  fine.

2           All right.  Is there anything else that I've missed

3  we need to go over?

4           MR. SCHWARTZ:  I think, Your Honor.  Thank you,

5  Mr. Schwartz.  Just which parties wish to see the interim

6  order?  So the Court's aware we are working off the interim

7  order that was attached to the original motion.  At least it's

8  a draft that has circulated to some of the parties already.  I

9  know the Committee has given some comments.  I know Empery is

10  working through it.  Now, I know we shared some of those

11  comments with Prestige's counsel.  But just so the Court's

12  aware, that was Docket 33, page -- Exhibit 1, Page 20 of 51.

13  That was the order.  At least there is one in front of the

14  Court.

15           And so the Court is also aware, you know, just given

16  the exigencies of these negotiations, we have been sharing term

17  sheets with parties.  So while I know the Court only saw the

18  most recent term sheet yesterday, just so Your Honor is aware,

19  this particular negotiation has unfolded in a way that the term

20  sheets have been exchanged readily between the parties.

21           So thank you, Your Honor, for giving us time today.

22  But I want you to know, too, there has been opportunity for

23  parties to see and consider each side's bid, if you will.

24           THE COURT:  All right.  Thank you.  I wanted to make

25  clear, because I didn't specifically state it, I am making a

1  good-faith finding with respect to any disbursements in the

2  interim.  I think the record sufficiently supports that finding

3  at this time.  Any other further disbursements that may be

4  allowed on a final basis, of course, we would consider the

5  good-faith portion of that again.  All right.

6          MR. SCHWARTZ:  And, Your Honor, I guess waivers.  I'm

7  sorry, Your Honor.  Waivers is what I meant to ask for and I

8  realized I gave you some background and a little bit of the

9  iceberg under the water information and I forgot to ask which

10  parties would like to review the order.

11          MS. BROWN:  Ogonna Brown for Prestige would like to

12  sign off.  Thank you.

13          THE COURT:  I'm assuming Winston White will.

14          MR. STERNKLAR:  Yes, yes, Your Honor.  We would like

15  to see the order.  Thank you.

16          MR. FIERO:  And the Committee, of course, Your Honor.

17  Could I ask the Court to set an objection deadline associated

18  with the final hearing?

19          THE COURT:  Yes.  Thank you.  I got off track there

20  as well.  Because it is 28 days, I believe, or it's 27 days.  I

21  would just use the standard objection and reply deadline set

22  forth in our local rules as if it was a 28 day.  I think it's

23  actually 27 days, but that will work.

24          Again, I know, Mr. Sternklar, you've requested more

25  time and I've told you I'm not giving it.  But to the extent

1  there is some, you know, circumstance that you need to make me

2  aware of and request more time I'm certainly not precluding you

3  from doing so at this time.  I would ask that the parties try

4  to work things out in that regard.  But to the extent you

5  can't, or you do have an issue, obviously you can bring that in

6  front of the Court.  I'm not precluding you from that just

7  because you have asked for it today and I've denied it.

8            MR. STERNKLAR:  Thank you, Your Honor.  And we'll

9  work to try to accelerate discovery to get it done within the

10  time frame you've appointed.

11            THE COURT:  All right.  One last -- is there anything

12  else?

13            MR. SCHWARTZ:  Your Honor, confirming, Mr. Schwartz,

14  that just so we have I think there's five parties that would

15  like to see the order:  The U.S. Trustee, the Committee, White

16  Winston, Empery and Prestige.  I have five parties to sign off,

17  Your Honor.  I want to make sure I capture everyone.

18            THE COURT:  I don't hear anybody saying anything.

19            Mr. Day, were you trying to be heard?

20            MR. DAY:  Yes, Your Honor.  Just two quick items.

21  The first is the U.S. Trustee has obviously appointed an

22  Unsecured Creditors' Committee in the case.  It was -- I may

23  have mentioned this last time.  The top 20 list only reflected,

24  and currently reflects, three creditors.  None of those

25  creditors are on the Committee, but they passed on solicitation

1    questionnaires to other creditors in the case, and we were

2    fortunately able to receive sufficient interest to form a

3    Committee.

4           I would like to request, if the debtor is willing and

5    able, to amend that top 20 list, because there's clearly going

6    to be a fair amount of creditors and unsecured creditors in the

7    case.  And we want to make sure that we're able to solicit the

8    entire, at least the top 20 body, and see if we need to add to

9    the three creditors that are currently on the Committee.  We

10   have received interest from one unsecured creditor that

11   purports to be the debtor's largest unsecured creditor, but

12   obviously, we typically don't want to make a committee of four,

13   but we would like to solicit the top 20 list.

14          So I wanted to request, if the debtor is willing and

15   able, if they could amend that top 20 list by, I would say,

16   like, Tuesday, January 17 at the latest.

17          THE COURT:  All right.  Well, I'll let the debtor and

18   the U.S. Trustee's office work that out.  Obviously, the debtor

19   has an obligation to do that as soon as it can.  And I think,

20   correct me if I'm wrong, Mr. Schwartz, on the 24th, is there a

21   request for an extension of time to file statements and

22   schedules as well?

23          MR. SCHWARTZ:  There is, Your Honor.  Yes.  Although

24   we are endeavoring to try and have them filed before the 341

25   meeting, which is next week on the 19th.  So we're working

1   feverishly in that direction.  So I can tell Mr. Day we're

2   going as quickly as we can, and hopefully we don't need much

3   more of an extension or we know how much of an extension we

4   need, Your Honor, when we get to the hearing on the 24th.

5           THE COURT:  And again, I know the parties have been

6   working together well.  I just, of course, would expect that

7   would continue and, Mr. Schwartz, that your client will try to

8   meet Mr. Day's deadline for the top 20.  It is important to get

9   those parties that want and can be on the Committee to be

10  there.

