James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
          blarsen@shea.law
          kwyant@shea.law

-and-

**JEFFREY D. STERNKLAR LLC**
Jeffrey D. Sternklar, Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 549561
101 Federal Street, Suite 1900
Boston, Massachusetts 02110
Telephone:  (617) 207-7800
Email:  jeffrey@sternklarlaw.com

*Attorneys for Creditor White Winston*
*Select Asset Funds, LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | Chapter 11 |
| MUSCLEPHARM CORPORATION | Case No.: 22-14422-nmc |
| Debtor. | |

**OBJECTION OF CREDITOR WHITE WINSTON SELECT ASSET FUNDS, LLC TO APPROVAL OF DEBTOR IN POSSESSION FINANCING BY EMPERY TAX EFFICIENT, L.P.[1]**

---

[1] White Winston Select Asset Funds, LLC further incorporates its previously filed objections and statements regarding the DIP Motion and related documents by reference herein, and further reserves all evidentiary objections as to the affidavits on file in support of the DIP Motion, and the statements made therein that are inadmissible under applicable Federal Rules of Evidence.

# Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     DEFECTS IN THE EMPERY PROPOSAL.......................................................... 5

III.    FACTS .............................................................................................................. 9

    A.    Empery's Subordinated and Disallowable Claims....................................... 9

    B.    The New York Litigation .......................................................................... 11

IV.     ARGUMENTS AND AUTHORITIES............................................................... 12

    A.    The Debtor Fails to Satisfy 11 U.S.C. §§364(c) and (d)............................ 12

    B.    The Motion Must Be Denied Because the Poison Pills Are Not Fair, Reasonable and Adequate, Given the Circumstances of the Borrower and the Empery Securityholders.......... 14

    C.    Alternatively, WW Should Be Permitted to Propose a Chapter 11 Plan and the Court Should Terminate the Debtor's Exclusivity Period as to WW. ................................. 16

**Cases**

In re Aqua Assocs., 123 B.R. 192, 195 (Bankr. E.D. Pa. 1991) ................................... 15

In re Belk Props., LLC, 421 B.R. 221, 225 (Bankr. N.D. Miss. 2009)................................ 16, 17

In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)................................ 19

In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003), appeal dismissed, No. 03-00472 (W.D. Mo. Jan. 9, 2004) ............................................. 9, 15, 17

In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) ................. 19

In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011) .................. 15, 17, 18

In re Mid-State Raceway, Inc., 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005)......................... 9, 15, 17

In re Olde Prairie Block Owner, LLC, 448 B.R. 482, 493 (Bankr. N.D. Ill.), aff'd, 460 B.R. 500 (N.D. Ill. 2011)........................................................ 16

In re Tenney Vill. Co., 104 B.R. 562, 569 (Bankr. D.N.H. 1989)................................. 17

Matter of Pengo Indus., Inc., 962 F.2d 543, 546 (5th Cir. 1992) ................................ 12

Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440 (9th Cir. 1985) ............................................................ 15

TBH19 LLC v. DBD Credit Funding LLC (In re TBH19, LLC), No. 2:19-bk-23823, 2021 U.S. Dist. LEXIS 15551, (C.D. Cal. Jan. 27, 2021) ........................................... 15

**Statutes**

11 U.S.C. § 1121(b) ............................................................................................ 19

11 U.S.C. § 1121(d)(1) .................................................................................. 10, 19

11 U.S.C. § 364(d) ............................................................................................... 9

11 U.S.C. § 364(d)(1) ................................................................................... 14, 15

11 U.S.C. § 510(b) ..................................................................................... 8, 11, 13

11 U.S.C. § 502(b)(2) ......................................................................................... 12

**Rules**

3012

Fed. R. Bankr. P. 3007............................................................................................ 9

Fed. R. Bankr. P. 9019.......................................................................................... 13

Fed. R. Bankr. P. 3012.........................................................................................8, 9

**Treatises**

3 Collier on Bankruptcy P 364.06 (16th 2022)....................................................... 17

**Other Authorities**

Komrover and Giattino, Can Warrants Be Deemed "Original Issue Discount" and Disallowed as
Unmatured Interest? (June 11, 2015) appearing at
https://www.americanbar.org/groups/litigation/committees/bankruptcy-
insolvency/articles/2015/spring2015-0615-can-warrants-be-deemed-original-issue-discount-and-
disallowed-as-unmatured-interest/  (last visited Feb. 1, 2023)          11

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Creditor White Winston Select Asset Funds, LLC ("WW"), by and through its undersigned counsel, hereby files this objection to financing from Empery Tax Efficient, L.P. ("Empery") as set forth in the "*Supplement to Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§104, 361, 362, 363, and 364 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Authorizing the Debtor to Obtain Post-Petition Financing, (II) Granting Priming Liens and Administrative Expense Claims, (III) Determining Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*" [ECF No. 89] (the "Motion") and to entry of a Final Order approving the Term Sheet[2] and respectfully submits the following:

