John D. Fiero (*admitted pro hac vice*)
Jason H. Rosell (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA  94104
Tel: (415) 263-7000
E-mail:  jfiero@pszjlaw.com
              jrosell@pszjlaw.com

-and

Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
LARSON & ZIRZOW LLC
850 E. Bonneville Ave.
Las Vegas, NV 89101
Tel:  (702) 382-1170
Email:  mzirzow@lzlawnv.com
             zlarson@lzlawnv.com

[Proposed] Counsel to the Official
Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No. 22-14422-NMC<br><br>Chapter 11<br><br>**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING PRIMING LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**<br><br>**Related Docket Nos. 33, 74, 102, and 139** |

The Official Committee of Unsecured Creditors of MusclePharm Corporation (the "Committee") hereby submits this limited objection (the "Limited Objection") to the *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition*

DOCS_SF:108452.3

*Financing, (II) Granting Priming Liens and Administrative Expense Claims, (III) Authorizing the Debtor's Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 33] (the "Motion").[1]  In support of this Limited Objection, the Committee respectfully states as follows:

## LIMITED OBJECTION

The Debtor is in dire need of financing to restart its operations and restructure its balance sheet. Accordingly, the Committee does not generally object to the Debtor's request for postpetition financing. However, the postpetition financing currently proposed by the Debtor and Empery Tax Efficient, L.P. ("Empery") contains objectionable terms and conditions that must be improved upon.

On February 1, 2023, the Debtor filed the *Notice of Draft Loan Documents for Debtor-in-Possession Financing and Authorization for Use of Cash Collateral* [Docket No. 185] (the "Notice"), which attached current drafts of the *Debtor-In-Possession Notes Purchase and Security Agreement* (the "Note Purchase Agreement") and Debtor-In-Possession Factoring Purchase and Security Agreement (the "Factoring Agreement" and together with the Note Purchase Agreement, the "DIP Documents").[2] As set forth in the Notice, the Debtor and Empery are still negotiating the final forms of the Note Purchase Agreement and Factoring Agreement, including the budget. The Committee has raised several issues concerning the terms and conditions of the proposed financing and is in active negotiations with the Debtor and Empery to resolve those concerns.

The Committee is hopeful that the Debtor and Empery will be able to consensually resolve the Committee's issues prior to the final hearing on the Motion on February 9, 2023 (the "Final Hearing").

---

[1] Pursuant to that certain *Second Stipulation to Continue Briefing Deadlines* [Docket No. 189], the Committee's deadline to object to the Motion was extended to February 3, 2023.

[2] As of the filing of this Limited Objection, the Debtor has not filed a proposed form of final order approving the Motion (the "Final DIP Order"), nor has the Committee been provided a draft of the Final DIP Order. Accordingly, the Committee reserves all rights with respect to the Final DIP Order.

2

However, out of an abundance of caution, the Committee files this Limited Objection to reserve its rights to raise an objection at the Final Hearing and to disclose to all parties in interest the Committee's primary concerns. Attached hereto as Exhibit A is a table that sets forth the Committee's material issues with the current proposed postpetition financing between the Debtor and Empery.

Dated: February 6, 2023

LARSON & ZIRZOW, LLC

*/s/ Matthew C. Zirzow*
Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
850 E. Bonneville Ave.
Las Vegas, NV 89101
Tel: (702) 382-1170
Email: mzirzow@lzlawnv.com
         zlarson@lzlawnv.com

-and

PACHULSKI STANG ZIEHL & JONES LLP
John D. Fiero (*admitted pro hac vice*)
Jason H. Rosell (*admitted pro hac vice*)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Tel: (415) 263-7000
E-mail: jfiero@pszjlaw.com
         jrosell@pszjlaw.com

