GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
MARK M. WEISENMILLER
Nevada Bar. No. 12128
Email: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Empery Tax Efficient, LP as
Agent and Collateral Agent for certain
Secured Noteholders*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Date: March 7, 2023<br>Time: 10:30 a.m. |

### EMPERY RESPONSE TO WHITE WINSTON OBJECTION
### TO DEBTOR'S PROPOSED FINAL DIP ORDER

Empery Tax Efficient, LP, in its capacity as collateral agent (in such capacity, "Empery") of the Secured Noteholders with respect to the Notes and as the interim provider of debtor in possession financing to MusclePharm Corporation (the "Debtor"),[1] by and through its counsel, Garman Turner Gordon LLP, hereby files its response (the "Response") to the *Objection of Creditor White Winston Select Asset Funds, LLC to Approval of Proposed Final DIP Order* [ECF No. 270] ("Objection"), filed by White Winston Select Asset Funds, LLC ("White Winston") on March 1, 2023, to Debtor's proposed *Final Order Regarding Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed. R. Bankr. P. 4001(B) and 4001(D): (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Granting Priming*

---

[1] Capitalized terms not defined herein shall be ascribed the definitions set forth in the declaration of Timothy Silver [ECF No. 52] ("Silver Declaration").

*Liens and Administrative Expense Claims; (III) Determining Adequate Protection; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (the "Proposed Final DIP Order").[2]

This Response is made and based upon the following Memorandum of Points and Authorities, the Silver Declaration, the papers and pleadings on file, judicial notice of which is respectfully requested pursuant to Federal Rule of Evidence 201, and such further evidence and argument that may be presented and considered by this Court at the hearing to settle the dispute regarding the Proposed Final DIP Order scheduled for March 7, 2023, at 10:30 a.m. ("Hearing").

**MEMORANDUM OF POINTS AND AUTHORITIES**
**I.**
**RESPONSE**

The Debtor, the Official Committee of Unsecured Creditors ("Committee"), Prestige Capital Corporation ("Prestige"), and Empery have all agreed that the Proposed Final DIP Order accurately reflects the consensual resolution of White Winston's Objection to and this Court's ruling at the final hearing (the "Final Hearing") on Debtor's *Emergency Motion for Entry of Interim and Final Orders: (i) Authorizing Debtor to Obtain Post-Petition Financing, (ii) Granting Priming Lines and Administrative Expense Claims, (iii) Authorizing the Debtor's use of Cash Collateral, (iv) Modifying the Automatic Stay, and (v) Granted Related Relief* [ECF No. 33] (the "Motion"). However, White Winston objects to certain terms of the Proposed Final DIP Order in order to renegotiate what it plainly agreed to prior to and on the record at the Final Hearing. For the reasons below, this Court should overrule White Winston's Objection and enter the Proposed Final DIP Order.

In the Objection, White Winston objects to the Proposed Final DIP Order on three grounds. First, White Winston objects that the Challenge Period (as defined in the Third Empery Term Sheet [ECF No. 213-1]) of White Winston is limited to any challenge "other than challenges and objections based upon the Debtor's or the Estate's claims." See Objection, p. 4. Second, White Winston objects to the March 9, 2023 deadline for it to file its challenge to the Allowed Claim (as

---

[2] The Proposed Final DIP Order is attached as Exhibit 2 to the *Ex Parte Motion for Order Shortening Time for Hearing on Form of Final DIP Financing Order* [ECF No. 265], filed by Debtor on February 28, 2023

defined in the Third Empery Term Sheet).  See Objection, pp. 5-6.  Third, White Winston objects to the Proposed Final DIP Order because it does not provide that the Third Empery Term Sheet (as modified by the representations put on the record at the Final Hearing) controls.  See Objection, p. 6.

On February 7, 2023, after considerable negotiations between the Debtor, the Committee and White Winston, the Debtor filed the Third Empery Term Sheet, which provided, with respect to the Challenge Period, the following:

> The Official Committee of Unsecured Creditors ("Committee") shall have until April 10, 2023 to investigate and challenge and otherwise object to the allowance of the Allowed Claim, ***and White Winston shall have until March 9, 2023 to investigate, challenge and otherwise object to the allowance of the Allowed Claim (other than challenges and objections based upon estate claims) (the "Challenge Period")***. To the extent the principal amount of the Allowed Claim is successfully challenged (such amount, the "Disallowed Claim") such that the Allowed Claim is less than the Roll-Up amount, then the Roll-Up amount shall be reduced by the amount of the Disallowed Claim such that the Roll-Up equals the Allowed Claim. The Committee may use up to $50,000 of the fees and costs of the Committee in the Budget to investigate, challenge, object to or contest the validity, security, perfection, priority, extent or enforceability of any amount due under, or the liens under the Prepetition Transaction Documents. The DIP Agent reserves its right to respond to any challenge raised by the Committee or White Winston.

