**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:     (702) 685-4444
Facsimile:     (725) 220-4360
Email: ccarlyon@carlyoncica.com
          dcica@carlyoncica.com
          tosteen@carlyoncica.com

**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:     (608) 630-8990
Facsimile:     (608) 630-8991
Email: mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

*Left margin:* **CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No.  BK-22-14422-NMC |
|---|---|
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | **MOTION TO PARTIALLY QUASH RULE 2004 SUBPOENA DIRECTED TO RYAN DREXLER OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER** |
| | Hearing Date:  OST Requested
Hearing Time: OST Requested |

Creditor, equity holder, and interested party, Ryan Drexler ("Movant" or "Drexler"), through his undersigned Nevada counsel, the law firm of Carlyon Cica Chtd., and co-counsel Steinhilber Swanson LLP, hereby respectfully requests that the Court partially quash the Rule 2004 subpoena dated March 3, 2023 (ECF No. 278) directed to Drexler by Empery Tax Efficient LP ("Empery"), or in the alternative seeks entry of a protective order (the "Motion").

1    This Motion is made and based upon the following points and authorities, Bankruptcy

2    Rule 2004, Civil Rule[1] 26, made applicable to bankruptcy proceedings pursuant to Bankruptcy

3    Rule 7026, the pleadings, papers, and records on file in this case, of which judicial notice is

4    respectfully requested pursuant to FRE 201, the Declaration of Michael Richman (the "Richman

5    Decl."), the exhibits attached hereto, and any argument entertained by the Court at the time of

6    the hearing on the Motion.

7    Respectfully submitted this 10th day of March 2023.

8                                         **CARLYON CICA, CHTD.**

9                                         */s/ Dawn M. Cica, Esq.*
10                                        CANDACE C. CARLYON, ESQ.
                                          Nevada Bar No. 2666
11                                        DAWN M. CICA, ESQ.
                                          Nevada Bar No. 4565
12                                        TRACY M. O'STEEN, ESQ.
                                          Nevada Bar No. 10949
13                                        265 E. Warm Springs Road, Suite 107
                                          Las Vegas, NV 89119
14                                        Telephone:    (702) 685-4444
                                          Facsimile:    (725) 220-4360
15                                        ccarlyon@carlyoncica.com
                                          dcica@carlyoncica.com
16                                        tosteen@carlyoncica.com

17                                        **STEINHILBER SWANSON LLP**
                                          MICHAEL P. RICHMAN, ESQ.
18                                        *Admitted Pro Hac Vice*
                                          122 W. Washington Ave., Suite 850
19                                        Madison, WI 53703
                                          Telephone:    (608) 630-8990
20                                        Facsimile:    (608) 630-8991
                                          Email:mrichman@steinhilberswanson.com

21                                        *Counsel for Ryan Drexler*

22

23    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[1] Unless otherwise indicated, all references to a "Section" or a "Chapter" are to Title 11 of the
24    United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). "Bankruptcy
       Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "Local
25    Rule" references are to the Local Rules of Bankruptcy Practice for the United States District
       Court for the District of Nevada.  "Civil Rule" references are to the Federal Rules of Civil
26    Procedure.  All references to "ECF No." are to the number assigned to the documents filed in
       the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of
27    court.

28

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On March 3, 2023, Empery Tax Efficient, LP ("Empery") issued a subpoena to Drexler containing twenty-five separately numbered requests for production. The subpoena requires that Drexler respond to the requests by March 17, 2023 (just two weeks from the date of service), and then sit for a deposition on March 27, 2023. Drexler does not oppose approximately half of Empery's requests and will act in good faith to produce responsive documents in a reasonable time.[2] However, it is important to note that the use Bankruptcy Rule 2004 by one creditor against another creditor when, as here, both are involved in out of Bankruptcy Court litigation is facially improper and, as a party to litigation, Drexler will be entitled to 30 days to respond to requests for production. Furthermore, a substantial number of Empery's requests relate directly to and are inextricably tied to pending non-bankruptcy litigation that Empery commenced against Drexler before the Honorable Victor Marrero in the United States District Court for the Southern District of New York,[3] and a subsequent lawsuit that Drexler commenced against Empery before the Honorable Nancy Allf in the District Court for Clark County, Nevada (the "Related Cases").[4] The Related Cases are active and subject to discovery rules and the supervision of their respective

---

[2] Drexler has no staff or assistance to search documents, computer files, emails, and texts that are in his possession, custody and control, as he is not the custodian of records for the Debtor. In addition, because attorney-client privilege and work product protection are implicated in many of the requests, the documents must be reviewed by counsel before they are produced. Additionally, Drexler's lead litigation counsel is out of the country from March 9 – 19. Richman Decl. ¶3.  Thus, it is practically impossible for Drexler to produce documents within the time unilaterally established by Empery's subpoena. Drexler's counsel provided this information to Empery's counsel and requested an extension for document production to April 7, and to reschedule the deposition to April 28 which requests were denied by Empery's counsel in correspondence sent at the end of the day on March 9th. Richman Decl. ¶4. There is nothing in the record to indicate why any of the discovery sought from Drexler should be considered urgent and otherwise requiring such a short time for compliance.

[3] *See Empery Tax Efficient, LP v. MusclePharm Corporation et al.*, Case No. 23-cv-74-VM (S.D.N.Y.). Empery originally commenced this case in the Supreme Court for New York, New York County. After the Debtor filed its petition for relief, Drexler exercised his right under 28 U.S.C. § 1452(a) to remove the New York Case to federal court.

[4] *See Drexler v. Empery Tax Efficient, LP*, Case No. A-23-865375-C (Clark Cty. Dist. Ct.).

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

1    courts. Drexler submits that the primary purpose of Empery's requests is to improperly attempt
2    to end-run the applicable discovery rules, protections and processes, and judicial oversight by
3    the presiding judges in the Related Cases. Any connection between those requests and this
4    Chapter 11 Case (and Bankruptcy Rule 2004) is largely an accident predicated on the fact that
5    Drexler previously was the Debtor's CEO.

