Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Athanasios E. Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11<br><br>Hearing Date: May 9, 2023<br>Hearing Time: 9:30 a.m. (PT) |

**DEBTOR'S MOTION FOR ORDER, PURSUANT TO 11 U.S.C.**
**§ 1121(d), EXTENDING DEBTOR'S EXCLUSIVE PERIODS IN WHICH**
**TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

MusclePharm Corporation, the debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "**Debtor**"), by and through its counsel of record, Schwartz Law, PLLC ("**SL**"), hereby moves this Court (the "**Motion**") for entry of an order, pursuant to 11 U.S.C. § 1121(d): (i) extending the period under 11 U.S.C. § 1121(b) during which Debtor has the exclusive right to file a Chapter[1] 11 plan of reorganization (the "**Exclusive Filing Period**"); and (ii) extending the period under 11 U.S.C. § 1121(c)(3) during which Debtor has the exclusive right to solicit acceptances thereof (the "**Exclusive Solicitation Period**") (the Exclusive Filing Period and the Exclusive Solicitation Period collectively referred to herein as the "**Exclusive Periods**").

---

[1] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure Rules 1001- 9037. "**Local Rule**" or "**LR**" references are to the Local Rules of Bankruptcy Practice of the United States of Bankruptcy District of Nevada.

1

This Motion is made and based upon the following memorandum of points and authorities, the concurrently filed *Declaration of Nicholas Rubin, Debtor's Independent Director, in Support of Debtor's Motion for Order, Pursuant to 11 U.S.C. § 1121(d), Extending Debtor's Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon* (the "**Rubin Declaration**"), the papers and pleadings on file with the Court in this Chapter 11 case, judicial notice of which is respectfully requested, and any oral argument the Court may entertain at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 1334(a), (b), and (e). Adjudication of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(L), and (b)(2)(O). *See Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.),* 282 B.R. 444, 448 (B.A.P. 9th Cir. 2002) (observing that, "Adjustment of exclusivity under § 1121(d) is a 'core proceeding' plan confirmation matter that a bankruptcy judge may hear and determine" under 28 U.S.C. § 157(b)(2)(L).

2. Venue of Debtor's Chapter 11 case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to L.R. 9014.2, Debtor consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND[2]

4. Debtor commenced the captioned case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under Section 301 on December 15, 2022 (the "**Petition Date**"), before the United States Bankruptcy Court for the District of Nevada (the "**Court**"). (ECF No. 1).

5. As Debtor has previously apprised the Court, creditors, and other parties in interests, the Chapter 11 Case was commenced to preserve and maximize the reorganization value of

---

[2] Debtor's factual recitation incorporates the Rubin Declaration in its entirety to avoid unnecessary repetition. Some facts, however, first appear in the Motion's argument section below.

1. Debtor's assets and ensuing bankruptcy estate by stopping an Article 9 foreclosure sale of Debtor's intellectual property. (*See* Rubin Declaration at ¶ 5). The Article 9 sale was slated to commence shortly after Debtor's bankruptcy filing. (*Id.* at ¶ 6).

6. No case trustee or examiner has been appointed in the Chapter 11 Case. (*See Docket*).

7. On January 4, 2023, the United States Trustee for Region 17 (the "**U.S. Trustee**") filed her notice of appointment regarding the formation of the Official Committee of Unsecured Creditors in the Chapter 11 Case (the "**OCUC**"). (ECF No. 49).

8. On January 3, 2023, Debtor filed its motion seeking the Bankruptcy Court's authorization to obtain post-petition financing pursuant to Section 364 (the "**DIP Financing Motion**"). (ECF No. 33).

9. Given the highly contentious and time-consuming nature of the litigation between the parties surrounding the DIP Financing Motion, the Bankruptcy Court did not enter a final order approving the DIP Financing Motion (the "**Final DIP Order**") until over two months later, on March 8, 2023. (ECF No. 296).

10. On February 6, 2023, the U.S. Trustee concluded the meeting of creditors under Section 341 and Bankruptcy Rule 2003. (ECF No. 198).

11. Debtor has also successfully concluded the initial debtor interview with the U.S. Trustee's office. (*See* Rubin Declaration at ¶ 7).

12. On January 30, 2023, the Debtor filed its schedules of assets and liabilities (collectively, the "**Schedules**") and statement of financial affairs (the "**SOFA**") under Section 521 and Bankruptcy Rule 1007. (ECF No. 176).

