Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Athanasios E. Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: May 9, 2023<br>Hearing Time: 9:30 a.m. (PT) |

**DECLARATION OF NICHOLAS RUBIN IN SUPPORT OF DEBTOR'S MOTION FOR ORDER, PURSUANT TO 11 U.S.C. § 1121(d), EXTENDING DEBTOR'S EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

I, Nicholas Rubin, make this declaration (the "**Declaration**") under 28 U.S.C. § 1746 and declare as follows:

1. I am over the age of eighteen (18) years and competent to testify to the matters asserted herein. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the operations and finances of MusclePharm Corporation (the "**Debtor**"), information learned from my review of relevant documents, information supplied to me by other members of the Debtor's management and the Debtor's advisors, or my opinion based on my experience concerning the Debtor's operations and financial condition. I am authorized to submit this Declaration on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

1

2.  I submit this Declaration for all permissible purposes under the Federal Rules of Civil Procedure and Rules of Evidence in support of *Debtor's Motion for Order, Pursuant to 11 U.S.C. § 1121(d) Extending Debtor's Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon* (the "**Motion**").[1]

3.  On or about January 19, 2023, I was appointed to the Debtor's Board of Directors (the "**Board**").

4.  Since then, I have become familiar with Debtor's business operations, financial condition, and actions undertaken during this case.

5.  Debtor's Chapter 11 Case was commenced to preserve and maximize the reorganization value of Debtor's assets and ensuing bankruptcy estate by stopping an Article 9 foreclosure sale of Debtor's intellectual property.

6.  The Article 9 sale was slated to commence shortly after Debtor's bankruptcy filing.

7.  Debtor, therefore, did not have the benefit of pre-bankruptcy planning for a Chapter 11 filing, the time to enlist the aid of restructuring professionals to assist in those efforts, and so forth.

8.  The moment Debtor's Chapter 11 Case was filed, Debtor's professionals and management had to work as diligently, efficiently, and expeditiously as possible to address <u>both</u> operational aspects of Debtor's business <u>and</u> Chapter 11 Case administration matters at the same time.

9.  Debtor's need to attend to matters of such global significance in the context of an already complex and contentious case as the Chapter 11 Case only added to its complexity and the already pressing demands placed upon Debtor, its management team, and professionals.

10.  Similarly, all the litigation efforts surrounding entry of the Final DIP Order only served to draw the collective attention of Debtor's management and professionals to focus on obtaining necessary financing for Debtor during the initial Exclusive Periods.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning(s) ascribed to such terms in the Motion.

2

11. At the outset of this Chapter 11 Case, therefore, Debtor's efforts to negotiate with creditors have revolved largely around entry of the Final DIP Order. Neither Debtor's management nor Debtor's professionals have had sufficient time to work towards formulating a Chapter 11 plan of reorganization or in which to negotiate with creditors, the OCUC, and others toward that end.

12. Debtor has also successfully concluded the initial debtor interview with the U.S. Trustee's office.

13. Given the flurry of activity in the Chapter 11 Case, Debtor and its professionals have simply not had sufficient time to devote to formulating a Chapter 11 plan of reorganization.

14. The W & W Adversary adds an additional layer of complexity to Debtor's reorganization efforts as it presents a contingency that either (i) must be resolved before a workable Chapter 11 plan of reorganization can be proposed or, at a minimum, (ii) calls for further evaluation, additional planning and, perhaps, negotiations with parties in interest to arrive at a workable reorganization framework for a Chapter 11 plan confirmation process to proceed alongside the litigation of the W & W Adversary.

I declare under penalty of perjury under the laws of the United States of America, the foregoing is true and correct.

Dated April 10, 2023

/s/ *Nicholas Rubin*
Nicholas Rubin, Director