**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:   (608) 630-8990
Facsimile:   (608) 630-8991
Email: mrichman@steinhilberswanson.com

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:   (702) 685-4444
Facsimile:   (725) 220-4360
Email: ccarlyon@carlyoncica.com
       dcica@carlyoncica.com
       tosteen@carlyoncica.com

*Counsel for Ryan Drexler*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No. BK-22-14422-NMC<br>Chapter 11<br><br>**OMNIBUS LIMITED OBJECTION TO FIRST INTERIM FEE APPLICATIONS AND RESERVATION OF RIGHTS**<br><br>Hearing Date: May 16, 2023<br>Hearing Time: 9:30 a.m. |

Creditor, equity holder, and interested party, Ryan Drexler ("Movant" or "Drexler"), through his Nevada counsel, the law firm of Carlyon Cica Chtd., and co-counsel Steinhilber Swanson LLP, hereby respectfully submits this omnibus limited objection and reservation of rights with respect to: (1) the *First Interim Application for Compensation for Services Rendered and Reimbursement for Expenses Incurred by Schwartz Law, PLLC for the Period of December 15, 2022 – March 31, 2023* (the "Schwartz Interim Fee Application), ECF No. 400; (2) the *First Interim Application for Compensation for Services Rendered and*

*Reimbursement for Expenses Incurred by Portage Point Partners, LLC for the Period of December 15, 2022 through March 31, 2023* (the "Portage Interim Fee Application"), ECF No. 398; (3) the *First Interim Fee Application of Pachulski Stang Ziehl & Jones LLP for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors* (the "Pachulski Interim Fee Application"), ECF No. 385; and (4) the *First Interim Fee Application of Larson & Zirzow, LLC as Nevada Counsel to the Official Committee of Unsecured Creditors for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred*, (the "Larson Interim Fee Application", and collectively, the "Interim Fee Applications"), ECF No. 392.

This objection is made and based upon the following points and authorities, as well as Civil Rule[1] 26, made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7026, the pleadings, papers, and records on file in this case, of which judicial notice is respectfully requested pursuant to Fed. R. Evid. 201, and any additional evidence and argument entertained by the Court at the time of the hearing on the Interim Fee Applications.

Respectfully submitted this 2nd day of May 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

---

[1] Unless otherwise indicated, all references to a "Section" or a "Chapter" are to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "Local Rule" references are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada. "Civil Rule" references are to the Federal Rules of Civil Procedure. All references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court.

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction**

In the first three-and-a-half months of this chapter 11 case, MusclePharm Corporation (the "Debtor")—a company whose schedules reflect assets worth less than $1 million (with the value of others unknown) and liabilities of nearly $50 million, ECF No. 176 at 2—has incurred an astounding total of nearly $1.5 million in professional fees and expenses for which three law firms and a financial advisory firm now seek interim approval and authorization of payment. Nearly $1 million of this total has already been paid pursuant to this Court's *Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Procedures Order"). ECF No. 193. The status of accruals and payments is summarized in the following table:

|  | **Interim Fees Requested** | **Interim Expenses Requested** | **Total** | **Payments Already Made** | **Outstanding Balance** |
|---|---|---|---|---|---|
| Schwartz Law, PPLC | $792,232.50 | $10,266.96 | $802,499.46 | $503,079.50 | $299,419.96 |
| Portage Point Partners, | $245,071.00 | $0.00 | $245,071.00 | $196,056.80 | $49,014.20 |
| Pachulski Stang Ziehl & Jones LLP | $400,700.50 | $598.85 | $401,299.35 | $199,572.96 | $201,726.39 |
| Larson & Zirzow, LLC | $4,836.00 | $994.41 | $5,830.41 | $4,684.64[2] | $1,145.77 |
| **Total** | **$1,442,840.00** | **$11,860.22** | **$1,454,700.22** | **$903,393.90** | **$551,306.32** |

These totals are remarkable not only for their amount in relation to what is a relatively small case, but also because the Debtor has failed to achieve any progress toward a chapter 11 plan or any material net profit or business growth, and there is no apparent cash flow to support payment of such large administrative expenses. The compensation exceeds the Debtors' filed budgets, *see* ECF Nos. 296 at 30 & 348 at 4, and, together with other accrued liabilities, may

