**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
Email: mrichman@steinhilberswanson.com

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:    (702) 685-4444
Facsimile:    (725) 220-4360
Email: ccarlyon@carlyoncica.com
         dcica@carlyoncica.com
         tosteen@carlyoncica.com

*Counsel for Ryan Drexler*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.  BK-22-14422-NMC<br>Chapter 11<br><br>Hearing Date: May 25, 2023<br>Hearing Time: 10:30 a.m. |

**OBJECTION TO
DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 TO APPROVE
SETTLEMENT AND PLAN SUPPORT AGREEMENT WITH: (I) THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS; (II) EMPERY
TAX EFFICIENT, LP, IN ITS CAPACITY AS COLLATERAL AGENT
AND FINANCING AGENT FOR MP COLLATERAL, LLC;
AND (III) WHITE WINSTON SELECT ASSET FUNDS, LLC**

Creditor, equity holder, and interested party, Ryan Drexler ("Drexler"), through his Nevada counsel, the law firm of Carlyon Cica Chtd., and co-counsel Steinhilber Swanson LLP, hereby respectfully submits this objection to *Debtor's Motion Pursuant to 11 U.S.C. §§ 105*

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

*and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement and Plan Support Agreement with: (I) the Official Committee of Unsecured Creditors; (II) Empery Tax Efficient, LP, in its Capacity as Collateral Agent and Financing Agent for MP Collateral, LLC; and (III) White Winston Select Asset Funds, LLC* (the "Plan Settlement Motion") [ECF No. 524].

This objection is made and based upon the following points and authorities, as well as Civil Rule[1] 26, made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7026, the pleadings, papers, and records on file in this case, of which judicial notice is respectfully requested pursuant to Fed. R. Evid. 201, and any additional evidence and argument entertained by the Court at the time of the hearing on the Motion.

Respectfully submitted this 23rd day of May 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:   (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

---

[1] Unless otherwise indicated, all references to a "Section" or a "Chapter" are to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "Local Rule" references are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada. "Civil Rule" references are to the Federal Rules of Civil Procedure. All references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

1. The Plan Settlement Motion seeks approval of "***all terms and conditions***" of a twenty-eight-page Plan Support Agreement (the "PSA") that "shall be binding in all respects upon the Debtor" and the other parties to the agreement. ECF No. 524 at 48. The Court should deny approval of the Plan Settlement Motion.

2. First, the sole evidentiary support for the Plan Settlement Motion is a declaration from Nicholas Rubin, the Debtor's "independent" director. His business judgment, however, is not entitled to any consideration. As discussed in Drexler's objection to the Debtor's motion to approve bidding procedures (ECF No. 539), Mr. Rubin has material connections to the DIP lender Empery's lead counsel Gregory Garman and Garman Turner Gordan ("GTG") that have been concealed from the Court and parties in interest, and that irrevocably taint his judgment and service as a director. There is at least a compelling appearance that (1) Rubin is beholden to GTG and therefore unacceptably biased toward GTG and Empery and that (2) Mr. Rubin is otherwise incapable of exercising any independent business judgment in negotiating and approving a PSA or any of its embedded agreements on behalf of the estate. ECF No. 539 at 6.

3. Second, even if the Court were to credit Mr. Rubin's testimony, the PSA fails to proffer sufficient reasoning or evidence for its many settlements. This would not be a big deal if the only thing the Debtor was seeking was authority to agree to the PSA. But here, the Debtor is asking the Court to approve everything that is within the PSA, every settlement term and condition. As Mr. Rubin's declaration acknowledges, "[t]he PSA contains numerous proposed compromises of millions of dollars" and "involves multiple parties." ECF No. 529 at 3. But the Plan Settlement Motion contains but two pages of superficial conclusory statements about the settlements. ECF No. 524 at 11–12. This cannot possibly comply with Bankruptcy Rule 9019. Drexler submits that that the Debtor must provide sufficient evidence and analysis by motion with notice, and an opportunity to respond, to support each settlement

in the PSA. The Court should be provided an actual record on which it can approve or disapprove each of the settlements.

4.  Finally, the PSA's terms and its contemplated plan of reorganization are legally defective. The PSA proposes a distribution scheme that deviates from basic priority rules and therefore violates the Bankruptcy Code and the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017). What is more, the PSA gives the parties carte blanche to amend its terms and exposes the estate to administrative expense claims in the event the Debtor were to breach its terms. The PSA also incorporates many of the defective sale procedures contained in the Debtor's proposed bidding procedures. In these circumstances, approval of the Plan Settlement Motion should be denied.

