Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for the Debtor*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: May 25, 2023<br>Hearing Time: 10:30 a.m. |

### DEBTOR'S OMNIBUS REPLY TO THE OBJECTIONS TO MOTION TO APPROVE BIDDING PROCEDURES AND MOTION TO APPROVE SETTLEMENT AND PLAN SUPPORT AGREEMENT

MusclePharm Corporation, the debtor and debtor-in-possession in the above-referenced Chapter 11 Case (the "**Debtor**"), by and through its counsel, Schwartz Law, PLLC, hereby submits this reply (the "**Reply**"): (1) in support of *Debtor's Motion to Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§ 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004* [ECF No. 497] (the "**Bidding Procedures Motion**") and the *Debtor's Motion Pursuant to 11 U.S.C. §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement and Plan Support Agreement with: (I) the Official Committee of Unsecured Creditors; (II) Empery Tax Efficient, LP, in its Capacity as Collateral Agent and Administrative Agent for MP Collateral, LLC; and (III) White Winston Select Asset Funds, LLC* [ECF No. 529] (the "**PSA Motion**"); and (2) to the objections of Ryan Drexler ("**Drexler**") to the Bidding Procedures Motion [ECF No. 539] and the PSA Motion [ECF No. 541].

**PRELIMINARY STATEMENT**

1. Drexler's objections to the Bidding Procedures Motion and PSA Motion have been withdrawn by Empery Tax Efficient, LP ("**Empery**"), as collateral agent for the holders of the senior secured notes and related claims (the "**Senior Creditor**") and as attorney-in-fact for Ryan Drexler pursuant to the *Intercreditor Agreement and Subordination Agreement*, as amended (the "**Subordination/Intercreditor Agreement**"). *See* ECF No. 543.[1] Notwithstanding the withdrawal, the Debtor responds to Drexler's objections in an abundance of caution, and to address Drexler's legally and factually baseless attacks on the Debtor's independent director, Nicholas Rubin.

2. First, the Bidding Procedures are standard for selling assets in Chapter 11 cases.[2] There is nothing remarkable about them. Given the routine nature of the Bidding Procedures, they warrant immediate approval.

3. Similarly, the Settlement and Plan Support Agreement (the "**PSA**") satisfies the business judgment standard under both Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The predicate for the PSA was set during the litigation of the debtor-in-possession financing. During those hearings, the Debtor informed the Court it believed Empery's secured claim was no less than $12,840,000. The Debtor further argued that while it thought there were defenses to Empery's claims in excess of $12,840,000, it did not dispute the calculation of Empery's prepetition claim totaled in excess of $18,000,000. In the final order approving the financing, the Court ordered that, except to the extent successfully challenged in a challenge brought during the relevant Challenge Period, "[Empery] shall have an allowed claim in an amount not less than $12.84 Million," representing the principal amount of the prepetition debt.[3] In the PSA, however, Empery

---

[1] Section 16 of the Subordination/ Intercreditor Agreement provides, in relevant part,

> [Drexler] hereby irrevocably makes, constitutes and appoints Senior Creditor as [Drexler]'s attorney in fact, and grants to Senior Creditor a power of attorney with full power of substitution, in the name of [Drexler] or in the name of Senior Creditor, without notice to [Drexler], and authorizes Senior Creditor . . . (d) to take any other action in connection with any such Insolvency Proceeding that [Drexler] would be authorized to take but for this [Subordination/Intercreditor Agreement] . . . .

Subordination/Intercreditor Agreement, pg. 6, § 16 (ECF No. 506, Page 445 of 469).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion and the PSA Motion.

[3] *See* ECF No. 296, pg. 11, ¶ 7.

1. is compromising its prepetition claim, and if the auction is successful, will be paid $12,000,000 (plus its postpetition financing). This is a victory for the estate – and it should be approved without delay.

4. Similarly, the Debtor is trading two non-essential assets for peace and plan support from White Winston, which assets include the Debtor's: (i) the public company corporate shell, and (ii) net operating losses. Neither has substantial value to the estate. Both are hard to monetize. Plus, White Winston bears the cost and risk associated with trying to glean value from both. In this case, the exchange of these two nominal assets to White Winston for the consideration set forth in the PSA (including the litigation standstill) is a sound business decision. Accordingly, the PSA should be approved without hesitation, so it can be properly tested under Section 1129 of the Bankruptcy Code.

**ARGUMENT**

A. **The Bidding Procedures and PSA are Appropriate Exercises of the Debtor's Business Judgment.**

5. Drexler's objections to the Bidding Procedures Motion and PSA Motion stem largely from baseless innuendo that the Debtor's independent director, Nicholas Rubin, has engaged in improprieties and unsubstantiated accusations that Mr. Rubin cannot exercise independent business judgment because he is "beholden" to Empery's counsel. In his efforts to expand his personal vendetta against Empery and Ryan Lane to include Mr. Rubin, however, Drexler elides the fact that the Committee, represented by sophisticated Chapter 11 counsel, has been active in its role as a fiduciary for the unsecured creditors from the outset of its appointment in this case.

6. The Committee is the architect of the compromises reflected in the PSA. The compromises in the PSA followed extensive arms-length negotiations, none of which is disputed. Put another way, Drexler's fanciful allegations put Empery in control of Mr. Rubin, the Committee and White Winston – all of which is then buttressed by Mr. Rubin's decisions as the independent director. The substance of Drexler's allegations that all these parties are working in concert against him, however, are not supported by any facts.

