**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
Email: mrichman@steinhilberswanson.com

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:    (702) 685-4444
Facsimile:    (725) 220-4360
Email: ccarlyon@carlyoncica.com
          dcica@carlyoncica.com
          tosteen@carlyoncica.com

*Counsel for Ryan Drexler*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.  BK-22-14422-NMC<br>Chapter 11<br><br>Hearing Date: June 15, 2023<br>Hearing Time: 9:30 a.m. |

### OBJECTION TO EMERGENCY MOTION TO ENFORCE *INTERCREDITOR AND SUBORDINATION AGREEMENT* UNDER SECTION 510(a) OF THE BANKRUPTCY CODE

Creditor, equity holder, and interested party, Ryan Drexler ("Drexler"), through his Nevada counsel, the law firm of Carlyon Cica Chtd., and co-counsel Steinhilber Swanson LLP, hereby respectfully submits this objection to the *Emergency Motion to Enforce* Intercreditor and Subordination Agreement *Under Section 510(a) of the Bankruptcy Code* (the "ISA Motion") [ECF No. 506].

This objection is made and based upon the following points and authorities, as well as Civil Rule[1] 26, made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7026, the pleadings, papers, and records on file in this case, of which judicial notice is respectfully requested pursuant to Fed. R. Evid. 201, and any additional evidence and argument entertained by the Court at the time of the hearing on the ISA Motion.

Respectfully submitted this 1st day of June 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:     (608) 630-8990
Facsimile:     (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

---

[1] Unless otherwise indicated, all references to a "Section" or a "Chapter" are to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "Local Rule" references are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada. "Civil Rule" references are to the Federal Rules of Civil Procedure. All references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court.

1

## TABLE OF CONTENTS

2    I.  Summary of Argument ..................................................................................... 1

3    II.  Introduction ..................................................................................................... 1

4    III. Jurisdiction and Venue .................................................................................... 5

5    IV. Applicable Provisions of the ISA ................................................................... 6

6    V.  Argument ......................................................................................................... 8

7        A.  The ISA is not Enforceable because Empery Directly and Materially Breached its Terms, as
8            well as the Implied Covenant of Good Faith and Fair Dealing .......................................... 9

9        B.  The ISA Cannot be Construed to Constrain Drexler's Legal Rights Under the Bankruptcy
            Code. ......................................................................................................................... 10

10           i.   The ISA cannot contract away rights conferred by the Bankruptcy Code. .......... 10

11           ii.  Empery cannot rely upon the limited "attorney in fact" provision in section 16 of the ISA
12               to negate Drexler's rights. ............................................................................. 13

13       C.  None of Drexler's Actions Violate the Express Terms of the ISA. ......................... 15

14       D.  The ISA Does Not Apply to or Limit Drexler's Right to Protect his Equity Interest. 17

15       E.  There is No Legal Basis for Equitable Relief in These Circumstances. .................. 18

16           i.   There is no provision in the ISA providing specific performance as a remedy. .. 18

17           ii.  Empery has not and cannot meet the requirements for injunctive relief. ............. 19

18    VI. Conclusion ..................................................................................................... 20

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ............................................................................. 19

*Bank of Am., N.A. v. PSW NYC LLC,*
No. 651293/10, 2010 WL 4243437 (N.Y. Sup. Ct. Sept. 16, 2010) ...................... 18

*Beal Sav. Bank v. Sommer,*
8 N.Y.3d 318 (2007) ............................................................................................ 14

*Cho v. 401-403 57th St. Realty Corp.,*
752 N.Y.S.2d 55 (App. Div. 1st Dep't 2002) ....................................................... 18

*Club One Acquisition Corp. v. Sarantos,*
No. 650049/2012, 2013 WL 5486212 (N.Y. Sup. Ct. Sep. 30, 2013) ...................... 9

*Dezsofi v. Jacoby,*
36 N.Y.S.2d 672 (Sup. Ct. 1942) ........................................................................... 9

*Don King Prods., Inc. v. Douglas,*
742 F. Supp. 741 (S.D.N.Y. 1990) ......................................................................... 9

*Donohue v. Cuomo,*
38 N.Y.3d 1 (2022) ................................................................................................. 6

*Edge Games, Inc. v. Elec. Arts, Inc.,*
745 F. Supp. 2d 1101 (N.D. Cal. 2010) ................................................................. 20

*Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.,*
No. 01 Civ. 1047 (AJP), 2002 WL 31174470 (S.D.N.Y. Sept. 26, 2002) ............... 9

*Greenfield v. Phillies Records,*
98 N.Y.2d 562 (2002) ............................................................................................. 6

*In re 203 N. LaSalle St. P'ship,*
246 B.R. 325 (Bankr. N.D. Ill. 2000) ............................................... 10, 11, 13, 15

*In re Aerosol Packaging, LLC,*
362 B.R. 43 (Bankr. N.D. Ga. 2006) .................................................................... 12

*In re Argon Credit, LLC,*
596 B.R. 882 (Bankr. N.D. Ill. 2019) ................................................................... 12

*In re Avondale Gateway Ctr. Entitlement, LLC,*
No. 02-09-BK-12153-CGC, 2011 WL 1376997 (D. Ariz. Apr. 12, 2011) ............. 12

*In re Boston Generating, LLC*,
440 B.R. 302 (Bankr. S.D.N.Y. 2010) ............................................................... 15

*In re Croatan Surf Club, LLC*,
No. 11-00194-8-SWH, 2011 WL 5909199 (Bankr. E.D.N.C. Oct. 25, 2011) ................................. 15

*In re Curtis Ltd. Partnership*,
192 B.R. 648 (Bankr. E.D. Pa. 1996) ............................................................... 12

*In re Davis Broadcasting*,
169 B.R. 229 (Bankr. M.D. Ga. 1994) ............................................................... 12

*In re Donaldson Ford, Inc.*,
19 B.R. 425 (Bankr. N.D. Ohio 1982) ............................................................... 11

*In re Erickson Ret. Cmtys., LLC*,
425 B.R. 309 (N.D. Tex. 2010) ............................................................... 12

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007) ............................................................... 19

*In re Fencepost Productions, Inc.*,
629 B.R. 289 (Bankr. D. Kan. 2021) ............................................................... 13, 15

*In re Insight Terminal Sols., LLC*,
No. 19-32231(1)(11), 2019 WL 4640773 (Bankr. W.D. Ky. Sept. 23, 2019) ................................. 11

*In re Intervention Energy Holdings, LLC*,
553 B.R. 258 (Bankr. D. Del. 2016) ............................................................... 11

*In re Ion Media Networks*,
419 B.R. 585 (Bankr. S.D.N.Y. 2009) ............................................................... 12

