Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing Date: **OST Requested** |
| | Hearing Time: **OST Requested** |

**MOTION TO QUASH SUBPOENA TO VERIZON OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A PROTECTIVE ORDER**

MusclePharm Corporation, the debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "**Debtor**"), by and through its counsel of record, Schwartz Law, PLLC, hereby moves this Court (the "**Motion**") for entry of an order: (1) quashing the subpoena issued by Ryan Drexler ("**Drexler**") to Verizon (the "**Subpoena**")[1] pursuant to FRCP[2] 45(d)(3), made applicable

---

[1] *See Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)*, dated May 25, 2023, attached to Drexler's *Notice of Issuance of Subpoena for Document Production of Verizon* [ECF No. 551]. A copy of the Subpoena is attached to the Hamm Declaration as **Exhibit 1**.

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "**FRCP**" shall refer to the Federal Rules of Bankruptcy Procedure Rules 1-87. "**Local Rule**" or "**LR**" references are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

by Bankruptcy Rule 9016, or, in the alternative, (2) issuing a protective order over the Subject Phone Numbers[3] pursuant to FRCP 26(c), made applicable by Bankruptcy Rule 7026.

This Motion is made and based upon the following memorandum of points and authorities, the concurrently filed declarations of Gabrielle Hamm, Esq. (the "**Hamm Declaration**") and Nicholas Rubin (the "**Rubin Declaration**"), the papers and pleadings on file with the Court in this Chapter 11 case, judicial notice of which is respectfully requested, and any oral argument the Court may entertain at the hearing on the Motion.

## PRELIMINARY STATEMENT

1. Though Drexler's *Motion for the Appointment of a Chapter 11 Trustee* [ECF No. 447] (the "**Trustee Motion**") and related discovery has been stayed pending resolution of Empery's *Emergency Motion to Enforce Intercreditor and Subordination Agreement Under Section 510(a) of the Bankruptcy Code* [ECF No. 506] (the "**Motion to Enforce**"), Drexler issued the Subpoena to Verizon for documents plainly related to the Trustee Motion anyway. As the text messages have nothing to do with the Motion to Enforce, the Subpoena should be quashed.

2. The Subpoena should also be quashed as text messages supposedly relevant to this case—text messages between Mr. Rubin and Empery—have already been produced by Empery, and the vast majority of the remaining text messages are unrelated to this Chapter 11 Case, privileged, and/or confidential.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The relief sought by this Motion is predicated upon 11 U.S.C. § 105(a), FRCP 26 and 45, and Bankruptcy Rules 7026, 9014, and 9016.

---

[3] The "**Subject Phone Numbers**," as defined in the Subpoena [ECF No. 551], are Mr. Rubin's office and mobile phone numbers. Rubin Declaration, ¶ 7.

# BACKGROUND

**A.    The Chapter 11 Case and Appointment of the Committee and Independent Director.**

5.    The Debtor commenced the captioned case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under Section 301 on December 15, 2022 (the "**Petition Date**"), before the United States Bankruptcy Court for the District of Nevada (the "**Court**"). *See* ECF No. 1.

6.    The Debtor continues to operate as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. No case trustee or examiner has been appointed by the UST in this Chapter 11 Case. *See, generally,* docket.

7.    On January 4, 2023, the UST formed the Committee under Section 1102. *See* ECF No. 49. The Committee is currently comprised of MHF Opco, LLC fka Mill Haven Foods, LLC, JW Nutritional LLC, Atlantic Grain & Trade, SK Laboratories, Inc., and Excelsior, Inc. *See* ECF Nos. 49 & 245.

8.    On January 23, 2023, the Court entered its second interim order approving debtor-in-possession financing [ECF No. 139]. Among other things, the order approved the appointment of Mr. Rubin as the Debtor's independent director pursuant to the agreement of the parties, stating:

> In accordance with the Term Sheet, the Court approves of the appointment of Eric Hillman; Paul Karr, and an independent board member to comprise Debtor's three (3) member board of directors. The Independent director selected by the Debtor, Nicholas Rubin, will have sole and exclusive responsibility with respect to the Debtor for: (i) protecting and recovering the assets of the Debtor, including to determine whether it is in the best interest of the Debtor to reorganize under Section 1129 of the Bankruptcy Code, or sell its assets in accordance with Section 363 of the Bankruptcy Code; (ii) reviewing and approving the ultimate debtor-in-possession financing incurred by the bankruptcy estate, as negotiated by the Debtor's restructuring professionals; (iii) the investigation and determination of which estate causes of action, if any, should be pursued, prosecuted, or settled; and (iv) the maximization of value for all stakeholders, is approved.

