GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Empery Tax Efficient, LP as Agent and Collateral Agent for certain Secured Noteholders*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Date: June 15, 2023<br>Time: 10:30 a.m. |

**JOINDER TO MOTION TO QUASH SUBPOENA TO VERIZON OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A PROTECTIVE ORDER AND SUPPLEMENTAL POINTS AND AUTHORITIES**

Empery Tax Efficient, LP ("Empery"), by its counsel of record, Garman Turner Gordon LLP, respectfully submits it joinder (the "Joinder") to the *Motion to Quash Subpoena to Verizon or, in the Alternative, for Issuance of a Protective Order* [ECF No. 575] (the "Motion")[1], filed by Musclepharm Corporation, debtor and debtor-in-possession ("Debtor"),

This Joinder is made and based upon the following Memorandum of Points and Authorities, the Stored Communications Act, 18 USC §§ 2701–2712, the Declaration of Teresa Pilatowicz, submitted herewith, the papers and pleadings on file, judicial notice of which is

---

[1] Capitalized terms not otherwise defined herein shall be ascribed the definitions set forth in the Motion.

respectfully requested pursuant to Federal Rule of Evidence 201, and such further evidence and argument that may be presented and considered by this Court at any hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**INTRODUCTION**

Ryan Drexler's ("Drexler") subpoena to Verizon wireless [ECF No. 551] seeks the content of *all* text messages sent or received by Debtor's independent director Nick Rubin, regardless of the subject matter or counterparty (the "Rubin Text Subpoena"). In addition, Drexler has issued subpoenas to Verizon wireless, AT&T and T-Mobile (collectively, the "Carriers") seeking the content of *all* text messages sent or received by Empery's agent Ryan Lane (the "Empery Text Subpoenas," collectively with the Rubin Text Subpoena, the "Illicit Subpoenas"). [ECF Nos. 567, 568, 569].[2] The Illicit Subpoenas violate the Stored Communications Act ("SCA"), 18 USC §§ 2701–2712, which unambiguously prohibits telecommunications companies from disclosing the content of stored text messages. The law is breathtakingly decisive and consistent, without room for argument, interpretation, or exception. Empery therefore joins in the Motion and makes clear that it does not waive the protections of the SCA or otherwise consent to the discovery of its communications. Given the fact that the Court must quash the Illicit Subpoenas, why would Drexler issue the Illicit Subpoenas?

Transparently, the Illicit Subpoenas are purely designed to delay the resolution of Empery's *Emergency Motion to Enforce Intercreditor and Subordination Agreement under Section 510(a) of the Bankruptcy Code* (the "Motion to Enforce") [ECF No. 506]. Drexler knows that the Illicit Subpoenas will not yield records, and while Drexler has proffered that text messages between Mr. Rubin and Empery (and specifically Ryan Lane) "will provide strong evidentiary support for our argument that the intercreditor agreement is not enforceable," he also knows that is untrue. [May 25, 2023 Transcript of Proceedings at 13:11-20]. Prior to issuing the Empery Text Subpoenas, Empery voluntarily produced the requested text messages, which reflect Empery championing

---

[2] The subpoenas to Empery [ECF Nos. 567, 568, 569] will be the subject of a forthcoming motion to quash.

Debtor's business, and nothing of any relevance to the Motion to Enforce or otherwise. The Illicit Subpoenas are therefore duplicative and completely irrelevant to any issue. Moreover, Drexler's prurient interests do not excuse Federal Law.

But more importantly, the Illicit Subpoenas are not limited to communications between Mr. Rubin and Empery, and in fact extend to every text message and picture sent or received by Messrs. Rubin and Lane, no matter the recipient, including with family, friends, counsel and otherwise, for a period of more than six-months. The Illicit Subpoenas necessarily seek privileged and confidential non-public information wholly unrelated to Debtor or the Motion to Enforce. Drexler has not and cannot explain away such overbreadth. Moreover, the Court should also consider that Mr. Lane's friends and family have been harassed through anonymous communications, which upon information and belief originated either directly or indirectly from Drexler, and that Drexler has personally sued Empery agent Timothy Silver based on communications with Debtor's creditors in the scope and course of this bankruptcy. Against this backdrop, it is clear that the Illicit Subpoenas are a vehicle to harass and annoy Empery and Mr. Rubin. Accordingly, Empery joins the Motion and requests that the Illicit Subpoenas be quashed.

