GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail:  ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
Email:  wnoall@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail:  tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail:  dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Empery Tax Efficient, LP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: | Case No. 22-14422-nmc |
|---|---|
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Date:   June 15, 2023<br>Time:  10:30 a.m. |

**DECLARATION OF TERESA M. PILATOWICZ IN SUPPORT OF JOINDER TO MOTION TO QUASH SUBPOENA TO VERIZON OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A PROTECTIVE ORDER AND SUPPLEMENTAL POINTS AND AUTHORITIES**

I, Teresa M. Pilatowicz, make this Declaration under 28 U.S.C. § 1746 and declare as follows:

1.     I am over the age of eighteen (18) years and competent to testify to the matters asserted herein, of which I have personal knowledge, except as to those matters stated upon information and belief.  As to those matters stated upon information and belief, I believe them to be true.

2.     I am an attorney at the law firm of Garman Turner Gordon LLP, counsel to Empery Tax Efficient, LP ("Empery").

3.     I submit this Declaration for all permissible purposes under the Federal Rules of Civil Procedure and Rules of Evidence in support of the *Joinder to Motion to Quash Subpoena to Verizon or, in the Alternative, for Issuance of a Protective Order*,[1] filed by Empery.

4.     A true and correct copy of the hearing transcript from the hearing that took place on May 25, 2023 in the Chapter 11 Case is attached hereto as **Exhibit "1."**

5.     A true and correct copy of the text messages between Mr. Lane, Mr. Silver, and Mr. Rubin, produced by Empery on June 2, 2023, is attached hereto as **Exhibit "2."**

6.     A true and correct copy of the declaration of Ryan Lane filed in support of *Defendant's Response to Plaintiff's Motion to Supplement Opposition to Motion to Dismiss Pursuant to NRS 41.660, FRCP 12(b)(2), and 12(b)(6)* in Case No. Case No. 3:23-cv-00128 is attached hereto as **Exhibit "3."**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of June, 2023.

*/s/ Teresa M. Pilatowicz*
TERESA M. PILATOWICZ

---

[1] Capitalized terms not otherwise set forth herein shall have those meanings ascribed to them in the Joinder.

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |
|---|---|
| IN RE: | Case No. 22-14422-nmc |
|  | Chapter 11 |
| MUSCLEPHARM CORPORATION, |  |
|  | 300 Las Vegas Blvd. South |
|  | Las Vegas, NV 89101 |
| Debtor. |  |
|  | Thursday, May 25, 2023 |
|  | 10:33 a.m. |

TRANSCRIPT OF STATUS HEARING RE: MOTION TO APPOINT TRUSTEE
MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE FILED BY
CANDACE C CARLYON ON BEHALF OF RYAN DREXLER [447];
STATUS HEARING RE: MOTION TO VACATE MOTION FOR ENTRY OF ORDER:
(1) VACATING ORDERS GRANTING EX PARTE APPLICATIONS FOR
EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004, AND (II)
ESTABLISHING PROCEDURES FOR DISCOVERY FILED BY
GABRIELLE A. HAMM ON BEHALF OF MUSCLEPHARM CORPORATION [462];
MOTION FOR APPROVAL OF PROCEDURES - DEBTOR'S MOTION TO: (I)
APPROVE BIDDING PROCEDURES FOR THE SALE OF ASSETS PURSUANT TO
11 U.S.C. 105, 363, AND 365 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 6004 AND 6006 AND (II) FOR WAIVER OF THE
14-DAY STAY UNDER BANKRUPTCY RULE 6004 WITH PROPOSED
ORDER FILED BY SAMUEL A. SCHWARTZ ON BEHALF OF
MUSCLEPHARM CORPORATION [497];
OST RE: MOTION TO APPROVE COMPROMISE UNDER RULE 9019 DEBTOR'S
MOTION PURSUANT TO 11 U.S.C. 105 AND 363 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT AND PLAN SUPPORT
AGREEMENT WITH: (I) THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; (II) EMPERY TAX EFFICIENT, LP, IN ITS CAPACITY AS
COLLATERAL AGENT AND ADMINISTRATIVE AGENT FOR MP COLLATERAL,
LLC; AND (III) WHITE WINSTON SELECT ASSET FUNDS, LLC WITH
PROPOSED ORDER FILED BY SAMUEL A. SCHWARTZ ON BEHALF OF
MUSCLEPHARM CORPORATION [524]
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

| Audio Operator: | Maria Garrett, Remote ECR |
|---|---|
|  | Benji Rawling, Remote ECR |

| Transcription Company: | Access Transcripts, LLC |
|---|---|
|  | 10110 Youngwood Lane |
|  | Fishers, IN 46048 |
|  | (855) 873-2223 |
|  | www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
TELEPHONIC APPEARANCES:


For the Debtor:              Schwartz Law, PLLC
                             By:  SAMUEL SCHWARTZ, ESQ.
                                  GABRIELLE HAMM, ESQ.
                             601 East Bridger Avenue
                             Las Vegas, NV 89101
                             (702) 802-2207


For the Official             Pachulski Stang Ziehl & Jones
Committee of Unsecured        By:  JOHN D. FIERO, ESQ.
Creditors:                        JASON ROSELL, ESQ.
                             One Sansome Street, Suite 3430
                             San Francisco, CA 94104
                             (415) 263-7000


For Empery Tax               Garman Turner Gordon
Efficient, LP:               By:  GREG GARMAN, ESQ.
                                  WILLIAM M. NOALL, ESQ.
                             7251 Amigo Street, Suite 210
                             Las Vegas, NV 89119
                             (725) 777-3000


For Ryan Drexler:            Steinhilber Swanson LLP
                             By:  MICHAEL RICHMAN, ESQ.
                             122 West Washington Ave., Suite 850
                             Madison, WI 53703-2732
                             (608) 405-6508


For White Winston            Jeffrey D. Sternklar, LLC
Select Asset Funds,          By:  JEFFREY STERNKLAR, ESQ.
LLC:                         101 Federal Street, Suite 1900
                             Boston, MA 02110
                             (617) 207-7800


For Ryan Drexler:            Steinhilber Swanson LLP
                             By:  MICHAEL RICHMAN, ESQ.
                             122 West Washington Ave., Suite 850
                             Madison, WI 53703-2732
                             (608) 405-6508


For the U.S. Trustee:        Office of the United States Trustee
                             By:  JARED DAY, ESQ.
                             300 Booth Street, Room 3009
                             Reno, NV 89509
                             (775) 784-5531