11          All right.  That sounds like that's the last issue

12  and we'll go ahead and conclude today's hearing.  We'll be back

13  on the 24th.  That will be telephonic and then for final

14  hearing in this matter.  And I don't recall that I -- I don't

15  believe I set final hearings on the other two motions.  To the

16  extent I didn't, the other two first day motions, I'm going to

17  set them on the same day for final hearing the 9th.

18          MR. SCHWARTZ:  Thank you, Honor.

19          MR. FIERO:  Thank you.

20          THE COURT:    Thank you.

21          MR. STERNKLAR:  All right.  Thank you.

22          THE COURT:  And, Ms. Rawling, we can go off record.

23          MR. SCHWARTZ:  Thank you, Judge.

24          THE CLERK:  Thank you, Your Honor.  Off record.

25      (Proceedings concluded at 12:09 p.m.)

1 <u>**C E R T I F I C A T I O N**</u>

2

3      I, Jennifer L. Lindeman, court-approved transcriber,

4 hereby certify that the foregoing is a correct transcript from

5 the official electronic sound recording of the proceedings in

6 the above-entitled matter.

7

8

9

10 _____

11 JENNIFER L. LINDEMAN, AAERT NO. 1188   DATE: January 20, 2023

12 ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887
*Proposed Attorneys for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 22-14422-nmc |
| | ) |
| MUSCLEPHARM CORPORATION, | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) Interim Hearing Date: January 13, 2023 |
| | ) Interim Hearing Time: 9:30 a.m. |

### SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION
### FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III) DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor and debtor in possession herein ("**MusclePharm**" or the "**Debtor**") before this court ("**Court**") seeks entry of

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

1

interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001 to, among other matters,

authorize the Debtor to obtain emergency credit and incur debt on an interim basis. The Debtor

negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court

on January 6, 2023 [ECF No. 65] between the Debtor, as borrower, and the DIP Secured Parties

and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP

Agent, Empery Tax Efficient, L.P. ("**Empery**"), and collectively with the DIP Secured Parties and

DIP Factoring Parties, "**Lender**"), as lender, in lieu of White Winston Select Asset Funds, LLC

("**WW**"), the originally proposed lender in the Motion, with Lender proposing the requested

financing on the terms set forth in the First Interim Term Sheet. Sufficient notice of the Motion and

a first interim hearing (the "**First Interim Hearing**") was provided under the circumstances by the

Debtor; and further, the Court continued the First Interim Hearing from January 5, 2023, at 9:30

a.m. to January 6, 2023, at 9:30 a.m. to provide more time for all to review the First Interim Term

Sheet, and the Court thereafter entered its first interim order (the "**First Interim Order**") on

January 9, 2023 [ECF No. 74], and continued the Motion for a second interim hearing (the "**Second

Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be

held on January 13, 2023, at 9:30 a.m.  On January 12, 2023, Debtor substituted a revision to the

First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing

pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**").  After considering

the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in

connection with the Motion, including all formal and informal objections to the Motion, and the

argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and

others at the Second Interim Hearing; the Court has found and determined that, subject to the terms

of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion (as

amended and supplemented by the Term Sheet) on an interim basis, to the extent provided below,

---

[2]    Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A.  **Debtor's Chapter 11 Case**.  On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**").  The Debtor is continuing to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B.  **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001.  Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Notice**.  Notice of the First Interim Hearing and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3, 2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S. Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii)  the Lender and counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security interests in the assets of the Debtor, and (v)  all other parties entitled to notice under Bankruptcy Rule 2002 (the "**Noticed Parties**").  Notice of the Second Interim Hearing was provided by the Court on the record in open court at the First Initial Hearing and also on the written record [See, ECF No. 66].  Under all of the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearings has complied with Bankruptcy

---

[3]     To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

3

Rule 4001(b), (c) and (d) and the Local Rules.  <u>The final hearing</u> ("**Final Hearing**") <u>will be held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023, at 10:30 a.m.</u>

D.    **<u>Debtor's Need for DIP Financing</u>**.  Based upon pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business and affairs without the DIP Financing and authorized use of cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain business relationships with its suppliers and customers, pay for human resources, purchase materials and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the going concern value of the Debtor's business and ultimately maximizing the value of its estate for the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing is in the best interests of the Debtor, its estate, and its creditors.

E.    **<u>Budget for Necessary DIP Financing</u>**.  Attached hereto as **Exhibit A** is a revised 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing January 9, 2023 (the "**Budget**"). The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by the Lender and the Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, the "**Approved Budget**"). The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts, and the Budget accounts for operational disbursements, fees, costs and other expenses that are anticipated to be payable, incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely

paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget. Funding of the Budget will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

F.  **Financing under Section 364**.  The grant of a priming lien and a superpriority administrative expense to Empery solely on an interim basis, and solely with respect to the funds Empery advances on an interim basis under this Order, is consensual.  Accordingly, the Court makes no findings under 11 U.S.C. §364(c) and (d).  All issues relating to whether the Court may authorize additional financing by Empery on a final basis under 11 U.S.C. §364 (c) and (d) are reserved for any necessary determination at the Final Hearing.

G.  **Good Faith Lender and Lending and Good Cause**.  The Lender (who together with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders) agreed to provide postpetition financing secured by (i) valid, binding, enforceable and non-avoidable consensual senior postpetition security interests and liens (collectively, the "**DIP Liens**") with the same priority as the Prepetition Secured Parties' (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and senior to all other liens existing on and after the Petition Date with the exception of Prestige's prepetition liens and security interests in its prepetition collateral as provided in the prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the Debtor and the Prepetition Secured Parties, (ii) superpriority claims under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), and (iii) the other protections set forth in the Motion and the Term Sheet, in each case limited only by this Second Interim Order.  As of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the Term Sheet to the extent provided in this Second Interim Order and the Approved Budget.  After considering all of its alternatives, including alternative sources of debtor in possession financing, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing

5

provided by Lender represents the best proposed financing available to the Debtor under Debtor's circumstances.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate will be immediately and irreparably harmed.  Accordingly, good cause has been shown that entry of this Second Interim Order is in the best interest of the Debtor's estate, employees, and creditors and other parties in interest and that the implementation and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral as further provided below) in accordance with this Second Interim Order and the Term Sheet is in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties.  Based on the  pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended pursuant to this Second Interim Order to the Debtor by the Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code.