## I.  INTRODUCTION

1.      Empery's proposal cannot be approved under the bankruptcy code. Moreover, denial of the Motion will not be a death knell to Debtor MusclePharm Corporation's ("Debtor") because Empery is not the only entity willing to provide debtor-in-possession ("DIP") financing to the Debtor. When compared with Empery's self-serving proposal, WW's proposal is much more likely to be approved under the applicable rules. Moreover, WW's DIP proposal provides more money to the Debtor than Empery without the "poison pills" that appear in the Empery proposal which affect its ability to be approved by the Court. Declaration of Todd M. Enright, at ¶23, submitted concurrently herewith (the "Enright Dec.").

2.      Other than conclusory statements that the Debtor believes the Empery deal is better, the Debtor has never explained the reasons why.  But under any objective analysis, the WW proposal is better and for more money than is the Empery proposal.  Below is a chart summarizing some of the more significant differences between the WW and Empery proposals appearing at [ECF No. 89] (Enright Dec. at ¶23):

| SUBJECT | EMPERY | WW |
| --- | --- | --- |
| Amount of DIP (Non-Factoring) | $2,500,000.00 | $5,250,000.00, comprised of<br>• $3,000,000 DIP Loan<br>• $1,500,000 Inventory Loan |

---

[2] Unless otherwise indicated, capitalized terms have the meanings ascribed to them in the Motion.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| | | • $500,000 Marketing Loan |
| | | • $250,000 Committee Prof. Fees |
| Factoring | $10,000,000 | $10,000,000.00 |
| Security for DIP | Co-Priority Lien on Prepetition Assets, Senior Lien on Postpetition Assets | Junior Lien on Prepetition Assets, Senior Lien on Postpetition Assets |
| Prepetition Claim | At least $12,840,000 | $8,600,00 (approx.) |
| Priority of Prepetition Claim | • Senior Secured on prepetition assets<br><br>• Waiver of "equities of the case" under 11 U.S.C. §552(a) for postpetition assets<br><br>• Undisclosed stipulations in DIP orders "as to, among other things, the amount and priority of the secured indebtedness" of Empery and its cohorts (the "Empery Securityholders") prepetition indebtedness. | Consensual subordination of secured claim to general unsecured claim only |
| Roll-Up | $2,500,000 of disputed prepetition debt to postpetition debt | None |
| Maturity Date | Earliest of (a) ***December 31, 2023***, (b) the date all DIP Notes become due and payable under the DIP Documents, whether by acceleration after an Event of Default or otherwise, (c) the date of the closing of the Sale Transaction (as defined below) or any other sale(s) of all or substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code, and (d) ***the filing of a chapter 11 plan that is not an Acceptable Plan*** | The Effective Date under a confirmed chapter 11 plan of reorganization in the Bankruptcy Case, or upon Bankruptcy Court approval of a sale or other disposition of any of the DIP Collateral to a person or entity other than the Lender. |
| Challenge Period | Sixty Days from entry of Interim Order (unclear of Roll-Up can be challenged). Only the Committee may challenge the Empery Securityholders' claims – all other parties, including WW, are not provided equivalent rights to challenge anything | Sixty Days from entry of Final Order |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| Plan Provisions | Debtor must file an "Acceptable Plan" by Sept. 30, 2023 and Court must confirm an "Acceptable Plan" by Dec. 15, 2023.  An "Acceptable Plan" is a chapter 11 plan that includes<br><br>• Repayment in full in cash of the obligations under the DIP Note Facility, including Roll-Up;<br><br>• Be acceptable to the DIP Agent, in its reasonable discretion, with respect to the treatment of the Prepetition Secured Parties, DIP Note Purchasers, and DIP Factoring Purchasers<br><br>(<u>cf</u>. plan treatment in ECF 65). | None |
| Defaults Regarding Plan | Includes failure to file or confirm Acceptable Plan timely | Customary provisions regarding payment of postpetition DIP loan in full at confirmation or closing of sale. |
| Other Defaults | Any attempt by the Debtor or any equityholder (WW is an equityholder of the Debtor) "to invalidate or otherwise impair the DIP Facilities or the liens" granted to Empery; | Customary provisions and provisions that are relevant to Empery's disputed prepetition secured claim but irrelevant to WW's prepetition unsecured claim. |
| Unique Remedies Upon Default | In the event an Acceptable Plan has not been filed by Debtor by September 30, 2023, Debtor shall commence a Section 363 sale process (the "Sale Transaction") within 14-days of notice by Empery that the plan filed is not acceptable.  In the event that no plan is filed by September 30, 2023, Debtor shall commence a Sale Transaction on October 20, 2023.  The procedure and timing of the Sale Transaction shall be satisfactory to Empery, in its sole discretion.<br><br> • Other undisclosed remedies to be set forth in loan documents | Termination of exclusivity under 11 U.S.C. §1121 |