[Proposed] Counsel to the Official Committee of Unsecured Creditors

DOCS_SF:108452.3

# EXHIBIT A

## DIP Issues List

| No. | Proposed Term | Issue |
|---|---|---|
| 1. | <u>Roll-up</u>. The DIP Documents provide for a $2.5 million roll-up of prepetition debt. | The Committee does not object to the concept of a partial roll-up of prepetition debt. However, any roll-up should be subject to challenge during the Challenge Period to provide the Committee with an opportunity to contest the underlying validity of the prepetition debt. |
| 2. | <u>Reporting Concerning Factoring</u>. The DIP Documents do not provide for any reporting from the DIP Factoring Agent. | The Factoring Agreement is a key component of the Debtor's postpetition financing. Pursuant to the Factoring Agreement, the DIP Factoring Purchasers are purchasing the Debtor's accounts receivable with an 80% advance rate and have the right to put the purchased accounts receivable back to the Debtor if an account receivable is not collectible. At a minimum, the DIP Factoring Agent should be required to provide detailed weekly reporting regarding the purchased accounts receivable (*e.g.*, amount, payment terms, past due amount, etc.) so that parties in interest may monitor the estate's financial exposure. |
| 3. | <u>DIP Liens and Adequate Protection Liens</u>. The DIP Documents propose to grant liens on commercial tort claims and other unencumbered assets. | A preliminary review of Empery's loan documents and UCC filings indicate that Empery did not properly perfect its security interest in commercial tort claims. Accordingly, commercial tort claims and the proceeds thereof (*i.e.*, D&O claims) are a meaningful source of recovery for general unsecured creditors and should remain unencumbered. Also, the DIP Documents should clarify that the *proceeds* of avoidance actions are not subject to the DIP liens and adequate protection liens. |

DOCS_SF:108452.3

| No. | Proposed Term | Issue |
|---|---|---|
| 4. | <u>Prepetition Default Interest</u>.  The DIP Documents provide for the postpetition accrual of default interest on prepetition debt. | The allowance of postpetition default interest (or any interest) is premature under section 502(b) and 506(b) and should only be permitted (if at all) upon a showing that the applicable secured creditor is oversecured. |
| 5. | <u>Investigation Budget</u>.  The DIP Documents prohibit the use of any financing to be used to challenge the validity of the Prepetition Notes. | The inability to use the proceeds of the DIP financing to bring a challenge renders the Challenge Period meaningless.  The Committee requests a traditional investigation budget of approx. $75,000. |
| 6. | <u>Challenge Period</u>.  The DIP Documents provide for a challenge period of 60-days from the entry of the Second Interim Order. | There is no reason to expedite the Committee's investigation.  There is no sale process contemplated within the next 90 days (*i.e.*, no reason to validate the debt ahead of a credit bid).  Accordingly, the Committee requests that the challenge period be extended to 75-days from the entry of a <u>final</u> order approving the Motion. |
| 7. | <u>Reporting and Notices</u>.  The DIP Documents do not require the Debtor to provide copies of any reports or notices to the Committee. | The Committee should receive copies of all reports and notices that are sent to Empery. |
| 8. | <u>Releases</u>.  The DIP Documents provide fulsome and advance releases to the DIP lenders and prepetition secured lenders. | As an initial matter, it does not appear that the Debtor has undertaken any investigation of the potential claims against its prepetition lenders.  Accordingly, at a minimum, any proposed release should remain subject to challenge.  In addition, the advance release of the DIP lenders is premature and should instead be implemented through a plan. |
| 9. | <u>Indemnification</u>.  The DIP Documents provide for broad indemnification of the DIP lenders and prepetition secured lenders. | The indemnification is extremely broad and should be narrowed.  At a minimum, the estate should not be required to indemnify Empery for causes of action being pursued by White Winston and/or Ryan Drexler related to prepetition conduct. |
| 10. | <u>Acceptable Plan</u>.  The DIP Documents require the Debtor to file a plan that is "acceptable" to | The definition of "Acceptable Plan" should be modified to provide clarity on what is |

5

| No. | Proposed Term | Issue |
|---|---|---|
|  | Empery. An acceptable plan is defined as a plan that pays the DIP obligations in full and treats the Prepetition Secured Notes in a manner that is acceptable to Empery. | considered acceptable plan treatment of the Debtor's prepetition secured debt. As currently drafted, Empery effectively has a veto right over the plan. |
| 11. | <u>Budget</u>. | The Committee is in active discussions with the Debtor and Empery on a mutually acceptable form of budget that provides sufficient financing for the duration of this chapter 11 case. |