See ECF No. 213-1, p. 26.  Thus, after negotiations between the parties, White Winston was afforded the opportunity to challenge the Allowed Claim in addition to the Committee, but White Winston could not bring a challenge to the Allowed Claim based upon an estate claim.

After the Third Empery Term Sheet was submitted to the Court, the Debtor, the Committee, White Winston, and Empery continued to negotiate as a result of the White Winston objection [ECF No. 186] and the Committee's Limited Objection [ECF No. 204].  Those negotiations resulted in certain agreed to clarifications being put on the record at the Final Hearing regarding the effect of a White Winston challenge to resolve the White Winston objection:

> MR. SCHWARTZ: … So, Your Honor, I'm happy to report that, with a lot of back and forth, we have an agreement in principal with respect to the DIP financing, which I believe is Item 1 on your calendar.
>
> My plan today was to put that agreement on the record; walk through what I think are some of the improved and finer points of the financing that's been negotiated since last we were in front of you; answer any questions the Court may

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

have; allow parties to make any statements they may need to make. And then, I think, Your Honor, the balance of your docket is fairly uncontroversial, what's left. So, if that pleases the Court, I would proceed in that fashion.

THE COURT: So it is a settlement with all parties then, all of -- I mean, I know White Winston filed an objection. The Committee had a limited objection. Is that resolved, with what you're going to tell me today?

MR. SCHWARTZ: Thank you, Your Honor. Yes. That is my understanding, as well, that the Committee's objection is resolved. The White Winston objection, with the representations on the record, will be withdrawn. And we will be able to proceed forward, Your Honor, with respect to the financing as proposed.

THE COURT: I really didn't expect that, but that's good news. I would like to hear that.

MR. SCHWARTZ: Thank you, Your Honor. I don't know that any of us did. I think I said to Mr. Sternklar last night that I was pretty sure a pig just flew by my window, but (audio interference) to confirm it first before we said that for sure.

So, Your Honor, so the -- a key part of the financing that's proposed is the ability of the Committee, as well as White Winston, to propose or to file challenges to that financing. ***And so the term sheet that's in front of you has a carveout of 60 days for the Committee to file its challenge, <u>and 30 days for White Winston to file a challenge</u>.*** And it would be to the prepetition claims, Your Honor. Certainly no one is raising a challenge to the post-petition financing. The Court will be approving. **However, if there is a challenge to the prepetition claims, want to be clear what that effect will have as the case goes forward. And so we'll put those in the record for you, Your Honor.**

If -- and I think, Your Honor, the Committee's challenge rights and the effect of that are subsumed in the term sheet and the documents. I don't think there's any dispute about what happens if the term sheet -- or, I'm sorry -- if the Committee files a challenge. But if White Winston files a challenge or an objection to Empery's prepetition claim: number one, that prepetition claim would -- shall not be deemed allowed, to the extent objected to, absent Empery obtaining a further order of the Court, or unless the objection is withdrawn. So, if White Winston files an objection, Your Honor, to the prepetition claim, to the extent of that objection -- they may not object to everything -- to the extent of that objection, then Empery's claim would not be allowed, unless there's a further order of the Court.

Two, if White Winston objects to Empery's prepetition claim, Empery shall not be entitled to credit bid that prepetition claim. Again, to the extent objected to, absent a final order of the Court resolving it -- or some (audio interference) I should say -- further order of the Court, not final order, or unless the objection is withdrawn.

Three, if White Winston objects to the Empery prepetition claim and a sale

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

of the debtor's assets occurs before the claim is resolved, the proceeds will be held by the estate, to the extent of the objection, absent Empery obtaining further order of the bankruptcy court, or unless the objection is withdrawn.

And last, the releases that are contained in the term sheet, which are intended to be incorporated into the DIP loan documents, are not a defense to a claim objection brought by White Winston in the bankruptcy court. Again, if such objection is brought during the challenge period, as defined in the term sheet -- so White Winston doesn't want to hear Empery say, well, that's nice that you objected, but we have releases.