6        It is also clear that Empery's motives in seeking such discovery on an expedited basis is
7    not linked to an examination of the Debtor or the administration of this estate, but instead is in
8    furtherance of scorched earth tactics to further its non-bankruptcy litigation with Drexler. As
9    relevant background, Empery commenced litigation against Drexler (and the Debtor and White
10   Winston) on December 14, 2022, in the New York Supreme Court for New York County. In that
11   case, a day before a UCC Article 9 sale of the Debtor's valuable intellectual property that Empery
12   wished to conduct, Empery successfully sought to enjoin the parties from entering into a
13   settlement agreement by obtaining a temporary restraining order ("TRO") which enjoined the
14   consummation of that settlement agreement and the disposal of the Debtor's assets. The TRO
15   did not (and could not have) enjoin the filing of a chapter 11 petition or any proposal for DIP
16   financing in a chapter 11 case. The following day, MusclePharm filed its petition for relief here
17   in order to stay Empery's Article 9 sale. Empery responded by seeking contempt against Drexler
18   and White Winston for purportedly violating the TRO by allegedly organizing the bankruptcy
19   filing and somehow consummating the settlement agreement in violation the TRO. This high
20   level of acrimony between Empery and Drexler animates the alleged urgency, broad scope, and
21   general two-party discovery requests in the subpoena, and can be tied directly to allegations
22   made in the pending non-bankruptcy Related Cases.

23       Other subpoena demands are outside the permissible scope of Bankruptcy Rule 2004,
24   which requires that the examination "relate *only* to the acts, conduct, or property or to the
25   liabilities and financial condition of the debtor, or to any matter which may affect the
26   administration of the debtor's estate." Fed. R. Bankr. P. 2004(b) (emphasis added). There are
27   also requests that are unduly burdensome because they seek to impose on Drexler the burden of
28

(a) gathering public record documents that Empery could easily obtain itself, and (b) searching for and producing documents and information that are likely within the possession, custody, and control of the Debtor (and therefore easily obtained from the Debtor). Where, as here, Drexler resigned as CEO and a member of the Debtor's board of directors in early January 2023, it makes no sense to require that he provide such discovery before exhausting discovery from the Debtor itself. Drexler is not a custodian of the Debtor's records.

Tellingly, apart from the obvious hope to get discovery for use in non-bankruptcy litigation and otherwise retaliate against and harass Drexler for having foiled the Article 9 auction by filing this bankruptcy case, there is no apparent reason why Empery requires discovery from Drexler right now for any chapter 11 reason. The Bar Date has yet to pass, the first exclusive period has not yet expired, there are no plan negotiations taking place, the extent to which there will be anything of distributable value for creditors is not yet known, and significant time remains for the development of estate causes of action.

In sum, Empery's subpoena is in substantial part an improper use of Bankruptcy Rule 2004, and for the reasons discussed herein, the Court should partially quash the subpoena or, in the alternative, enter a protective order that limits the scope of Empery's discovery and safeguards Drexler from further harassment from Empery.

## II.    RELEVANT BACKGROUND

1.    Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition") on December 15, 2022 (the "Petition Date") commencing the above captioned case (the "Chapter 11 Case"). *See* ECF No. 1.

2.    On January 4, 2023, the Office of the United States Trustee (the "Trustee") filed its notice of Appointment of Official Committee of Unsecured Creditors pursuant to Section 1102(a) of the Bankruptcy Code. *See* ECF No. 49. On February 21, 2023, the Trustee filed an Amended Notice of Appointment of Official Committee of Unsecured Creditors. *See* ECF No. 245.

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

3.      On February 17, 2023, Empery filed its *Ex Parte Application for Examination of Ryan Drexler pursuant to Bankruptcy Rule 2004* [ECF No. 235] (the "2004 Application").   The 2004 Application states that the "requested examination relates to matters that are within the permitted scope of Rule 2004, including Debtor's assets, liabilities, conduct, and property."  *See* 2004 Application at 2:5-7.   As shown above, and discussed more fully below, substantial portions of the subpoena do not appear to have anything to do with the Debtor's assets, liabilities, conduct, and property. The 2004 Application further states that the examination will take place on a date that is after March 6, 2023.

4.      On February 21, 2023, the clerk of court signed and entered the Order Granting 2004 Application (the "2004 Order").  *See* ECF No. 237.

5.      On March 3, 2023, Empery served upon Drexler a *Subpoena in a Case Under the Bankruptcy Code for an Examination and the Production of Documents pursuant to Fed. R. Bankr. P. 2004* (the "Empery Subpoena"), which included a copy of the 2004 Order.  A true and correct copy of the Subpoena is attached hereto as **Exhibit 1**.

6.      Debtor's schedules indicate that Empery holds a secured claim in the amount of $12,840,000; and that Drexler holds a secured claim in the amount of $10,872,081. *See* ECF No. 176.  Drexler also owns 16,879,253 certificate shares, representing 49.14% of the total outstanding shares. *See id.* at 117. Drexler has not yet filed proofs of claim or interests, but is actively working with counsel in order to determine his assertable claims and interests by the Bar Date.

7.      Debtor, Drexler, and Empery are parties to certain agreements which have resulted in non-bankruptcy litigation against Drexler currently pending in the United States District Court, Southern District of New York, Case No. 1:23-cv-00074-VM (the "New York Litigation").  Further, Drexler has sued Empery in the Eighth Judicial District Court for Clark County, Nevada as Case No. A-23-865375 (the "Nevada Litigation", and collectively with the New York Litigation, the "Non-Bankruptcy Litigation").

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

8. Empery sought in the New York Litigation to restrain the consummation of a settlement agreement dated December 5, 2022 (the "Settlement Agreement") among the Debtor; White Winston Select Asset Funds, LLC; and White Winston Select Asset Fund Series Fund MP-18, LLC (collectively, "White Winston"), and Drexler that resolved pre-existing litigation among the parties and encompassed a proposed debt reorganization that would have allowed MusclePharm (the "Debtor") to avoid bankruptcy. Empery also sought damages from White Winston and Drexler for allegedly harming Empery's rights by executing and allegedly consummating the Settlement Agreement.