13. Given the flurry of activity in the Chapter 11 Case, Debtor and its professionals have simply not had sufficient time to devote to formulating a Chapter 11 plan of reorganization. (*See Docket*; *see also* Rubin Declaration at ¶ 8).

14. For instance, on March 9, 2023, White Winston Select Asset Funds, LLC ("**White Winston**") initiated an adversary proceeding before this Court styled *White Winston Select Asset*

*Funds, LLC v. Empery Tax Efficient L.P. et al.* (Adv. Pro. No. 23-01014—NMC; ECF No. 301) (the "**W & W Adversary**").

15. Through the W & W Adversary, White Winston's seeks the following forms of relief: (i) declaratory judgment that the "Securities Purchasers' Claims Should Be Treated As Equity;" (ii) declaratory judgment that the "Securities Purchasers' Claims Should be Equitably Subordinated to Those of White Winston;" and (iii) declaratory judgment that the "Mandatory Default Amount and the June Increase are Penalties." (Adv. ECF No. 1, pgs. 13-15 of 16, ¶¶ 63 – 77).

16. At bottom, the relief requested by White Winston in the W & W Adversary seeks to alter or adjust the rights of Empery Tax Efficient, L.P., as well as those of the other named defendants in the W & W Adversary, (collectively defined as "**Empery**"), as they pertain to Debtor's capital structure and, consequently, any classification, voting, balloting, and related rights of Empery and White Winston in the Chapter 11 plan formulation, proposal, solicitation, and confirmation processes, as well as in the claims administration and allowance processes.

17. On March 28, 2023, the OCUC filed its emergency motion to intervene in the W & W Adversary. (Adv. ECF No. 19). The Court granted the OCUC's intervention motion on April 4, 2023, thereby permitting the OCUC to intervene in the W & W Adversary. (Adv. ECF No. 29).

18. The W & W Adversary adds an additional layer of complexity to Debtor's reorganization efforts as it presents a contingency that either (i) must be resolved before a workable Chapter 11 plan of reorganization can be proposed or, at a minimum, (ii) calls for further evaluation, additional planning and, perhaps, negotiations with parties in interest to arrive at a workable reorganization framework for a Chapter 11 plan confirmation process to proceed alongside the litigation of the W & W Adversary. (*See* Rubin Declaration at ¶ 9).

19. To help address the administrative, legal, and operational complexities surrounding Debtor's reorganization efforts here, Debtor has enlisted the aid and expertise of Portage Point Partners, LLC ("**PPP**"). (ECF Nos. 41 and 227).

20. As of the date of this filing, Debtor has timely filed all monthly operating reports in the Chapter 11 Case with PPP's assistance. (*See* ECF Nos. 177, 183, 252, 254, and 330).

21. Also, on March 27, 2023, Debtor and the OCUC entered into that certain *Stipulation Granting the Official Committee of Unsecured Creditors Standing to Pursue Certain Estate Causes of Action (ECF No. 349)* (the "**Derivative Standing Stipulation**"). On March 30, 2023, the Court entered its order approving the Derivative Standing Stipulation. (ECF No. 356).

22. Debtor respectfully submits cause exists within the meaning of Section 1121(d) to grant the relief requested in the Motion.

23. The original date for Debtor to file a Chapter 11 plan of reorganization within the exclusivity period under Section 1121 is April 14, 2023.

24. Debtor respectfully submits, therefore, that its request for an extension of the Exclusive Periods under Section 1121(d) is timely.

25. By its terms, the Final DIP Order sets an outside date of September 30, 2023, for Debtor to propose a Chapter 11 plan of reorganization and a date of December 15, 2023, for confirmation of such a plan. (*See* ECF No. 296, pgs. 43 and 104 of 156).

26. In line with the Final DIP Order, therefore, Debtor respectfully requests an extension of the Exclusive Filing Period under Section 1121(b) through and including September 30, 2023, as well as a corresponding extension of Debtor's Exclusive Solicitation Period under Section 1121(c)(3) through and including December 15, 2023.