---

[2] The Larson Interim Fee Application reports that it "submitted its Second Interim Fee Statement on April 10, 2023, therefore payment is not expected until April 25, 2023." ECF No. 392 at 4 n.2. This calculation assumes that such payment has been made.

render the estate administratively insolvent. In addition, a substantial portion of the fees appear to have been incurred in unrelenting litigation and contested matters (including hundreds of lawyer hours spent on the Debtor's post-petition financing motion and related orders), which do not appear to have had any material benefit to the estate or to creditors. Accordingly, Drexler objects at this time to the allowance and payment by the Debtor of any amounts (the "Outstanding Balances" set forth above) that exceed what the professionals have already been paid, and otherwise reserves the right to object at the time of final fee applications to all amounts previously paid and sought to be allowed in the Interim Fee Applications.

## II. Jurisdiction and Venue

This Court has jurisdiction over the Interim Fee Applications pursuant to 28 U.S.C. §§ 157 and 1334. As matters concerning the administration of the Debtor's bankruptcy estate, the adjudication of the Interim Fee Applications is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). This bankruptcy proceeding and the Interim Fee Applications were properly filed in the United States Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. §§1408 and 1409.

In accordance with Local Rule 9014.2, Drexler consents to entry of final orders and judgment relating to the Interim Fee Applications by the presiding Bankruptcy Judge if it is determined that the Bankruptcy Court, without the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. However, the professionals seek entry of interim orders under 11 U.S.C. § 331, which "in no way restricts the bankruptcy court's ability to craft a final award under § 330. 'Because interim awards are interlocutory and often require future adjustments, they are always subject to the court's reexamination and adjustment during the course of the case.'" *Leichty v. Neary (In re Strand)*, 375 F.3d 854. 585 (9th Cir. 2004) (quoting *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1321 (5th Cir. 1989), which quotes 2 Collier on Bankruptcy ¶ 331.03 (15th ed.)).

III. **Background**

A. **Schwartz Law, PLLC**

On December 15, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF No. 1. One week later, the Debtor filed an *Application for Entry of an Order under 11 U.S.C. §§ 327(a), 328, 329, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Retention of Schwartz Law, PLLC as Attorneys for the Debtor-in-Possession*. ECF No. 10. On January 3, 2023, the Court entered an order granting the application and authorizing the Debtor's retention and employment of Schwartz Law, PLLC ("Schwartz"). ECF No. 165.

On April 17, 2023, Schwartz filed the Schwartz Interim Fee Application, which requests interim approval of $802,499.46 in compensation, representing $792,232.50 in fees and $10,266.96 in expenses for services rendered and expenses incurred from December 15, 2022 through March 31, 2023. ECF No. 400 at 1. The Schwartz Interim Fee Application and the supporting declaration indicate that the Debtor has already paid Schwartz $493,034.16 in fees and $10,045.34 in expenses pursuant to the Interim Compensation Procedures Order, leaving an outstanding balance requested of $299,419.96. *Id.* at 3; ECF No. 401 at 2, ¶ 6. It appears that nearly all these funds necessarily came from advances issued by Empery Tax Efficient, LP ("Empery"), the Debtor's post-petition lender, *see* ECF Nos. 296, 330-1 at 3, 419-1 at 3, as there does not appear to be any positive operational cash flow to support the payment of any material administrative expenses.

B. **Portage Point Partners, LLC**

On January 3, 2023, the Debtors also filed an *Application for Entry of an Order under 11 U.S.C. §§ 327(a), 328, 329, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Retention of Portage Point Partners, LLC as Restructuring Advisors for the Debtor*. ECF No. 41. On January 3, 2023, the Court entered an order granting the application and authorizing the Debtor's retention and employment of Portage Point Partners, LLC ("Portage"). ECF No. 166.

1  On April 17, 2023, Portage filed the Portage Interim Fee Application, which requests interim approval of $245,071.00 in compensation, representing $245,071.00 in fees and $0.00 in expenses. ECF No. 398 at 1. The Portage Interim Fee Application and the supporting declaration indicates that the Debtor has already paid Portage $196,056.80 in fees and $0.00 in expenses pursuant to the Interim Compensation Procedures Order, leaving an outstanding balance requested of $49,014.20. *Id.* at 3; ECF No. 399 at 2, ¶ 5. Again, it appears that nearly all these funds necessarily came from Empery's advances, as there does not appear to be any positive operational cash flow to support the payment of any material administrative expenses.