## II.   JURISDICTION AND VENUE

5.  This Court has jurisdiction over the Plan Settlement Motion pursuant to 28 U.S.C. §§ 1334 and 157. As a matter concerning the administration of the estate and the sale of property, the adjudication of the Plan Settlement Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). This bankruptcy proceeding and the Plan Settlement Motion were property filed in the United States Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. §§ 1408 and 1409. In accordance with Local Rule 9014.2, Drexler consents to entry of final orders and judgment relating to the Plan Settlement Motion if it is determined that the Bankruptcy Court, without the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## III.   BACKGROUND

6.  On May 8, 2023, ten days after Drexler filed his *Motion for the Appointment of a Chapter 11 Trustee*, the Debtor, the Committee, Empery, White Winston, and Prestige Capital Finance, LLC ("Prestige") filed an "agreed upon and approved" Plan Term Sheet (the "Plan Term Sheet") "containing material terms to be incorporated in the Debtor's Chapter 11 plan of reorganization and related plan support agreement between the parties." ECF No. 478 at 1. The Term Sheet contemplated a sale under section 363 of the Bankruptcy Code of

1  substantially all of the Debtor's assets and that "the Debtor, the Committee and Empery (at its
2  option) … shall jointly propose a Plan under chapter 11 of Title 11 of the United States
3  Code[.]" *Id.* at 7, 9.

4      7.    To effectuate the sale process, on May 12, 2023, the Debtor filed its Motion to
5  (I) Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§ 105, 363, and
6  365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and (II) For Waiver
7  of the 14-Day Stay Under Bankruptcy Rule 6004 ("Bidding Procedures Motion"). Along with
8  this objection, Drexler has filed an objection to the Bidding Procedures Motion given (1) Mr.
9  Rubin's tainted business judgment; (2) the improper use of bidding procedures to approve the
10 settlements contemplated in the PSA; and (3) that the bidding procedures are inconsistent with
11 the goal of maximizing value for the benefit of the bankruptcy estate. ECF No. 539 at 6–7.

12     8.    On Friday, May 19, 2023, while the Bidding Procedures Motion was pending
13 and the parties were conducting discovery on that motion, the Debtor filed the Plan Settlement
14 Motion. ECF No. 524. The Plan Settlement Motion seeks approval of a 28-page, single-spaced
15 PSA that seeks this Court's approval of all the various disputes that the parties to the agreement
16 propose to resolve, and if approved as requested would impermissibly predetermine plan
17 treatments and classifications. The Court set the Plan Settlement Motion for a hearing on May
18 25, 2023, providing four days for interested parties to file objections. ECF No. 527.

### IV. ARGUMENT

**A.    The Business Judgment Supporting the PSA is Tainted by the Independent Director's Lack of Independence.**

    9.    The Debtor seeks this Court's approval of the Settlement Motion by asserting that the Debtor's entry into the PSA stemmed from a "business decision [made by] the directors of a corporation . . . on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." ECF No. 524 at 6 (quoting *In re Station Casinos, Inc.*, No. BK-09-52477-GWZ, 2010 Bankr. LEXIS 5672, at *15-16 (Bankr. D. Nev. July 14, 2010)). To that effect, the Plan Settlement Motion is supported *solely* by the declaration of Mr. Rubin, the Debtor's "independent" director. ECF No. 529. In his declaration, Rubin declares

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

that "I reviewed the Motion or have otherwise had its contents explained to me by my advisors, and . . . believe that approval of the relief requested in the Motion is appropriate and in the best interests of the Debtor and its bankruptcy estate." *Id.* at 2.

10. This conclusory statement, to the extent it means anything substantively, rings hollow in light of Rubin's lack of independence and biases as detailed in Drexler's objection to the Bidding Procedures Motion. ECF No. 539 at 10–14.

**B. The Plan Settlement Motion seeks aggregate approval of all settlements between the Debtor and various parties without a record of reasonableness under Bankruptcy Rule 9019 as to each settlement.**

11. The Debtor seeks to approve "all of the terms and conditions" in the PSA, including the various settlements between it and other parties. ECF No. 524 at 47. Indeed, the Debtor admits the "PSA contains numerous proposed compromises of millions of dollars of claims that eliminate the major stumbling blocks the Debtor confronted to move this case forward." *Id.* at 8. However, the Plan Settlement Motion fails to present individualized analyses of those compromises or any evidentiary support, and therefore violates Bankruptcy Rule 9019. The Plan Settlement Motion seeks to jam ALL the agreements contained within the PSA through this Court based on less than two pages of conclusory assertions that the PSA as a whole satisfies the reasonableness test articulated in *In re AC Properties*, 784 F.2d 1377 (9th Cir. 1986). ECF No. 524 at 10–12.