3

7. It is important to highlight the Committee approved much of the action taken by the Debtor and Mr. Rubin during this case as well, including obtaining the DIP financing, the PSA, the proposed Bidding Procedures, and the sale and plan confirmation timeline contemplated by the PSA. While Drexler would have this Court believe that a nefarious cabal is driving this Chapter 11 Case for the sole purpose of injuring Drexler, the truth is that every stakeholder with an economic interest in the outcome here believes a prompt sale of the Debtor's assets, followed by confirmation of a plan on the terms set forth in the PSA is in the best interests of all parties.

8. Importantly, the Bidding Procedures proposed by the Debtor are standard in every way. Drexler offers no legal or factual support for his argument that the time for exposure to the market is unreasonably short or is likely to be materially delayed, nor does he identify any specific infirmities in the process proposed by the Debtors. In fact, the proposed Bidding Procedures, including the marketing timeline, are reasonable. The Debtor's business operations are not particularly complicated. It has few tangible assets, and its saleable property consists primarily of intellectual property and intangibles that are difficult to monetize, such as the NOLs and causes of action. The intellectual property was exposed to the market through the prepetition Article IX efforts of Empery and Sherwood Partners, a firm specializing in intellectual property sales. Drexler cannot demonstrate that increased marketing time will lead to a higher sale price or any benefit to the estate. By contrast, a longer timeline risks conversion to Chapter 7 because the Debtor may run out of money.

9. Drexler's objections to the PSA Motion are also misplaced. The PSA is the product of good faith efforts by every major stakeholder—other than Drexler—to position the case for confirmation of a feasible Chapter 11 plan and timely exit from bankruptcy. The PSA does not short circuit the requirements of confirmation, but embodies a number of typical compromises between a debtor and its creditors. For example, the PSA includes the framework for a sale of the Debtors' assets, which in turn supports the framework of a plan. None of the terms of the PSA supplant the requirements of Section 1129 or bind anyone other than the parties thereto. It certainly does not affect Drexler, who is otherwise barred by the Subordination/Intercreditor Agreement

from voting against a plan approved by Empery. As such, the Bidding Procedures Motion and PSA Motion should be approved.

### B. The Court Should Disregard Drexler's Attacks on the Debtor's Independent Director.

10. Having no good faith or genuine basis to challenge the Bidding Procedures or PSA, Drexler relies on legally unsupported, factually incorrect, and offensive accusations against Mr. Rubin in keeping with his pattern of abusive litigation tactics and ad hominem attacks. Drexler's specious allegations regarding Mr. Rubin's independence are inappropriate and should not be entertained. Hyperbole and innuendo cannot serve as substitutes for evidence.

11. Drexler cites no authority whatsoever to support his contention that Mr. Rubin's "close business and personal alliances" with Empery's counsel—*i.e.*, his friendship with Mr. Garman, four prior engagements as a fiduciary or financial advisor to Chapter 11 debtors represented by Garman Turner Gordon, and a de minimus equity interest in a company owned, in part, by Mr. Garman—are required to be disclosed by Mr. Rubin in his capacity as an independent director, much less that they give rise to a conflict of interest or lack of independence.

12. Indeed, Drexler conflates Mr. Rubin's appointment as a director with professional employment under Section 327(a) of the Bankruptcy Code in an attempt to insinuate impropriety where none occurred. Mr. Rubin is *not* a professional retained under Section 327, and Drexler waived any such objection to the Debtor's appointment of the independent director when he failed to object to the interim order approving postpetition financing entered on January 23, 2023. *See* ECF No. 139, pg. 13.

13. Furthermore, Drexler fails to cite any Ninth Circuit authority, or indeed, any appellate-level decision at all, in support of the proposition that the Debtor was required to retain Mr. Rubin under Section 327 of the Bankruptcy Code, or that Mr. Rubin was required to disclose "connections" under Bankruptcy Rule 2014. It is no surprise that the cases cited by Drexler are inapposite.[4] *In re Madison Mgmt. Grp., Inc.* involved the appointment of an insolvency professional as the company's sole director in order to liquidate the company, and who subsequently elected

---

[4] *See* ECF No. 539, pg. 12:13-26.

himself president. 137 B.R. 275, 277-278 (Bankr. N.D. Ill. 1992). *In re Schatz Fed. Bearings Co.* involved two attorneys appointed as directors who expressly sought compensation for performing services that were "beyond the scope of directors' duties." 17 B.R. 780, 782-783 (Bankr. S.D.N.Y. 1982). The Ninth Circuit has not adopted *In re eToys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005), nor has Drexler cited any Ninth Circuit authority requiring that directors and officers of a debtor make disclosures similar to those of estate professionals under Bankruptcy Rule 2014.

14. Drexler also cites no authority providing that Mr. Rubin's personal and professional relationship with Mr. Garman would be either (x) a disqualifying conflict of interest under Section 327(a), or (y) a material and relevant connection that would have to be disclosed by an estate professional under Bankruptcy Rule 2014. Drexler offers no evidence that Mr. Rubin's friendship with Mr. Garman is of any consequence in this case. Put simply, Drexler's allegation that professionals who enjoy good working relationships give rise to irreparable conflicts is not a test for disqualification in this District or any other. These claims should be rejected out of hand.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court overrule Drexler's objections and grant the Bidding Procedures Motion and the PSA Motion.

Dated: May 24, 2023.

SCHWARTZ LAW, PLLC

/s/ *Gabrielle A. Hamm*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Attorneys for the Debtor*