*In re Itemlab, Inc.*,
197 F. Supp. 194 (E.D.N.Y. 1961) ............................................................... 12

*In re La Paloma Generating Co.*,
595 B.R. 466 (Bankr. D. Del. 2018) ............................................................... 14

*In re MPM Silicones, LLC*,
518 B.R. 740 (Bankr. S.D.N.Y. 2014) ............................................................... 9

*In re Musicland Holding Corp.*,
386 B.R. 428 (S.D.N.Y. 2008) ............................................................... 9

*In re NESV Ice, LLC*,
No. 21-11226-CJP, 2023 WL 2278603 (Bankr. D. Mass. Feb. 28, 2023) ................................. 11

*In re Pontius*,
421 B.R. 814 (Bankr. W.D. Mich. 2009)..................................................................... 11

*In re SW Boston Hotel Venture, LLC*,
460 B.R. 38 (Bankr. D. Mass 2011) .......................................................................... 11

*Lancaster v. Zufle*,
165 F.R.D. 38 (S.D.N.Y. 1996) ................................................................................. 14

*Monex Deposit Co. v. Gilliam*,
680 F. Supp. 2d 1148 (C.D. Cal. 2010) ..................................................................... 19

*Nilson v. JPMorgan Chase Bank, N.A.*,
690 F. Supp. 2d 1231 (D. Utah 2009) ........................................................................ 18

*Rentways, Inc. v. O'Neill Milk & Cream Co.*,
308 N.Y. 342 (1955) ................................................................................................. 14

*See In re Okosisi*,
451 B.R. 90 (Bankr. D. Nev. 2011) ........................................................................... 17

*Sokoloff v. Harriman Ests. Dev. Corp.*,
96 N.Y.2d 409 (2001) ............................................................................................... 18

*Wechsler v. Hunt Health Sys., Ltd.*,
330 F. Supp. 2d 383 (S.D.N.Y. 2004)........................................................................... 9

**Statutes**

11 U.S.C. § 1122 ......................................................................................................18

11 U.S.C. § 1124 ......................................................................................................18

11 U.S.C. § 1327 ......................................................................................................18

11 U.S.C. § 510 ...............................................................................................4, 5, 9, 18

28 U.S.C. § 1334 ........................................................................................................5

28 U.S.C. § 1408 ........................................................................................................5

28 U.S.C. § 1409 ........................................................................................................5

28 U.S.C. § 157 ..........................................................................................................5

**Other Authorities**

American Bankruptcy Institute Commission to Study the Reform of Chapter 11: 2012–2014
Final Report and Recommendations,
available at https://commission.abi.org/full-report ........................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Summary of Argument

- Empery Tax Efficient, LP ("Empery") cannot enforce the Intercreditor and Subordination Agreement dated October 13, 2021, as amended March 8, 2022, (the "ISA")[2] because Empery has directly and materially breached its express and implied obligations.

- Even if the priority ranking of the ISA were enforceable, the provisions of the ISA that Empery contends prohibit Drexler from moving for a chapter 11 trustee, objecting to bid procedures, and objecting to a plan settlement agreement, are unenforceable constraints of Drexler's legal rights under the Bankruptcy Code.

- Even if the Court were to construe the ISA to lawfully constrain specified rights under the Bankruptcy Code, the acts taken by Drexler that Empery seeks to nullify—his motion for a chapter 11 trustee, objection to the motion to approve bidding procedures, and objection to the motion to approve the plan support agreement—are not prohibited by any provisions of the ISA.

- Even if there were any ISA prohibitions that could lawfully constrain Drexler's actions as a creditor under any theory, the ISA does not limit anything Drexler may do to protect and enhance his equity interests.

- In addition to all the foregoing infirmities, which are fatal to Empery's position, Empery is not entitled to specific performance or injunctive relief. The ISA does not provide for specific performance and Empery cannot meet the requirements for injunctive relief because (a) Empery lacks the clean hands required for equitable relief, (b) monetary damages are an adequate remedy at law, and (c) Empery cannot demonstrate a likelihood of success on the merits.

### II.    Introduction

1.    Over the course of several years, Ryan Drexler loaned millions of dollars to MusclePharm Corporation (the "Debtor"). He currently holds a secured claim of approximately $11 million and an unsecured claim of over $7 million (excluding contingent subrogation and reimbursement claims). *See* Claim No. 56 at 4. Drexler is also the Debtor's largest interest holder, owning more than 31 million shares.

2.    In 2021, Drexler agreed to subordinate his secured claim to new capital to be provided by Empery pursuant to the ISA. He also agreed therein to defer any repayments from the Debtor on his secured claim until after Empery received payment in full on its senior claim (except for certain

---

[2] The ISA is attached as Exhibits 9 and 10 to the *Declaration of Ryan Lane in Support of Emergency Motion to Enforce Intercreditor and Subordination Agreement Under Section 510(a) of the Bankruptcy Code* [ECF 508].

repayments that Empery agreed that the Debtor could make to Drexler under an unsecured revolving promissory note). Drexler did not agree to restrict any rights or actions as to his equity interests and no such restrictions are set forth in the ISA.

3.    The parties provided that the ISA would "remain effective until Full Payment" of Empery's secured claim. ISA §§ 9 & 4. Then the ISA would terminate, and Drexler's secured claim would no longer be subordinated to Empery's. Under the ISA, Drexler's claim does not disappear. It remains in place in its junior ranking entitled to distributions up to its full amount once Empery's senior claim is paid.

4.    The ISA includes obligations that Empery and Drexler owe to each other in order to protect their agreed priorities. Most importantly, the ISA provides that ***Empery*** "***will not*** (and hereby waives any right to) ***take any action to contest or challenge (or assist or support any Person in contesting or challenging), directly or indirectly, whether or not in any proceeding*** (including in any Insolvency Proceeding), ***the validity, priority, enforceability, or perfection" of Drexler's secured debt*** or the liens securing such debt. ISA § 10 (emphasis added).

5.    Empery has directly and materially breached its obligations under the ISA. The Plan Term Sheet (ECF No. 478), to which Empery is a party, the Plan Support Agreement ("PSA") (ECF No. 524), to which Empery is also a party, and the Debtor's proposed plan of reorganization (the "Proposed Plan") (ECF No. 553), which was prepared in conformity with the PSA and with Empery's approval, all proposed to change Drexler's status and the priority of his secured claim. Each of these plan documents seeks to manipulate the priority of distribution of auction sale proceeds under the Bankruptcy Code's "waterfall" to bypass Drexler's secured claim.