ECF No. 139, pg. 13, ¶ 15.

9.    The Bankruptcy Court entered its final order approving debtor-in-possession financing [ECF No. 296] on March 8, 2023, confirming Mr. Rubin's appointment on a final basis. ECF No. 296, pg. 21, ¶ 25 ("In accordance with the Term Sheet and Loan Documents, the Bankruptcy Court approves on a final basis the appointment of Eric Hillman, Paul Karr, and the

1  independent board member, Nicholas Rubin, to comprise Debtor's three (3) member board of directors.").

### B. Drexler's Discovery and the Trustee Motion.

10. Drexler filed a series of ex parte applications for examinations pursuant to Bankruptcy Rule 2004 between April 13, 2023 and April 28, 2023. *See* ECF Nos. 380, 381, 382, 383, 418, 421, 422, 423 & 451. Pursuant to the resulting orders entered by the Clerk, Drexler issued subpoenas to the Debtor, Empery, two members of the Committee, and several of their employees. *See* ECF Nos. 387-390, 410-413, 424-427, 437, 436, 444, 450, 451, 453, 488.

11. In the subpoenas issued under Bankruptcy Rule 2004, Drexler sought all communications, including text messages, with Empery, Ryan Lane, and Tim Silver. *See, e.g.*, ECF No. 436, pg. 12 and ECF No. 450, pg. 12.

12. On April 28, 2023, Drexler filed the Trustee Motion. *See* ECF No. 447.

13. One May 3, 2023, the Debtor filed the *Motion for Entry of Order: (1) Vacating Orders Granting Ex Parte Applications for Examination Pursuant to Bankruptcy Rule 2004, and (II) Establishing Procedures for Discovery* [ECF No. 462] (the "**Motion to Vacate**"). At the hearing on May 9, 2023, the Court stayed the deadlines on the outstanding discovery pending a continued hearing on the Motion to Vacate.

14. On May 11, 2023, Drexler issued a subpoena to Nicholas Rubin, seeking all communications, including text messages, between Mr. Rubin, on the one hand, and Empery, Ryan Lane, and Tim Silver, on the other hand. *See* ECF No. 495, pg. 12 of 12.

15. On May 15, 2023, Empery filed the Motion to Enforce. ECF No. 506. That same day, the parties submitted a joint status report advising the Court of the parties' agreements regarding the sequence discovery on the Trustee Motion and other motions. ECF No. 503. As set forth in the status report, the Debtor agreed to present Mr. Rubin as the Debtor's corporate representative on the *Motion to Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004* [ECF No. 497] (the "**Bidding Procedures Motion**") and to produce limited documents in advance of Mr. Rubin's deposition.

4

16. The Debtor produced over 700 of Mr. Rubin's emails to Drexler's counsel on Friday, May 19, 2023, and Mr. Rubin's deposition was conducted on Monday, May 22, 2023.

17. On May 25, 2023, following the submission of statements of position regarding scheduling by the Debtor, the Committee, Empery, and Drexler, the Court determined that Motion to Enforce should be determined before consideration of other pending motions and continued the stay of discovery related to the Trustee Motion. *See* May 25, 2023 Hearing Trans. at 11:25–12:15.

18. During the hearing, Drexler's counsel, attorney Michael Richman, made the following representations regarding a subpoena for Mr. Rubin's text messages:

> Second, and related to that, we do think it's vital that we be able to subpoena [] Verizon, the service carrier, for the text messages that were deleted by Mr. Rubin. That hasn't been discussed or denied by anyone, and it was admitted on the record. And the reason for that is that ***we believe that the text messages that were sent and received from Ryan Lane, who was one of Empery's principles, will provide strong evidentiary support for our argument that the intercreditor agreement is not enforceable***, and so it's directly relevant to that. We may be able -- we also want to subpoena the text messages directly from Mr. Lane. But I think in the circumstances, ***if we get what was sent to and received by the independent director, that that should be sufficient for present purposes***.

*Id.* at 13:11-20 (emphasis added).

19. Notwithstanding the fact that text messages between the Debtor's newly appointed independent director and Empery are irrelevant to the enforceability of the prepetition intercreditor agreement between Empery and Drexler, Empery's counsel discussed producing the subject text messages in order to avoid the distraction of a discovery dispute. *See id.* at 15:21-24 ("We're not afraid of these facts, but let me short circuit this. Every single text message sent to or from Mr. Lane is, by SEC rule, required to be archived. I'll have a conversation about turning those over with counsel.").