## II.
## LEGAL ARGUMENT

**A.    Empery has standing to join the Motion and oppose illegal subpoenas aimed in part at its communications.**

"Courts have held that an individual has a personal interest sufficient to give him standing to challenge a subpoena for discovery of personal information in the custody of a third party." *Clark v. Johnson*, 14-CV-582-JED-PJC, 2015 WL 4694045, at *2 (N.D. Okla. Aug. 6, 2015); *see also Hawaii Reg'l Council of Carpenters v. Yoshimura*, CV 16-00198 ACK-KSC, 2017 WL 738554, at *3 (D. Haw. Feb. 17, 2017); *Scott v. Complete Logistical Services, LLC*, CV 19-11672, 2021 WL 2402161, at *2 (E.D. La. June 11, 2021); *Kizer v. Starr Indem. & Liab. Co.*, CIV-18-846-D, 2019 WL 2017556, at *3 (W.D. Okla. May 6, 2019) "This includes cell phone information." *Id*. (citing *Ademiluyi v. Phillips*, 2014 WL 7012493, *2 (D.Nev. Dec. 12, 2014). While the Rubin Text Subpoena is directed to Mr. Rubin's text messages, those messages

undeniably include communications between Empery's principal, Mr. Lane, and its agent Mr. Silver. Empery, accordingly, has standing to challenge the subpoena.

**B.     The Illicit Subpoenas violate Federal Law and must be quashed.**

"The Stored Communications Act ("SCA") prohibits providers from divulging private communications to certain entities or individuals." *Nehad v. Browder*, 15-CV-1386 WQH NLS, 2016 WL 1428069, at *9 (S.D. Cal. Apr. 11, 2016); *see* 18 USC Chapter 121; *Loop AI Labs Inc v. Gatti*, 15-CV-00798-HSG(DMR), 2016 WL 787924, at *3 (N.D. Cal. Feb. 29, 2016); *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012). Unambiguously, "wireless communication providers are properly classified as an "electronic communication service" under the SCA, and thus they must not divulge to any person or entity the contents of a communication while in electronic storage by that service." *Nehad*, 2016 WL 1428069, at *9; *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), rev'd and remanded sub nom. *City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619 (2010). Expressly, "Civil subpoenas are subject to the prohibitions of the SCA." *Loop AI Labs Inc*, 2016 WL 787924, at *3 (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72, 1077 (9th Cir. 2004)); *Hawaii Reg'l Council of Carpenters v. Yoshimura*, 2017 WL 738554, at *2 (D. Haw. Feb. 17, 2017)(finding "no exception" to the SCA exists for civil subpoenas).[3]

The Carriers, who have all been found to be subject to the SCA, therefore, "may not provide the content of any communications, including text messages, consistent with the SCA." *Id*. ("explicitly hold[ing] that AT&T is prohibited from providing the content of any communications"); *Mintz*, 885 F. Supp. 2d at 993; Hawaii Reg'l Council of Carpenters, 2017 WL 738554, at *2 (quashing subpoena to T-Mobile); *Special Markets Ins. Consultants, Inc. v. Lynch*,

---

[3] *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008) ("[A]s noted by the courts and commentators alike, § 2702 lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order."); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (holding that the SCA "contains no exception for disclosure of such communications pursuant to civil discovery requests"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ("Applying the clear and unambiguous language of § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the Rigsbys' electronic communications to State Farm because the statutory language of the [SCA] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas.")).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11 C 9181, 2012 WL 1565348, at *1 (N.D. Ill. May 2, 2012)(quashing subpoena to Verizon under the SCA).

Here, the Illicit Subpoenas seeks "all text messages sent from, and received by, the Subject Phone Numbers," "all text message transactions, including SMS and MMS communications," as well as all stored SMS and MMS content. [ECF No. 551, 567, 568, 569]. As such they seek exactly what congress has proscribed—the content of text messages—and must be quashed.

C.     **Empery's text messages with Mr. Rubin have been produced.**

The obvious slight of hand is that Drexler was emphatic that only text messages between Empery (and specifically Mr. Lane) and Mr. Rubin would be crucial to Drexler's opposition to the Motion to Enforce. That position, of course, was not based on evidence, but Drexler's wild and unsubstantiated speculation. Importantly, Drexler did not contend that any other text messages, let alone all other text messages, were needed or relevant.