Also Present:                NICOLAS RUBIN

                             ERIC HILLMAN
```

1          (Proceedings commence at 10:32 a.m.)

2          THE CLERK:  On the calendar are MusclePharm

3    Corporation, Case Number 22-14422.  May I have appearances

4    please?

5          MR. SCHWARTZ:  Good morning, Your Honor.  Samuel

6    Schwartz and Gabrielle Hamm on behalf of the debtor.  I believe

7    also on the line are Mr. Nicholas Rubin and Mr. Hillman.

8          MR. FIERO:  Good morning, Your Honor.  John Fiero of

9    Pachulski Stang for the Creditors Committee.  With me today is

10   my partner, Jason Rosell.

11         MR. GARMAN:  Morning, Your Honor.

12         MR. ROSELL:  Good morning.

13         MR. GARMAN:  I'm Greg Garman and Bill Noall,

14   appearing on behalf of Empery.  And also on the phone are

15   Empery principals, Ryan Lane and Tim Silver.

16         MR. STERNKLAR:  Good morning, Your Honor.  Jeffery

17   Sternklar for White Winston Select Asset Funds LLC.

18         MR. RICHMAN:  Good morning, Your Honor.  Michael

19   Richman, Steinhilber Swanson, for Ryan Drexler.

20         MR. DAY:  Good morning, Your Honor.  Jared Day,

21   Department of Justice, for the U.S. Trustee.

22         THE COURT:  All right.  Good morning to everyone.

23         Mr. Schwartz, before we get started, is there

24   anything that you want to update the Court about?

25         MR. SCHWARTZ:  Sam Schwartz on behalf of the debtor,

1   Your Honor.  Nothing at the moment, Your Honor.  I thought,

2   given the last hearing's direction to run down the docket, I

3   thought made sense just to run down the Court's docket and

4   proceed -- if it pleases the Court and proceed in that fashion.

5   But I think it's the only -- I think that we can update the

6   Court with respect to each matter as we get to them.

7           THE COURT:  All right.  And is there anybody else

8   that would like to say something before we get started?

9           MR. RICHMAN:  Yes, Your Honor.  Michael Richman, if I

10  may.  Good morning.

11          THE COURT:  You may.

12          MR. RICHMAN:  I just -- before we begin I would like

13  to confirm the Court's intention with respect to the two

14  substantive motions that are on for today -- that is the motion

15  to approve bid procedures and the motion to approve the plan's

16  settlement motion -- as to whether those are intended to be

17  preliminary or pretrial hearings or final hearings.

18          THE COURT:  Right.  Actually, you're kind of jumping

19  the gun a little bit on me there, Mr. Richman.  I will get to

20  that.

21          Is there anybody else that has something that needs

22  to be gone over before I jump in?  All right.  I don't hear

23  any.  Well, the question that I have, that I'm going to address

24  to the parties and I'm going to address it first to Empery,

25  Mr. Garman.

1          Don't I have to determine the enforceability of the

2    intercreditor agreement at this point before I move on, on

3    anything substantive, especially anything that's already been

4    objected to by Mr. Drexler?

5          MR. GARMAN:  Your Honor, Greg Garman.  Your Honor, I

6    respectfully think that you don't.  I understand if the Court

7    would find that would make more sense.

8          We attached a copy of the inter-creditor agreement to

9    our notice of withdrawal.  I believe that, candidly, even on a

10   substantive basis, no real opposition has been set forth.  But

11   it is very much Empery's position that this is exactly what we

12   negotiated for and that Mr. Drexler is obligated to stand

13   silently on the sideline until such time as we get paid.  And

14   so I do believe that there is a threshold question of whether

15   or not Mr. Drexler can participate in those proceedings.

16         I don't think -- so we teed it up.  As we indicated

17   to you, we teed it up by way of our enforcement motion so that

18   the Court would have a procedural vehicle.  Having said that,

19   circumstances have continued to evolve, so we withdrew, which I

20   think is our right.  I think you have the ability to decide

21   today if our withdrawal of the opposition was appropriate.  But

22   to the extent that the Court were to want to proceed to the

23   motion to enforce, then I would (audio interference) object.

24         THE COURT:  I'm sorry.  You broke up at the end or I

25   just didn't hear you.  You would or would not object?

1          MR. GARMAN:  I said I would not -- I can't -- I would

2  not object.

3          THE COURT:  Okay.  Thank you.  All right.  And this

4  is more of a comment than a question, but the fact that the

5  withdrawal actually came with some discussion, some support

6  supporting the idea that it -- that the withdrawal was

7  appropriate, to me indicated that this really is something that

8  needs to be determined and having it come forward in the

9  posture that it is right now, I think is problematic.

10          But I will -- Mr. Richman, I want to hear from you.

11          MR. RICHMAN:  Yeah.  Excuse me.  Thank you, Your

12  Honor.  And I agree with Your Honor's comment.  This is -- this

13  needs to be briefed and it needs to be argued.  Even the

14  provisions that were quoted to the Court to support this

15  alleged power of attorney to withdraw pleadings that I filed as

16  counsel of record, is not at all clear.  The debtor quoted a

17  portion of the intercreditor agreement with brackets and

18  ellipses that conceal that that provision, the power of

19  attorney, applies, if it applies at all, only in claims.  And

20  we intend to show the Court when this matter is briefed and

21  when the Court is able to hear it on June 15, that the entirety

22  of the intercreditor agreement is unenforceable.  So yes, this

23  should be decided before anything else and not today.

24          THE COURT:  All right.  Thank you.  Mr. Schwartz?

25          MR. SCHWARTZ:  Thank you, Your Honor.  A couple of

```
 1   points and I appreciate the Court's direction.

 2              I think there are some things we can accomplish

 3   today.  Number one, I don't believe anyone opposes the sale of

 4   the company.  I think everyone thinks that's the right next

 5   step.  And so from that perspective, I do think we can get to

 6   bid procedures today, and I think we should.

 7              Similarly, I think we can and should get to the plan

 8   support agreement today because I think both of those can go

 9   forward and allow this case to get on its track toward

10   confirmation, one, because the bid procedures, Your Honor, if

11   we get to those or there's nothing exotic or sexy in these bid

12   procedures, Your Honor.  This is a form of bid procedures

13   that's been approved in this Court over and over.  So I think

14   that's fairly straightforward, one.