H.    **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget to continue to operate its business, pay wages, maintain business relationships with members, suppliers and customers, make capital expenditures, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor adequate time to effectively reorganize.

I.    **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers filed with and evidence submitted to this Court in connection with the Motion, and the record made at the Interim Hearings, and WW having withdrawn its objection on an interim basis only, the Court has determined to grant the Motion on an interim basis and approve the Debtor's entry into and

performance under the DIP Financing under the Term Sheet, as further provided herein, thereby authorizing postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility to factor Accounts (as those terms are defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring Purchase Orders (as that term is defined in the Term Sheet) during the Interim Period and related relief, as provided in the Term Sheet and this Second Interim Order.

Based on the foregoing, and upon the record made before this Court at the Interim Hearings, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      **Interim Approval**.  The DIP Financing pursuant to the DIP Facilities (as that term is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to obtain postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring Facility shall not exceed $10,000,000), on an interim basis as provided in the Term Sheet and Second Interim Order.

2.      **Interim Approval of Term Sheet; Relief Reserved to Final Hearing**.  The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and herein is approved for all postpetition lending by Lender to Debtor made prior to entry of the Final Order. The Debtor is expressly authorized, empowered, and directed to perform all of its direct and indirect obligations under the Term Sheet and this Second Interim Order including the execution of such additional documents, instruments and agreements reasonably required or requested by the Lender to implement the terms or effectuate the purposes of the Term Sheet and this Second Interim Order, except as limited hereby (collectively, the "**DIP Obligations**").  In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is modified to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all reasonable fees (when

7

applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Term Sheet and this Interim Order. In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet). Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing:

  a) Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

  b) Roll-up;

  c) Releases;

  d) The Prepetition Secured Parties' allowed claim;

  e) The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

  f) The good faith finding for DIP Financing other than during the Interim Period; and

  g) The ultimate DIP Documents (as defined in the Term Sheet).

  3. **Authorization to Borrow/Use of Cash Collateral**. Pursuant to this Second Interim Order, the Debtor is immediately authorized to (a) borrow and factor Accounts and Purchase Orders from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of Purchase Orders during the Interim Period, all subject to and in accordance with the terms of this Second Interim Order and the Term Sheet and (b) use the proceeds of the DIP Financing  and the Collateral (including the Cash Collateral) in accordance with the terms of the Term Sheet, this Second Interim Order and the Budget (and any subsequent Approved Budget) consistent with the

terms of this Second Interim Order.

4.      **Cash Collateral**.  The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender, the Prepetition Secured Parties and Prestige (the "**Cash Collateral**").  The Debtor may use the Cash Collateral to pay postpetition ordinary course of business expenses to the extent allowed and permitted to be paid herein, by  other Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.  The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.  All of Lender's Cash Collateral shall be subject to the first priority senior DIP Liens on the DIP Collateral, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties and Prestige shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5.      **Maturity and Termination.**  Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier of (x) the Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (y) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, and the U.S. Trustee, unless any such event is waived, cured or extended with the written consent of the Lender.

6.      **Interest on DIP Financing**.  The rate of interest to be charged on advances under the DIP Financing shall be: (i) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Note Facility; and (ii) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Factoring Facility.

7.      **Payment of DIP Fees and Expenses**.  The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided  in the Term Sheet.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8.      **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim under Section 364(c)(1) (the "**Superpriority Claim**") for the DIP Obligations against the Debtor, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor.  Except as set forth in this Second Interim Order and Final Order, no other superpriority

claims shall be granted or allowed in the Chapter 11 Case.

9. **DIP Liens**. As security for all DIP Obligations pursuant to this Second Interim Order, the Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise), the DIP Liens on all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Note Parties, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor and/or jointly-owned subsidiaries (if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "**DIP Collateral**"). The DIP Liens will not be subject to challenge. Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

10. **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender and the Prepetition Secured Parties pursuant to this Second Interim Order shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige that are senior to those prepetition liens of Lender and the Prepetition Secured Parties pursuant to the Prestige Intercreditor Agreement. To the extent this Second Interim Order grants any other rights postpetition to Lender (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11. **Carve Out**. The DIP Liens and Superpriority Claim granted under this Second

Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) all reasonable and documented fees and expenses up to $250,000 incurred by professionals employed by Debtor; and (ii) all reasonable and documented fees and expenses of up to $250,000 for the Committee.  The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals and $25,000 for the Committee.

12.    **Restrictions on Granting Postpetition Liens**.  Except as otherwise provided in this Second Interim Order and the Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other DIP Obligations are outstanding without the prior written consent of the Lender.  Except as expressly permitted by the Second Interim Order and the Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without either (i) first obtaining the prior written consent of the Lender or (ii) irrevocably satisfying the DIP Obligations in full in immediately available funds as a condition to the granting of such liens.  Unless all DIP Obligations shall have indefeasibly been paid in full in immediately available funds (or as otherwise provided in this Second Interim Order and the Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of this Second Interim Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the Term Sheet and

the Interim Orders for so long as any portion of the DIP Financing (or refinancing thereof) is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the Term Sheet and this Second Interim Order without further order of this Court.

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility with respect to the Debtor for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all stakeholders, is approved.