3

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| Reporting Provisions | Extensive reporting provisions that contemplate a failure of the Debtor to file an "Acceptable Plan" and therefore requiring the Debtor to sell its assets in a "Sale Transaction" and provide extensive inside information to the Empery Securityholders regarding the status of a Sale Transaction before it occurs. | None |
| Adequate Protection | Empery Securityholders are provided with a lien to secure diminution in value of all prepetition collateral, and not just cash collateral. | None |
| Indemnity of Legal and Financial Advisory Expenses | The Debtor broadly indemnifies the Empery Securityholders for all attorney and financial advisory fees and expenses, including with respect to the anticipated WW challenge to its prepetition liens and claims.  The Empery Term Sheet provides that the Debtor " in connection with the Chapter 11 Case and the negotiation and documentation of the DIP Facilities and restructuring matters with respect to the Note Parties [defined as the Debtor and its affiliates], all incurred (i) reasonable and documented legal fees and out-of-pocket expenses of counsel for the DIP Agent and reasonable and documented legal fees and out-of-pocket expenses of Schulte Roth & Zabel, LLP and Garman Turner Gordon LLP, counsel for Empery, in its capacity as a DIP Note Purchaser, DIP Factoring Purchaser, and the DIP Agent; and (ii) reasonable and documented fees and out-of-pocket expenses of any financial advisor for the DIP Agent.  In addition, the Note Parties shall pay, in connection with workout proceedings and enforcement costs associated with the DIP Facilities, all incurred (i) reasonable and documented legal fees and out-of-pocket expenses of counsel for the DIP Agent and reasonable and documented legal fees and out-of-pocket expenses legal fees and out-of-pocket expenses of Schulte Roth & Zabel, LLP and Garman Turner Gordon | None. Reimbursement limited to advances on DIP loan |

4

LLP, counsel for Empery, in its capacity as a DIP Note Purchaser; and (ii) reasonable and documented fees and out-of-pocket expenses of any financial advisor for the DIP Agent.  Such fees and expenses shall be added to DIP Note Purchaser, DIP Factoring Purchaser, and the DIP Agent claim(s).

The Issuer and the Guarantor(s) will indemnify the DIP Agent, DIP Note Purchasers, and DIP Factoring Purchasers and their respective affiliates, and their respective related parties, and hold them harmless from and against all out-of-pocket costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any notes issued under the DIP Facilities; provided that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence or willful misconduct of such person."

| Releases | The Debtor releases all claims against Empery and the Empery Securityholders "in their capacities as such" notwithstanding prepetition litigation among the Debtor, Empery, WW and Mr. Drexler pending in New York | None |

## II.   DEFECTS IN THE EMPERY PROPOSAL

3.     The Empery DIP financing proposal is not a legitimate DIP proposal intended to facilitate the Debtor's reorganization.  Indeed, Empery is indifferent to a reorganization. Instead, it seeks either (i) a sale of the Debtor's assets, to complete its prepetition Article 9 sale, and/or (ii) prompt payment on unreasonable terms of its alleged prepetition debt.  Consistently, the Empery DIP proposal transparently contains numerous poison pills described above that effectively give

*SHEA LARSEN*
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Empery exclusive control of the Debtor's assets and eliminate any possibility of a successful chapter 11 reorganization plan as well as eliminating any chance to challenge the extent, priority and validity of Empery's alleged claims and liens and the nonconsensual treatment of their claims under a plan of those claims and liens.  Enright Dec. at ¶24

       4.     To that end, the Empery financing proposal sets Debtor up for failure. It mandates that the Debtor file an "Acceptable Plan" that is weighed favorably in Empery's favor that Empery alone gets to determine if its treatment is acceptable, thereby preventing any nonconsensual treatment of the Empery Securityholders' disputed prepetition claims.  The prior version of the Empery term sheet [ECF No. 65] contained specific and unrealistic requirements for payment of the Empery Securityholders' debt at confirmation that are not feasible and that mean any plan would fail.  While the terms are no longer stated, and a plan's treatment of the Empery Securityholders' alleged debt must only satisfy Empery's "reasonable discretion" nevertheless, it requires a suspension of common sense to believe Empery would ever agree to anything that materially differs from the unfeasible plan treatment it required in earlier iterations of the Term Sheet.  Enright Dec. at ¶25.