**So, generally speaking, Your Honor, the purpose of that language is to make clear that if White Winston objects -- and they have under the term sheet presently until March 9th to do that --** they object, and there's a sale that comes along -- I know the Court was concerned about the timing of when a sale may occur -- the poison pills you've heard about, I think those issues -- the purpose of the language from the debtor's perspective is to preserve the parties' rights, that while a sale was going forward or some other matter, absent further order of the Court or a withdrawal of the objection, the parties would be in front of you and the Court would resolve issues related to credit bidding, to payment of claims, all those matters, which I think, Your Honor, frankly, is the law.

So we were happy to get that accommodation done and there's been quite a bit up and back. So, Your Honor, a couple of points of clarification to make sure it's clear. The parties agree that any money that would be rolled up is part of the prepetition claim. To the extent there's an objection to the prepetition claim, that would -- could have an impact on the rollup, again, to the extent of the objection and subject to further order of the Court.

The DIP documents, as I highlighted earlier, will be consistent with these representations. And Your Honor – and the parties have agreed these representations and agreements will be incorporated into the final order approving DIP financing, and everyone's rights under Rule 9021 are preserved, of course.

So, with that as a backdrop, Your Honor, and subject to maybe what perhaps Mr. Garman, Mr. Sternklar, or Mr. Fiero or Mr. Rosell -- whichever is going to speak for the Committee, wish to say, that's the crux of the agreement, Your Honor, that allows us to resolve or withdraw objections today; and then I can go forward maybe into a little more of the meat of the revised term sheet.

Final Hearing Transcript [ECF No. 270], Exhibit B, pp. 7-11 (emphasis added).

After Debtor's counsel highlighted the negotiated provisions that clarified the effect of a White Winston challenge that was added to the Third Empery Term Sheet, the Court allowed White Winston's counsel an opportunity to respond to ensure it was withdrawing its objection:

THE COURT: All right. Yes, Mr. Sternklar. You want to respond?

> **MR. STERNKLAR: Thank you, Your Honor. I think Mr. Schwartz accurately set forth the terms of our deal in principal.** We obviously still have always believed our proposal was superior, but the debtor clearly is going in a different direction, and we think that this proposal eliminates our principal concerns for what we call the poison pills.
>
> Your Honor, just to emphasize some of the points I believe Mr. Schwartz noted, the proposed order will say that essentially notwithstanding anything in the term sheet, these provisions will govern the scope of the authorization the Court is going to be asked to give.
>
> We may need to come back to you if we find we have disputes about the form of order. We hope we can avoid that. It wasn't fun the last time, and no one thinks it's fun this time. But you know, I don't want to be confronted with an order that we have no input into. So, if that happens and we're back in front of you, or for any reason we're back in front of you, I particularly -- as someone who doesn't practice regularly in your court, if there's something in particular you want done, we'd like to be sure we do it.
>
> **Similarly, we may be back in front of you with respect to the timing of March 9th.** We're probably going to need more time than that. If we can't get it by agreement, we expect we'll be back in front of you on shortened notice seeking more timing than March 9th.
>
> And of lesser importance, but still things that I think need to be done, there were -- I assume Mr. Schwartz will get to this -- a couple other things he was going to clarify. Particularly, there's a reference in the term sheet to Section 541 claims, and I for one have no earthly idea what that refers to. And Mr. Schwartz was going to clarify that -- what that meant, on the record.
>
> And in terms of timing, Your Honor, on a more personal matter, I had a longstanding family vacation scheduled beginning tomorrow that will keep me out of the office until Wednesday, so I'd be grateful for any accommodations Your Honor can give me, so I don't have to interrupt a family vacation.
>
> I think that's largely it, Your Honor. Thank you. And I'll answer any questions you have.

Final Hearing Transcript [ECF No. 270], Exhibit B, pp. 11-13 (emphasis added).

Therefore, it is clear from the Third Empery Term Sheet and record at the Final Hearing that: (i) White Winston was not granted standing to act on behalf of the estate when objecting to the Empery Allowed Claim; and (ii) the deadline for a White Winston challenge is March 9, 2023. It is irrelevant and should be of no concern to this Court that White Winston is having second

thoughts about its agreement, contends it did not understand what it agreed to, or failed to timely conduct discovery to challenge the Allowed Claim during its agreed to Challenge Period.[3]  The Court and the parties relied upon White Winston's representations at the Final Hearing.  Moreover, the arguments and opinions of Todd Enright set forth in the Enright Declaration [ECF No. 271] do not overcome the words of the Third Empery Term Sheet and the record of the Final Hearing.