9. Drexler commenced the Nevada Litigation based on Empery's concoction of defaults in its loan agreements with Debtor and otherwise taking extreme and unwarranted actions that harmed Drexler's interests by driving the Debtor into bankruptcy. Drexler alleges causes of action against Empery for intentional interference with his contractual relations, fraud, and negligent misrepresentation that caused him damages.

10. On March 8, 2023, counsel for both Drexler and Empery met and conferred in good faith to resolve this dispute. The parties reached an agreement on two requests for production (Nos. 8 and 23[5]), but did not reach an agreement as to the remaining requests. *See* Richman Decl. ¶13. Consequently, Drexler is seeking to partially quash the Empery Subpoena or, in the alternative, requesting a protective order from this Court.

### III. JURISDICTION

This is a "core" matter pursuant to 28 USC §157(b)(2)(a). Pursuant to Local Rule 9014.2(a), Movant consents to the entry of final orders by the Bankruptcy Court.

---

[5] The parties agreed that Request No. 8, which seeks "all documents and communications, …, relating to or referencing any criminal or civil investigation, criminal charges or indictments, federal and state securities law investigations, claims or charges, sanctions or civil contempt orders or judgments involving or against [Drexler], including, but not limited to, any of [Drexler's] Affiliates and Insiders," would be limited to matters relating to the Debtor. The parties also agreed that Request No. 23, which seeks "all documents and communications, …, evidencing, referring, or relating to [Drexler's] appointment or election as an officer or director of Debtor, as well as [Drexler's] resignation or reappointment as officer or director" should be limited to documents and communications from January 1, 2021, to the present.

1

## IV.    SPECIFIC OBJECTIONS

2

**A.    Requests for Production Relating to and Inextricably Tied to the Non-Bankruptcy Litigation**

3

4    The Empery Subpoena contains seven requests that directly relate to pending litigation

5    between Drexler and Empery; specifically:

6    REQUEST FOR PRODUCTION NO. 2: Please produce all documents and communications, including emails and text messages, related to or referencing White

7    Winston Select Asset Funds, LLC's ("White Winston") claims for relief or causes of action alleged or brought against You or the Debtor from 2018 through the present,

8    whether resolved or unresolved.

9    REQUEST FOR PRODUCTION NO. 3: Please produce all documents and communications, including emails and text messages, in Your possession, custody, and

10    control related to or referencing Empery or the Secured Noteholders from August 2020

11    through the present.

12    REQUEST FOR PRODUCTION NO. 4: Please produce all communications, including emails and text messages, between or among You and White Winston, including but

13    not limited to those related to or referencing the Settlement Agreement, the UCC Sale, the Chapter 11 Case, White Winston's debtor-in-possession financing proposals, or

14    Empery's debtor-in-possession financing proposals.

15    REQUEST FOR PRODUCTION NO. 5: Please produce all communications. including emails and text messages, between or among You and the Debtor's board of directors

16    or any member of the Debtor's board of directors, at any time, related to or referencing the Settlement Agreement, the UCC Sale, the Chapter 11 Case, White Winston's

17    debtor-in-possession financing proposals, or Empery's debtor-in-possession financing proposals.

18    REQUEST FOR PRODUCTION NO. 14: Please produce all documents and

19    communications including emails and text messages, related to any agreement that refers or relates to Empery, Debtor, White Winston, or any claim for relief or cause of

20    action held by You.

21    REQUEST FOR PRODUCTION NO. 18: Please produce all communications, including emails and text messages, in Your possession, custody or control where

22    Sabina Rizvi was also a party from January 1, 2022 to present.

23    REQUEST FOR PRODUCTION NO. 19: Please produce all documents and communications, including emails and text messages, related to any performance

24    reviews of Sabina Rizvi, from January 1, 2022 to present.

25    Aside from being broad, unduly burdensome, and not reasonably calculated to lead to

26    any evidence otherwise discoverable under Bankruptcy Rule 2004, five of these seven requests

27    (Nos. 2, 3, 4, 5, 14) are directly related to the pending litigation before Judge Marrero in New

28

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

York where Empery asserts that Drexler (and White Winston) tortiously interfered with its loan agreements and the UCC Article 9 sale by consummating the Settlement Agreement and allegedly causing the Debtor to commence the Chapter 11 Case. Richman Decl. ¶6, Ex. A (Am. Compl. ¶¶ 71–86). Importantly, in the New York Litigation, Empery filed a motion for contempt based on what it alleges were Drexler and White Winston's role in facilitating the commencement of this Chapter 11 Case. Specifically, Empery alleges in its contempt motion that Drexler and White Winston violated a temporary restraining order entered in the New York Litigation by proposing DIP financing in this case. Richman Decl. ¶ 7, Ex. B (MOL at 8–12). Empery's supporting memorandum of law states: "[W]hile White Winston certainly has the right to make DIP financing proposals, if its proposal disposes of MusclePharm's assets, it runs afoul of the Temporary Restraining Order and White Winston and Drexler must be held accountable to the Secured Noteholders for any damage that such proposal causes." *Id.* (MOL at 15). (Of course, a DIP financing proposal cannot "dispose" of Debtor assets. That may only be done under an appropriate section 363 motion approved by this Court.)

Based on the agreement of the parties, Empery's contempt motion will be litigated after Judge Marrero adjudicates Empery's motion for remand. *Id.* ¶¶ 9-10, Exs. C & D. Notably, Empery has requested expedited discovery on its motion for contempt, to which Drexler and White Winston have objected. As Empery informed Judge Marrero in a January 17, 2023 letter, "Empery intends to include, and Defendants intend to oppose, in their pre-motion letters, a request that, should the Court deny the motion to remand, it grant Empery very limited expedited discovery on its contempt motion." *Id.* That same day, Judge Marrero issued an order providing, in relevant part, that "[t]he Court will not take further action regarding [Empery's] request for limited expedited discovery on its contempt motion until the motion for remand is decided." *Id.* ¶ 11, Ex. E. Judge Marrero still has Empery's discovery requests *sub judice*. Instead of waiting for Judge Marrero's ruling, Empery is blatantly ignoring or attempting to evade his authority to manage his docket and oversee his cases.