## ARGUMENT

### I.     Debtor's Request Fits Comfortably Within the Governing Statutory Framework

27. Section 1121(b) confers upon Debtor the Exclusive Filing Period of 120-days from the Petition Date to file a Chapter 11 plan. 11 U.S.C. § 1121(b). In this instance, Debtor's Exclusive Filing Period runs through April 14, 2023. *See id.*

28. The related Exclusive Solicitation Period set forth in Section 1121(c)(3) adds an additional 60-day time-period to the Exclusive Filing Period. 11 U.S.C. § 1121(c)(3).

29.  Section 1121(d)(1) expressly authorizes the Court to grant Debtor's Motion and extend the Exclusive Periods upon a showing of cause as follows:

> Subject to paragraph (2), *on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this*

> *section* and after notice and a hearing, the court may *for cause* reduce or increase the 120-day period or the 180-day period referred to in *this section*.

11 U.S.C. § 1121(d)(1) (emphasis added).

30. Debtor is expressly included within the class of persons that qualify as a party in interest under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 1109(b).

31. Debtor's requested relief in the Motion is, likewise, <u>timely</u> by virtue of having been filed within the time periods specified in Sections 1121(b) and 1121(c) as mandated by Section 1121(d). Again, Debtor's initial Exclusive Filing Period runs through <u>April 14, 2023</u>.

32. Thus, Debtor's Motion satisfies the first two (2) of three (3) statutory elements for the relief Debtor seeks under Section 1121(d)(1). The remaining statutory element of "cause" set forth in Section 1121(d)(1) is not defined in the Bankruptcy Code and has been left for the courts to further construe and explicate.

33. Debtor's Motion, therefore, turns to the issue of "cause" within the meaning of Section 1121(d)(1).

34. Debtor respectfully submits that cause exists to grant Debtor's requested relief here.

**II.  Cause Exists Under Section 1121(d)(1) to Extend the Exclusive Periods**

35. The decision to extend exclusivity for cause rests within the Court's discretion. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006). Although the Bankruptcy Code does not define "cause," legislative history and case law make it plain that "cause" is a flexible standard. *See* H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191; *see also United Savings Assoc. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 n.15 (5th Cir. 1987).

36. Although the question of "cause" under Section 1121(d)(1) is committed to the Court's discretion, determinations of cause are subject to *de novo* review on appeal as they present mixed questions of law and fact. *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. at 452. Bankruptcy courts typically examine several non-exclusive factors in determining whether there is "cause" to extend exclusivity, including:

| | | |
|---|---|---|
| | i. | The size and complexity of a debtor's case; |
| | ii. | The necessity for sufficient time to permit a debtor to negotiate a plan of reorganization and prepare adequate information; |
| | iii. | The existence of good faith progress towards reorganization; |
| | iv. | The fact that a debtor is paying its bills as they become due; |
| | v. | Whether a debtor has demonstrated reasonable prospects for filing a viable plan; |
| | vi. | Whether a debtor has made progress in negotiations with creditors; |
| | vii. | The amount of time which has elapsed in the case; |
| | viii. | Whether a debtor is seeking an extension of exclusivity in order to pressure creditors to submit to debtor's reorganization demands; and |
| | ix. | Whether an unresolved contingency exists. |

*Adelphia*, 352 B.R. at 587 (listing all nine factors) (*citing In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) ("*Dow Corning*")).

37. The factors enumerated in *Dow Corning* are "standardly considered." *In re Henry Mayo Newhall Memorial Hosp.*, 282 B.R. at 452. Not all factors, however, are relevant to every case, and courts have found "cause" to extend exclusivity based on various combinations of these factors, as well as others. *See, e.g., Rinehart v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give appropriate weight to each."); *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding "cause" based on only four factors); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding "cause" based on only three factors).

38. In *Henry Mayo*, the Bankruptcy Appellate Panel for the Ninth Circuit affirmed a bankruptcy court's finding of "cause" based on the following:

> (1) a first extension; (2) in a complicated case; (3) that had not been pending for a long time, relative to its size and complexity; (4) in which the debtor did not appear to be proceeding in bad faith; (5) had improved operating revenues so that it was paying current expenses; (6) had shown a reasonable prospect for filing a viable plan; (7) was

> making satisfactory progress negotiating with key creditors; (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) was not depriving the creditors committee of material or relevant information.