**C.     Pachulski Stang Ziehl & Jones LLP**

On January 4, 2023, the United States Trustee (the "UST") appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, consisting of MHF Opco, LLC (f/k/a Mill Haven Foods, LLC), Atlantic Grain & Trade, and JW Nutritional, LLC. ECF No. 49. On February 21, 2023, the UST filed an amended appointment to include S.K. Laboratories, Inc. and Excelsior Nutrition, Inc. ECF No. 245.

 On January 24, 2023, the Committee filed an *Application for Order Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as of January 4, 2023*. ECF No. 147. On February 28, 2023, the Court entered an order granting the application and approving the Committee's retention and employment of Pachulski Stang Ziehl & Jones LLP ("Pachulski"). ECF No. 261.

On April 14, 2023, Pachulski filed the "Pachulski Interim Fee Application, which requests interim approval of $401,299.35 in compensation, representing $400,700.50 in fees and $598.85 in costs. ECF No. 385 at 1. The Pachulski Interim Fee Application indicates that the Debtor has already paid Pachulski $199,119.68 in fees and $453.28 in expenses, leaving an outstanding balance requested of $201,726.39. *Id.* at 3, 5. Again, DIP financing appears to be the primary source for such payments, as there does not appear to be any positive operational cash flow to support the payment of any material administrative expenses.

**D.    Larson & Zirzow, LLC**

On January 24, 2023, the Committee filed an *Application for Order Approving the Employment of Larson & Zirzow, LLC as Nevada Counsel to the Official Committee of Unsecured Creditors, Effective January 4, 2023*, ECF No. 149. On February 28, 2023, the Court entered an order granting the application and approving the Committee's retention and employment of Larson & Zirzow, LLC ("Larson") as local counsel. ECF No. 262.

On April 17, 2023, Larson filed the Larson Interim Fee Application, which requests interim approval of $5,830.41 in compensation, representing $4,836.00 in fees and $994.41 in expenses. ECF Nos. 392 at 1 & 393 at 2 ¶ 5. The Larson Interim Fee Application and the supporting declaration indicate that the Debtor has paid (or will have paid by April 25, 2023) Larson $3,868.80 in fees and $994.41 in expenses, leaving $967.20 outstanding. *Id.* at 4.

### IV.    Standard under 11 U.S.C. §§ 330 & 331

Schwarz, Portage, Pachulski, and Larson (collectively, the "Professionals") seek entry of orders under section 331 of the Bankruptcy Code, which permits interim applications for compensation "as is provided under section 330". 11 U.S.C. § 331. *See also* 3 Collier on Bankruptcy, ¶ 331.02 (16th ed.), LexisNexis ("It is section 330 that governs the substantive standards for compensating professional and paraprofessional persons and other officers of the court, *including interim compensation allowable under section 331*." (emphasis added)). Section 330, in turn, permits "the court to award to a… a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered…; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). *See also In re Hartland MMI, LLC*, No. 17-10549-mkn, 2018 WL 6980931, at *3 (Bankr. D. Nev. Dec. 10, 2018) ("For a professional person employed under Section 327, Section 330 provides that the court may award reasonable compensation for actual, necessary services rendered by the professional person and reimbursement for actual, necessary expenses.").

To determine "reasonable compensation", the Bankruptcy Code requires the respective Bankruptcy Court to "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including":

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). As Judge Nakagawa summarized: "Sections 330(a)(3)[(A) & (D)] focus on the number of hours billed by the professional", subsections (B) and (E) "focus on the hourly rates charged by the professional, taking into account the professional's qualifications, skills and experience", and subsection (C) "focuses on the administration of the bankruptcy case, or the benefit of the services performed by the professional at the time the services were rendered." *Hartland MMI, LLC*, 2018 WL 6980931, at *4. Subsection (C) also "recognizes both the *limited resources available to pay unsecured creditors* in a bankruptcy case and the corresponding need to limit the administrative expenses of completing the case." *Id.* (emphasis added).