12. For instance, the Plan Settlement Motion is silent on why a settlement allowing Empery an allowed claim of $18 million and credit bidding its claim up to $14.0 million (with the Committee authorized to increase it by an additional $4.0 million), satisfies the Bankruptcy Rule 9019 analysis, especially where there is a pending adversary proceeding before this Court, *see White Winston Select Asset Funds, LLC v. Empery Tax Efficient, LP*, Case No. 23-01014-nmc (Bankr. D. Nev.), in which White Winston (and the Committee, by intervention and on behalf of the Debtor's estate) sought to reclassify Empery's claims as equity, equitably subordinate Empery's claim (and those for whom Empery represented) to those of White

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

1 Winston, and obtain a judgment that certain provisions in Empery's loan documents constituted penalties.

13. Additionally, the Plan Settlement Motion omits any analysis under Bankruptcy Rule 9019 regarding the PSA's exclusion in section 3(b)(iii) of the White Winston D&O Claims from the sale. ECF No. 524 at 21. By excluding such claims, the Debtor is effectuating an agreement, without Court approval, that such claims (currently belonging to the estate) will revest in the reorganized Debtor for White Winston's benefit.

14. Another disguised settlement appears in the PSA's "Allowed Prestige Secured Claim" of $2,500,000. *Id.* at 42. There is absolutely no analysis of why a claim originally listed at $1,731,000 in the Debtor's schedules, and for which a proof of claim was filed at $2,737.003.11 is now to be settled in Exhibit A to the PSA at $2,500,000. ECF No. 176 at 19; Claim No. 14-2 at 2; ECF No. 524 at 42.

C. **The Plan Settlement Motion seeks approval of procedures and terms of a plan of reorganization that are not in the Debtor's best interest and are inconsistent with the Bankruptcy Code.**

15. Like the Term Sheet and the Bidding Procedures, the PSA proposes a sale process involving substantially all the Debtor's assets. ECF No. 524 at 20–21. The PSA is as flawed in this regard as the Bidding Procedures Motion. As a starting point, its proposal to expedite an auction and select a stalking horse bidder so close to the auction, *id.* at 21, are inconsistent with the goal of having a fair auction and maximizing the value to the estate. Further, the PSA contemplates the Debtor engaging an investment banker (apparently the "independent" director's firm), but does not explain how the Debtor or Force 10 Partners will attract prospective bidders to maximize value for the entire estate.

16. Beyond that, the PSA provides for "an agreed 'waterfall' for the distribution of funds from that sale." *Id.* at 8. That is clearly a plan provision that can only be approved in a plan, with appropriate notice and due process rights. Moreover, it appears to be a provision that could not be approved.

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

17. Distribution schemes in bankruptcy cases cannot, without the consent of the affected parties, deviate from the basic priority rules set by the Code. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017); *In re Pac. Lumber Co.*, 584 F.3d 229, 244 n.20 (5th Cir. 2009) ("[A] plan of reorganization may not allocate any property whatsoever to any junior class on account of their interests or claims in a debtor unless such senior classes receive property equal in value to the full amount of their allowed claims."). Thus, creditors cannot "gift" bankruptcy dividends to other creditors without first receiving them in accord with the Code's priority rules. *In re Fanita Ranch, L.P.*, No. ADV 10-90204, 2010 WL 4955892, at *7 (Bankr. S.D. Cal. Nov. 5, 2010) (citing *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1312–13 (1st Cir. 1993) (approving gift from senior secured creditor to general unsecured creditors as a group because it "[took] effect only after a proper distribution under the Code")); *In re Protocol Servs., Inc.*, No. 05-06782-JM11, 2005 WL 6485180, at *2 (Bankr. S.D. Cal. Dec. 23, 2005); *cf. In re KVN Corp., Inc.*, 514 B.R. 1, 7 (B.A.P. 9th Cir. 2014) (finding that "a presumption of impropriety arises" when a Chapter 7 trustee seeks to sell fully encumbered estate property pursuant to carve-out agreement with secured creditor).

18. Similarly, preconfirmation transactions cannot "dictat[e] the terms of a plan [to] short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan[,]" lest they become impermissible sub rosa plans. *In re McClure*, No. 1:13-BK-10386-GM, 2015 WL 1607365, at *8 (Bankr. C.D. Cal. Apr. 2, 2015) (citing *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir.1983)) (internal quotation marks omitted). "When preconfirmation transactions . . . have the effect of or dictate the terms of a future reorganization plan, some courts have required the debtor to provide creditors with the protection they would have received in the confirmation process." *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 318 (B.A.P. 9th Cir. 1992).