6.    In the Plan Term Sheet, the PSA, and the Proposed Plan, Empery agreed to provide substantial monetary "gifts" of potentially millions of dollars to unsecured creditors under a plan structure that has changed with each of the foregoing documents, but which in each case would alter the priority of Drexler's secured claim. The latest version, the Proposed Plan filed on Friday, May 26, appears to make Drexler's secured claim a Class 1 claim that would be senior to Empery, but which is expressly subject to the enforceability of the ISA. Proposed Plan at ECF p. 14. Such a provision

would not be remarkable if the Proposed Plan then classified Drexler's claim as a junior secured claim, which is what it would be if the ISA were enforceable. But it appears that the Plan Proponents (the Debtor and the Committee), with Empery's approval, deliberately failed to classify Drexler's secured claim even in accordance with the ISA. By committing to and supporting the Debtor's and the Committee's Proposed Plan with the substantial economic contributions on which the Proposed Plan is based, Empery is actively and directly assisting and supporting those parties in altering the priority of Drexler's secured claim in violation of its obligations under the ISA and the Bankruptcy Code.

7.        But there is more. The Proposed Plan, which can only be effectuated from Empery's financial gifts, alters the priority of Drexler's claim and violates the Bankruptcy Code even if this Court holds the ISA to be unenforceable. It appears that the parties have structurally subordinated what would be Drexler's senior secured claim to Empery through a manipulated distribution of auction sale proceeds that would pay Empery's junior claim ahead of Drexler. Proposed Plan at ECF pp. 14–15. Thus, the Proposed Plan defines "Net Sale Proceeds" (from the auction) and provides that such proceeds are distributed only to Empery's claim in Class 3 (and Prestige's claim in Class 4, which is held by Empery). Proposed Plan at ECF pp. 8–10, 15–16. But in Class 1, where Drexler's secured claim is placed (without even identifying him) as an "Other Secured Claim," there is no reference to "Net Sale Proceeds." *Id.* at ECF p. 14. Instead the proposed treatment of what would be his fully secured senior claim is based on vague references to cash or the value of his collateral. *Id.* Because Drexler and Empery have pledges of the same collateral, substantially all of which the Debtor proposes to sell, this appears to be a ruse designed to conceal the intent to subordinate Drexler to Empery, even if this Court holds that the ISA is unenforceable.

8.        In sum, the structure of the Proposed Plan, made possible by Empery's agreements and financial considerations, is not only contrary to sections 1122, 1123 and 1129 of the Bankruptcy Code and unconfirmable on its face, but constitutes another violation by Empery of Drexler's rights under the ISA. Simply stated, the Proposed Plan, described by various of the parties to the PSA as their "grand bargain," is constructed (as was the Plan Term Sheet and the PSA before it) with the motive and intent, and with Empery's legal and financial assistance and support, to assure that Drexler's

priority ranking as a junior secured creditor is obliterated, and that no proceeds are distributed to Drexler on account of his secured claim.

9. While the extent of Empery's orchestration of these provisions to destroy Drexler's junior secured claim will be shown through discovery, it is indisputable that Empery's contractual agreement to the Term Sheet and the PSA and its economic support of the Proposed Plan (without which the Proposed Plan's effectuation would be impossible), including its gifting potentially millions of dollars to unsecured creditors, constitutes either the "tak[ing of] any action to contest or challenge (or assist[ing] or support[ing] any other Person in contesting or challenging), directly or indirectly . . . , the validity, priority, enforceability, or perfection" of Drexler's secured debt or the liens securing such debt. Accordingly, ***Empery's direct and material breach of the ISA renders it unenforceable against Drexler.[3]***

10. But even if there were no breach of the ISA rendering it completely unenforceable as a matter of law, Empery's argument that the ISA prohibits Drexler from seeking the appointment of a chapter 11 trustee, objecting to the Debtor's proposed bidding procedures, and objecting to the

---

[3] As the Court is aware, Empery and other parties resisted all discovery that Drexler sought in connection with the trustee motion, and discovery on that motion was later stayed. To date, Drexler has thus had very little discovery, limited to documents and a deposition of the Debtor's "independent" director, who disclosed that communications he made and received by text as independent director were destroyed by him. At this writing, Drexler is seeking and Empery may provide additional documents, but the extent of this is uncertain. When permitted his full rights of discovery, both as to the ISA Motion and the ISA Complaint (Empery's adversary proceeding, as defined further herein), Drexler believes that additional breaches by Empery will be demonstrated. For example, there are indications from the limited document production and deposition to date, as well as information received from other sources, that a regular course of communications between and among Empery, JW Nutritional LLC (a member of the Creditors' Committee and a contract manufacturer for the Debtor) and Debtor's chief executive officer (who has an ongoing business relationship outside the Debtor's business with one of JW Nutritional's principals) and the "independent" director will show a deliberate restraint of sales of Debtor's products in order to artificially depress the value of the Debtor's business, and concomitantly reduce the proceeds that might be received in an auction sale. Because a true and unfettered auction, without prior restraints on Debtor's sales, could result in proceeds sufficient to pay Empery in full, and put Drexler's junior secured claim "in the money," this course of conduct, if proved, would be another material breach of the prohibition against Empery taking action against the validity, priority and enforceability of Drexler's secured claim. It also would be a material breach of the ISA's implied covenant of good faith and fair dealing under New York law, as discussed further below.

Debtor's motion to approve the PSA, is inconsistent with a long line of cases holding that *parties to an intercreditor agreement may not contract away a junior creditor's rights under the Bankruptcy Code*. Numerous cases have held that enforcement actions under 11 U.S.C. § 510(a) are limited to enforcing the basic priority of senior and junior secured claims. Beyond that, *the ISA's plain language does not prohibit Drexler from taking any of the actions he has taken so far*. Nor does it permit Empery to use a limited "power of attorney" to negate Drexler's rights. Empery's contention that the ISA's provisions can be construed to permit it to "silence" Drexler is unsupportable, offensive to bankruptcy law and public policy, and should be rejected.

11.    Moreover, to the extent the ISA lawfully restricts any of Drexler's actions in this bankruptcy proceeding, *such restrictions apply to him only in his capacity as a subordinated creditor, not in his capacity as an equity security holder*. Under the ISA, Drexler maintains his full rights under the Bankruptcy Code to seek the relief he has sought and ensure that the Debtor maximizes the value of its estate for the benefit of equity security holders. The ISA Motion should be denied for this reason as well.

12.    Finally, Empery is not entitled to injunctive relief because the ISA does not provide for specific performance and Empery cannot otherwise meet the requirements for an injunction—it lacks clean hands, monetary damages are an adequate remedy at law, and it cannot demonstrate a likelihood of success on the merits.