20. Despite the Court's stay of discovery on the Trustee Motion, Drexler issued the Subpoena to Verizon later that same day, requesting the following:

> REQUEST FOR PRODUCTION NO. 1: Please produce all text messages sent from, and received by, the Subject Phone Numbers during the Applicable Period.

5

> REQUEST FOR PRODUCTION NO. 2: Please produce a text message detail report of all text messages sent from, and received by, the Subject Phone Numbers during the Applicable Period.
>
> REQUEST FOR PRODUCTION NO. 3: Please produce all text message transactions, including SMS and MMS communications, sent from, and received by, the Subject Phone Numbers during the Applicable Period.
>
> REQUEST FOR PRODUCTION NO. 4: Please produce all stored SMS content and MMS content from the Subject Phone Numbers during the Applicable Period.

*See* ECF No. 551.

21. On Friday, June 2, 2023, consistent with the colloquy on the record of the May 25, 2023 hearing, Empery voluntarily produced to Mr. Richman text messages between Mr. Silver or Mr. Lane, on the one hand, and Mr. Rubin, Eric Hillman, Will Hovi, or Jason Keenan, on the other. *See* Hamm Decl., ¶ 6.

22. Notwithstanding Empery's voluntary production of precisely what Mr. Richman claimed to be seeking and more Drexler refuses to withdraw the Subpoena for Mr. Rubin's text messages. Further, on June 5, 2023, he issued additional subpoenas to Verizon, AT&T, and T-Mobile USA for all of Ryan Lane's text messages from December 15, 2022 to the present. *See* ECF Nos. 567, 568 & 569.

## ARGUMENT

### A. Legal Authority.

23. FRCP 45(d)(3)(A) provides that, "[o]n timely motion, the court for the district where compliance is required ***must*** quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added).[4] Further, under FRCP 45(d)(3)(B), "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required ***may***, on motion, quash or modify" a subpoena that requires "disclosing a trade secret or

---

[4] FRCP 45(d)(1) requires the party issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

6

other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(c)(3)(B) (emphasis added).

24. Alternatively, the Court may issue a protective order under FRCP 26(c), which provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c) (empowering the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). A court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984)).

25. Under FRCP 26, discovery must be both relevant and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1). Indeed, FRCP 26 contains further limitations on discovery including for scope/relevancy and to restrict discovery that is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(1) and (b)(2)(c).

26. Federal courts also "recognize a constitutionally based right of privacy that can be raised in response to discovery requests." *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011) (police personnel files) (citing *Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir. 1976) (balancing minor's privacy rights against the court's need for ward files); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992), *cert. denied* 507 U.S. 910, 113 S. Ct. 1255, 122 L. Ed. 2d 654 (1993) (names of participants in a medical study)); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n. 21 (1984) (privacy rights implicit in broad purpose and language of Rule 26(c)); *Laub v. Horbaczweski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (text messages between defendant and nonparty during the course of their romantic relationship). Resolution of request for protective order on the basis of privacy requires "a balancing of the need

7

for the particular information against the privacy right asserted." *Dowell*, 275 F.R.D. at 617 (citing *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990)).

### B. The Requested Discovery is Irrelevant to the Motion to Enforce.

27. Though discovery on the Trustee Motion has been stayed, Drexler is patently using the Motion to Enforce the Intercreditor and Subordination Agreement and other proceedings in this Chapter 11 Case to engage in discovery on the Trustee Motion. In a transparent effort to conflate the Trustee Motion with the Motion to Enforce and other unrelated matters, Drexler offers another iteration of his outlandish conspiracy theory:

> Drexler believes that additional breaches by Empery will be demonstrated. For example, there are indications from the limited document production and deposition to date, as well as information received from other sources, that a regular course of communications between and among Empery, JW Nutritional LLC (a member of the Creditors' Committee and a contract manufacturer for the Debtor) and Debtor's chief executive officer (who has an ongoing business relationship outside the Debtor's business with one of JW Nutritional's principals) and the "independent" director will show a deliberate restraint of sales of Debtor's products in order to artificially depress the value of the Debtor's business, and concomitantly reduce the proceeds that might be received in an auction sale. Because a true and unfettered auction, without prior restraints on Debtor's sales, could result in proceeds sufficient to pay Empery in full, and put Drexler's junior secured claim "in the money," this course of conduct, if proved, would be another material breach of the prohibition against Empery taking action against the validity, priority and enforceability of Drexler's secured claim.