Specifically, on May 25, 2023, Drexler argued:

> Second, and related to that, we do think it's vital that we be able to subpoena the Verizon, the service carrier, for the text messages that were deleted by Mr. Rubin. That hasn't been discussed or denied by anyone, and it was admitted on the record. ***And the reason for that is that we believe that the text messages that were sent and received from Ryan Lane, who was one of Empery's principles[sic], will provide strong evidentiary support for our argument that the intercreditor agreement is not enforceable***, and so it's directly relevant to that. We may be able -- we also want to subpoena the text messages directly from Mr. Lane. But I think in the circumstances, ***if we get what was sent to and received by the independent director, that that should be sufficient for present purposes***.

[May 25, 2023 Transcript of Proceedings at p. 13:11-20 (emphasis added)].[4] Like all his wild theories, Drexler did not explain, justify, or substantiate why the messages would be pertinent, instead he speculated they must be. It is now obvious, especially given the request for all messages not just those with Empery or Mr. Rubin, that Drexler was simply fishing for something salacious and was gambling on the fact that Empery would not want to turn the messages over.

But as Empery's counsel explained, while "messages between a newly-appointed independent director and Empery have absolutely nothing to do with the enforceability of an

---

[4] *See* Pilatowicz Decl., Exh. "1."

intercreditor agreement negotiated years ago," Empery was not afraid of the facts. [*Id*. at 15:21-16:2]. On June 2, 2023, Empery produced all of Mr. Lane and Mr. Silver's text messages with Mr. Rubin,[5] as well as all of Debtor's other directors. Far from the scandalous messages Drexler was hoping for, the mundane text messages are evidence that Empery was actively championing Debtor's business or scheduling telephone calls. In fact, they evidenced exactly what Drexler did not want, that Empery was in fact not violating the intercreditor agreement.

Deeply disappointed, Drexler demanded that Empery identify Mr. Lane and Mr. Silver's cellular phone carriers so that Drexler could subpoena phone records—in violation of federal law. When Empery refused, Drexler blindly issued subpoenas to Verizon, T-Mobile and AT&T, hoping that the subpoenas would yield records. But tellingly, Drexler did not limit the subpoenas to communications with Mr. Rubin, but instead sought all communications, including those with counsel, spouses, friends and others. Drexler further decried that he would seek to continue the Motion to Enforce unless he got everything he wanted. Plainly, the Illicit Subpoenas are purely a means to delay and harass Empery and Mr. Rubin.

**D.    Drexler should be precluded from obtaining any party's personal information.**

For more than six months, Drexler has been waging a counter-offensive outside the purview of this Court. While Empery has not raised these issues with the Court to avoid interfering with the orderly administration of the estate, it is now necessary. Given the scope of the subpoenas, to include proprietary and confidential information, Empery is concerned that Drexler will use the information to harass Mr. Lane.

Drexler has antagonized Empery's principals and employees, specifically Mr. Lane and Mr. Silver, both before and after the Petition Date, not only through repeated baseless litigation, but also, it appears, through online harassment and with a campaign of anonymous letters. *See* Lane Decl.[6]  A brief timeline of events is as follows:

1. On February 7, 2023, Drexler, brought a complaint against Empery in the Eighth Judicial District Court of Nevada, Case No. A-12-865375-C (the "Revolver Action"). At the time of the Revolver Action, the Court was considering Empery's DIP Proposal

---

[5] *See* Pilatowicz Decl., Exh. "2."

[6] *See* Pilatowicz Decl., Exh. "3."

1. and the Revolver Action was designed to serve as evidence to defeat the DIP Proposal. [ECF No. 211, 216 at p. 3 ¶4]. The Revolver Action was dismissed on May 30, 2023, in part because the Subordination and Intercreditor Agreement is a valid, binding agreement that requires Drexler to bring any action in New York.

2. The next day, on February 8, 2023, an unknown individual contacted the Westport Board of Education, where Lane's[7] children attend school, and asked about Amy Lane, Lane's wife, purporting to be a NY Times reporter from a blocked number. *See* Lane Decl. ¶ 5.

3. On February 9, 2023, the Bankruptcy Court approved Empery's DIP Proposal, over White Winston's DIP Proposal and Drexler's opposition. [ECF No. 296] Drexler again found himself defeated.

4. On February 17, 2023, Lane's wife received a letter addressed to her, wherein an anonymous person alleged Lane was unfaithful. *See* Lane Decl. ¶ 6.