15              Two, then with respect to the plan support agreement,

16   while it has -- it asked for authority for the debtor to enter

17   into it because it's outside of the ordinary course of

18   business, and there are some compromises.  Those compromises

19   aren't final.  The plan support agreement isn't final and

20   binding on the debtor in a -- in that way until we get through

21   the plan process.

22              So really when it comes to the plan support agreement

23   or PSA, as we call it, we're -- I think it's more akin to

24   interim approval of fees.  The debtor needed to be here to ask

25   for the authority that it's seeking in that motion to enter
```

1   into the PSA.  But again it's still subject to the confirmation

2   process and everyone's going to get another bite at the apple

3   and that apple will be in front of the Court after you would

4   hear the trustee-related papers on June 15th, and the auction

5   comes up after the Court would hear the trustee related papers

6   on June 15th.  So I think with respect to those two pleadings,

7   given their timing, given the routine nature of the first one

8   and the interim-like approval of the second, those two matters

9   can go forward today.

10          So Your Honor, I would urge the Court to keep this

11  case at least headed down the path it's on now, because I think

12  even Mr. Richman said at the last hearing, he doesn't disagree

13  that the company should be sold.  Really, you know, his

14  client's concerns are the assets being broken up a bit like the

15  way they are.  And we can sort that out through the auction as

16  well.

17          And one other point I'd like to highlight with

18  respect to the auction, Your Honor, there -- the debtor has to

19  file a sale motion after the auction.  And that sale motion

20  then also has to dovetail with the plan and disclosure

21  statement.  So the two motions the debtor has up today,

22  naturally, by their own terms, procedurally and substantively,

23  allow the Court and the parties several more bites at them, if

24  you will, Your Honor, after all the trustee papers will be

25  heard.

1          So to hold those up now and potentially delay the

2    auction and extend the cost of this case, I think would be

3    inappropriate given the posture we're in.  So with that, Your

4    Honor --

5          THE COURT:  Mr. Schwartz, you say that, yet we have

6    an objection and a withdrawal of that objection pending.  So

7    I'm not sure it's as quite as straightforward as maybe you

8    hoped it would be or maybe ultimately it is, but I think I

9    don't agree necessarily with that, what you have just stated as

10   being the current situation that would allow things to go

11   forward.  But I interrupted you, so go ahead and proceed.

12         MR. SCHWARTZ:  Well, that's fair, Your Honor.  And

13   thank you for that.  And I guess maybe I was getting more into

14   the substance of those arguments, and I know there's -- I think

15   there's maybe two components of what the parties are arguing

16   today around the debtor.  One, you know, does Mr. Drexler even

17   have the ability to do what he's doing now?  And that's the

18   trustee motion and these other related papers and the notice of

19   withdrawal.

20         But I think from the debtor's perspective, you know,

21   we think we can move forward on the merits if that's where the

22   Court's -- would be inclined to go today because we don't think

23   there's anything controversial in what we're seeking to have

24   done.

25         So I probably should have said that at the outset,

1    Your Honor.  If the Court's not inclined, given the timing and

2    the procedural posture to consider the withdrawals, well, the

3    debtor doesn't think it needs them to be successful today.  And

4    I think that's the broader point.

5             THE COURT:  All right.  Thank you.  Let me see.

6    Go down my list here.  Did the Committee want to be heard?

7             MR. FIERO:  Sorry, Your Honor, I was unmuting myself.

8    This is John Fiero for the Committee.

9             Your Honor, I would echo Mr. Schwartz's comments and

10   basically dovetail directly behind them.  I suppose there is,

11   you know, one thing that could happen and to just sort of clear

12   this up in the interim, and that would be, to have the

13   withdrawals withdrawn.  But in the absence, and certainly my

14   client doesn't control that, but in the absence of that, we do

15   place great value on speed here.  We need it.  The case is

16   costing us a lot of money.

17            Any delay that Mr. Drexler can obtain is viewed as a

18   victory by him, and it does not help our process at all.  And

19   so for those reasons, we would ask the Court to do what it can

20   to keep this schedule in place and to grant the relief that

21   it's comfortable granting, based on the circumstances.