16.    **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance

13

the DIP Financing to the Debtor, negotiating and entering into the Term Sheet, and this Second Interim Order, administering the DIP Financing, consenting to the Approved Budget, or taking any other actions permitted by the Interim Orders or the Term Sheet, and no such action (or conduct taken in furtherance of or comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of the Debtor.

17.    **Binding Effect**.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate).  To the extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Second Interim Order.

18.    **Survival**.    The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in full in immediately available funds, the DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code, or otherwise); (b) converting the Chapter 11 Case to a chapter 7 case; or (c) dismissing the Chapter 11 Case.  The terms and provisions of this Second Interim Order, as well as the DIP Obligations and the DIP Liens granted pursuant to this Second Interim Order and the Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order.  The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the Term Sheet, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the Term Sheet without the written consent of the

Lender.  Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing the Chapter 11 Case.

19.    **Modifications of Term Sheet**.  The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the Term Sheet and this Second Interim Order, any non-material modifications of the Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to counsel for the Committee and the U.S. Trustee.

20.    **Protection Under Section 364(e)**.  If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Term Sheet with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Second Interim Order, and the Term Sheet with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21.    **Choice of Law; Jurisdiction**.  The DIP Financing and the Term Sheet and any paperwork issued pursuant to and in conformance therewith (and the rights and obligations of the parties thereto) shall be governed by, and construed in accordance with, the laws of the State of Nevada, without regard to the conflict of law principles thereof. Each party to the DIP Documents

will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy Court for so long as the Chapter 11 Case remains open and, thereafter, the state and federal courts set forth in the ultimate loan documents executed between and among the parties.

22.     **Findings of Fact and Conclusions of Law**.  This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.  Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23.     **Second Interim Order Effective**.  This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24.     **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that the Term Sheet and  any paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Second Interim Order.

25.     **First Interim Order Superseded; Final Hearing**.  The First Interim Order is superseded by this Second Interim Order.  The Bankruptcy Court shall hold a hearing to determine the final approval of the DIP Financing (including proposed DIP loan documents), the Approved Budget and the relief requested by the Debtor in the Motion at the Final Hearing.

26.     **Retention of Jurisdiction**.  The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Interim Order.

27.     **No Preclusive Effect on Final Approval.**  Nothing in this Order is intended to or shall be construed as a determination of the extent, priority and validity of Empery's liens and security interests except with respect to the funds advanced pursuant to this Order, and nothing in this Order shall otherwise preclude or estop any party from challenging the extent, priority or validity of Empery's liens and security interests in connection with the Final Hearing and whether the Court may authorize further financing from Empery (other than the interim financing authorized by this Second Interim Order)pursuant to Section 364(d)(1) of the Bankruptcy Code.

1    **IT IS SO ORDERED.**

2    Submitted by:

3    SCHWARTZ LAW, PLLC

4    By: /s/ *Samuel A. Schwartz*

5    Samuel A. Schwartz, Esq.
     601 East Bridger Avenue

6    Las Vegas, NV 89101

7    *Proposed Attorneys for the Debtor*

8    Approved/Disapproved:

9                                                           Approved/Disapproved:

     TRACY HOPE DAVIS
10   UNITED STATES TRUSTEE                                  PACHULSKI STANG ZIEHL & JONES
                                                            LLP
11   By: /s/
     Jared A. Day, Esq.                                     By: /s/
12   United States Department of Justice                    John Fiero, Esq.
     Attorney for the United States Trustee                 Jason Rosell, Esq.
13                                                          Attorneys for the Official Committee
                                                            of Unsecured Creditors
14   Approved/Disapproved:

15   GARMAN TURNER GORDON                                   Approved/Disapproved:

16   By: /s/                                                LEWIS ROCA ROTHGERBER CHRISTIE
     Gregory Garman, Esq.                                   LLP
17   William Noall, Esq.
     Mark M. Weisenmiller, Esq.                             By: /s/
18   Attorneys for Empery Tax Efficient, L.P.              Ogonna Brown, Esq.
                                                            Attorneys for Prestige Capital Finance, LLC
19

20                              **LR 9021 CERTIFICATION**

21          In accordance with LR 9021, counsel submitting this document certifies that the order

22   accurately reflects the court's ruling and that:

23          ☐    The court has waived the requirement set forth in LR 9021(b)(1).

24          ☐    No party appeared at the hearing or filed an objection to the motion.

25          ☒    I have delivered a copy of this proposed order to all counsel and any unrepresented

26   parties who appeared at the hearing, except those as to whom review was waived on the
     record at the hearing, and each has approved or disapproved the order, or failed to
27   respond, as indicated above:

28

                                             17

1

2      ☐      I certify that this is a case under Chapter 7 or 13, that I have served a copy of this
3      order with the motion pursuant to LR 9014(g), and that no party has objected to the form
       or content of this order.

4                                              ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887
*Proposed Attorneys for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 22-14422-nmc |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Interim Hearing Date: January 13, 2023 |
| | Interim Hearing Time: 9:30 a.m. |

### SECOND INTERIM ORDER PURSUANT TO EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND FED. R. BANKR. P. 4001(B) AND 4001(D): (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING SENIOR SECURED LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III) DETERMINING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

The motion ( "**Motion**")[1] of MusclePharm Corporation, the chapter 11 debtor and debtor in possession herein ("**MusclePharm**" or the "**Debtor**") before this court ("**Court**") seeks entry of