       5.     Moreover, the Debtor abdicates its fiduciary duties to the Empery Securityholders if an "Acceptable Plan" is not filed. It requires that the Debtor immediately conduct a sale process under 11 U.S.C. § 363 that must be acceptable to Empery in its sole discretion. Empery's term sheet virtually assumes that a "Sale Transaction" will occur, and contains numerous provisions whereby the Debtor is required to report to Empery on the Sale Transaction and provide it with inside information regarding such a Sale Transaction before it occurs. The Empery proposal thereby limits parties' potential ability to propose a meaningful plan if the Debtor fails to do so, because the Debtor would be required to conduct a 11 U.S.C. § 363 sale regardless of such a plan and further provides unilateral discretion to Empery regarding the potential sale.  Since a sale likely eliminates the ability of the Debtor to monetize its existing net operating losses (NOLs), every effort must be made to avoid a sale.  The Term Sheet makes a sale almost certain. Enright Dec. ¶26.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

6.    Additionally, the Empery proposal assumes that the Empery Securityholders are prepetition secured creditors when, in point of fact they (i) assert claims subject to mandatory subordination (and therefore entitled to a distribution of zero until all general unsecured creditors are paid in full) under 11 U.S.C. §510(b), (ii) assert claims that properly are recharacterized as equity, and (iii) assert claims in a preposterous amount that begs credulity and in any event is not supported by the record in this case.  Empery's DIP proposal mandates numerous provisions that foreclose parties from asserting this challenge.  For example, the Empery proposal requires the Debtor to indemnify all the Empery Securityholders' current and future legal and financial advisory fees, thereby disincentivizing anyone from challenging Empery's claims. The Empery proposal purports to limit creditor standing to object to Empery's claim in violation of Fed. R. Bankr. P. 3012 , requires a partial roll-up of the Empery Securityholders' disputed prepetition debt and payment of that rolled-up amount upon the earlier of a 363 sale or December 31, 2023. Worse, the Term Sheet directly grants Empery a minimum allowed prepetition claim of $12.84 million, and indirectly allows the Empery Securityholders' prepetition claims by blessing credit bidding in any sale.  The Empery proposal requires that the final documents contain stipulations regarding the priority of those claims.  As belt and suspenders, the Empery proposal grants Empery its disputed prepetition claim by impermissibly limiting creditors' rights to object under, *inter alia*, Fed. R. Bankr. P. 3007 and 3012 by limiting objections to such claims solely to the Committee. Enright Dec. at ¶27.

7.    Indeed, the Empery proposal effects an increase in the collateral securing Empery's disputed prepetition claim by granting Empery a preferential lien on postpetition assets to secure the disputed prepetition indebtedness.  For no apparent reason, the Term Sheet requires the Debtor to waive the "equities of the case" exception to cross-collateralize postpetition assets to secure disputed prepetition claims under 11 U.S.C. § 552.  Enright Dec. at ¶28.

8.    Finally, without explanation or evidence demonstrating the reasonableness or necessity for such provisions, Empery requires broad releases to the Empery Securityholders, notwithstanding the existence of litigation pending in New York among Empery, the Debtor, WW

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

and the Debtor's principal Ryan Drexler.  Empery requires the Debtor to indemnify counsel to the Empery Securityholders for fees incurred in any such dispute or any newly asserted dispute. Enright Dec. at ¶29.

9.      All of the foregoing prevents the Court from approving the Empery proposal because Debtor cannot meet its burden in satisfying 11 U.S.C. § 364(d). Indeed, Debtor has the burden of proving that (a) the proposed postpetition financing is an exercise of the debtor's reasonable business judgment; (b) the financing is in the best interests of both the estate and its creditors; (c) the transaction is both (i) necessary to preserve estate assets and (ii) necessary and essential for the continued operation of the debtor's business; (d) the terms of the proposed transactions are fair and reasonable given the circumstances; and (e) the proposed facility was negotiated in good faith and at arm's length.  In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003), *appeal dismissed*, No. 03-00472 (W.D. Mo. Jan. 9, 2004); In re Mid-State Raceway, Inc., 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005). As described in detail below, WW has proposed financing by any measure on far less onerous terms to the Debtor than the coercive DIP that Empery proposes.  Accordingly, WW objects to final allowance of Empery's "poison pills" that effectively terminate any ability of the Debtor to reorganize and instead awards Empery its coveted sale of the Debtor's assets.

10.     Alternatively, if the Court approves the Empery financing, then it should do so *without* the poison pills and terminate the Debtor's exclusive right to propose and seek acceptances of a chapter 11 plan pursuant to 11 U.S.C. § 1121(d)(1).  Attached as Exhibit D to the Enright Dec. is a redlined version of the Empery term sheet that eliminates its poison pills (the "Alternative Empery Term Sheet").  This is the only financing that should be approved for Empery to provide final postpetition financing.  WW is ready, willing, and able to provide its superior financing that will satisfy the bankruptcy code if Empery is unwilling to fund on the Alternative Empery Term Sheet.  Exclusivity should be terminated so that at a minimum, parties are presented with the option that WW favors (and that apparently the Empery Securityholders oppose) to challenge the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

8

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

prepetition claims of the Empery Securityholders.  The Debtor thereby would be able to reorganize without a sale, preserve its NOL's and increase its value for the benefit of creditors.