Further, there is no basis for White Winston's assertion that it should be afforded standing to bring estate claims, particularly where it agreed to the clear language of the Third Empery Term Sheet and the Committee Challenge Period is not limited.  Parties in interest have standing to object to claims under Section 502(a).  However, the basis to bring such claim objections may be different.  The Debtor does not believe White Winston's alleged unsecured claim is legitimate. See Rubin Declaration ECF No. 214], ¶ 10 (providing that "Based on the Debtor's analysis, White Winston's purported claim is not consistent with the Debtor's books and records. Further, the claim may be subject to subordination or recharacterization. Conversely, the Debtor estimates that Empery's claims are not less than $12.84M, as allowed in the Third Empery Term Sheet."). Furthermore, the Debtor does not believe the estate has any viable claims against Empery as to the Allowed Claim and has released Empery.  See Third Empery Term Sheet, at Releases. Notwithstanding, White Winston has standing as a party in interest to pursue its own claim objection.

White Winston also objects to the Proposed Final DIP Order because it does not provide that the Third Empery Term Sheet (as modified by the representations put on the record at the Final Hearing) controls.  See Objection, p. 6.  As is standard in orders authorizing DIP financing, the Proposed Final DIP Order provides that:

---

[3] White Winston's complaint that it does not have sufficient time to object to the Allowed Claim during its Challenge Period is belied by the fact that it failed to timely serve any discovery upon Empery. White Winston stated at the second interim hearing held on the Motion on January 13, 2023, that it would be conducting discovery for the Final Hearing but failed to serve any discovery upon Empery before the Final Hearing. Then it waited until February 17, 2023, to notice a subpoena for documents and a 2004 exam of Empery but failed to properly serve the subpoena or provide a list of topics for the 2004 exam as required by FRCP 30(b)(6). Notwithstanding these deficiencies, Empery timely complied with the document requests on February 3, 2023, the date that White Winston demanded documents be produced. Thus, if the March 9, 2023 agreed to deadline for White Winston to file a challenge to the Allowed Claim is insufficient, White Winston is to blame.

38. **Final Order Controlling; Failure to Specify Provisions**. In the event of a material conflict between this Final Order and the Loan Documents, the Final Order shall control, provided that there shall not be deemed a material conflict as a result of the Loan Documents including additional terms and provisions from this Final Order, and the failure specifically to include any particular provisions of the Loan Documents in this Final Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, and the Debtor and the Lender, that this Final Order and the Loan Documents be read together and consistent with one another, and that any paperwork issued pursuant to and in conformance therewith, are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Final Order.

See Proposed Final DIP Order, ¶ 38. When the Proposed Final DIP Order was circulated, the DIP Note Agreement and DIP Factoring Agreement (together, the "Loan Documents") were also circulated for comment and approval because White Winston, the Committee, and Prestige requested the opportunity to review the Loan Documents to ensure they were consistent with the Third Empery Term Sheet, the negotiated clarifying terms put on the record at the Final Hearing, and the Proposed Final DIP Order. The Debtor, the Committee, Prestige, and Empery reviewed the Loan Documents, some parties provided comments or revisions to the Loan Documents, and the Debtor, the Committee, Prestige, and Empery approved the Loan Documents as being consistent with the Third Empery Term Sheet, Proposed Final DIP Order, and the record at the Final Hearing.

White Winston, on the other hand, refused to even review or provide comments to the Loan Documents. Although White Winston demands that the Loan Documents be consistent with the Third Empery Term Sheet, the record at the Final Hearing, and the Proposed Final DIP Order, it has provided zero examples of any inconsistency, let alone a material inconsistency. Instead, it has suggested revisions to the Proposed Final DIP Order that are designed to cause confusion and future litigation. As a result, the parties refused White Winston's revisions to the Proposed Final DIP Order in this regard and this Court should do the same.

Consequently, this Court should overrule the Objection and enter the Proposed Final DIP Order so Debtor can be provided adequate funding to and focus on kickstarting its operations, making sales, manufacturing product, generating accounts receivable to be factored, and

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

maintaining the value of its assets.

## II.
## CONCLUSION

WHEREFORE, Empery requests that the Court overrule the White Winston Objection, and enter the Proposed Final DIP Order, and grant further relief as the Court deems just.

DATED this 6th day of March, 2023.

                                             GARMAN TURNER GORDON LLP

                                             */s/ Mark M. Weisenmiller*
                                             GREGORY E. GARMAN, ESQ.
                                             WILLIAM M. NOALL, ESQ.
                                             MARK M. WEISENMILLER, ESQ.
                                             7251 Amigo Street, Suite 210
                                             Las Vegas, Nevada 89119
                                             *Attorneys for Empery Tax Efficient, LP as Agent and Collateral Agent for certain Secured Noteholders*