The remaining two requests (Nos. 18 and 19) relate to pending state court litigation in Nevada where Drexler has alleged that against Empery intentionally interfered with his contractual relations, engaged in fraud, and made negligent misrepresentation. A key portion of Drexler's allegations relate to Ms. Sabina Rizvi's relationship with Empery and Empery's control over her actions as the CFO of MusclePharm. Richman Decl. ¶ 14 (Compl. ¶¶ 26, 27, 31, 35, 36). While these matters may well be relevant to inquiries the Debtor or Committee may have of Empery in investigating estate causes of action, this request by Empery is simply another attempt to inappropriately obtain discovery relating to the Nevada Litigation and to otherwise evade the Nevada Rules of Civil Procedure, or to preempt the Debtor and Committee's investigation of Empery's prepetition conduct in this Court.

**B.    Discovery Demands Improper under Bankruptcy Rule 2004.**

The Empery Subpoena also contains five requests that are otherwise improper under Bankruptcy Rule 2004. Request No. 1 provides:

> REQUEST FOR PRODUCTION NO. 1: Please produce all complaints, motions under Rules 12 or 56 of the Federal Rules of Civil Procedure or any dispositive motions under applicable state rules of civil procedure, and all dispositive orders and judgments filed or docketed in any action or proceeding involving or related to You and the Debtor, or its Affiliates and Insiders, including but not limited to the Lawsuits.

This request is overbroad and unduly burdensome. Beyond that, the documents responsive to this request are all public records which Empery can obtain itself. To that end, the Debtor has already included a list of all litigation to which the Debtor has been a party. *See* ECF No. 176 at 87–114.

In Request No. 12, Empery seeks all documents relating to the payment of Drexler's counsel:

> REQUEST FOR PRODUCTION NO. 12: Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to any of payment of funds, by any third-party, to counsel representing You, whether solely or in conjunction with another person or entity, since December 2021.

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

This request has no facial applicability to the Debtor or its acts, conduct, property, liabilities, or financial condition, and does not appear to concern the administration of the Debtor's estate. The request does not refer to the Debtor; instead, it focuses on how Drexler paid his *personal* legal bills.

In Request No. 13, Empery seeks information relating to Drexler's unfiled claim against the Debtor's estate:

> REQUEST FOR PRODUCTION NO. 13: Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to any claim, as defined in 11 USC 101(5), against Debtor possessed or acquired by You, whether asserted or unasserted, contingent, liquidated, disputed or undisputed.

This request is premature. Drexler is currently working with his counsel to analyze and determine what claims he might have against the Debtor's bankruptcy estate. Under these circumstances, Drexler is unable to produce documents and communications "evidencing, referring, or relating to" claims he has not yet determined (with the advice of his counsel) should be asserted. This request will be timely after Drexler has determined his claims and interests and filed proofs of claims and interests with the Court.

Request Nos. 24 and 25 relate to Drexler's alleged communications with news outlets, private investigators, or public relations firms:

> REQUEST FOR PRODUCTION NO. 24: Please produce all documents and communications, including emails and text messages with the New York Post or any other news outlet related to Debtor or Empery, in any way, since January 1, 2022.

> REQUEST FOR PRODUCTION NO. 25: Please produce all documents and communications, including emails and text messages with any private investigators or public relations firms related to Debtor or Empery, in any way, since January 1, 2022.

These requests clearly have nothing to do with the Debtor or Bankruptcy Rule 2004. The requested documents have no relation to the acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's bankruptcy estate. They do not even relate to information that was published. It thus appears that this is yet another two-party fishing expedition unrelated to the Debtor, serving only

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

to enable Empery to run its own investigation of claims it might assert against Drexler. This is not discovery that Rule 2004 was intended to permit, and it should not be accommodated.

## V.    LEGAL ARGUMENT

**A.    The 2004 Order and Subpoena Should be Partially Quashed as Inappropriate Attempts to Conduct Discovery in the Non-Bankruptcy Litigation.**

A federal court "is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 n.17 (1978). Thus, it is well settled that "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* (*citations omitted*); *see also*, *In re Biovail Corp. Sec. Litig.* 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (use of discovery in one proceeding to obtain information for use in another pending matter is improper); *Evans v. Sexton*, Civil Action No. 16-598-RGA, 2019 U.S. Dist. LEXIS 115004, at *12 (D. Del. July 11, 2019) ("The Federal Rules of Civil Procedure do not contemplate parties conducting discovery in one case for use in another."); *Allen v.Gwyn*,No. 2:18-cv-1461-MBS-MGB, 2018 U.S. Dist. LEXIS 139892, at *12 (D.S.C. June 5, 2018) (Complaint filed for improper purpose under Rule 11(b)(1) – which mirrors language set forth in Rule 26(g)(1)(B)(ii) – where plaintiff admitted that he commenced the action solely to obtain discovery for use in state court divorce action); *Econo-Car Int'l v. Antilles Car Rentals,* 61 F.R.D. 8, 10 (D.V.I. 1973), *rev'd on other grounds*, 499 F.2d 1391 (3d Cir. 1974) (In action to compel arbitration, discovery related to the merits of the underlying grievance – which would be determined in a separate proceeding – is improper).

Here, seven of Empery's requests for production are a transparent attempt to conduct discovery for matters raised and pending in the Non-Bankruptcy Litigation. Empery should not be allowed to use Rule 2004 to conduct discovery otherwise governed by the discovery rules and limitations under the Federal Rules of Civil Procedure and the Nevada Rules of Civil Procedure. And, while there is not a pending adversary proceeding or contested matter in this chapter 11 case between Drexler and Empery, bankruptcy courts routinely recognize that Rule 2004 cannot be used to sidestep the traditional rules of discovery that are otherwise applicable in adversary

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

proceedings or contested matters. *See*, *e.g.*, *In re SunEdison, Inc.*, 572 B.R. 482 (Bankr. S.D.N.Y. 2017) (noting that many courts follow the "well recognized rule," often referred to as the "pending proceeding rule," that once a "contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 <u>et seq</u>.," rather than under Rule 2004.). *Accord In re Metal Recovery*, BAP No. NV-22-1081-BFL, 2023 WL 215285, at *9 (9th Cir. BAP, Jan. 17, 2023) (citing *In re Art & Architecture Books of the 21st Century*, No. 2:13-BK-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019)). *See also In re Wash. Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009); *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002); *2435 Plainsfield Ave. v. Township of Scotch Plains (In re 2435 Plainsfield Ave.)*, 223 B.R. 440 (Bankr. D.N.J. 1998); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (*citing In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274 (D. Colo. 1991)); *In re Valley Forge Plaza Associates*, 109 B.R. 669 (Bankr. E. D. Pa. 1990); *In re Kipp*, 86 B.R. 490 (Bankr. W. D. Tex. 1988); *In re French*, 145 B.R. 991 (Bankr. D. S. D. 1992); *In re Bakalis*, 199 B.R. 443, 447–48 (Bankr. E.D.N.Y. 1996); *In re Ecam Publications Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991).