282 B.R. at 452.

### A. This is Debtor's First Extension Request at the Outset of a Complex Case

39. "It was intended that at the outset of Chapter 11 case a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization *without interference from creditors.*" *See, e.g., (In re Texaco, Inc.)*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1988) (citing legislative history) (citation omitted) (emphasis added). The statutory scheme set forth in Section 1121, therefore, defaults to providing Debtor with an initial period of exclusivity under Section 1121(b).

40. This is Debtor's first request for an extension of the Exclusive Periods under Section 1121(d)(1). (*See* Docket).

41. As set forth above, Debtor's case was filed on an emergency basis just shortly before an Article 9 sale by Empery of Debtor's intellectual property. (*See* Rubin Declaration at ¶¶ 5 – 6).

42. Debtor, therefore, did not have the benefit of pre-bankruptcy planning for a Chapter 11 filing, the time to enlist the aid of restructuring professionals to assist in those efforts, and so forth. (*Id.* at ¶ 7).

43. The moment Debtor's Chapter 11 Case was filed, Debtor's professionals and management had to work as diligently, efficiently, and expeditiously as possible to address both operational aspects of Debtor's business and Chapter 11 Case administration matters at the same time. (*Id.* at ¶ 8). Having to attend to matters of such global significance in the context of an already complex and contentious case as the Chapter 11 Case only added to its complexity and the already pressing demands placed upon Debtor, its management team, and professionals. (*Id.* at ¶ 9).

44. Similarly, all the litigation efforts surrounding entry of the Final DIP Order only served to draw the collective attention of Debtor's management and professionals to focus on obtaining necessary financing for Debtor during the initial Exclusive Periods. (*Id.* at ¶ 10).

45. While entry of the Final DIP Order provided Debtor a starting point from which to proceed in this Chapter 11 Case, it also required over two (2) months for Debtor to resolve.

46. At the outset of this Chapter 11 Case, therefore, Debtor's efforts to negotiate with creditors have revolved largely around entry of the Final DIP Order. Neither Debtor's management nor Debtor's professionals have had sufficient time to work towards formulating a Chapter 11 plan of reorganization or in which to negotiate with creditors, the OCUC, and others toward that end. (*Id.* at ¶ 11).

47. Still, the antagonistic positions asserted by both Empery and White Winston in connection with the entry of the Final DIP Order and the competition between them to provide debtor in possession financing under Section 364 is also a testament to the viability of Debtor's reorganization prospects and, relatedly, its ability to confirm a Chapter 11 plan of reorganization, that Debtor is making sufficient progress to this point in negotiating with its creditors, and Debtor is not seeking an extension of exclusivity to pressure its creditors unduly into accepting a plan that would otherwise be unacceptable to them.

48. Debtor's Motion, therefore, next turns to a discussion of those factors.

**B.  The Final DIP Order's Entry Shows (I) Debtor's Prospects for Reorganization and Confirming a Chapter 11 Plan are Real, (II) Debtor's Satisfactory Progress in Negotiating with Creditors, and (III) that Debtor's Extension Request Here is not Aimed at Unduly Pressuring Creditors in this Chapter 11 Case.**

49. Courts may assess conduct during a Chapter 11 case to determine whether a debtor's motives for seeking extension of exclusivity are proper. *See In re McLean Indus., Inc.,* 87 B.R. 830 (Bankr. S.D.N.Y. 1987). Here, Debtor respectfully submits that its motives in seeking extensions of the Exclusive Periods as requested in the Motion are plainly proper.

50. First, Debtor will not go to great lengths to restate the history and circumstances surrounding entry of the Final DIP Order as this Court lived and adjudicated those issues alongside the parties here throughout those proceedings. The major takeaway from the competition between White Winston and Empery to provide debtor in possession financing to Debtor is exactly that fact: there were (and is) spirited, heavily contested, and complex efforts and litigation between White Winston and Empery for the opportunity to provide Debtor with post-petition financing and,

relatedly, over the value of Debtor's estate. The Court need only assimilate that these entities were engaged in extensive dealings, litigation, and counterparty surveillance of Debtor, its business activities, operations, and, perhaps most importantly, its value during the prepetition period. That two sophisticated and well-represented entities, such as Empery and White Winston, were (and are) willing to go to such great lengths to extend credit to Debtor and fight over the reorganization value of Debtor's bankruptcy estate should give this Court a sense of Debtor's viable reorganization prospects and for confirming a Chapter 11 plan in the Chapter 11 Case, as well as Debtor's satisfactory progress towards those ends by actively negotiating with its creditors.