In addition to considering the factors under section 330(a)(4), the reasonableness inquiry should examine the "circumstances and the manner in which services are performed and the results achieved[.]" *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000). This examination looks at five questions:

1. Were the services authorized?
2. Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
3. Are the services adequately documented?
4. Are the fees requested reasonable, taking into consideration the facts set forth in § 330(a)(3)?
5. Whether the professional exercised reasonable billing judgment?

*Id.* (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 904 F.2d 955, 957–58 (9th Cir. 1991), and *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 321 (9th Cir. 1991)).

The Bankruptcy Court may "award compensation that is less than the amount of compensation that is requested", 11 U.S.C. § 330(a)(2), and must disallow compensation for "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the estate." 11 U.S.C. § 330(a)(4)(A). In addition, "[i]f the court finds that an award of fees or expenses is appropriate, but further finds that it is likely that there will be insufficient assets to pay all administrative claims, the court may award the appropriate amount but defer all or part of the payment of the compensation sought." 3 *Collier on Bankruptcy* ¶ 331.02[3].

"The fee applicant bears the burden of proving that the fees are proper under Section 330(a)(4)(A)." *In re Las Vegas Monorail Co.*, 458 B.R. 553, 556 (Bankr. D. Nev. 2011) (citing *Law Offices of David A. Boone v. Derham-Berk (In re Eliapo)*, 298 B.R. 392, 402 (B.A.P. 9th Cir. 2003), which cites *In re Dalessio*, 74 B.R. 721, 724 (B.A.P. 9th Cir. 1987), *rev'd on other grounds*, 468 F.3d 592, 595 (9th Cir. 2006)). *See also Richardson & Richardson, P.C. v. Romano (In re Romano)*, No. AZ-11-1434 (B.A.P. 9th Cir. May 7, 2012) (unpublished) (the

professional, "as the applicant, had the burden to establish that his fees were reasonable." (quoting *Eliapo*, 298 B.R. at 402 and *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### V. Argument

Based on the considerations set forth in section 330(a) of the Bankruptcy and the Ninth Circuit's case law, Drexler submits that the Court should allow and authorize payment on an interim basis only of no more than the nearly $1 million that the Debtor has already paid to the Professionals pursuant to the Interim Compensation Procedures Order (which is roughly two-thirds of the total amounts accrued).

First, the Interim Fee Applications request allowance and payment of compensation exceeding the amounts set forth in the Debtor's budget without offering any explanation where the Debtor will realize the additional funds necessary to make such payments. Take, for instance, Schwartz: the Schwartz Interim Fee Application and the Debtor's monthly operating reports indicate that the Debtor has made payments of $503,079.50 on account of professional fees. *See* ECF Nos. 400 at 3, 330, & 419. The Debtor's March 27, 2023, budget anticipates that the Debtor will make an additional payment of $109,200 on April 30, 2023, and a $221,228 payment on June 11, 2023, ECF No. 348 at 4, for a grand total of $804,184 in payments through mid-June. While this number *appears* to connect to the amounts requested in the Schwartz First Interim Fee Application, it does not include amounts presumably to be paid for either *April 2023* or *May 2023* pursuant to the Interim Compensation Order—which, based on the first three-and-a-half months of this proceeding, may result in fees exceeding another $200,000 per month. Schwartz does not explain how the Debtor intends to address this deficit, especially when the estimated "ending cash" set forth in the Final Budget is $253,451, leaving little cushion for the Debtor to meet both its operational and restructuring expenses.

The same can be said for Portage and the other Professionals too. For example, as to Portage, the Portage Interim Fee Application and monthly operating reports indicate that the Debtor has made payments of $196,056.80. ECF Nos. 398 at 3, 330, & 419. The interim budget provides for the Debtor to make additional payments to Portage of $40,000 on April 30, 2023

1   (which the Debtor likely has already paid in part ($26,179.80)), and $85,731 on June 11, 2023.
2   Thus, the Debtor's budget contemplates payment to Portage of $269,428.20 through mid-June.
3   Like Schwartz, this number exceeds the amount requested in the Portage Interim Fee
4   Application, and does not consider payments yet to be made under the Interim Compensation
5   Order for April 2023 or May 2023, leaving a substantial payment deficit.