19. Indeed, the PSA contains many sub rosa class-skipping provisions. Section 4(g)(v) of the PSA impermissibly deviates from the basic priority rule by allowing Empery to gift excess value, $500,000 and equity in an acquisition vehicle controlled by Empery directly

to the liquidation trust for the benefit of Class 5 General Unsecured Claims, skipping Drexler's subordinated secured claim. ECF No. 524 at 4, 6, 24, 41–42; Claim 56-1. *See, e.g.* Exhibit A to the PSA, which provides that the difference between the Allowed Empery Secured Claim of $18 million and the Empery Payoff Amount (as those terms are defined in the PSA) of $12 million, should the sale proceeds amount to more than $12 million, shall skip subordinated secured claims and be assigned for the benefit of a liquidation trust for the benefit of unsecured creditors.

20.     Another impermissible sub rosa provision and class skipping gift arises in the PSA's treatment of the Debtor's valuable net operating losses (NOLs). The PSA envisions a plan that "preserv[es] . . . favorable tax attributes of the Debtor (including all net operating losses) for the benefit of the Reorganized Debtor," and gives White Winston "100% . . . of the new equity interests or, at White Winstone's election, the prepetition equity interests . . . in the Reorganized Debtor." ECF No. 524 at 24, 44. Even assuming the gift of the NOLs is a permissible one, the PSA and Settlement Motion fail to provide any authority or otherwise explain how a plan could skip senior classes and discriminate unfairly among the unsecured creditors by gifting the NOLs to White Winston in full satisfaction of White Winston's unsecured claim, where other unsecured creditors are receiving pennies on the dollar at most. And White Winston's claim has not been valued or otherwise considered by this Court.

21.     Next, there are no reasonable boundaries on the parties' ability to modify the terms of the PSA.  Section 15 of the PSA provides that "except as otherwise provided in this Agreement, including all exhibits annexed hereto (and all exhibits and annexes thereto), this Agreement may not be modified, amended, or supplemented except by a written agreement signed by each of the parties." *Id.* at 32. Thus, the parties to the PSA are asking this Court to approve an agreement that gives them carte blanche to amend it without further Court approval.

22.     Finally, the PSA's provisions expose the bankruptcy estate to monetary damages should the Debtor breach the agreement if circumstances change. In effect, the Debtor is completely relinquishing its fiduciary duty. Section 12(d) provides that "in no event shall

any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder." ECF No. 524 at 32. The fact that the estate would be exposed to damage claims (rising to administrative expense priority) upon Debtor's breach of an agreement supported by tainted business judgment and for which there is no individualized reasonableness analysis of the many settlements contained therein is a further reason why the Plan Settlement Motion should be denied.

### V. Reservation of Rights

23. The Debtor filed the Plan Settlement Motion in the afternoon on Friday, May 19. Drexler objected to shortened notice (reported on the attorney information sheet) and filed an objection to shortened notice less than three hours after the motion for order shortening time was filed. However, just before the Drexler objection was filed, the Court entered an *Ex Parte Order Shortening Time* and requiring objections to be filed by Tuesday, May 23. ECF No. 527 at 2. Given that the relief sought by the Debtor was not just the simple authority to enter the PSA, but approval of all of its substantive terms and conditions, including settlements, Drexler's ability to respond fully in such a short time has been severely hampered. During this same time, Drexler received a document production Friday evening containing over 700 emails for the Rubin deposition, which was conducted in person in Las Vegas on Monday, May 22, and Drexler had to prepare his objection (also on shortened notice) to the Debtor's proposed bidding procedures and a statement of position regarding the Trustee Motion (both due today).

24. Therefore, Drexler respectfully requests the right to supplement this objection with additional information, grounds for denial, and evidence. Drexler also respectfully requests that an evidentiary hearing be conducted on the Plan Settlement Motion.

### VI. Conclusion

25. Drexler respectfully requests that the Court deny the Plan Settlement Motion, or in the alternative, schedule the same for hearing after Drexler's rights are adjudicated upon disposition of Empery's Motion to Enforce Intercreditor Agreement, and grant such other relief as the Court deems just and appropriate.

1  Respectfully submitted this 23rd day of May 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone: (608) 630-8990
Facsimile: (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

**CARLYON CICA CHTD.**
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Cristina Robertson
An employee of Carlyon Cica Chtd.