13.    For those reasons and the ones that follow, this Court should deny the ISA Motion.

### III.    Jurisdiction and Venue

14.    This motion is a core proceeding over which this Court has jurisdiction, 28 U.S.C. §§ 1334 and 157(b)(2)(A), (K), (N), and (O), and venue is proper in this Court. 28 U.S.C. §§ 1408 and 1409. Drexler consents to entry of final orders and judgment relating to the ISA Motion to the extent it seeks injunctive relief under 11 U.S.C. § 510(a), and a determination that the ISA cannot be enforced on any or all of the grounds presented herein, including because it has been breached by Empery.

15.    Drexler submits, however, that any further adjudication of Empery's conduct, and the damages to be sought by Drexler by counterclaim, should be conducted through the adversary

complaint against Drexler, *Empery Tax Efficient, LP v. Drexler*, Adv. No. 23-1093-nmc (the "ISA Adversary Proceeding"), which is in substance a two-party dispute between non-debtors, and therefore may not be appropriate in this Court. The ISA Adversary Proceeding should be subject to all defenses and counterclaims, and to the right and opportunity for full discovery, whether under Part VII of the Federal Rules of Bankruptcy Procedure, or the rules of an applicable alternative forum if it is found that the Bankruptcy Court lacks jurisdiction over the ISA Adversary Proceeding.

### IV.    Applicable Provisions of the ISA

16.    In accordance with the principles of contract interpretation of New York (the state chosen by the parties, *see* ISA § 20), the interpretation of the ISA must start with its text. *See Donohue v. Cuomo*, 38 N.Y.3d 1, 12 (2022) (quoting *Greenfield v. Phillies Records*, 98 N.Y.2d 562, 569 (2002)) ("'The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent' and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing.'").

17.    The ISA contains specific bargains between Drexler and Empery.  Most relevant here, Drexler *and* Empery agreed not to take any action to contest or challenge each other's secured claim. In full, section 10 of the ISA provides:

> Subordinated Creditor will not (and hereby waives any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement. ***Senior Creditor will not (and hereby waives any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Subordinated Debt or the Liens of Subordinated Creditor in respect of any of the Collateral or the provisions of this Agreement.*** Subordinated Creditor agrees that Subordinated Creditor will not take any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents. Subordinated Creditor hereby waives any and all rights he may have as a junior creditor or otherwise to contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral. [Emphasis added.]

18.     Section 3 defines the "Subordinated Debt" Drexler holds in his capacity as a "Subordinated Creditor":

> All loans, advances, debts, liabilities, obligations, debit balances, covenants and duties at any time or times owed by Borrower or any of its subsidiaries to Subordinated Creditor or to any Person owned or controlled by Subordinated Creditor under the Subordinated Notes, the Subordinated Security Agreement, the other Subordinated Loan Documents or otherwise[.]

19.     Section 9 of the ISA provides that "[t]his Agreement shall remain effective until Full Payment", at which time Drexler's security interest would revert to its pre-ISA first position and Drexler would become the Debtor's senior secured lender.

20.     Section 4 provides that Drexler will defer exercising certain rights and remedies under the Subordinated Debt's loan documents, including commencing any "actions" *against* the Borrower:

> Subordinated Creditor [will not] exercise any right or remedy under any Subordinated Loan Document or with respect to any Collateral, or any other right or remedy available at law or equity, nor will Subordinated Creditor commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower or any of its subsidiaries, until [Full Payment.] [4]

21.     In the event of an insolvency proceeding, including bankruptcy, section 5 allows Drexler, "[s]ubject to Section 15" to "execute, verify, deliver and file any proofs of claim in respect of the Subordinated Debt in connection with any Insolvency Proceeding." This is important to Drexler's ability to protect his secured claim priority. In turn, Section 15 provides limited constraints on Drexler's rights under the Bankruptcy Code in an insolvency proceeding:

> In the event of any Insolvency Proceeding with respect to Borrower or any of its subsidiaries: . . .
>
> 15.4 Subordinated Creditor agrees that . . . he/it will not object to or oppose any such cash collateral usage, any debtor-in-possession financing or any sale or other disposition of any property securing all or any part of the Senior Debt free and clear of security interests, liens, or other claims of Subordinated Creditor under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code, if Senior Creditor has consented to such sale or disposition.

---

[4] As explained below, this provision cannot be construed to prohibit Drexler's motion for the appointment of a chapter 11 trustee. Such a restriction would be an unenforceable restraint in contravention of Drexler's rights under the Bankruptcy Code.

. . .

15.5 Subordinated Creditor agrees not to vote for any plan of reorganization that does not provide for the prior payment in full in cash of the Senior Debt or otherwise vote its claims or interests in such Insolvency Proceeding (including voting for, or supporting, confirmation of any plans of reorganization) in a manner that would be inconsistent with Subordinated Creditor's covenants and agreements contained herein; provided that nothing herein shall prevent Subordinated Creditor from voting in a manner consistent with how Senior Creditor votes in such Insolvency Proceeding.

22.     Section 16 of the ISA also provides Empery with *limited* "attorney in fact" powers relating to "any *claim* against" the Debtor belonging to Drexler. It provides in full:

If Subordinated Creditor has any claim against Borrower or any of its subsidiaries in any Insolvency Proceeding, Subordinated Creditor hereby irrevocably makes, constitutes and appoints Senior Creditor as Subordinated Creditor's attorney in fact, and grants to Senior Creditor a power of attorney with full power of substitution, in the name of Subordinated Creditor or in the name of Senior Creditor, without notice to Subordinated Creditor, and ***authorizes Senior Creditor (a) to file, in the name of Subordinated Creditor, such claim on behalf of Subordinated Creditor, if Subordinated Creditor does not do so prior to 10 days before the expiration of the time to file claims in such proceeding and if Senior Creditor elects, in its sole discretion, to file such claim or claims, (b) to enforce such claim, either in its own name or in the name of Subordinated Creditor, by proof of claim, suit or otherwise, (c) to vote such claim to accept or reject any plan of reorganization, and (d) to take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement***, and any sums received by Senior Creditor in connection with such claim shall be applied to the Senior Debt. Senior Creditor shall remit to Subordinated Creditor any funds remaining after those sums have been so applied, to the extent permitted by applicable law or the proceedings governing any such bankruptcy. ***In no event shall Senior Creditor be liable to Subordinated Creditor for any failure to prove the Subordinated Debt, to exercise any right with respect thereto or to collect any sums payable thereon.*** [Emphasis added,]

The emphasized language makes clear, as discussed further below, that the power of attorney is deliberately limited and does not give Empery the right to negate authority otherwise granted expressly or impliedly to Drexler. The last sentence may immunize Empery from failing to act, but cannot be construed to permit Empery to actively violate Drexler's rights with impunity, as it is seeking to do here.