Drexler's *Objection to Emergency Motion to Enforce Intercreditor and Subordination Agreement Under Section 510(a) of the Bankruptcy Code* [ECF No. 506] (the "**Objection to Enforcement Motion**"), pg. 4, n.3.

28. Thus, based on vague allusions about "indications from the limited document production and deposition to date" and "information received from other sources," Drexler has concocted a fantastical theory that the Debtor, the DIP lender, and a member of the Committee all worked together to restart the Debtor's defunct operations only to then restrain sales in a malicious scheme to reduce Drexler's recovery on his subordinated claim.

29. Drexler's facially implausible theory is unsupported by evidence. None of the "limited document production" (*i.e.*, the more than 700 emails produced on May 19, 2023), nor

testimony from the May 22, 2023 deposition of Mr. Rubin, is cited in Drexler's Objection to Enforcement Motion because postpetition communications between the Debtor's independent director and its DIP lender have nothing to do with Empery's Motion to Enforce the prepetition Intercreditor and Subordination Agreement.

30. Finding no support for his allegations in Mr. Rubin's emails or testimony and desperate to justify further discovery on the Trustee Motion under the guise of the Motion to Enforce, Drexler defaulted to aspersions and innuendo about Mr. Rubin's regular practice of deleting his text messages and argued that the text messages between Mr. Rubin and Ryan Lane would provide "strong evidentiary support" for his argument that the Intercreditor and Subordination Agreement is unenforceable. *See* May 25, 2023 Hearing Trans., 13:7-20.

31. Those messages were produced by Empery on June 2, 2023. *See* Hamm Declaration, ¶ 6.

C. **The Subpoena Seeks Irrelevant, Privileged, and Confidential Communications.**

32. Though Empery produced the text messages that Drexler claimed to need, Drexler refuses to withdraw the Subpoena and continues to seek all of Mr. Rubin's text messages from and after December 15, 2022. *See* Hamm Declaration, ¶ 7. The Subpoena should be quashed because the production of allegedly relevant text messages would be cumulative, and production of the rest would be annoying, embarrassing, oppressive, and burdensome to both the Debtor and Mr. Rubin.

33. The scope of the Subpoena necessarily encompasses communications with Debtor's counsel that are privileged or subject to the work-product doctrine, though the Subpoena provides no means for the Debtor to assert a claim of privilege before the documents are disclosed to Drexler. *See* Rubin Declaration, ¶ 8. It also encompasses Mr. Rubin's private communications in which Drexler has no interest whatsoever, including communications with Mr. Rubin's spouse and minor child. *Id.*

34. The Subpoena also requires the disclosure of communications that are subject to other parties' privilege and privacy concerns. Mr. Rubin is a co-founder of Force Ten Partners, LLC ("**Force 10**"), an advisory firm specializing in financial and operational restructuring, mergers, acquisitions, divestitures, corporate finance investment banking, asset sales, valuation, forensic

9

accounting, complex litigation support, fiduciary services, and similar services. Force 10 and its professionals, including Mr. Rubin, serve as financial advisors, chief restructuring officers, interim managers, trustees, expert witnesses, investment bankers, and M&A advisors to companies, creditor committees, and other stakeholders in in-court and out-of-court restructuring cases across the country. *Id.*, ¶ 5. Because of the nature of Force 10's and Mr. Rubin's practice, the Subpoena includes within its scope communications with Force 10's clients, their counsel, and other Force 10 professionals in a number of matters that have nothing to do with this Chapter 11 Case, including privileged communications and communications that would reveal highly confidential, nonpublic information of third parties, such as the identity of companies that are engaged in restructuring negotiations or deliberating a Chapter 11 filing. *Id.*, ¶ 9.

35. In view of the fact that the text messages which have not been produced are unrelated to this Chapter 11 Case or subject to a claim of privilege or privacy interest, Drexler cannot demonstrate that any potential benefit of disclosure outweighs the privilege and constitutionally protected privacy interests of the Debtor, Mr. Rubin, and third parties. *See e.g.*, *Dowell*, 275 F.R.D. at 616, 617.

36. To the extent the Court does not quash the Subpoena, the Debtor requests that the Court issue a protective order requiring that any documents produced by Verizon be produced to the Debtor's counsel so that the Debtor may exclude third parties' communications and assert appropriate claims of privilege.

/ / /

/ / /

/ / /

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court quash the Subpoena to Verizon or, alternatively, issue a protective order, and grant such other relief as may be appropriate.

Dated: June 6, 2023.

SCHWARTZ LAW, PLLC

By: /s/ *Gabrielle A. Hamm*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Attorneys for the Debtor*