5. On March 2, 2023, Drexler sued Mr. Silver, an employee of Empery, in Washoe County, Nevada. Mr. Silver removed the case to United State District Court, District of Nevada. Case No. 3:23-cv-00128. The Complaint alleges that during the course of, and related to the Bankruptcy Proceeding, Mr. Silver spoke with other creditors:

    > After the filing of [Debtor's] Bankruptcy Petition, and during the course and scope of [Debtor]'s bankruptcy proceedings, Silver contacted other creditors: of [Debtor] seeking to induce them into participating in Emprey's (sic)[8] scheme to take over [Debtor] and liquidate its assets, and/or alternatively, selling their credit position/debt to Emprey (sic) so that Emprey (sic) could control a greater percentage of [Debtor]'s debt owed to creditors for additional leverage in [Debtor]'s bankruptcy proceedings

    [ECF No. 1-A, at ¶ 26]. In other words, Drexler sued Mr. Silver because he was negotiating with creditors in a clear effort by Drexler to chill case participants' free speech. On March 24, 2023, Mr. Silver brought a motion to dismiss pursuant to NRS 41.660, Nevada's Anti-SLAPP[9] statute. Importantly, while that motion is pending, Drexler is statutorily prohibited from obtaining discovery into his allegations—including into the very communications he now seeks to subpoena. NRS 41.660(3)(e)(1)-(2).

6. On April 1, 2023, Lane's neighbors received anonymous letters alleging that Lane had engaged in criminal behavior. *See* Lane Decl. ¶ 7. In response, on April 2, 2023, Lane text messaged Drexler "By the time this case is over all ur daddy's money will be gone and you'll be behind bars for fraud extortion and harassment. Keep bringing it . . . . haha." [ECF No. 447] *See* Lane Decl. ¶ 8. Drexler uses the text message he likely incited as the primary basis for his request for a trustee. [ECF No. 447 at p.2].

7. On April 5, 2023, a fake Facebook account using the name and picture of a 30-year Chicago Kirkland & Ellis LLP ("K&E") law partner Wendy Bloom, began posting about Lane in Westport community message boards. The fake Facebook account was

---

[7] Lane resides with his family in Westport, Connecticut, a fact known to Drexler. *See* Lane Decl. ¶ 3.

[8] Resorting to elementary antics that are well below the "high degree of professionalism and civility" required by Local Rule 1-1(c), Drexler appears to have intentionally renamed Empery, Em*prey* throughout the Complaint.

[9] SLAPP refers to a strategic lawsuit against public participation, as defined under NRS Chapter 41.

created from a Northern Nevada Internet Protocol ("IP") address. The fake Facebook posts suggested that Lane was a danger to children. *See* Lane Decl. ¶ 9.

8. On April 14, 2023, the email address bloomwendy452@gmail.com emailed the Westport School District school board. The email suggests that Lane is a violent criminal and may be a danger to children and wanted to inform the school board "in the event that something happens involving Mr. Lane in the future . . . in case Mr. Lane acts violent or erratic in the future." *See* Lane Decl. ¶ 13.

All of these communications, which are likely federal and state crimes (*see* NRS 200.560, NRS 205.450, CGS § 53a-130, 18 USC § 2261A), are designed to harass Empery and elicit an emotional response from Lane which it did.

Moreover, it appears that every time Drexler suffers a defeat, he takes action to lash out at Empery and its employees. If Drexler learns the contact information for Mr. Rubin's or Mr. Lane's contacts, there is a reasonable likelihood that he would or could further harass their friends, families and business associates. Accordingly, the Illicit Subpoenas should be quashed to prevent the discovery of the contact information for individuals that have absolutely no relation to this matter.

### III. CONCLUSION

For the reasons stated above, Empery requests that the Court grant the Motion, and Empery requests that the Court grant such other and further relief that is just and proper under the circumstances.

DATED this 12th day of June, 2023.

                          GARMAN TURNER GORDON LLP

                          */s/ Dylan Ciciliano*
                          GREGORY E. GARMAN, ESQ.
                          WILLIAM M. NOALL, ESQ.
                          TERESA M. PILATOWICZ, ESQ.
                          DYLAN T. CICILIANO, ESQ.
                          7251 Amigo Street, Suite 210
                          Las Vegas, Nevada 89119
                          *Attorneys for Empery Tax Efficient, LP as Agent and Collateral Agent for certain Secured Noteholders*