22            THE COURT:  All right.  Thank you.  Mr. Sternklar, I

23   don't know if you wanted to speak or not, but go ahead.

24            MR. STERNKLAR:  No, Your Honor.  We do not oppose the

25   motions.  Obviously there are facts averred in that, if the

1  case settles, we don't care.   But obviously if for some reason

2  the plan is not confirmed, then we may care.

3          So we would caution anyone, including we would ask

4  the Court not to draw any conclusions from those facts other

5  than as necessary to decide the motions.   And we would

6  obviously reserve as I assume every other party, all rights in

7  the event the plan isn't confirmed.   Other than that, thank

8  you.

9          THE COURT:   All right.   Thank you.

10         And then Mr. Day?

11         MR. DAY:   Thank you for the opportunity, Your Honor.

12  Jared Day for the U.S. Trustee.   We have nothing further to

13  add.

14         THE COURT:   All right.   Well, I do believe that this

15  is something that in the current posture cannot go forward.

16  The motions, the two substantive motions that were set for

17  today, June 15th still seems to be a good date on my calendar.

18         Ms. Garrett, you can double check that.   I think I

19  have a pretty lengthy 9:30 calendar.   But then after that I'm

20  free until I believe that duty judge calendar at 1:30.   So if

21  we set the hearing on the intercreditor agreement, I can't

22  recall if I had already set it at 9:30.   If it is, I'll go

23  ahead and move that to 10:30.   That way the parties won't have

24  to sit on the phone as long.

25         And I'm going to continue all of the other pending

1    matters to a status on that date.  I think, as I've mentioned,

2    the reason I'm continuing these is because I think that the

3    intercreditor agreement motion is a motion that needs to be

4    determined first, at the outset.  So June 15th will be that

5    time, 10:30, going forward on the motion regarding the ICA and

6    everything else as status.

7        I believe that discovery should remain stayed pending

8    the outcome of that decision unless there's discovery that

9    needs to be done on that motion.  That motion on the

10   intercreditor agreement of the discovery I was referring to

11   related to the status that we've been continuing related to

12   pending motions on discovery.  But I'm not at all precluding

13   there being any discovery that would be allowed by the rules to

14   go forward with respect to the motion on the intercreditor

15   agreement.

16       Let me think if I have anything else on my list.  I

17   guess, Ms. Garrett, will you just confirm that that 10:30 slot

18   on June 15th is still a good one?

19       THE CLERK:  Yes, Your Honor.  That's available.

20       THE COURT:  All right.  All right.  Before we go

21   ahead and conclude these hearings, then, is there any

22   questions?

23       MR. RICHMAN:  Yes, Your Honor.  Michael Richman.  May

24   I be heard?

25       THE COURT:  Yes, you may.

1          MR. RICHMAN:  There are three things related to that

2     schedule that I would like to discuss with the Court.  One is

3     we would ask that the June 15 hearing under Rule 9014, be a

4     live hearing, either in person or on Zoom, so that we can take

5     and cross-examine witnesses and otherwise be in a position to

6     have a -- an evidentiary hearing.

7          Second, and related to that, we do think it's vital

8     that we be able to subpoena the Verizon, the service carrier,

9     for the text messages that were deleted by Mr. Rubin.  That

10    hasn't been discussed or denied by anyone, and it was admitted

11    on the record.  And the reason for that is that we believe that

12    the text messages that were sent and received from Ryan Lane,

13    who was one of Empery's principles, will provide strong

14    evidentiary support for our argument that the intercreditor

15    agreement is not enforceable, and so it's directly relevant to

16    that.  We may be able -- we also want to subpoena the text

17    messages directly from Mr. Lane.  But I think in the

18    circumstances, if we get what was sent to and received by the

19    independent director, that that should be sufficient for

20    present purposes.

21          And lastly, we asked in our status report for a

22    relatively short extension of time to file our opposition to

23    the Empery motion to enforce, I think from June 1 to June 6th.

24    There are two reasons for that.  One is that the intercreditor

25    agreement is very dense and complicated and requires very clear

1   explanation to tie provisions together.  There are many

2   applicable legal principles that need to be fully briefed under

3   New York law, which the parties chose as the applicable law,

4   and is critically important to our argument that the

5   agreement's not enforceable.