---

[1]     Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

1

interim and final orders pursuant to Sections[2] 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001 to, among other matters, authorize the Debtor to obtain emergency credit and incur debt on an interim basis. The Debtor negotiated and then filed a substitute term sheet (the "**First Interim Term Sheet**") with the Court on January 6, 2023 [ECF No. 65] between the Debtor, as borrower, and the DIP Secured Parties and DIP Factoring Parties (each as defined in the First Interim Term Sheet) by and through the DIP Agent, Empery Tax Efficient, L.P. ("**Empery**"), and collectively with the DIP Secured Parties and DIP Factoring Parties, "**Lender**"), as lender, in lieu of White Winston Select Asset Funds, LLC ("**WW**"), the originally proposed lender in the Motion, with Lender proposing the requested financing on the terms set forth in the First Interim Term Sheet. Sufficient notice of the Motion and a first interim hearing (the "**First Interim Hearing**") was provided under the circumstances by the Debtor; and further, the Court continued the First Interim Hearing from January 5, 2023, at 9:30 a.m. to January 6, 2023, at 9:30 a.m. to provide more time for all to review the First Interim Term Sheet, and the Court thereafter entered its first interim order (the "**First Interim Order**") on January 9, 2023 [ECF No. 74], and continued the Motion for a second interim hearing (the "**Second Interim Hearing**" and collectively with the First Interim Hearing, the "**Interim Hearings**") to be held on January 13, 2023, at 9:30 a.m.  On January 12, 2023, Debtor substituted a revision to the First Interim Term Sheet [ECF No. 102, Ex. 1] (the "**Term Sheet**" and the proposed financing pursuant to the terms and conditions of the Term Sheet, the, "**DIP Financing**").  After considering the Motion and all pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, including all formal and informal objections to the Motion, and the argument of counsel at the Second Interim Hearing; and upon the record made by the Debtor and others at the Second Interim Hearing; the Court has found and determined that, subject to the terms of this second interim order (the "**Second Interim Order**"), the relief sought in the Motion (as amended and supplemented by the Term Sheet) on an interim basis, to the extent provided below,

---

[2]     Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefore,

the Court hereby finds:[3]

A. **Debtor's Chapter 11 Case**. On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**"). The Debtor is continuing to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no request has been made for the appointment of a trustee or examiner.

B. **Jurisdiction; Venue**. This Court has subject matter jurisdiction to consider and rule upon the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought by the Motion are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001. Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Notice**. Notice of the First Interim Hearing and the relief requested in the Motion was provided by the Debtor by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on January 3, 2023, to: (i) the Office of the United States Trustee for the District of Nevada (the "**U.S. Trustee**"), (ii) the Debtor's 20 largest non-insider unsecured creditors, (iii) the Lender and counsel to the Lender, (iv) all other parties known by the Debtor to assert liens or security interests in the assets of the Debtor, and (v) all other parties entitled to notice under Bankruptcy Rule 2002 (the "**Noticed Parties**"). Notice of the Second Interim Hearing was provided by the Court on the record in open court at the First Initial Hearing and also on the written record [See, ECF No. 66]. Under all of the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearings has complied with Bankruptcy

---

[3] To the extent that the Court stated findings of fact and conclusions of law on the record at the Second Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

Rule 4001(b), (c) and (d) and the Local Rules.  <u>The final hearing</u> ("**Final Hearing**") <u>will be held</u> <u>pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001 on February 9, 2023,</u> <u>at 10:30 a.m.</u>

D.     **Debtor's Need for DIP Financing**.  Based upon pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business and affairs without the DIP Financing and authorized use of cash collateral (as defined in Section 363 of the Bankruptcy Code) ("**Cash Collateral**."  As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs.  The Debtor's ability to maintain business relationships with its suppliers and customers, pay for human resources, purchase materials and otherwise finance its operations is essential to the Debtor's continued viability.  The Debtor's ability to finance its operations and its Chapter 11 Case is essential to preserving the going concern value of the Debtor's business and ultimately maximizing the value of its estate for the benefit of all stakeholders, and for these reasons and others, the approval of the DIP Financing is in the best interests of the Debtor, its estate, and its creditors.

E.     **Budget for Necessary DIP Financing**.  Attached hereto as **Exhibit A** is a revised 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing January 9, 2023 (the "**Budget**"). The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and consented to in writing by the Lender and the Committee of Unsecured Creditors (the "**Committee**"), without subsequent notice to or order of the Court (each, the "**Approved Budget**"). The Budget is an integral part of this Second Interim Order and has been relied upon by the Lender in consenting to this Second Interim Order and to provide the DIP Financing.  The Budget includes and contains the Debtor's best estimate of all operational receipts, and the Budget accounts for operational disbursements, fees, costs and other expenses that are anticipated to be payable, incurred and/or accrued by any of the Debtor during the period covered by the Budget to be timely

paid in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget.  Funding of the Budget will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses in the ordinary course of business to the extent allowed and permitted to be paid by the Court order or pursuant to the Bankruptcy Code, subject to the terms of this Second Interim Order.

F. **Financing under Section 364**. ~~Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the Debtor is unable to obtain sufficient financing from a source acceptable to Debtor in its business judgment by means of: (i) unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code; or (ii) secured credit under Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) for the purposes set forth in and the funds advanced pursuant to the Term Sheet without granting a super-priority priming lien.~~ The grant of a priming lien and a superpriority administrative expense to Empery solely on an interim basis, and solely with respect to the funds Empery advances on an interim basis under this Order, is consensual.  Accordingly, the Court makes no findings under 11 U.S.C. §364(c) and (d).  All issues relating to whether the Court may authorize additional financing by Empery on a final basis under 11 U.S.C. §364 (c) and (d) are reserved for any necessary determination at the Final Hearing.