**III.    FACTS**

### A.    Empery's Subordinated and Disallowable Claims

11.    WW is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.  Enright Dec. at ¶3.  WW engages in debt and equity investing in private companies and small-cap public companies such as the Debtor.  Enright Dec. at ¶3.  WW originally was a creditor and shareholder of the Debtor.  Enright Dec. at ¶3.  Mr. Enright is highly experienced in workouts, insolvency, and chapter 11 matters.  Enright Dec. at ¶4

12.    Empery asserts various prepetition claims and liens against the Debtor, but they are all disallowable.  The claims are (i) inflated, (ii) subject to mandatory subordination under 11 U.S.C. § 510(b), and (iii) subject to recharacterization as equity.

13.    First, Empery has inflated the claims of the Empery Securityholders.  Empery, individually and as "collateral agent" for the Empery Securityholders, claims as of the commencement of this case they are owed "not less than $18,155,014."  Declaration of Timothy Silver [ECF No. 53] (the "Silver Dec.") at ¶94.

14.    How this amount is calculated is never stated, notwithstanding that approximately six months earlier, in June, 2022, Mr. Silver avers the principal balance of the claim was only $9,759,135.00.  Silver Dec. at ¶30. So, even assuming *arguendo* Mr. Silver properly calculated the principal amounts owed to the Empery Securityholders, somehow, although never explained, from June, 2022 to December 15, 2022 (the Petition Date), Empery's claim implausibly shot up from about $9.7 million to over $18 million.

15.    In any event, these figures are not correct, since these principal balances do not account for the fact the securities held by the Empery Securityholders were issued subject to original issue discount, and discounted at 14% (for securities issued in October, 2021) (Silver Dec., attachment at [ECF No. 52-1]) and 20% for securities issued in June, 2022 (Silver Dec., attachment

at [ECF No. 52-41]).[3] Assuming *arguendo* Mr. Silver's methodology is correct, WW calculates that the Debtor only received $7,050,000.00 from the October, 2021 securities, even though they carried a notional principal amount of $8,197,674.42 (Silver Dec. at [ECF 52-1]) and the Debtor only received $1,965,500 of securities issued in June, 2022, even though they carried a notional amount of $2,456,885 (Silver Dec at [ECF 52-41]).  Enright Dec. at ¶35.  In short, WW believes grounds exist to object to the allowance of this claim and the liens, both because the original issue discount "represents a disallowable claim in bankruptcy under section 502(b)(2)." <u>Matter of Pengo Indus., Inc.</u>, 962 F.2d 543, 546 (5th Cir. 1992) (citations omitted) and because the calculation of the amount of the claim is inflated and unsupported.[4]  Indeed, simple math demonstrates that the Empery Securityholders' return on the principal actually advanced ($9,015,500.00) if they are granted an allowed claim of $18,155,014 is a staggering and unconscionable 86%.  Enright Dec., at ¶35.

16.     Second, the claims and liens of the Empery Securityholders are disallowable or alternatively subject to mandatory subordination.  Empery claims that the Empery Securityholders and the Debtor entered into a "Securities Purchase Agreement" (as amended, the "<u>SPA</u>") whereby the Empery Securityholders purchased securities of the Debtor for their debt (their individual notes, warrants and stock), obtain warrants for a controlling equity position of the Debtor and to obtain control over the Debtor.  Silver Dec. ¶¶ 8, 30, Enright Dec. at ¶ 36.  Mr. Silver avers that the Debtor entered into a security agreement with each of the Empery Securityholders granting them a security interest in substantially all of the Debtor's assets to secure "all indebtedness due under the [SPA]."  Silver Dec. at ¶ 10.

---

[3] The Empery Securityholders also purchased "warrant shares" and stock in the SPA.  The amount of original issue discount attributable to the warrant shares and the stock is unclear.  <u>See generally</u>, Komrover and Giattino, Can Warrants Be Deemed "Original Issue Discount" and Disallowed as Unmatured Interest? (June 11, 2015) appearing at <u>https://www.americanbar.org/groups/litigation/committees/bankruptcy-insolvency/articles/2015/spring2015-0615-can-warrants-be-deemed-original-issue-discount-and-disallowed-as-unmatured-interest/</u> (last visited Feb. 1, 2023).

[4] Attached as Exhibit C to the Enright Dec. is a spreadsheet describing WW's calculations of the amount of original issue discount on the disputed debt, the warrants and stock of each Empery Securityholder.  As can be seen, in the aggregate, WW calculates that the Empery Securityholders purchased (i) notes in the aggregate notional amount of $10,654,559.42 (although after accounting for original issue discount it appears the Debtor only received $9,015,500.00), (ii) 9,015,626 "warrant shares" and (iii) 33,683,906 shares of stock.  Enright Dec. at ¶35.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

17.     Mr. Silver concedes that the Empery Securityholders' claims are claims for damages arising from breach of the SPA.  Silver Dec. at ¶77.  The SPA was a contract for the purchase and sale of securities of the Debtor, and thus the entirety of the Empery Securityholders' claims and liens are subject to mandatory subordination pursuant to 11 U.S.C. § 510(b).