Courts are wary of attempts to use Bankruptcy Rule 2004 to avoid the restrictions of Civil Rule 26 in the context of adversary proceedings. *See e.g., Valley Forge*, 109 B.R. at 675; *Robinson*, 127 B.R. at 274; *GHR Energy*, 33 B.R. at 455. Indeed, Courts have denied parties the ability to take Rule 2004 examinations when an adversary proceeding is pending and related to the dispute at issue. *See In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440 (Bankr. D.N.J. 1998) ("The majority of courts that have addressed this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending."); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("Courts are wary of attempts to utilize Fed.R.Bankr.P. 2004 to avoid the restrictions of the Fed.R.Civ.P. in the context of adversary proceedings."); *In re Valley Forge Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the

[Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters."); *Sweetland v. Szadkowski (In re Szadkowski)*, 198 B.R. 140, 141 (Bankr. D. Md.1996) ("Once an adversary proceeding has commenced ... discovery may be had only pursuant to the discovery provisions of the Federal Rules of Civil Procedure"); *In re Cambridge Analytica LLC*, 600 B.R. 750 (Bankr. S.D.N.Y. 2019) (denial of motion of a creditor-plaintiff in a nonbankruptcy action).

 As one court summarized:

> "The broad reach of a Rule 2004 examination and its curtailment of the rights of the witness when compared with the witness's rights in a deposition conducted under the Federal Rules of Civil Procedure, requires that a court not treat them interchangeably. Without any limiting principles on the use of Rule 2004 as a discovery tool, Rule 9014, adopting the Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters, would be rendered superfluous. Two limiting principles on the Rule's application can be gleaned from the case law: 1) a Rule 2004 examination is utilized for the purpose of identifying the assets and transactions involving a debtor's estate; and 2) it is generally used as a prelitigation device, during the short time period before a matter becomes contested."

*In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993).

Applying these same principles here, Empery's discovery in the Non-Bankruptcy Litigation (like adversary proceedings and contested matters) should be governed by the Federal or Nevada Rules of Civil Procedure, and not Bankruptcy Rule 2004. Accordingly, the Court should quash the subpoena as to Request Nos. 2, 3, 4, 5, and 14.

**B.** **The 2004 Order and Subpoena Should be Partially Quashed as Unduly Burdensome and Outside the Scope of Bankruptcy Rule 2004.**

Five requests for production are either unduly burdensome or unrelated to the Chapter 11 Case.

- Request No. 1 seeks to place upon Drexler the burden of reviewing and gathering public records.

-  Request No. 12 has no facial relationship to this Chapter 11 Case

-  Request No. 13 seeks the production of documents relating to a claim that Drexler has not yet prepared.

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

- Requests Nos. 24 and 25 pertain to the Non-Bankruptcy Litigation between Drexler and Empery.

In these circumstances, the Court should quash the subpoena as to those five requests for production. *See* 9 Collier on Bankruptcy, ¶2004.01[7] (16th ed., LexisNexis) (noting that "[g]rounds to quash include abuse or harassment and matters unrelated to the basic inquiry of the examination" and that "[e]xamination should be limited to matters involving the debtor."). See also. *Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) ("We acknowledge that Rule 2004 is not without limits. It should not be used 'to abuse or harass ...' *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *cf.* Fed. R. Bankr. P. 9011(b)(1). Nor should it 'stray into matters which are not relevant to the basic inquiry.' *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984) *cited by In re Downs,* No.16-bk-12589-SC, 2021 WL 4823508, *3 (Bankr. C.D. Cal. Oct. 13, 2021).

**C.**    **A Protective Order Should Be Entered with Respect to the 2004 Order and Subpoena.**

Discovery must be both relevant and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Civil Rule 26(b)(1).   Civil Rule 26(c), made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7026 and 9014(c), provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Civil Rule 26(c) (empowering the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").   A court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.  *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984)).  Furthermore, Bankruptcy Rule 2004 examinations cannot be used to abuse or harass a party, nor can the examinations "stray into matters which are not relevant to the basic

inquiry." *Washington Mutual*, 408 B.R. at 50 (citing *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985).

Here, Drexler is no longer a representative of the Debtor. To the extent that Empery is seeking information regarding the Debtor's assets, liabilities, conduct and property, then such inquiries should be directed to the Debtor's designated responsible person, not to Drexler.  To the extent that Empery is investigating what claims the Estate may have against Drexler, then that investigation is the primary responsibility of the Official Committee of Unsecured Creditors and the Debtor, not the entity providing post-petition financing to the Debtor.  Since Empery fails to have standing to assert such claims on behalf of the Estate, the purpose of its Subpoena appears to be solely to retaliate against and harass Movant; or alternatively, to avoid the more stringent discovery rules applicable to the New York Litigation and Nevada Litigation.

## VI.    CONCLUSION

For the reasons stated above, it is respectfully requested that the Court partially quash the Rule 2004 Order and Subpoena, or alternatively, issue a protective order safeguarding Drexler.

Respectfully submitted this 10th day of March, 2023.

**CARLYON CICA, CHTD.**

*/s/ Dawn M. Cica, Esq.*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:     (702) 685-4444
Facsimile:     (725) 220-4360
ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tosteen@carlyoncica.com

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

/s/ *Michael P. Richman, Esq.*

**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:     (608) 630-8991
Email:mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

## CERTIFICATE OF SERVICE

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

                                        */s/ Cristina Robertson*_____
                                        An employee of Carlyon Cica Chtd.