51. As the Court may have already assessed by this point, Debtor's emergency filing, as well as the need to address pressing operational and administrative issues at the outset of the Chapter 11 Case, including entry of the Final DIP Order, have not provided Debtor with much of a breathing spell within which Debtor could engage in meaningful and well-informed negotiations with its key creditor constituencies, as well as other parties in interest, in connection with its efforts to formulate and propose a Chapter 11 plan of reorganization.

52. Viewed against this backdrop, Debtor respectfully submits that the image of Debtor's Chapter 11 Case, as well as both Debtor's impulse and rationale for seeking the relief requested herein, that should emerge is one of a debtor that has realistic reorganization prospects. Debtor is not seeking the relief requested here to unduly pressure its creditors into acquiescing unduly in Debtor's reorganization demands. That is hardly the case. Debtor's request here is aimed at allowing Debtor sufficient time to formulate what Debtor believes to be a viable Chapter 11 plan of reorganization that seeks to maximize the value of Debtor's bankruptcy estate for the benefit of Debtor's creditors and other parties in interest.

**C.     The W & W Adversary Presents an Unresolved Contingency Affecting the Plan**

53. As set forth above, White Winston initiated the W & W Adversary. That litigation seeks to alter radically Debtor's existing capital structure. Any success White Winston may realize through the W & W Adversary would, in turn, play a substantial role in Debtor's efforts to formulate a confirmable Chapter 11 plan of reorganization, including a classification scheme that satisfies the requirements of Sections 1122, 1123, and 1129(a)(1) – among other confirmation requirements.

54. Also as noted above, in conjunction with Debtor's and the OCUC's entry into the Derivative Standing Stipulation and the Court's order approving the same, as well as the OCUC's Court-approved intervention in the W & W Adversary, the OCUC's intervention efforts also serve as evidence of the importance of the outcome of the W & W Adversary to these proceedings and Debtor's efforts to formulate, propose, and confirm a Chapter 11 plan of reorganization.

55. Finally, and perhaps most importantly, the resolution of the W & W Adversary will likely have a significant impact on a Chapter 11 plan's classification scheme, whether any such plan is proposed by Debtor or any other party in interest.

56. One of the background legal rules with which this Court is quite familiar is the longstanding requirement in this Circuit that secured creditors are generally entitled to separate classification of their claims under a Chapter 11 plan. *See, e.g., Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985). As of the date of this filing, Empery maintains that it is a secured creditor of Debtor's bankruptcy estate. If that status were to emerge from the W & W Adversary unaltered, this background classification rule would likely grant Empery, among other rights, the right to separate classification of its claim and, relatedly, the ability to trigger the cramdown requirements of the Bankruptcy Code as part of a plan confirmation process by voting against plan confirmation (among other and additional rights Empery may also have).[3]

57. In that event, it is not only Debtor that must deal with the unresolved contingency presented by the W & W Adversary. Rather, any creditor, party in interest, the OCUC, or anyone else attempting to confirm a Chapter 11 plan in the Chapter 11 Case would have to deal with the contingency and uncertainty presented by the W & W Adversary. The complications and increased costs and uncertainty that would likely attend the Chapter 11 Case if the Motion were to be denied, however, would not stop with the legal and factual issues recited above.

---

[3] Debtor's discussion in the Motion of the potential rights, claims, and defenses of various parties to the proceedings in Debtor's case is not intended, nor should it be construed, as an admission of any kind, waiver, or give rise to any form of estoppel against Debtor for any purpose. Debtor's discussion here is offered solely for illustrative purposes as part of Debtor's efforts to establish cause under Section 1121(d). As otherwise permitted or authorized, such as in connection with the Final DIP Order and Derivative Standing Stipulation, among others, Debtor reserves all rights consistent with Debtor's Court-approved stipulations in the Chapter 11 Case.

58. Indeed, if the Motion were to be denied, Debtor's concern as the sole estate fiduciary in this case tasked with overseeing this case with any eye towards maximizing Debtor's bankruptcy estate for the benefit of *all* creditors and parties in interest, is that the plan confirmation process would simply open another front in the ongoing battle between White Winston and Empery (and, perhaps, others). Debtor respectfully submits that in the litigation attending the W & W Adversary there is simply too much at stake and the temptation to maneuver and jockey for position between the W & W Adversary and main bankruptcy case litigation associated with plan confirmation are likely to prove too great to resist by Empery, White Winston, or both (maybe others, as well). The potential for litigation in the W & W Adversary spilling over into the main bankruptcy case holds out the additional downside risk of dragging the Debtor unnecessarily into such litigation efforts.