6         Based on the Debtor's cash flow and the scope of the Professionals' Interim Fee
7   Applications, and notwithstanding whether the incurrence of these outsized fees benefitted the
8   estate or otherwise advanced its administration, it appears that the estate may be
9   administratively insolvent and unable to pay all administrative claims in full, an important
10  reason to pause additional interim payments that have not already been made. The Debtor's
11  March 2023 operating report indicates that post-petition accounts payable are now more than
12  $3 million, ECF No. 419 at 2, and neither the Debtor's final budget, ECF No. 348, nor monthly
13  operating reports provide answers as to how those payables will be satisfied. To the contrary,
14  they demonstrate unrelenting losses and the dim prospects of any successful reorganization
15  under chapter 11 of the Bankruptcy Code. Indeed, for the thirteen weeks ending June 11, 2023,
16  the budget anticipates that the Debtor's cash on hand will have only increased by $62,000 to
17  $253,451 (a projection that now appears to be much in doubt given the enormous number and
18  amount of outstanding liabilities).

19        What is more, the Interim Fee Applications do not make clear how the Professionals
20  have attempted to address the Debtor's operational challenges or restructure the business. The
21  Portage Interim Fee Application includes a category for "Business Operations Fees", which
22  includes 59.30 hours for "calls and virtual meetings with the Company's management team to
23  discuss various aspects of the ongoing operations including sales forecasts, disbursement
24  management and vendor discussions." ECF No. 398 at 8. But this only accounts for 16% of
25  Portage's time spent through March 31, 2023, even though the Debtor contemplated that
26  Portage would assist with "stabiliz[ing] and reorganiz[ing] the Debtor's assets", and that
27  Portage's engagement would include "evaluating and/or developing a business plan and/or

such other related forecasts" and "evaluating and/or developing various strategic and/or financial alternatives and financial analyses[.]" ECF No. 41 at 4. Likewise, Schwartz reports 107.40 hours addressing "Business Operations", such as "assisting the Debtor with various operational challenges arising in the Chapter 11 Case, including the negotiation of business contracts and employment and payroll issues." ECF No. 400 at 10. That number, however, represents only 7% of the total time that the Schwartz firm spent in the case, and pales in comparison to the 587 hours spent on case administration, the 154 hours spent on matters relating to the retention and compensation of estate professionals, and the nearly 250 hours spent on the Debtor's post-petition financing. *Id.* at 11–12. Without having addressed the Debtor's operational challenges, and with so much of their time consumed by administrative matters and post-petition financing, the Professionals' services have only conferred a marginal benefit on the bankruptcy estate at best. *See* 11 U.S.C. § 330(a)(4). Given the "limited resources available to pay unsecured creditors in a bankruptcy case and the corresponding need to limit the administrative expenses of completing the case", *Hartland MMI, LLC*, 2018 WL 6980931, at *4, Drexler submits that the Court should allow and authorize payment on an interim basis of no more than the nearly $1 million that the Debtor has already paid to the Professionals pursuant to the Interim Compensation Procedures Order.

   Finally, on April 28, 2023, Drexler moved for the appointment of a chapter 11 trustee under 11 U.S.C. §1104(a) to administer the Debtor's bankruptcy estate. ECF No. 447. As he wrote in his motion, the appointment of a chapter 11 trustee is warranted (and necessary) given the intense and ongoing acrimony amongst the parties, the lack of progress towards a plan of reorganization, and the Debtor's gross mismanagement of the estate. *Id.* at 16–17. In addition, Drexler believes that at least one supplier of protein powder (who is also a member of the Committee) has been charging the Debtor above-market prices, requiring the Debtor to raise prices to its customers in a manner that renders the Debtor's products uncompetitive. *Id.* at 4. In these circumstances, where the Court may appoint a chapter 11 trustee, Drexler also believes that the most prudent course of action calls for limiting the allowance of compensation (and

the authorization of payment) pending the adjudication of his motion and the potential review of professional fees by a disinterested trustee.

### VI. Conclusion

For these reasons, Drexler respectfully requests that the Court deny the Interim Fee Applications to the extent they request allowance and payment of compensation which exceeds the amounts that the Debtor has already paid to the Professionals pursuant to the Interim Compensation Procedures Order.

### VII. Reservation of Rights

The Professionals seek interim allowance and payment of compensation. Drexler reserves his right to assert additional objections to any of the Professionals' final applications for compensation under 11 U.S.C. § 330.

Respectfully submitted this 2nd day of May 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Nancy Arceneaux*
An employee of Carlyon Cica Chtd.