## V.     Argument

23.     Section 510(a) provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy

law." 11 U.S.C. § 510(a). Here, non-bankruptcy law renders the ISA unenforceable because Empery materially breached its terms. But even if the ISA were enforceable, Drexler has not breached the ISA's terms by protecting his bargained-for rights under the contract, and in accordance with the Bankruptcy Code, and Empery is not entitled to specific performance or injunctive relief.

**A.    The ISA is not Enforceable because Empery Directly and Materially Breached its Terms, as well as the Implied Covenant of Good Faith and Fair Dealing**

24.    New York recognizes as a fundamental principle of contract law that a party in material breach of a contract may not enforce that same contract against the other party. *Dezsofi v. Jacoby*, 36 N.Y.S.2d 672, 674 (Sup. Ct. 1942) ("One who abandons or repudiates a contract may not enforce against the other party to it."). *Cf. Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004) (observing that under New York law, "[w]hen one party commits a material breach, the other party is relieved, or excused, from its further performance obligations.").

25.    In addition, "[u]nder New York law, there exists in every contract an implied covenant of good faith and fair dealing." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990). "The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Id.* "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Club One Acquisition Corp. v. Sarantos*, No. 650049/2012, 2013 WL 5486212, at *8 (N.Y. Sup. Ct. Sep. 30, 2013). Courts apply the implied covenant of good faith and fair dealing to intercreditor and subordination agreements. *Id.*; *In re MPM Silicones, LLC*, 518 B.R. 740, 756 (Bankr. S.D.N.Y. 2014), *aff'd*, 596 B.R. 416 (S.D.N.Y. 2019); *In re Musicland Holding Corp.*, 386 B.R. 428, 438–39 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009); *Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01 Civ. 1047 (AJP), 2002 WL 31174470, at *36 (S.D.N.Y. Sept. 26, 2002).

26.    Here, Empery violated its express obligation under the ISA not to "take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Subordinated Debt or the Liens of Subordinated Creditor."

ISA § 10. Its actions (including what Drexler believes will be demonstrated by further discovery) also clearly breach the ISA by violating the covenant of good faith and fair dealing.

27.    The Term Sheet, PSA, and the Proposed Plan all seek to change the priority of Drexler's junior secured claim by eliminating any possibility that he could receive distributions after Empery's claim is paid, and completely failing to provide for Drexler's secured claim. The PSA (incorporated into the Proposed Plan) provides for a "waterfall [agreed to by Empery, the Debtor and the Committee] for the distribution of funds from [the proposed] sale." PSA at 8. That agreed waterfall deliberately ignores Drexler's secured claim, whether it is senior or junior to Empery's, and therefore deviates from Empery's obligations under the ISA (and the Bankruptcy Code's basic priority scheme) by facilitating Empery's impermissible class-skipping gifting of value that would otherwise be required to satisfy Drexler's junior secured claim. Such provisions include:

- In the event Empery is the successful bidder at auction, "Empery shall issue 20% of the purchaser's equity (the 'Contribution') to the Liquidation Trust . . . for the benefit of holders of Class 5 Claims (the 'GUCs')." PSA at 21; Proposed Plan at ECF p. 20 ("[A]ll New Equity Interests in the Reorganized Debtor shall be issued as set forth herein and in the [PSA].").

- "On the Plan Effective Date, the Litigation Trust shall receive all cash held by the estate, including Net Sale Proceeds *less* the Empery Payoff Amount *less* amounts due to [Prestige] . . . To the extent the Litigation Trust Cash Balance is less than $500,000 [after administrative and priority claims], Empery shall fund the difference to the Litigation Trust . . . ." Proposed Plan at ECF p. 19.

- "Empery shall assign to the Litigation Trust, for the benefit of holders of [General Unsecured Claims], the economic interest in the difference between the Allowed Empery Secured Claim [$18 million] and the Empery Payoff Amount [maximum of $12 million] (the "Empery Assigned Claim"), including, for the avoidance of doubt, any monetary recovery on such Empery Assigned Claim." *Id.* at ECF p. 15.

**B.    The ISA Cannot be Construed to Constrain Drexler's Legal Rights Under the Bankruptcy Code.**

**i.    The ISA cannot contract away rights conferred by the Bankruptcy Code.**

28.    "It is generally understood that prebankruptcy agreements do not override contrary provisions of the Bankruptcy Code." *In re 203 N. LaSalle St. P'ship*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000) ("[I]t would defeat the purpose of the Code to allow parties to provide by contract that the

provisions of the Code should not apply.").[5] In *LaSalle*, the bankruptcy court applied this principle and held that subordination agreements could not provide for waiver of voting rights provided by section 1126(a). *Id.* at 331. In so holding, the bankruptcy court wrote that "[s]ubordination, though not defined by the Code, has a common understanding in the law . . . : [t]he act or process by which a person's rights or claims are ranked below those of others. . . . Subordination thus affects the order of priority of payment of claims in bankruptcy, but not the transfer of voting rights." *Id.*

29.    While section 510(a) makes subordination agreements enforceable in bankruptcy cases to the extent they are enforceable under nonbankruptcy law, subordination agreements are not enforceable to the extent they infringe or seek to preempt federal bankruptcy law. *In re SW Boston Hotel Venture, LLC*, 460 B.R. 38, 52 (Bankr. D. Mass 2011) ("[Subordination] agreements cannot nullify provisions of the Bankruptcy Code."), *vacated on other grounds*, No. BAP-11-087, 2012 WL 4513869 (B.A.P. 1st Cir. 2012), *which itself was vacated on other grounds*, 748 F.3d 393 (1st Cir. 2014); *In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 263 (Bankr. D. Del. 2016) ("Th[is] rule is not new[.]"); *In re NESV Ice, LLC*, No. 21-11226-CJP, 2023 WL 2278603, at *20 (Bankr. D. Mass. Feb. 28, 2023).