6          And lastly, we have been working around the clock

7   with all of these emergency motions and Mr. Rubin's discovery.

8   I have two associates who've been working with me around the

9   clock on this, and I would really like to give them the holiday

10  weekend off.  So I ask if Your Honor would kindly give us until

11  June 6th for our opposition, and we would also consent to a

12  comparable extension of the time for Empery to file their reply

13  and that should still keep the June 15th calendar, the motion

14  on track for that calendar.  Thank you, Your Honor.

15         THE COURT:  All right.  Thank you.

16         MR. GARMAN:  Your Honor, this is --

17         THE COURT:  Well, let me  --

18         MR. GARMAN:  Your Honor, this is Greg Garman.  Might

19  I respond to that?

20         THE COURT:  You can.  Let me address two things that

21  I think are less problematic, but I'll let you address those in

22  full.  But as to the Zoom or live hearing, I think that is

23  appropriate.  We can -- I'll set it up as a Zoom at this point.

24         And as to the issue about the subpoena, I would just

25  suggest that you go ahead and proceed as you -- the rules

1    require.  And the process can be, if there is an opposition,

2    can be handled on shortened time.  But I'm not going to

3    prejudge those things or make some sort of ruling at this point

4    without there even being in existence, the subpoena.  I just

5    thank you for the heads up that that may be an issue I will be

6    seeing.

7            All right.  And as to the June 6th, I guess before I

8    even get into that, Mr. Garman, go ahead.

9            MR. GARMAN:  Your Honor, let me respond to a couple

10   of things.  First of all, this issue of Mr. Rubin's text

11   messages as somehow being related to the enforceability of a

12   intercreditor agreement to which Mr. Rubin wasn't -- didn't

13   negotiate and wasn't involved, is clearly what's already

14   happened in this case, which is Mr. Drexler and his counsel are

15   using this inter -- the intercreditor enforceability and other

16   motions for the purpose of engaging in discovery related to the

17   trustee motion.  We submitted transcripts of the deposition

18   purportedly taken in connection with the bid procedures to show

19   that literally 98 percent of the questions related to the

20   trustee motion.

21           We're not afraid of these facts, but let me short

22   circuit this.  Every single text message sent to or from

23   Mr. Lane is, by SEC rule, required to be archived.  I'll have a

24   conversation about turning those over with counsel.  But text

25   messages between a newly-appointed independent director and

1   Empery have absolutely nothing to do with the enforceability of

2   an intercreditor agreement negotiated years ago.

3          Secondly, this hearing wasn't set on shortened time.

4   The issue of the intercreditor has been before the parties and

5   before the Court since January.  And the request by counsel is

6   not only did not have it on shortened time, but it's to give

7   him excess time because the hearing is now longer than it would

8   have been had I set the motion in the ordinary course.

9          It's a simple, straightforward document that we've

10  been talking about.  And as evidenced by the arguments of

11  counsel, they know exactly what they're going to say.  We

12  shouldn't be jammed up against a hearing that is on shortened

13  time.  We should enforce the rules.  It's not that difficult.

14         The deadline is the 1st.  I would ask that it be

15  kept.  And I will say, Your Honor, I actually object to any

16  evidentiary hearing occurring in connection with the

17  intercreditor agreement because unless it is ambiguous on its

18  face, there's no need for parol evidence or an outside witness.

19  And I cannot imagine that we're going to hear about witnesses

20  other than the independent director and others, or we're going

21  to talk about relationships and friendships and hockey games,

22  none of which has anything to do with anything other than the

23  trustee motion that you have stayed.

24         So I would ask -- I would have asked that we move the

25  hearing up in light of what has occurred.  I'll ask that we

1    keep it and the briefing schedule the same.  I'd ask the Court,

2    if we're going to have an evidentiary hearing, that it be

3    limited to the actual contract and the interpretation and the

4    negotiation of that contract.  But I do believe that we need to

5    keep the briefing schedule, and we may or may not be coming

6    back before you in connection with a discovery dispute over

7    what I think is stayed discovery.

8              THE COURT:  Okay.  All right.  Well, and I agree on

9    the briefing schedule.  This is something that's been lingering

10   for a while, and I'm going to keep the deadlines set forth in