G. **Good Faith Lender and Lending and Good Cause**.  The Lender (who together with Prestige Capital Finance, LLC ("**Prestige**") constitute Debtor's senior prepetition lenders) agreed to provide postpetition financing secured by (i) valid, binding, enforceable and non-avoidable consensual senior postpetition security interests and liens (collectively, the "**DIP Liens**") with the same priority as the Prepetition Secured Parties' (as defined in the Term Sheet) current prepetition liens on Debtor's prepetition assets and senior to all other liens existing on and after the Petition Date with the exception of Prestige's prepetition liens and security interests in its prepetition collateral as provided in the prepetition intercreditor agreement ("**Prestige Intercreditor Agreement**") between Prestige, the Debtor and the Prepetition Secured Parties, (ii) superpriority claims under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(1),

364(c)(2), 364(c)(3) and 364(d), and (iii) the other protections set forth in the Motion and the Term Sheet, in each case limited only by this Second Interim Order.  As of the Second Interim Hearing, the Lender is prepared to advance secured financing to the Debtor in accordance with the Term Sheet to the extent provided in this Second Interim Order and the Approved Budget.  After considering all of its alternatives, including alternative sources of debtor in possession financing, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing provided by Lender represents the best proposed financing available to the Debtor under Debtor's circumstances.  Based on the pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Second Interim Order, the Debtor's business, properties and estate will be immediately and irreparably harmed.  Accordingly, good cause has been shown that entry of this Second Interim Order is in the best interest of the Debtor's estate, employees, and creditors and other parties in interest and that the implementation and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral as further provided below) in accordance with this Second Interim Order and the Term Sheet is in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties.  Based on the  pleadings and papers filed with, and evidence submitted to, this Court in connection with the Motion, and the record in the Chapter 11 Case, (i) the DIP Financing has been negotiated in good faith and at arm's length among the Debtor and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended pursuant to this Second Interim Order to the Debtor by the Lender have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code.

H. **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Approved Budget to continue to operate its business, pay wages, maintain business relationships with members, suppliers and customers, make capital expenditures, generally conduct its business affairs so as to

avoid immediate and irreparable harm to its estate and the value of its assets, and afford the Debtor adequate time to effectively reorganize.

I.    **Interim Approval of the Motion**.  Based upon the Motion, all pleadings and papers filed with and evidence submitted to this Court in connection with the Motion, and the record made at the Interim Hearings, and WW having withdrawn its objection on an interim basis only, the Court has determined to grant the Motion on an interim basis and approve the Debtor's entry into and performance under the DIP Financing under the Term Sheet, as further provided herein, thereby authorizing postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility to factor Accounts (as those terms are defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring Purchase Orders (as that term is defined in the Term Sheet) during the Interim Period and related relief, as provided in the Term Sheet and this Second Interim Order.

Based on the foregoing, and upon the record made before this Court at the Interim Hearings, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.    **Interim Approval**.  The DIP Financing pursuant to the DIP Facilities (as that term is defined in the Term Sheet) is approved on an interim basis and the Debtor is authorized to obtain postpetition financing of up to $750,000 under the DIP Note Facility (as defined in the Term Sheet), and $10,000,000 under the DIP Factoring Facility (as defined in the Term Sheet), with up to $2,000,000 of the $10,000,000 DIP Factoring Facility available for factoring purchase orders (provided that when such factored purchase orders convert to receivables the DIP Factoring Facility shall not exceed $10,000,000), on an interim basis as provided in the Term Sheet and Second Interim Order.

2.    **Interim Approval of Term Sheet; Relief Reserved to Final Hearing**.  The Term Sheet attached hereto as **Exhibit 1** and all the Lender protections provided therein and herein is approved for all postpetition lending by Lender to Debtor made prior to entry of the Final Order. The Debtor is expressly authorized, empowered, and directed to perform all of its direct and indirect obligations under the Term Sheet and this Second Interim Order including the execution of such

additional documents, instruments and agreements reasonably required or requested by the Lender to implement the terms or effectuate the purposes of the Term Sheet and this Second Interim Order, except as limited hereby (collectively, the "**DIP Obligations**").  In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is modified to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all reasonable fees (when applicable), that may be reasonably required or necessary for the Debtor's performance of its obligations under the Term Sheet and this Interim Order.  In open Court, the Term Sheet was amended to provide that in the event a chapter 11 trustee is appointed during the period commencing on the Petition Date and ending at the Final Hearing (such period, the "**Interim Period**"), such Trustee shall step into the shoes of the Committee for purposes of the Challenge Period (as defined in the Term Sheet).  Notwithstanding any term in this Second Interim Order, approval of the following relief (as defined in the Term Sheet) is reserved for determination at the Final Hearing:

        a)  Whether to approve the Lender advancing additional postpetition funding to the Debtor beyond the Final Hearing;

        b)  Roll-up;

        c)  Releases;

        d)  The Prepetition Secured Parties' allowed claim;

        e)  The Acceptable Plan and Plan Milestones (other than the deadlines for final approval of the DIP Financing at the February 9, 2023 Final Hearing and entry of the Final Order approving the DIP Financing within three (3) business days of the Final Hearing);

        f)  The good faith finding for DIP Financing other than during the Interim Period; and

        g)  The ultimate DIP Documents (as defined in the Term Sheet).

    3.    **Authorization to Borrow/Use of Cash Collateral**.  Pursuant to this Second Interim Order, the Debtor is immediately authorized to (a) borrow and factor Accounts and Purchase Orders

from the Lender up to an aggregate amount of $750,000 for the DIP Note Facility and $10,000,000 for the DIP Factoring Facility, with $2,000,000 of the $10,000,000 available for factoring of Purchase Orders during the Interim Period, all subject to and in accordance with the terms of this Second Interim Order and the Term Sheet and (b) use the proceeds of the DIP Financing and the Collateral (including the Cash Collateral) in accordance with the terms of the Term Sheet, this Second Interim Order and the Budget (and any subsequent Approved Budget) consistent with the terms of this Second Interim Order.