18.     Additionally, properly characterized, the claims of the Empery Securityholders are equity, not debt.  The transactions among the Debtor and the Empery Securityholders were little more than a scheme to allow Empery to acquire a controlling amount equity of the Debtor by relying on alleged, inevitable defaults under the SPA so that it could foreclose its alleged security interest on the Debtor's assets, exercise its warrants (granted under the SPA for a controlling interest in the Debtor) and acquire the Debtor for no additional consideration.  Approval of the poison pills would risk foreclosing the benefits from subordination or recharacterization, because the Final Order would provide Empery with an allowed claim that is not subordinated or recharacterized, require repayment of the claim first rather than last and require a sale rather than a reorganization to ensure Empery recovers on account of its disputed, senior debt.

### B.  The New York Litigation

19.     Among the poison pills in the Empery proposal are broad releases that would effectively release certain litigation pending in New York.  Nowhere does the Debtor explain these releases or even attempt to justify the releases pursuant to Fed. R. Bankr. P. 9019.  There is no justification for these releases, and as such, they should be stricken and the New York litigation should proceed unimpaired by the releases.

20.     The Silver Dec. (at ¶¶ 89-94) misstates the litigation among Empery, Mr. Drexler and WW pending in New York. In summary, two actions were filed.  First, the Debtor filed a complaint against Empery, claiming its proposed Article 9 sale was improper.  Empery responded by filing a separate complaint against the Debtor, Mr. Drexler and WW.  Empery's complaint asserted six (6) causes of action. The sole count (Count V) asserted against WW was a claim that a settlement agreement among the Debtor, Mr. Drexler and WW was a fraudulent transfer made

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

in violation of the New York Uniform Voidable Transactions Act ("UFTA").[5]  Under black letter law, this Debtor acquired exclusive standing to assert this claim after this bankruptcy case was filed.  Nevertheless, Empery continued the litigation on this claim after the commencement of this bankruptcy. *See* Weisenmiller Dec. [ECF No. 53] at ¶29 (referencing ongoing litigation); *see also* Enright Dec. at ¶19.

21.    Abruptly, and perhaps in response to the Debtor's admonition to Empery regarding ongoing litigation (Weisenmiller Dec., *supra*), Empery amended its complaint in New York.  Enright Dec. at ¶20.  The amended complaint replaced every claim in the original complaint against the Debtor, Mr. Drexler and WW, including Count V.  Instead, Empery replaced those claims with two entirely new claims for tortious interference against Mr. Drexler and WW, on the anomalous *non sequitur* that because the Debtor (allegedly) breached its agreements with Empery by entering into the Settlement Agreement, *ipsi dixit* that means Mr. Drexler and WW tortiously interfered with Empery's contractual relationships with the Debtor.  Enright Dec. at ¶20.

22.    Indeed, Mr. Drexler removed the case to federal court in New York. Enright Dec. at ¶ 21.  Empery seeks remand.  The matter is pending in the United States District Court for the Southern District of New York.

23.    Empery now seeks releases in the Final Order that impair the Debtor's claims against Empery in the New York litigation.  The justification for these releases is nowhere stated in the Motion or in the record.  Enright Dec. at ¶23.

## IV.    **ARGUMENTS AND AUTHORITIES**

### A.  *The Debtor Fails to Satisfy 11 U.S.C. §§364(c) and (d)*

24.    11 U.S.C. § 364(d)(1) permits a court to authorize post-petition financing on a "priming lien" basis only where two conditions are met: (1) the debtor is unable to obtain credit otherwise; and (2) there is adequate protection of existing liens.  11 U.S.C. § 364(d)(1); Ames Dep't Stores, 115 B.R. at 37; In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (stating

---

[5] The Settlement Agreement was not signed in New York and the settlement did not occur in New York at all.  Enright Dec. at ¶19. The New York courts lack personal jurisdiction over WW to hear and determine Empery's claims.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

that requests for postpetition financing must show the funds are "necessary to preserve the assets of the estate"); see also Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440 (9th Cir. 1985) (acknowledging these requirements and reversing a grant of DIP financing).  Once these two elements are established, the court must then consider whether the terms of the proposed financing are fair, reasonable, and adequate.  In re L.A. Dodgers LLC, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011) (denying post-petition financing) (cited by TBH19 LLC v. DBD Credit Funding LLC (In re TBH19, LLC), No. 2:19-bk-23823, 2021 U.S. Dist. LEXIS 15551 (C.D. Cal. Jan. 27, 2021) (finding that the bankruptcy court did not abuse its discretion in determining that DIP financing was not proper).