# EXHIBIT "1"

# EXHIBIT "1"

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11<br><br>**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE FOR AN EXAMINATION AND THE PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004** |

**TO:    RYAN DREXLER**

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in this involuntary bankruptcy case.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE[1]<br><br>Garman Turner Gordon LLP<br>7251 Amigo Street, Suite 210<br>Las Vegas, Nevada 89119 | DATE AND TIME:<br><br>March 27, 2023 at 9:00 a.m. PST |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the documents and communications requested on **Exhibit B** hereto, subject to the Definitions and Instructions, on **Exhibit A** hereto.

| PLACE<br><br>Garman Turner Gordon LLP[2]<br>7251 Amigo Street, Suite 210<br>Las Vegas, Nevada 89119 | DATE AND TIME<br><br>March 17, 2023 at 5:00 p.m. PST |
|---|---|

Any subpoenaed organization not a party to this proceeding case shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable to this proceeding by Rule 7030, Fed. R. Bankr. P.

---

[1] The examination will be recorded *via* stenographic means and/or videotaped.

[2] Responsive documents may also be provided in electronic format to dciciliano@gtg.legal

1

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Mark M. Weisenmiller | March 3, 2023 |

**ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER**

Gregory A. Garman, Esq.
William M. Noall, Esq.
Mark M. Weisenmiller, Esq.
Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
(725) 777-3000
*Attorneys for Empery Tax Efficient, LP as
Agent and Collateral Agent for certain
Noteholders*

**PROOF OF SERVICE**
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45)**

I received this subpoena for *(name of individual and title, if any)* _____
_____ on *(date)* _____.


☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____; or

☐ I returned the subpoena executed because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

   I declare under penalty of perjury that this information is true and correct.


Date: _____

                                    _____
                                          *Server's signature*

                                    _____
                                         *Printed name and title*

                                    _____
                                          *Server's address*

Additional information concerning attempted service, etc.:

3

**Federal Rules of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)**
**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**For access to subpoena materials, see Fed. R. Siv. P. 45(a) Committee Note (2013)**

**EXHIBIT A**

**DEFINITIONS**

1.      "<u>Affiliate</u>" shall mean any individual, general partnership, limited partnership, trust, estate, corporation, limited liability company, or business trust that is owned by, directly or indirectly controlled by, or acts at the direction or for the benefit of the Person or Entity named and includes an affiliate of an affiliate.

2.      "<u>Communication(s)</u>" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to personal conversations, written correspondence, memoranda, letters, reports, publications, electronic communications, text messaging, instant messaging, messages *via* social media and electronic mail.

3.      "<u>Date</u>" means the exact day, month, and year, if known, or if not known, your best approximation thereof.  Exact dates shall be given in all answers except where it is explicitly indicated that an approximate date may be given.

4.      "<u>Debtor</u>" shall mean MusclePharm Corporation, the debtor in the Chapter 11 case of *In re MusclePharm Corporation*, Case No. 22-14422-NMC ("Bankruptcy Case"), pending in the United States Bankruptcy Court District of Nevada (the "<u>Bankruptcy Court</u>").

5.      "<u>Document</u>" is intended to be as broad as it is used in FRCP 26 and 34, and includes, without limitation:

a.      the original (or an identical duplicate if the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any kind of physical media;[3]

b.      any printed, typewritten, handwritten, electronic, or otherwise recorded matter of whatever character of communications, letters, correspondence, electronic mail, text messages, instant messages, memoranda, notes, Post-Its, media releases or articles, photographs, tape or sound recordings, contracts, agreements, telephone records, diaries, desk calendars, appointment calendar, group scheduler calendars, statements, reports, journal, minutes, working paper, financial report, accounting report, work papers, facsimile, facsimile transmission, drafts, logs, chart, graph, index, directory, scheduling data, databases, spreadsheets, presentations, word processed documents, bulletins, design schedules, supplemental instructions, time cards, drawings, shop drawings, progress payments, progress schedules, estimates, equipment time cards, design calculations, design meeting minutes, coordination meeting minutes, and material

---

[3] Physical media includes, but is not limited to, paper media, photographic media (including pictures, films, slides and microfilm), phonographic media, magnetic media (including, but not limited to hard drives, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed.

similar to any of the foregoing, however denominated and to whomever addressed, computer directory, computer disk, computer tape, or any written, printed, typed, punched, taped, filmed, or graphic matter however produced or reproduced. Documents also include the file, folder tabs, and labels appended to or containing any documents.

c.      For the avoidance of doubt, electronically-stored information with all metadata intact shall be produced whenever available in the format described below.

6.      "Empery" means Empery Tax Efficient, LP, in its capacity as collateral agent of the Secured Noteholders (defined below) with respect to the Notes (as defined in the Silver Declaration [ECF No. 52])[4].

7.      "Entity" includes, without limiting the generality of its meaning, every corporation, partnership, association, limited liability company, joint venture and professional business entity or any iteration, subsidiary, or affiliate thereof.

8.      "Insider" shall mean (i) Your relatives; (ii) partnerships in which You are a general partner; or (iii) corporations, companies or partnerships in which you are a partner, director, officer, or person in control of You.

9.      "Lawsuits" includes, but is not limited to, the following actions:

(i) *White Winston Select Asset Funds, LLC et al. v MusclePharm Corporation, et al.*, Case No. 2284cv00293-BLS2 (Superior Court, Suffolk County, Commonwealth of Massachusetts) (the "Pending Massachusetts Action");

(ii) *MusclePharm Corporation, et al. v. White Winston Select Asset Fund Series Fund MP-18, LLC et al.*, Case No. 1984cv00663-BLS2 (Superior Court, Suffolk County, Commonwealth of Massachusetts (the "Prior Massachusetts Action");

(iii) *White Winston Select Fund Series Fund MP-18, LLC, et al. v. MusclePharm Corporation, et al.*, Case No. 18-OC-00206 (First Judicial District Court in and for Carson City, Nevada) (the "Nevada Action");

(iv) *White Winston Select Fund Series Fund MP-18, LLC et al v. MusclePharm Corporation, et al.*, Case No. 80196 (Nevada Supreme Court) (the "First Nevada Appeal");

(iv) *MusclePharm Corporation, et al. v. The First Judicial District Court of the State of Nevada et al.*, Case No. 79163 (Nevada Supreme Court) (the "Second Nevada Appeal");

---

[4] The reference to "ECF" refers to the Bankruptcy Court's Electronic Filing System and the reference to ECF No. followed by one or more digits refers to a docket item on the Bankruptcy Court's Electronic Filing System with respect to the Bankruptcy Case.