59. Perhaps the greatest concern, however, is having before the Court (at least potentially) multiple competing Chapter 11 plans from Empery, White Winston, as well as from estate fiduciaries like Debtor and the OCUC, the scheduling of a confirmation hearing on multiple Chapter 11 plans, all of which may potentially be proposed without the benefit of the W & W Adversary Proceeding having been resolved, and with the Court being called upon to determine which of the plans (if any) should be confirmed under Section 1129(c). As the Court can readily see, denying the Motion holds out the possibility that the base of litigation off of which professional fees, expenses, costs, as well as time demands and commitments from Debtor's professionals and management can be expected to exponentiate are only likely to increase to the collective detriment of Debtor's creditors and estate. Debtor respectfully submits that such an outcome should be avoided if possible.

60. Fortunately, it is possible to avoid such an unwelcome outcome in the Chapter 11 Case. By granting the Motion, the Court would leave the ability to propose a Chapter 11 plan of reorganization in the Chapter 11 Case in Debtor's hands. The channeling function envisioned by Congress in setting Section 1121(b)'s and (d)'s Exclusive Filing Period to vest the power propose a Chapter 11 plan in Debtor's hands initially would be furthered by granting the Motion and avoid the prospect of unnecessary and avoidable litigation around plan confirmation as discussed above.

61.     Finally, Debtor's requested extensions of the Exclusive Filing Period through and including September 30, 2023, and the Exclusive Solicitation Period through and including December 15, 2023, align with the timeframes contemplated in the Final DIP Order. Granting Debtor the extensions requested herein, without prejudice to Debtor's ability to seek additional extensions, if necessary, would obviate the need for Debtor to engage in additional and avoidable motion practice. Debtor's requested relief is consistent with guideposts that have already been established in the Chapter 11 Case.

62.     Based on the foregoing discussion, as well as any additional argument(s) the Court may entertain at the hearing on the Motion, Debtor respectfully submits that cause exists within the meaning of Section 1121(d)(1) to grant Debtor's requested relief.

63.     The Court should, therefore, grant the Motion.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Bankruptcy Court: (i) enter an order, substantially in the form of the proposed form of order attached hereto as **Exhibit 1**, granting the Motion; and (ii) such other and further relief as the Bankruptcy Court believes is just and proper in the circumstances.

Dated: April 10, 2023.

                                              SCHWARTZ LAW, PLLC

                                              By: */s/ Samuel A. Schwartz*
                                              Samuel A. Schwartz, Esq.
                                              Athanasios E. Agelakopoulos, Esq.
                                              601 East Bridger Avenue
                                              Las Vegas, NV 89101

                                              *Attorneys for the Debtor*

# EXHIBIT 1

# EXHIBIT 1

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Athanasios E. Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887
*Attorneys for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: May 9, 2023<br>Hearing Time: 9:30 a.m. (PT) |

**[*PROPOSED*] ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING
DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

Upon the motion [ECF No. ___] (the "**Motion**")[1] of MusclePharm Corporation, the debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "**Debtor**"), for entry of an order pursuant to Section 1121(d) of the Bankruptcy Code extending the exclusive periods in which to file a Chapter 11 plan of reorganization and to solicit acceptances thereof; and it appearing that

---

[1] Any capitalized term not defined herein shall have the meaning ascribed to that term in the Motion.

1

this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and after due deliberation thereon; and this Court having considered the Motion; and it appearing that sufficient cause exists for granting the relief requested therein;

**IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED**.

2. The Debtor's Exclusive Filing Period is extended through and including **September 30, 2023**.

3. The Debtor's Exclusive Solicitation Period is extended through and including **December 15, 2023**.

4. Such extensions are without prejudice to the Debtor's right to file a motion seeking additional extensions of the Exclusive Periods.

5. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS SO ORDERED**.

Respectfully Submitted:

SCHWARTZ LAW, PLLC

By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Athanasios E. Agelakopoulos, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Attorneys for the Debtors*

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those who waived review on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###