30.    Applying those precedents here, even if the ISA is enforceable as to the basic ranking of priority between Empery and Drexler, it is nevertheless unenforceable as to any provisions which would impair the rights conferred upon Drexler by the Bankruptcy Code. As a matter of the Bankruptcy Code, Drexler, as a "party in interest," has: (1) the right to move for appointment of a chapter 11 trustee under section 1104(a) of the Bankruptcy Code; (2) the right to challenge bidding

---

[5] For instance, the ISA's prohibitions (ISA § 4) on filing bankruptcy petitions are void ab initio as against federal public policy. *In re Donaldson Ford, Inc.*, 19 B.R. 425, 429 (Bankr. N.D. Ohio 1982); *See also In re Insight Terminal Sols., LLC*, No. 19-32231(1)(11), 2019 WL 4640773, at *3 (Bankr. W.D. Ky. Sept. 23, 2019); *In re Pontius*, 421 B.R. 814 (Bankr. W.D. Mich. 2009). Empery has not challenged this Court's jurisdiction or otherwise argued here that Drexler breached the ISA by authorizing the Debtor's petition. However, in litigation in New York, Empery has alleged that the filing of the petition was a form of tortious interference with its existing and prospective contractual relations. *Empery Tax Efficient, LP v. White Winston Select Asset Funds, LLC et al.*, Index No. 654789/2022 (Sup. Ct. N.Y., N.Y. County) (the "New York Litigation").

procedures under section 363 of the Bankruptcy Code; and (3) the right to object to the Debtor's Plan Settlement Motion under section 365 of the Bankruptcy Code and Bankruptcy Rule 9019.

31.    One group of cases upon which Empery relies for its contention that Drexler must "stand still" do not provide any applicable analysis to the contrary or were decided on entirely different facts. For example, Empery relies on two cases that did not consider whether subordination agreements could lawfully contravene provisions of the Bankruptcy Code. *See In re Curtis Ltd. Partnership*, 192 B.R. 648, 660 (Bankr. E.D. Pa. 1996) (declining to do so because "[n]o argument to undercut the efficacy of the subordination agreement or the applicability of above § 510(a) has been offered"); and *In re Avondale Gateway Ctr. Entitlement, LLC*, No. 02-09-BK-12153-CGC, 2011 WL 1376997, at *4 (D. Ariz. Apr. 12, 2011) (finding cases holding voting rights to be assignable "persuasive in light of absence of precedent to the contrary"). Empery also relies on three cases that are inapposite. *In re Ion Media Networks*, 419 B.R. 585, 593–97 (Bankr. S.D.N.Y. 2009) (prohibiting junior creditor from challenging the scope of senior liens and from objecting to plan, *not from* seeking a trustee or objecting to bidding procedures or plan settlement agreements);[6] *In re Davis Broadcasting*, 169 B.R. 229, 233–34 (Bankr. M.D. Ga. 1994) (rejecting junior creditor's post-confirmation attempts to modify plan); *In re Argon Credit, LLC*, 596 B.R. 882, 887 (Bankr. N.D. Ill. 2019) (holding that the "silent second" provision "prevent[ed] [junior creditor] from using the bankruptcy process to affirmatively obtain discovery from [senior creditor] *respecting [senior creditor's] claim against [debtor]*") (emphasis added).

32.    The other group of much older cases (1961, 2006 and 2010) relied upon by Empery— *In re Itemlab, Inc.*, 197 F. Supp. 194 (E.D.N.Y. 1961); *In re Aerosol Packaging, LLC*, 362 B.R. 43 (Bankr. N.D. Ga. 2006); *In re Erickson Ret. Cmtys., LLC*, 425 B.R. 309 (N.D. Tex. 2010)—are

---

[6] The *Ion Media* voting provision is distinct from the ISA in that it forbade the junior creditor from objecting to a plan consistent with the rights of the Senior Creditor. *Ion Media*, 419 B.R. at 597 (junior creditor "may not 'oppose, object to or vote against any plan of reorganization . . . which [is] consistent with the rights of the [Senior Creditor]"). By contrast, under the ISA § 15.5, "[Drexler] agrees not to vote for any plan of reorganization that does not provide for the prior payment in full in cash of the Senior Debt." This much more limited restriction has nothing to do with whatever other "rights" Empery may be trying to assert.

undercut by a recent 2021 decision in *In re Fencepost Productions, Inc.*, 629 B.R. 289 (Bankr. D. Kan. 2021). *Fencepost* cited *LaSalle* favorably to reconcile "contrary positions" on "whether intercreditor agreements transferring voting rights in conjunction with subordination of claims are enforceable." 629 B.R. at 294–95, 294 n.32 ("This Court finds the reasoning of *LaSalle Street* more persuasive than *Aerosol* and holds that the attempted modification of voting rights stated in the Subordination Agreements is not enforceable. . . . [s]ubordination merely reorders priorities among creditors. Unlike the circumstance where a claim is assigned to another party, subordination does not involve transfer of the subordinated creditor's legal interest.").[7]

### ii. Empery cannot rely upon the limited "attorney in fact" provision in section 16 of the ISA to negate Drexler's rights.

33.    Empery cannot rely on the limited "power of attorney" in section 16 of the ISA to negate Drexler's rights under the Bankruptcy Code, or otherwise to evade its own ISA obligations or nullify rights expressly or impliedly granted to Drexler. The text of section 16 of the ISA does not grant Empery broad powers. Instead, it authorizes Empery to do just four limited things: (a) file proofs of claim if Drexler does not do so (but here Drexler did file them), (b) enforce Drexler's proofs of claim (which Empery is clearly not doing; it is instead doing the opposite), (c) vote Drexler's proofs of claim (which it has threatened to do), and (d) take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement. Taken in context, the limited powers granted to Empery were meant to protect Empery in the event Drexler did not file claims.

34.    Those powers are further informed by section 16's last sentence, which provides that "in no event shall Senior Creditor be liable to Subordinated Creditor for any failure to prove the Subordinated Debt, to exercise any right with respect thereto or to collect any sums payable thereon."

---

[7] *Fencepost* also found persuasive the recommendation of the ABI Commission to Study the Reform of Chapter 11. *Id*. at 295. *See* American Bankruptcy Institute Commission to Study the Reform of Chapter 11: 2012–2014 Final Report and Recommendations, at 261, available at https://commission.abi.org/full-report ("The contractual assignment of voting rights in favor of senior creditors under an intercreditor agreement, subordination, or similar agreement should not be enforced.").

This provision necessarily means that *Drexler must act himself* if Empery does not, especially if Empery is working actively to damage Drexler's secured claim as it is doing here. Thus, Empery cannot now rely on the power of attorney to negate what Drexler is otherwise expressly authorized to do. *Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 347 (1955) ("A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract.").

35.    What is more, the "relief from liability" provision in section 16 necessarily must apply only to benign neglect. In other words, if Drexler did not file proofs of claim, Empery could do so and choose to enforce Drexler's rights or not, without liability. Empery would need to do that to assure that it got the benefit of the subordination. But that relief from liability cannot possibly extend to acts and conduct that seek to affirmatively harm Drexler's junior secured position in violation of Empery's obligations to Drexler under section 10 of the ISA.