11   the rules.  Having not looked at it myself, I will take your

12   word for it that that's June 1st.  But whatever the rules

13   requires is what I'm going to impose.

14             I, and I don't disagree at all about the idea that

15   the -- it's a contractual issue and so the need for whether or

16   not there is a need for parol evidence is yet to be determined.

17   So it, you know, and the rules will allow, and I believe it's a

18   local rule to allow this to be treated as an initial hearing.

19   And then it can, of course, if there is argument that supports

20   that this needs to be done as an evidentiary, we can do that.

21             I still would like to do it as a Zoom, however, so

22   I'll keep the Zoom there.  I would expect the briefs address

23   the issue of the parol evidence and so on.  And --

24             MR. RICHMAN:  Your Honor?

25             THE COURT:  Yes.  Go ahead, Mr. Richman.

1          MR. RICHMAN:  Yeah, I just want to be clear about why

2     we think extrinsic evidence is important.  It's not to

3     interpretation of the intercreditor.  It's to evidence that

4     Empery has repeatedly breached the intercreditor agreement

5     under principles of New York law and under expressed provisions

6     of the agreement itself.  And if we're right and Empery has

7     breached the agreement, then it can't be enforced against us.

8     We believe that to be true, and we believe the evidence will

9     show that.

10          THE COURT:  All right.  Well, we will have a hearing

11     on the 15th.  It will be by Zoom.  I will expect that these

12     arguments are made in your papers, and we will proceed

13     accordingly.  If there needs to be an initial hearing, first,

14     there will be one and then it will proceed to an evidentiary

15     one if necessary.  Without having all of this stuff in front of

16     me, it's hard to make a definitive ruling.

17          I would say then let's expect there to be argument at

18     the first hearing and if that then requires there to be a

19     hearing shortly thereafter, we will set that for an evidentiary

20     hearing.  And everything, as I had said, is moved to that June

21     15th date.  Everything but the intercreditor agreement motion

22     is going to be a status.

23          All right.  Anything else?  All right.  Hearing none,

24     we'll go ahead and conclude these hearings.  Thank you.

25          MR. RICHMAN:  Thank you, Your Honor.

1          MR. GARMAN:  Thank you, Your Honor.

2          THE CLERK:  Thank you.  We're off record.

3      (Proceedings concluded at 10:57 a.m.)

4                              * * * * *

5

6

7

8

9

10

11

12

13

14

15

16                  C E R T I F I C A T I O N

17

18          I, Teresa Saint-Amour, do hereby certify that the

19  foregoing is a correct transcript from the electronic sound

20  recording provided for transcription and prepared to the best

21  of my professional skills and ability.

22  _____

23  _____

24  TERESA SAINT-AMOUR, AAERT NO. 2020   Dated:  May 27, 2023

25  ACCESS TRANSCRIPTS, LLC

EXHIBIT "2"

Exhibit 2-A – Text Messages between Nicholas Rubin and Ryan Lane



ICA0011



ICA0012



front of you and attempting to distracting you . You rise above this and by staying strong and recognizing what it is , you go and fight the fight that needs to be fought

Agreed

I have no dirt so I have no worries

People I care about know exactly who I am so they will call bs on nonsense

Fri, Mar 17 at 11:13 AM

DJ Carney - (858) ▉

He knows me very well - use my name

Thu, Apr 13 at 4:32 PM

Give me a ring when free - nothing urgent

Thu, Apr 20 at 8:38 PM

Thanks for all your support - have an awesome rest of your birthday!

Amy,

This is probably the last type of letter you would ever want to receive but, I feel you have the right to know what type of person your husband Ryan is.

I'm not sure what type of relationship or arrangement you two have but, from what I've experienced with Ryan it isn't ideal.

I was seeing Ryan for about a year with promises of a life and future together.



Promise after promise things never seemed what they promised to be. I couldn't take the lies and broken promises anymore, so I ended our relationship.

You have a right to know how "trustworthy" and "loyal" you husband is.

I'm sorry to write this type of letter to you but also not for being honest.

Best of luck to you.

C.



Exhibit 2-B – Text Messages between Nicholas Rubin and Tim Silver

NR

Nick >

iMessage
Thu, Feb 16 at 3:49 PM

I butt dialed you but I am in court

> K sent you an email to set up a time to catch up

Thu, Mar 16 at 8:48 PM

Can you and Ryan pls call me after this call .

> I'm at a dinner outside so I need to jump back inside for a few and can call when I walk out

> Call you in twenty?

Delivered

iMessage

ICA0017

Exhibit 2-C – Text Messages between Nicholas Rubin, Tim Silver, and Eric Hillman

8:11