4.    **Cash Collateral**.  The cash and cash equivalents of the Debtor, whenever or wherever acquired, and the cash and cash equivalents proceeds of all Collateral (defined below), constitutes the cash collateral of the Lender, the Prepetition Secured Parties and Prestige (the "**Cash Collateral**").  The Debtor may use the Cash Collateral to pay postpetition ordinary course of business expenses to the extent allowed and permitted to be paid herein, by other Court order or pursuant to the Bankruptcy Code, and in accordance with, the Approved Budget, subject to: (i) the rights of the Lender upon the occurrence of an event of default; and (ii) the rights of the Lender otherwise available to the Lender under this Second Interim Order and the Bankruptcy Code.  The Debtor will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget (and any subsequent Approved Budget) and consistent with this Second Interim Order or other Order of the Court.  All of Lender's Cash Collateral shall be subject to the first priority senior DIP Liens on the DIP Collateral, and any diminution in value of any prepetition collateral including Cash Collateral of the Prepetition Secured Parties and Prestige shall by secured by postpetition replacement liens under Section 552 of the Bankruptcy Code.

5.    **Maturity and Termination.**  Debtor's authority to use the DIP Financing or any DIP Collateral, including Cash Collateral, and the Lender's commitment to make additional advances under the DIP Financing, shall each terminate upon the earlier of (x) the Court announcing at the Final Hearing that he DIP Financing is not approved on a Final Basis on the terms set forth in the Term Sheet and (y) the date five (5) days after the Lender delivers a written notice of event of default to the Debtor, and the U.S. Trustee, unless any such event is waived, cured or extended

with the written consent of the Lender.

6.    **Interest on DIP Financing**.  The rate of interest to be charged on advances under the DIP Financing shall be: (i) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Note Facility; and (ii) the prime rate as set in the Wall Street Journal as of the date of the entry of this Second Interim Order, plus two percent (2%) for the DIP Factoring Facility.

7.    **Payment of DIP Fees and Expenses**.  The Debtor is authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Term Sheet and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Term Sheet (including, without limitation, the costs and expenses of legal counsel), other than fees and expenses to be added to the DIP Note Purchaser, DIP Factoring Purchaser and the DIP Agent indebtedness as provided  in the Term Sheet.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided upon request to the U.S. Trustee, counsel for the Debtor, and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8.    **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim under Section 364(c)(1) (the "**Superpriority Claim**") for the DIP Obligations against the Debtor, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of

the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor.  Except as set forth in this Second Interim Order and Final Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Case.

9.    **DIP Liens**.  As security for all DIP Obligations  pursuant to this Second Interim Order, the Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise), the DIP Liens on all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Note Parties, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Note Parties, including, for the avoidance of doubt, any equity or other interests in the Note Parties' non-Debtor and/or jointly-owned subsidiaries (if any), investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof (collectively, the "**DIP Collateral**").  The DIP Liens will not be subject to challenge.  Upon entry of this Second Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtor will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.

10.    **Rights of Prestige**. The liens granted postpetition by the Debtor to Lender and the Prepetition Secured Parties pursuant to this Second Interim Order shall not impair nor have any

priority over, and are subject to, the prepetition liens of Prestige that are senior to those prepetition liens of Lender and the Prepetition Secured Parties pursuant to the Prestige Intercreditor Agreement.  To the extent this Second Interim Order grants any other rights postpetition to Lender (including but not limited to the super-priority administrative expense status), those rights shall not impair nor have any priority over, and are subject to, the prepetition liens of Prestige.

11.    **Carve Out**.  The DIP Liens and Superpriority Claim granted under this Second Interim Order shall be subject to the prior payment of the following amounts (collectively, the "**Carve Out**"): (i) all reasonable and documented fees and expenses up to $250,000 incurred by professionals employed by Debtor; and (ii) all reasonable and documented fees and expenses of up to $250,000 for the Committee.  The Carve Out is subject to a post-carve-out trigger notice cap of $25,000 for Debtor's professionals and $25,000 for the Committee.

12.    **Restrictions on Granting Postpetition Liens**.  Except as otherwise provided in this Second Interim Order and the Term Sheet, no claim having a priority superior or *pari passu* with those granted by the Interim Orders to the Lender shall be granted or permitted without further order of this Court entered in the Chapter 11 Case, while any portion of the DIP Financing (or refinancing thereof) or any other DIP Obligations are outstanding without the prior written consent of the Lender.  Except as expressly permitted by the Second Interim Order and the Term Sheet, the Debtor will not, at any time during the Chapter 11 Case, grant liens or security interests in the DIP Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise without either (i) first obtaining the prior written consent of the Lender or (ii) irrevocably satisfying the DIP Obligations in full in immediately available funds as a condition to the granting of such liens.  Unless all DIP Obligations shall have indefeasibly been paid in full in immediately available funds (or as otherwise provided in this Second Interim Order and the Term Sheet), it shall constitute an event of default and terminate the right of the Debtor to use the DIP Financing and Cash Collateral, if the Debtor seeks, or if there is entered, any modification or extension of this Second Interim Order or the Court does not enter a Final Order approving the Term Sheet in its entirety within three (3) business days of the February 9, 2023 Final Hearing, without the prior written consent of the Lender.

13.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or Lender without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the Term Sheet and the Interim Orders for so long as any portion of the DIP Financing (or refinancing thereof) is outstanding.  The Debtor is hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Orders.

14.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Term Sheet, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following an event of default and during the continuance of any event of default thereafter, all rights and remedies provided for in the Term Sheet and this Second Interim Order without further order of this Court.

15.    **Board of Directors; Chief Restructuring Officer**.  In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman, Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors.  The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility with respect to the Debtor for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the

13

1   maximization of value for all stakeholders, is approved.