25.    Accordingly, Debtor bears the burden of proving that (a) the proposed postpetition financing is an exercise of the debtor's reasonable business judgment; (b) the financing is in the best interests of both the estate and its creditors; (c) the transaction is both (i) necessary to preserve estate assets and (ii) necessary and essential for the continued operation of the debtor's business; (d) the terms of the proposed transactions are fair and reasonable given the circumstances; and (e) the proposed facility was negotiated in good faith and at arm's length.  In re Farmland Indus., Inc., 294 B.R. at 881; In re Mid-State Raceway, Inc., 323 B.R. at 60.

26.    "In determining whether to approve such a transaction, the Court acts in its informed discretion."  Id.  "[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."  Id. at 39.  A proposed financing will not be approved where "the financing proposal is a clever way for the lender to gain control of the debtor's assets without going through the processes of a § 363(b) sale."  In re Belk Props., LLC, 421 B.R. 221, 225 (Bankr. N.D. Miss. 2009).

27.    Here, the Court's informed discretion should lead to denial of the Motion.  The proposed Empery financing is designed to get a sale done at the expense of the Debtor, its creditors and this estate.  In its quarterly 10Q report filed with the Securities and Exchange Commission, the Debtor stated that it had "incurred significant losses and experienced negative cash flows since inception."  Enright Dec. at ¶31.  The Debtor stated that as of March 31, 2022, the Debtor had "an

accumulated deficit of $211.8 million resulting from recurring losses from operations."  Enright Dec. at ¶31.  This "accumulated deficit" may translate into $211.8 million of net operating losses available as a tax attribute.  A sale jeopardizes this potential tax attribute.  The Empery DIP loan would be a dagger aimed at these tax attributes and would risk their destruction, all solely to benefit the Empery Securityholders and their disputed prepetition claims. These terms are neither fair nor reasonable and fail to preserve estate assets.

28.     Further, "[a] debtor's use of credit obtained through a priming lien must be likely to benefit the estate and improve the debtor's ability to reorganize." In re Olde Prairie Block Owner, LLC, 448 B.R. 482, 493 (Bankr. N.D. Ill.), aff'd, 460 B.R. 500 (N.D. Ill. 2011).  Rather than improve the Debtor's ability to reorganize, the Empery financing would destroy it.  The proceeds would not in good faith be used to improve the value of the Debtor or preserve the NOL's to facilitate a successful reorganization.  Instead, the proceeds would be used for a sale to benefit the Empery Securityholders.

29.     Since the WW proposed financing is on less onerous terms than is the Empery DIP loan (In re Olde Prairie Block Owner, LLC, supra), as allowance will benefit the Empery Securityholders and not the estate (In re Ames Dep't Stores, supra) and as the proposed financing "is a clever way for the lender to gain control of the debtor's assets without going through the processes of a § 363(b) sale" (In re Belk Props., LLC, supra), the Motion should be denied.  The Debtor and Empery should be forced to go back to the drawing board and present a "clean DIP" to the Court without the extraneous poison pills that lead only to liquidation of the Debtor, at the expense of every entity other than the Empery Securityholders.

**B.  The Motion Must Be Denied Because the Poison Pills Are Not Fair, Reasonable and Adequate, Given the Circumstances of the Borrower and the Empery Securityholders**

30.     In seeking approval of the Motion, the Debtor has the burden of proving that "[t]he terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (citations omitted); see, In re Farmland Indus., Inc., 294 B.R. at 881; In re Mid-State

14

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Raceway, Inc., 323 B.R. at 60..  For the reasons outlined above, the terms of the Empery DIP loan are unfair, unreasonable and inadequate.  The poison pill provisions violate the Debtor's "pervading obligation . . . the Bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."  In re Tenney Vill. Co., 104 B.R. 562, 569 (Bankr. D.N.H. 1989).

31.     This is not a case where the Debtor satisfies its burden by averring it must take whatever Empery offers because Empery is the only lender available.  Blanket waivers on rights to object to prepetition claims and liens (such as those sought to be imposed on creditors like WW) and releases (as the Debtor is giving to Empery) "have been the subject of several blistering opinions, which generally describe these waivers as violations of the debtor in possession's fiduciary duty to creditors."  3 Collier on Bankruptcy P 364.06 (16th 2022) (collecting cases).  Decisions refusing to approve DIP loans with roll-ups, cross-collateralization of postpetition assets to secure prepetition debt, releases, waivers of rights of creditors to object to a DIP lender's claims and liens, and similar offenses to the Bankruptcy Code – the poison pills in the Empery proposal - have rightly been denied.  See id. (collecting cases).

32.     In short, the Debtor cannot meet its burden of demonstrating that the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the Empery Securityholders.  Accordingly, the Motion must be denied.