(v) *White Winston Select Asset Fund Series Fund MP-18, LLC v. MusclePharm Corporation*, Case No. 19STCV26426 (Superior Court of the State of California, County of Los Angeles, Central District (the "California Action"); and

(vi) any adversary proceeding commenced in the Bankruptcy Case.

10.    "Person" shall mean any natural person, trust, Entity, association of entities and/or natural persons, and/or governmental body.

11.    "Petition Date" means December 15, 2022.

12.    "Relate" or "relating to" means constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, concerning, or referring to directly or indirectly.

13.    "Relevant to" has the same meaning that it has in FRCP 26(b)(1) incorporated by Bankruptcy Rule 7026.

14.    "Secured Noteholders" means collectively the October Noteholders (which are Empery Master Onshore, LLC ("EMO"), Empery, Empery Tax Efficient III, LP ("ETE3"), and Empery Debt Opportunity Fund, LP ("EDOF," and collectively with EMO, Empery and ETE3, the "Empery Noteholders"), Ionic Ventures, LLC, Anson Investments Master Fund LP, CVI Investments, Inc., HB Fund LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1 Capital Global Opportunities Master Fund, and Altium Growth Fund, LP) and the June Noteholders (which are Empery Noteholders, Ionic Ventures, LLC, Anson Investments Master Fund LP, HB Fund LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, Altium Growth Fund, LP, Walleye Opportunities Master Fund Ltd., and Roth Capital Partners, LLC).

15.    "Settlement Agreement" means the *Settlement Agreement and Release Between White Winston Select Asset Funds, LLC and White Winston Select Asset Fund Series Fund MP-18, LLC and MusclePharm Corporation and Ryan Drexler*, dated December 5, 2022.

16.    "UCC Sale" means the Article 9 foreclosure sale that was to occur at 1:00 p.m. (Pacific Time) on December 15, 2022, with respect to certain of Debtor's assets.

17.    "You" or "Your" means Ryan Drexler and any Affiliate or Insider thereof and Your agents, servants, employees, attorneys, accountants, representatives, any other Person or Entity over which You have control or have a superior right to compel to do an act or produce an item, and any Entity You were or are an agent, manager, officer, or director or otherwise maintained or maintain a supervisory, advisory, or consulting role.

**INSTRUCTIONS**

1.      You shall produce all Documents in the manner in which they are maintained in the usual course of business and/or shall organize and label Documents to correspond with the categories of this Request.  A Request for Documents shall be deemed to include a Request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

2.      In producing Documents and other materials, You are requested to furnish all Documents or things in Your possession, custody, or control, regardless of whether such Documents or materials are possessed by You directly or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by Your attorneys or their agents, employees, representatives, or investigators.

3.      If any of the information contained in the answers to these Requests is not within Your personal knowledge, so state.  The answers to the Requests should identify every Person, Document, and Communication upon which You rely for the information contained in the answer not based solely on Your own personal knowledge.

4.      If You cannot answer any portion of the following Requests in full, after exercising due diligence to secure the information, so state and answer to the extent possible, specifying Your inability to answer the remainder and stating whatever information or knowledge You have concerning the unanswered portion.

5.      You are requested to provide all responsive Documents within Your possession, custody, or control.  In the event that You provide only a portion of the Documents called for by any particular Request, state the reason(s) for Your inability to provide the remainder of the Documents requested and the identity of the Document(s).

6.      In the event the Documents called for by any particular request are no longer in Your possession, custody or control, state the reason(s) why those Documents are no longer in Your possession, custody, or control and the identity of the Document(s) and all Your knowledge regarding who currently has possession, custody or control of the Document(s).

7.      In the event that Documents called for by any particular request have been lost or destroyed, please state: (i) the date on which the Document(s) were lost or destroyed; (ii) the manner in which the Document(s) were lost or destroyed; (iii) the identity of the Document(s); (iv) the information contained within such Document(s) and the nature of the Document(s); and (v) and the identity of any person(s) who has knowledge of the contents of the Document(s) or has received a copy of such Document(s).

8.      If You withhold any Document pursuant to a claim of privilege, You shall expressly make the claim of privilege and produce a privilege log in compliance with Fed. R. Civ. P. 26(b)(5), incorporated by Fed. R. Bankr. P. 7026.

9.      Documents attached to each other should not be separated.

10.     Documents not otherwise responsive to this discovery Request shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for in the discovery request.

11.     The fact that a Document has been produced by another party does not relieve You of Your obligation to produce Your copy of the same Document, even if the two Documents are identical.

12.     The terms "<u>each</u>" and "<u>all</u>" shall be construed as "<u>all and each</u>."

13.     The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be outside of the scope.

14.     The use of the singular form of any word includes the plural and vice versa.

15.     The use of the feminine form of any word includes the masculine and vice versa.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1

**EXHIBIT B**

2

**REQUESTS FOR PRODUCTION**

3
4
5

**REQUEST FOR PRODUCTION NO. 1:**  Please produce all complaints, motions under Rules 12 or 56 of the Federal Rules of Civil Procedure or any dispositive motions under applicable state rules of civil procedure, and all dispositive orders and judgments filed or docketed in any action or proceeding involving or related to You and the Debtor, or its Affiliates and Insiders, including but not limited to the Lawsuits.

6
7
8

**REQUEST FOR PRODUCTION NO. 2:**  Please produce all documents and communications, including emails and text messages, related to or referencing White Winston Select Asset Funds, LLC's ("White Winston") claims for relief or causes of action alleged or brought against You or the Debtor from 2018 through the present, whether resolved or unresolved.