36.    Moreover, the power of attorney cannot be construed to give Empery a right to act against Drexler's claims where such an act is expressly prohibited by the ISA. Empery may not use the power of attorney to defeat a specific prohibition against impairment of Drexler's claims. *See In re La Paloma Generating Co.*, 595 B.R. 466, 470 (Bankr. D. Del. 2018) (applying New York interpretive canon that "should there be an inconsistency between a specific and general provision of a contract, the specific controls"). If Empery were able to exercise the power of attorney to negate its obligations under the ISA and otherwise nullify affirmative rights granted to Drexler, then the last sentence of section 16 would mean it could violate and harm Drexler's rights with impunity. It would mean the ISA is an unenforceable absurdity because Empery could use one part of the ISA to take away obligations it agreed to in another part to protect Drexler. *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ("A reading of the contract should not render any portion meaningless.")

37.    "[A] written power-of-attorney agreement is a formal contract and creates a principal-agent relationship." *Lancaster v. Zufle*, 165 F.R.D. 38, 41 (S.D.N.Y. 1996). If the agent is using the power against the interests of the principal, as Empery seeks to do here, it should be regarded as a

sham. A sham principal-agent relationship was a reason the bankruptcy court in *LaSalle* declined to approve the senior creditor's attempt to vote the junior creditor's claim. 246 B.R. at 331–32 ("An 'agent' is commonly understood to act at the direction of a principal. . . . The Bank in this case would not be acting at the direction of [the Junior Creditor] in voting its claim; it would be acting in its own interests, quite possibly contrary to those of [the Junior Creditor]."); *see also Fencepost*, 629 B.R. at 295; *In re Croatan Surf Club, LLC*, No. 11-00194-8-SWH, 2011 WL 5909199, at *3 (Bankr. E.D.N.C. Oct. 25, 2011). Empery cannot be allowed to wield the power of the attorney in fact provision, in a manner directly against Drexler's rights under the ISA and the Bankruptcy Code. Where, as here, Empery purports to damage Drexler by withdrawing validly filed pleadings and seeking otherwise to silence him, the power of attorney should be held to be an unenforceable sham. Furthermore, Empery's purported withdrawal of Drexler's pleadings is yet another violation of Empery's obligations under section 10 of the ISA and the covenant of good faith and fair dealing to do no harm to Drexler's junior secured claim.

38.     Empery's agreement to leave Drexler's claims free to take a subordinated recovery in the normal bankruptcy distribution scheme was the single, most important reciprocal obligation that was exchanged for Drexler's agreement to subordinate his claim. Empery's tactics cannot stand.

**C.     None of Drexler's Actions Violate the Express Terms of the ISA.**

39.     Drexler has not performed any act whatsoever in violation of any prohibitions in the ISA. The actions that Empery complains violate the ISA do not violate the ISA.

40.     First, Empery asks this Court to prohibit Drexler from objecting to a sale supported by Empery. ISA Motion at ECF pp. 19–20. But Drexler has not objected to the sale of the Debtor's assets, just the procedures the Debtor intends to use to accomplish such sale. The Bankruptcy Court in *In re Boston Generating, LLC*, one of the cases Empery cites, noted this distinction. 440 B.R. 302, 317 (Bankr. S.D.N.Y. 2010) (at the bid procedures hearing, the Court noted "I do not read any express prohibition against objection to bidding procedures anywhere in the intercreditor agreement") (alteration in original). The *Boston Generating* Court also declined to waive rights where it was not "clear beyond peradventure that [the agreement] has done so." *Id.* at 319 ("[Senior Creditor] must

point me to some provision that reflects an express or intentional waiver of rights.") There is no express

waiver of rights to object to bidding procedures or plan support agreements in the ISA.

41.    Empery then asks this Court to prohibit Drexler from objecting to or voting against a

plan supported by Empery and to permit Empery to vote Drexler's claim under the limited power of

attorney of section 16 of the ISA. ISA Motion at ECF pp. 20–21. However, the ISA does not prohibit

Drexler from voting *against* any plan. The ISA provides only that Drexler not "vote *for* any plan of

reorganization that does not provide for the prior payment in full in cash of the Senior Debt." ICA §

15.5 (emphasis added). In any event, the only action Drexler has taken in this case so far with respect

to the Proposed Plan is filing an objection to the Debtor's motion to approve the PSA, ECF No. 541,

an action that is also not prohibited by the ISA. Were there an alternative plan for which Drexler could

vote, such a prohibition on plan voting would be unenforceable in any event.

42.    Finally, the ISA Motion requests this Court use section 4 of the ISA to block Drexler

from seeking the appointment of a chapter 11 trustee and requesting related discovery. ISA Motion at

ECF pp. 21–24. As discussed above, section 4 purports to prohibit Drexler from:

> "[E]xercis[ing] any right or remedy under any Subordinated Loan Document or
> with respect to any Collateral, or any other right or remedy available at law or
> equity, nor will Subordinated Creditor commence, or cause to commence,
> prosecute or participate in any administrative, legal or equitable action against
> [Debtor] or any of its subsidiaries, until [Full Payment.]

43.    As discussed above, Drexler's right to seek the appointment of a trustee under the

Bankruptcy Code cannot be legally constrained by the ISA. His motion under section 1104 is also not

an "action" seeking relief "against" any party within the meaning of the ISA. It is a request that in the

best interests of the estate and its stakeholders, the Court should appoint a neutral to manage the estate

free of bias, conflict, gross mismanagement, and acrimony. The extreme reaction of Empery, the

Debtor, and the Committee to the trustee motion, and the revelations (including in limited discovery)

of undisclosed connections, destruction of records, other improper conduct, mismanagement, and

administrative expense waste, culminating in Empery's effort to use the ISA to shut the motion down,

confirm the need for a trustee, and the importance to the administration of the bankruptcy system of

upholding rights under the Bankruptcy Code, policies against contracting those away, and the public

policy of allowing disclosure of serious allegations of improprieties in the administration of a chapter 11 case.

**D.     The ISA Does Not Apply to or Limit Drexler's Right to Protect his Equity Interest.**

44.     The ISA only applies to Drexler's claims in respect to his "Subordinated Debt" and to Drexler in his capacity as a "Subordinated Creditor." The ISA does not apply to the interest held by Drexler (or Consac LLC, an entity of which Drexler serves as the managing member and principal equity holder, and not even a party to the ISA). The proofs of interest filed in this case demonstrate that Drexler is the Debtor's largest equity holder and that he has the right to engage in the bankruptcy case to ensure that the Debtor's assets are sold for the highest and best price to enable his equity, as well his junior secured claim to be "in the money."[8]

45.     Under the Bankruptcy Code, an "interest" in the Debtor is necessarily different than a "claim" against it. *See In re Okosisi*, 451 B.R. 90, 100 (Bankr. D. Nev. 2011) ("While 'interest' is not a defined term, because it is included in the same section[s of the Code] as claim, it must have a meaning distinct from the defined term 'claim.'"). *See also* 11 U.S.C. §§ 510(b) (claims arising from rescission of debtor's security are "subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security"); 1122 (classification of claims or interests); 1124 (impairment of claims or interests).