2 People ›

iMessage
Thu, Mar 16 at 2:05 PM

Eric Hillman

 Am I on the wrong call?

iMessage

EXHIBIT "3"

**DECLARATION OF RYAN LANE**

I, Ryan Lane, declare as follows:

1.     I am over the age of eighteen (18) years and competent to testify to the matters asserted herein, of which I have personal knowledge, except as to those matters stated upon information and belief.  As to those matters stated based on information and belief, I believe them to be true.

2.     I am a founder and Managing Partner of Empery Asset Management LP ("Empery").

3.     I live in Westport, Connecticut, a fact known to Ryan Drexler ("Drexler"), as he came to my house for dinner on or about June 14, 2022.

4.     I have occasionally text messaged Drexler. After a long saga involving Empery attempting to find a resolution with Drexler and Debtor MusclePharm Corporation ("Debtor"), I lacked confidence in the veracity of statements made by Drexler. On November 12, 2022, Drexler asked that I call him. I asked why, "so I can listen to ur lies?" Drexler asked "what lies," at which point my response is included in Drexler's Motion to Supplement Opposition to Timothy Silver's Motion to Dismiss pursuant to NRS 41.660, FRCP 12(b)(2) and 12(b)(6). The remainder of the text messages are attached hereto as **Exhibit A**.

5.     On February 8, 2023, I am informed and believe that an unknown individual contacted the Westport Board of Education, where I reside, and asked numerous school board members about my wife. This individual called the members' mobile numbers from a blocked number and purported to be a New York Times Reporter. Given other events that occurred at the same time, I believe that Drexler was involved in the placing of these calls.

6.     On February 17, 2023, my wife received an anonymous letter addressed to her that alleged that I had been unfaithful. I believe the letter was contrived or caused to be sent by Drexler.

7.     On April 1, 2023, I am informed and believe that my neighbors received anonymous letters alleging that I had engaged in criminal behavior. Given the contentious nature of the various litigation with Drexler, as well as other facts, I believe that Drexler sent the letter to my neighbors.

8. In response to the April 1, 2023, letter, I text messaged Drexler.

9. On April 5, 2023, a Facebook account using the name and picture of a 30-year Chicago Kirkland & Ellis LLP ("K&E") law partner Wendy Bloom began posting about me in Westport community message boards. The fake Facebook Profile posts suggested that I was a danger to children in the community.

10. After contacting Facebook, they confirmed that the account was created from a Northern Nevada Internet Protocol ("IP") address, but would not provide me the exact IP address.

11. I have since received confirmation that K&E partner Wendy Bloom did not create the Facebooker. Wendy Bloom confirmed she still resides in the Chicago area.

12. Likewise, I have not seen or heard of any individual named Wendy Bloom in my neighborhood, nor has anyone moved to my small neighborhood recently, as alleged in the posts.

13. On April 14, 2023, I am informed and believed that the email address bloomwendy452@gmail.com emailed the Westport School District school board members. The email suggests that I am violent criminal and may be a danger to children and wanted to inform the school board "in the event that something happens involving Mr. Lane in the future . . . in case Mr Lane acts violent or erratic in the future."

14. Empery is continuing to investigate the aforementioned communications, as well as their source.

15. Given the timing of the allegations, as well as other actions and information I have seen, I believe them to have been orchestrated by Drexler. I believe the letter to be an instrument of fraud and harassment and a clear message that the communications would continue unless Empery provided concessions to Drexler, which I believe to be extortion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of April 2023.

/s/ _____
RYAN LANE

Exhibit A

  

**1:12**

**38** ‹  RD  Ryan ›

shortly

Thu, Nov 3 at 11:00 AM

Let know if anything needs to be workout that your not happy with.

Thu, Nov 3 at 12:11 PM

Is 3 a good time for you to meet the new CEO.

Yes 👍

k i will have him call Tim

Sat, Nov 12 at 3:07 PM

call me when your around

So I can listen to ur lies?

What lies Ryan, pick up the phone like a man and stop texting

Like a man - ha - I'm at my sons birthday you piece of shit

  iMessage 

12:04



< 38                     RD

                        Ryan >

Like a man - ha - I'm at my sons birthday you piece of shit

Your the guy that is calling me a liar

Every single word out of ur mouth is some form of a lie - u are a pathetic excuse for a human

Ur don't even know how to spell ur moron

Ur may be the dumbest person I know

Send the letter and I'll call u in 45 minutes

Good i can't wait

Me either

Delivered

Thu, Dec 15 at 1:27 PM

call me

     iMessage