2        16.   **<u>No Creation or Evidence of Liability to Third Parties or Alter Ego</u>**

3   **<u>Relationship</u>**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtor, in

4   a partnership of any kind with any of the Debtor, in a principal-agent relationship with the Debtor

5   or otherwise liable for any liabilities of any of the Debtor, and the Debtor shall not be found or

6   deemed to be a mere instrumentality of the Lender as a result of the Lender deciding to advance

7   the DIP Financing to the Debtor, negotiating and entering into the Term Sheet, and this Second

8   Interim Order, administering the DIP Financing, consenting to the Approved Budget, or taking any

9   other actions permitted by the Interim Orders or the Term Sheet, and no such action (or conduct

10   taken in furtherance of or comprising an integral part of any such action) shall be admissible in any

11   proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for

12   any liability of the Debtor.

13        17.   **<u>Binding Effect</u>**.  The provisions of this Second Interim Order shall be binding upon

14   and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns

15   (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner

16   appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a

17   legal representative of the Debtor or with respect to the property of the Debtor's estate).  To the

18   extent permitted by applicable law, this Second Interim Order shall bind any trustee hereafter

19   appointed for the Debtor's estate, whether in this Chapter 11 Case or in the event of the conversion

20   to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of

21   this Second Interim Order.

22        18.   **<u>Survival</u>**.  The provisions of this Second Interim Order and any actions taken

23   pursuant hereto shall survive the entry of any order, including an order: (a) confirming any plan of

24   reorganization or liquidation in this Chapter 11 Case (and, to the extent not irrevocably satisfied in

25   full in immediately available funds, the DIP Obligations shall not be discharged by the entry of any

26   such order pursuant to Section 1141(d)(4) of the Bankruptcy Code, or otherwise); (b) converting

27   the Chapter 11 Case to a chapter 7 case; or (c) dismissing the Chapter 11 Case.  The terms and

28   provisions of this Second Interim Order, as well as the DIP Obligations and the DIP Liens granted

pursuant to this Second Interim Order and the Term Sheet, shall continue in full force and effect notwithstanding the entry of any such order. The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Second Interim Order and the Term Sheet, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the Term Sheet without the written consent of the Lender. Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an event of default and terminate the right of the Debtor to use Cash Collateral under this Second Interim Order if Debtor seeks, or if there is entered, (x) any modification or extension of this Second Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing the Chapter 11 Case.

19.    **Modifications of Term Sheet**. The Debtor and the Lender are hereby authorized to implement, in accordance with the terms of the Term Sheet and this Second Interim Order, any non-material modifications of the Term Sheet without further order of this Court; *provided* that the Debtor shall provide notice of any such modifications to counsel for the Committee and the U.S. Trustee.

20.    **Protection Under Section 364(e)**. If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Term Sheet with respect to any DIP Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtor prior to the actual receipt by both Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Second Interim Order and the Term Sheet and any paperwork issued pursuant to and in conformance therewith, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the

Bankruptcy Code, this Second Interim Order, and the Term Sheet with respect to all uses of Cash Collateral and the incurrence of DIP Obligations.

21. **Choice of Law; Jurisdiction**. The DIP Financing and the Term Sheet and any paperwork issued pursuant to and in conformance therewith (and the rights and obligations of the parties thereto) shall be governed by, and construed in accordance with, the laws of the State of Nevada, without regard to the conflict of law principles thereof. Each party to the DIP Documents will waive the rights to trial by jury and will consent to jurisdiction of the Bankruptcy Court for so long as the Chapter 11 Case remains open and, thereafter, the state and federal courts set forth in the ultimate loan documents executed between and among the parties.

22. **Findings of Fact and Conclusions of Law**. This Second Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof. Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

23. **Second Interim Order Effective**. This Second Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law.

24. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Term Sheet in this Second Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that the Term Sheet and any paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Second Interim Order.

25. **First Interim Order Superseded; Final Hearing**. The First Interim Order is superseded by this Second Interim Order. The Bankruptcy Court shall hold a hearing to determine the final approval of the DIP Financing (including proposed DIP loan documents), the Approved Budget and the relief requested by the Debtor in the Motion at the Final Hearing.

26. **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Interim Order.

27. **No Preclusive Effect on Final Approval.** Nothing in this Order is intended to or

16

1   shall be construed as a determination of the extent, priority and validity of Empery's liens and

2   security interests except with respect to the funds advanced pursuant to this Order, and nothing in

3   this Order shall otherwise preclude or estop any party from challenging the extent, priority or

4   validity of Empery's liens and security interests in connection with the Final Hearing and whether

5   the Court may authorize further financing from Empery (other than the interim financing authorized

6   by this Second Interim Order)..)pursuant to Section 364(d)(1) of the Bankruptcy Code.

7          **IT IS SO ORDERED.**

8   Submitted by:

9   SCHWARTZ LAW, PLLC

10  By: /s/ *Samuel A. Schwartz*

11  Samuel A. Schwartz, Esq.
    601 East Bridger Avenue

12  Las Vegas, NV 89101

13  *Proposed Attorneys for the Debtor*

14  Approved/Disapproved:

15  TRACY HOPE DAVIS
    UNITED STATES TRUSTEE

16

17  By: /s/
    Jared A. Day, Esq.

18  United States Department of Justice
    Attorney for the United States Trustee

19

20  Approved/Disapproved:

21  GARMAN TURNER GORDON

22  By: /s/
    Gregory Garman, Esq.

23  William Noall, Esq.
    Mark M. Weisenmiller, Esq.

24  Attorneys for Empery Tax Efficient, L.P.

25

    Approved/Disapproved:

    PACHULSKI STANG ZIEHL & JONES
    LLP

    By: /s/
    John Fiero, Esq.
    Jason Rosell, Esq.
    Attorneys for the Official Committee
    of Unsecured Creditors

    Approved/Disapproved:

    LEWIS ROCA ROTHGERBER CHRISTIE
    LLP

    By: /s/
    Ogonna Brown, Esq.
    Attorneys for Prestige Capital Finance, LLC

26          **LR 9021 CERTIFICATION**

27          In accordance with LR 9021, counsel submitting this document certifies that the order

28  accurately reflects the court's ruling and that:

17

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###