33.     In response, the Debtor may argue that they exercised reasonable business judgment protected by the business judgment rule, arguing that the business judgment rule governs unless the WW can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent.  In re Los Angeles Dodgers LLC, 457 B.R. at 313.  This argument fails for at least two reasons.  First, the decision by the "board" was really made by one person named Paul Karr, who was the sole director of the Debtor at that time.  Declaration of Paul Karr [ECF No. 90] (the "Karr Dec.") at ¶10.  WW intends to conduct expedited discovery to determine if Mr. Karr acted properly or whether the circumstances exist overcome the presumption that the business judgment rule governs.  Id.

34. Second, the record is devoid of the evidence on which Mr. Karr made this decision. Mr. Karr states in a conclusory fashion that he believes seeking approval of the Empery loan "is an exercise of the Debtor's sound and reasonable business judgment." Karr Dec. at ¶10. But nowhere does the record provide the basis for this conclusory assertion, or the basis on which Mr. Karr decided the poison pills were not show-stoppers. The Court cannot find on this slim reed that the Debtor in fact exercised reasonable business judgment, so as to be protected by the business judgment rule, and that none of the four exceptions set forth above apply.

### C. Alternatively, WW Should Be Permitted to Propose a Chapter 11 Plan and the Court Should Terminate the Debtor's Exclusivity Period as to WW.

35. 11 U.S.C. § 1121(b) provides a limited exclusivity period in which only the Debtor may file a plan and solicit acceptances of a plan. However, 11 U.S.C. § 1121(d)(1) permits the Court "for cause" to reduce the exclusivity period. To determine whether cause exists, the engages in a fact-specific inquiry that "calls for a delicate exercise of judgment about which seasoned judges could differ." In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002). The "transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution." Id. at 453 (citing In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)).

36. Here the incontrovertible facts are that allowance of the Motion eliminates any person or entity from filing a third-party plan. WW and all creditors should not have their right to file a competing plan stripped away as Empery proposes. Accordingly, WW requests that exclusivity be terminated as set forth above, and that the Final DIP Order not include poison pills which would render such relief moot. Instead, if the Court is inclined to allow Empery to finance the Debtor on a final basis, the Court should approve, at most, the Alternative Empery Term Sheet to ensure that WW's rights, including its ability to formulate, propose and confirm a feasible plan, are preserved. The Alternative Empery Term Sheet ensures that Empery cannot use its DIP financing to keep things secret (by requiring disclosure to and consent from the "Consent Parties") and contains none of the poison pills that infect the Empery deal.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

WHEREFORE, WW prays the Court sustain this Objection and deny the Motion, alternatively, authorize at most a "clean" DIP financing proposal consistent with the Alternative Empery Term Sheet, terminate exclusivity as to WW as set forth above, and further grant WW such other and further relief to which it may be entitled.

DATED this 1st day of February, 2023.

**JEFFREY D. STERNKLAR LLC**

*/s/ Jeffrey D. Sternklar, Esq.*
Jeffrey D. Sternklar, Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 549561
101 Federal Street, Suite 1900
Boston, Massachusetts 02110
Telephone:     (617) 207-7800
Email:  jeffrey@sternklarlaw.com

-and-

**SHEA LARSEN**
James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Creditor White Winston Select Asset Funds, LLC*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

1.       On February 1, 2023, I served the following document(s): **OBJECTION OF CREDITOR WHITE WINSTON SELECT ASSET FUNDS, LLC TO APPROVAL OF DEBTOR IN POSSESSION FINANCING BY EMPERY TAX EFFICIENT, L.P. AND CROSS-MOTION TO TERMINATE THE DEBTOR'S EXCLUSIVE PERIODS UNDER 11 U.S.C. 1121**

2.       I served the above document(s) by the following means to the persons as listed below:

      ☒    a.    ECF System:

SAMUEL A. SCHWARTZ and BRYAN A. LINDSEY on behalf of Debtor MUSCLEPHARM CORPORATION
saschwartz@nvfirm.com, blindsey@nvfirm.com

WILLIAM NOALL and MARK M. WISENMILLER on behalf of Creditor EMPERY ASSET MANAGEMENT, LP
wnoall@gtg.legal, mweisenmiller@gtg.legal

OGONNA M. BROWN on behalf of Creditor PRESTIGE CAPITAL CORPORATION
obrown@lewisroca.com

JOHN D. FIERO, JASON H. ROSELL, and MATTHEW C. ZIRZOW on behalf of the OFFICIAL COMMITTEE OF UNSECURED CREDITORS
jfiero@pszjlaw.com, jrosell@pszjlaw.com, mzirzow@lzlawnv.com

TRACY M O'STEEN on behalf of interested party RYAN DREXLER
tosteen@carlyoncica.com

ROBERT T. STEWART on behalf of Creditor NUTRABLEND FOODS
rstewart@foley.com

      ☐    b.    United States mail, postage fully prepaid:

      ☐    c.    Personal Service:

I personally delivered the document(s) to the persons at these addresses:

      ☐    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

      ☐    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

      ☐    d.    By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

18

unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 1, 2023.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

19