9
10
11

**REQUEST FOR PRODUCTION NO. 3:** Please produce all documents and communications, including emails and text messages, in Your possession, custody, and control related to or referencing Empery or the Secured Noteholders from August 2020 through the present.

12
13
14

**REQUEST FOR PRODUCTION NO. 4:**  Please produce all communications, including emails and text messages, between or among You and White Winston, including but not limited to those related to or referencing the Settlement Agreement, the UCC Sale, the Chapter 11 Case, White Winston's debtor-in-possession financing proposals, or Empery's debtor-in-possession financing proposals.

15
16
17

**REQUEST FOR PRODUCTION NO. 5:**  Please produce all communications. including emails and text messages, between or among You and the Debtor's board of directors or any member of the Debtor's board of directors, at any time, related to or referencing the Settlement Agreement, the UCC Sale, the Chapter 11 Case, White Winston's debtor-in-possession financing proposals, or Empery's debtor-in-possession financing proposals.

18
19

**REQUEST FOR PRODUCTION NO. 6:**  Please produce all documents and communications, including emails and text messages, related to the resignation of Eric Chin.

20
21

**REQUEST FOR PRODUCTION NO. 7:** Please produce all communications, including emails and text messages, in Your possession, custody or control where Eric Chin was also a party from January 1, 2022 to present.

22
23
24
25

**REQUEST FOR PRODUCTION NO. 8:**  Please produce all documents and communications, including emails and text messages, relating to or referencing any criminal or civil investigations, criminal charges or indictments, federal and state securities law investigations, claims or charges, sanctions or civil contempt orders or judgments involving or against You, including, but not limited to, any of Your Affiliates and Insiders.

26
27
28

**REQUEST FOR PRODUCTION NO. 9:**  Please produce all documents and communications including emails and text messages, relating to or referencing any payments or transfers of money or property from Debtor to You or any of Your Affiliates, Insiders, or counsel from six (6) years prior to the Petition Date to the present.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**REQUEST FOR PRODUCTION NO. 10:**  Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to any cash disbursements from Debtor to You from October 2021 through the present.

**REQUEST FOR PRODUCTION NO. 11:**  Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to each and any of Your personal expenses charged to a Debtor credit card or otherwise paid by Debtor in excess of $500 from October 2021 through the present.

**REQUEST FOR PRODUCTION NO. 12:**  Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to any of payment of funds, by any third-party, to counsel representing You, whether solely or in conjunction with another person or entity, since December 2021.

**REQUEST FOR PRODUCTION NO. 13:**  Please produce all documents and communications including emails and text messages, evidencing, referring, or relating to any claim, as defined in 11 USC 101(5), against Debtor possessed or acquired by You, whether asserted or unasserted, contingent, liquidated, disputed or undisputed.

**REQUEST FOR PRODUCTION NO. 14:**  Please produce all documents and communications including emails and text messages, related to any agreement that refers or relates to Empery, Debtor, White Winston, or any claim for relief or cause of action held by You.

**REQUEST FOR PRODUCTION NO. 15:**  Please produce all documents and communications including emails and text messages, in Your possession, custody or control, related or referring to any investigations or inquires by the Security Exchange Commission related or referring to Debtor.

**REQUEST FOR PRODUCTION NO. 16:**  Please produce all documents and communications including emails and text messages, in Your possession, custody or control with Jon Alyn related to Debtor.

**REQUEST FOR PRODUCTION NO. 17:**  Please produce all documents and communications including emails and text messages, in Your possession, custody or control related to any lines of credit between You and Debtor, including communications with Debtor's board, accountants and financial advisors, Debtor's employees or contractors, Empery, Secured Noteholders, or otherwise, as well as any financial analysis related thereto.

**REQUEST FOR PRODUCTION NO. 18:**  Please produce all communications, including emails and text messages, in Your possession, custody or control where Sabina Rizvi was also a party from January 1, 2022 to present.

**REQUEST FOR PRODUCTION NO. 19:**  Please produce all documents and communications, including emails and text messages, related to any performance reviews of Sabina Rizvi, from January 1, 2022 to present.

**REQUEST FOR PRODUCTION NO. 20**:  Please produce all documents and communications, including emails and text messages, related to Debtor's approval of any wires or cash disbursements from January 1, 2022 to present.

**REQUEST FOR PRODUCTION NO. 21**:  Please produce all documents and communications, including emails and text messages, related to Debtor's restatement of any financial statements, from January 1, 2022 to present.

**REQUEST FOR PRODUCTION NO. 22**:  Please produce all documents and communications, including emails and text messages, evidencing, referring, or relating to Blade Funding Corp. or Delta Bridge Funding and Debtor.

**REQUEST FOR PRODUCTION NO. 23**:  Please produce all documents and communications, including emails and text messages, evidencing, referring, or relating to Your appointment or election as an officer or director of Debtor, as well as Your resignation or reappointment as officer or director.

**REQUEST FOR PRODUCTION NO. 24**:  Please produce all documents and communications, including emails and text messages with the New York Post or any other news outlet related to Debtor or Empery, in any way, since January 1, 2022.

**REQUEST FOR PRODUCTION NO. 25**:  Please produce all documents and communications, including emails and text messages with any private investigators or public relations firms related to Debtor or Empery, in any way, since January 1, 2022.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**EXHIBIT C**

CERTIFICATION OF CUSTODIAN OF RECORDS

STATE OF _____ }

                           } ss.

COUNTY OF _____ }

     NOW COMES _____, who after first being duly sworn deposes and says:

    1.  That the deponent is the Custodian of Records of _____.

    2.  That _____ is licensed to do business in the State of _____.

    3.  That on the _____ day of the month of _____ of the year 20__, the deponent was served with a subpoena in connection with the above-entitled cause, calling for the production of records pertaining to _____.

    4.  That the deponent has examined the original of those records and has made or caused to be made a true and exact copy of them, consisting of _____ pages, and that the reproduction of them attached hereto is true and complete.

    5.  That the original of those records was made at or near the time of the act, event, condition, opinion, or diagnosis recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of the deponent of _____.

By: _____

SUBSCRIBED AND SWORN to before me
this _____ day of_____, 2022.


_____
NOTARY PUBLIC in and for said
County and State

**Garman Turner Gordon**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

13 of 13