46.     Whatever applicability the ISA has to restrict Drexler's rights with respect to his "Subordinated Debt," it cannot restrict Drexler's rights to participate in the case with respect to his status as an equity holder.

---

[8] Drexler does not contend that he may use his status as interest holder to contest or challenge Empery's priority ranking if the ISA is otherwise enforceable. He submits, rather, that as none of the objection to bid procedures, the objection to the PSA, or the trustee motion, challenge Empery's claim or senior status, that even if they are found to be enforceable prohibitions under the ISA, they should not be prohibited to him as equity interest holder. He has an absolute right to defend those interests and seek relief that would enhance the possibility of value to those interests. The parties were well aware of Drexler's substantial equity interests when they negotiated and agreed to the ISA, they could have provided for the ISA to cover Drexler's rights as interest holder, and they did not.

**E.    There is No Legal Basis for Equitable Relief in These Circumstances.**

    **i.    There is no provision in the ISA providing specific performance as a remedy.**

47.    There is no provision in the ISA for specific performance. While Empery seeks to enjoin Drexler from exercising his rights, and to withdraw his pleadings, it has made no showing that traditional remedies at law are inadequate or that it otherwise possesses the "clean hands" necessary to obtain equitable relief. Empery also fails to meet the standard for any preliminary injunctive relief.

48.    There is no provision in the ISA for specific performance. *Compare* ISA *with Bank of Am., N.A. v. PSW NYC LLC*, No. 651293/10, 2010 WL 4243437, at *11 (N.Y. Sup. Ct. Sept. 16, 2010) (highlighting specific provision for availability of "injunction, declaratory judgment and specific performance") *and Nilson v. JPMorgan Chase Bank, N.A.*, 690 F. Supp. 2d 1231, 1251 (D. Utah 2009) (highlighting subordination agreement provisions that parties "shall be entitled to equitable relief, including without limitation specific performance, in order to enforce this Agreement").

49.    Empery has made no showing that its remedy at law—monetary damages—is inadequate. *See Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55, 57 (App. Div. 1st Dep't 2002) (noting that "specific performance is appropriate when money damages would be inadequate to protect the 'expectation interest of the injured party'" or "when performance will not impose a disproportionate or inequitable burden on the breaching party[.]" (quote source omitted)). "In determining whether money damages would be an adequate remedy, a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award." *Sokoloff v. Harriman Ests. Dev. Corp.*, 96 N.Y.2d 409, 415 (2001). Here, monetary damages would be easy to calculate and would be an adequate remedy (and Empery conceded as much by not including specific performance as a remedy in the ISA). Empery also demonstrated the adequacy of money damages in the New York Litigation, where it has asserted money damages based on losses to its putative $18 million claim. But there may not be losses or damages at all. Right now, the only "damage" to Empery is that it is incurring legal fees and causing massive increases in the estate's administrative expenses by trying to exploit the ISA to get Drexler out of the way. Empery may yet have no real damages to its claim, and may be paid in

full, depending upon the outcome of the auction (augmented by Drexler's efforts to establish a fairer and value-maximizing auction process).

### ii. Empery has not and cannot meet the requirements for injunctive relief.

50.     Empery's request for injunctive relief against Drexler, preliminary or permanent, should be denied. Bankruptcy Courts apply the "usual approach" in deciding whether to issue preliminary injunctions. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007). This approach requires the moving party to demonstrate: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* at 1093 (quote source omitted). There is a "sliding scale in which the required degree of irreparable harm [needed to obtain an injunction] increases as the probability of success [on the merits] decreases." *Id.* (quote source omitted); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "The standard for determining whether a *permanent* injunction should be granted is 'essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits.'" *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1164 (C.D. Cal. 2010) (quote source omitted).

51.     Drexler submits that evidence cited in this objection and the evidence to be gleaned from recently served discovery requests relevant to the ISA Motion will demonstrate that for all the reasons discussed above, including its breach of the ISA, Empery has virtually no chance of success. Empery thus has an increased burden to demonstrate it will be irreparably harmed absent injunctive relief or that the balance of hardships tips sharply in Empery's favor.

52.     Empery will not be irreparably harmed absent an injunction. Drexler's objections to bidding procedures and the PSA, and his motion to appoint a chapter 11 trustee are directed to producing a higher price in the asset sale when efficient bidding procedures are adopted and a neutral is in place to correct mismanagement and the appearance of impropriety generated by the appointment of a compromised independent director, among other issues. And, as discussed above, Empery can recover monetary damages should it succeed in any manner on the merits. *See Edge Games, Inc. v.*

*Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1117 (N.D. Cal. 2010) ("[I]rreparable harm is established when a plaintiff is unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date, in the ordinary course of litigation.").

53.     Second, the balance of hardships weighs heavily in favor of Drexler, not Empery. It is Drexler who stands to have his secured claim, due process, and rights under the Bankruptcy Code extinguished by Empery's actions in this case. At most, Empery has money damages that may or may not materialize depending in large part on whether the auction is conducted efficiently and transparently. At most, the Debtor and Committee will be required to demonstrate that the Proposed Plan that Empery is obligated to support, legally and monetarily, with its class-skipping gifts of millions of dollars to general unsecured creditors, and its damaging mistreatment of Drexler's secured claim, can pass muster under the Bankruptcy Code and objections that this Court will adjudicate. If Empery and the proponents of the Proposed Plan cannot do that without silencing Drexler, then they should not be able to do that at all.

54.     Empery's attempts to exploit the ISA to silence Drexler, and his allegations of gross improprieties, mismanagement, and malfeasance, are manifestly against the public interest. Drexler is the only stakeholder who is seeking to ensure that this chapter 11 case proceeds legally, efficiently, transparently, and without malfeasance.

## VI.     <u>Conclusion</u>

55.     For those reasons, Drexler respectfully requests that the Court deny the ISA Motion, strike the Notice of Withdrawal, and grant such other relief as the Court deems just and appropriate.

Respectfully submitted this 1st day of June 2023.

**STEINHILBER SWANSON LLP**

<u>/s/ Michael P. Richman</u>
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:     (608) 630-8990
Facsimile:     (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐  UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐  OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐  FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

                                       */s/ Cristina Robertson*_____
                                       An employee of Carlyon Cica Chtd.