**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:   (608) 630-8990
Facsimile:    (608) 630-8991
Email: mrichman@steinhilberswanson.com

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Telephone:   (702) 685-4444
Facsimile:    (725) 220-4360
Email: ccarlyon@carlyoncica.com
           dcica@carlyoncica.com
           tosteen@carlyoncica.com

*Counsel for Ryan Drexler*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No. BK-22-14422-NMC<br>Chapter 11<br><br>Hearing Date: June 15, 2023<br>Hearing Time: 10:30 a.m. |

### OBJECTION TO DEBTOR'S MOTION TO QUASH SUBPOENA TO VERIZON OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A PROTECTIVE ORDER

Creditor, equity holder, and interested party, Ryan Drexler ("Drexler"), through his Nevada counsel, the law firm of Carlyon Cica Chtd., and co-counsel Steinhilber Swanson LLP, hereby respectfully submits this objection to the *Motion to Quash Subpoena to Verizon or, in the Alternative, for Issuance of a Protective Order* (the "Motion to Quash") [ECF No. 575].

This objection is made and based upon the following points and authorities, as well as Civil Rule[1] 45, made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 9016, the pleadings, papers, and records on file in this case, of which judicial notice is respectfully requested pursuant to Fed. R. Evid. 201, the declaration of Michael P. Richman ("Richman Decl."), submitted concurrently herewith, and any additional evidence and argument entertained by the Court at the time of the hearing on the Motion to Quash.

Respectfully submitted this 12th day of June 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:     (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

---

[1] Unless otherwise indicated, all references to a "Section" or a "Chapter" are to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "Local Rule" references are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada. "Civil Rule" references are to the Federal Rules of Civil Procedure. All references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction**

1. In the past six weeks, four contested matters have come before the Court:

   - On April 28, 2023, Drexler filed a motion seeking the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104 (the "Trustee Motion"). ECF No. 447.
   - On May 12, 2023, MusclePharm Corporation (the "Debtor") filed a motion to approve bidding procedures for an auction of substantially all of the Debtor's assets (the "Bidding Procedures Motion"). ECF No. 497.
   - On May 15, 2023, Empery Tax Efficient, LP ("Empery") filed its motion to enforce an intercreditor and subordination agreement with Drexler (the "ISA Motion"). ECF No. 506.
   - On May 19, 2023, the Debtor filed its motion to approve a plan support agreement with the Official Committee of Unsecured Creditors (the "Committee"), Empery, and White Winston Select Asset Funds (the "PSA Motion"). ECF No. 524.

2. In each of these contested matters, parties in interest have the full panoply of discovery rights. *See* Fed. R. Civ. P. 9014(c) (incorporating, in relevant part, Bankruptcy Rules 7030 and 7034, which incorporate Civil Rules 30 (governing depositions) and 34 (governing the production of documents)). Yet to date, for a variety of reasons, despite numerous efforts within these rules, Drexler has received virtually no discovery. The Motion to Quash is the latest attempt by parties in this case to prevent basic disclosures from coming to light.

3. With the exception of a production of emails (not texts) pertaining to Mr. Nicholas Rubin's service as the Debtor's purported independent director (from which documents were withheld on the basis of privilege, and that after nearly a month have still not been properly identified in a privilege log; *see infra* n.8), Mr. Rubin's May 22 deposition (discovery to which Debtor agreed in connection with the contested Bidding Procedures Motion), and a handful of text messages produced on June 2 by Empery, all discovery sought by Drexler has been heavily resisted by the Debtor, Empery, and other parties working in concert with them (including the Committee and members of the Committee).

4. The collective stonewalling of discovery culminated in Empery's ISA Motion, which seeks literally to silence Drexler, prevent him from taking any discovery or being heard

in opposition to any motions, and to block him from prosecuting the Trustee Motion.

5. In the midst of all this, in the rare instance in which the Debtor and Mr. Rubin agreed to some limited discovery in connection with the contested Bidding Procedures Motion, Drexler's ability to obtain important and material evidence was blocked by Mr. Rubin's admitted deletion of numerous relevant text messages he exchanged with other parties in the case in his official capacity as the Debtor's purported independent director. At his deposition on May 22, Mr. Rubin testified as follows:

> Q: And just – let me make sure I understand. From the time that you started as an independent director until today, any text messages that you receive in relation to your services as independent director were deleted by you; is that correct?
>
> A: That's correct.
>
> ECF No. 540 at 52:5–11.

6. When Drexler's counsel learned that Mr. Rubin destroyed text messages, he requested that Debtor's counsel assist in retrieving the deleted texts from Verizon, Mr. Rubin's phone service carrier. Debtor's counsel provided no assistance. At his deposition, Drexler's counsel asked Mr. Rubin about his efforts to retrieve such messages and he answered with a vague response about making inquiry of Verizon but not receiving a definitive answer.

> Q: And what did Verizon do in response to you contacting them?
>
> A: I contacted them on several occasions, and I was put through to various departments.
>
> Q: Okay. Did they tell you - - did you make a request of them to produce text messages that might have been deleted from your phone?
>
> A: I requested, and I was met with answers that did not lead me to believe that they were going to be able to assist me.
>
> ECF No. 540 at 36:2–12.

7. Consequently, Drexler served a subpoena on Verizon for the deleted text messages on May 25, 2023 with a compliance date of June 9, 2023 (the "Verizon Subpoena"). *See* ECF No. 551. The Debtor waited until June 6, 2023 to file the Motion to Quash, and did

so without a meet-and-confer or making any attempt to narrow the subpoena.[2] The apparent reason for failing to meet-and-confer is that Debtor seeks only to quash the subpoena on the grounds that Empery has complied for them. Both the Debtor and Empery (in a joinder filed today) make an argument based upon an alleged fact that is impossible to establish without access to the deleted texts. *See* ECF Nos. 575 at 6; 584 at 5–8. That incredible argument is that a handful of texts produced by Empery are co-extensive with every text that Rubin deleted. Unless these parties or their counsel had access to the deleted texts, or a log of them, this argument is not believable or supportable and should be rejected.

8. Another reason to doubt the veracity of the Debtor's and Empery's argument is this: if the only thing that discovery of the deleted texts will disclose is that the texts were already produced, why is there any motions practice to try to block it? Had Mr. Rubin authorized Verizon to release the information when Drexler served his subpoena upon Mr. Rubin on May 12, 2023, *see* ECF No. 495, it is likely the text production would have been complete by now. Why all the motions practice if there is nothing to see here?

9. The deleted texts were clearly business records that should have been preserved, particularly where, as here, Mr. Rubin's business judgment has been proffered as virtually the only "evidence" in support of the contested Bidding Procedures Motion and the PSA Motion. Even if they were "personal" texts, the extent to which he exchanged personal texts with representatives of Empery during this case is highly probative of the allegations that his service as an "independent director" is compromised.[3]

---

[2] On June 5, 2023, Drexler filed notices of issuance of three subpoenas on Verizon, AT&T, and T-Mobile USA. ECF Nos. 567–69. Each of those subpoenas had a June 20, 2023, response deadline. Empery's joinder suggests that it will be filing a "forthcoming motion to quash." ECF No. 584 at 2 n.2.

[3] In its joinder, Empery again asserts that it "produced all of Mr. Lane and Mr. Silver's text messages with Mr. Rubin, as well as all of Debtor's other directors." *Id.* at 6 (internal footnote omitted). The Motion to Quash pertains to Mr. Rubin's text messages, not to those that Messrs. Lane or Silver may have exchanged and preserved, and no information is provided whether

10. The limited production of Empery texts also demonstrates that Empery may not have produced "all" the text conversations they had with Mr. Rubin (and others), but rather only those they had preserved. During the May 25 hearing, Empery's counsel represented that Ryan Lane, one of Empery's principals, was required by compliance rules for the Securities and Exchange Commission to preserve all his texts. *See* Hamm Decl., ECF No. 576 at 29, Ex. B (May 25 Hr'g Tr.) ("Every single text message sent to or from Mr. Lane is, by SEC rule, required to be archived.").[4] Based upon that representation, Drexler's counsel stated that the production of Mr. Lane's texts might be sufficient for purposes of the contested ISA Motion. But one of the texts produced (by Timothy Silver, Mr. Lane's colleague) indicates that SEC compliance rules prohibited business discussions by text. There is no information provided whether non-business texts were preserved (which would be highly relevant to the allegations that Mr. Rubin is not independent). Additionally, these texts amplify the importance of getting production of Empery's emails, which so far have not been produced. *See* Richman Decl., Ex. A (text message between Mr. Silver and Eric Hillman in which Mr. Silver states that "[f]or compliance reasons I can't text about material work stuff.").

11. The Court should be as concerned as Drexler that an estate fiduciary destroyed business records and that the Debtor and Empery are trying to block the recovery of such messages. Whether the representation of completeness (even if believable) includes non-business texts is conspicuously not addressed. Absent production of the deleted texts (or a log of texts sent from and received by Mr. Rubin's phone) there is no way for any party to credibly make or support a representation that Empery's texts are coextensive with all the Rubin texts

---

there were text messages they did not preserve. Empery again asks the Court to rely solely on counsel's representations that it produced all text messages.

[4] Empery's counsel was potentially referring to 17 C.F.R. § 240.17a-4(b)(4), which provides only for the retention of "[o]riginals of all communications received and copies of all communications sent (and any approvals thereof) by the member, broker or dealer … *relating to its business*[.]" (emphasis added). The extent to which Empery engaged in non-business communications with Mr. Rubin which it did not preserve, and which would be highly probative on the issue of Mr. Rubin's independence, is not yet known.

that were deleted, or for the Court to accept such a representation as true.[5]

## II.     Argument

**A.     The Court should deny the Motion to Quash based on the Debtor's (and Empery's) failure to meet-and-confer as required by Local Rule 7037(a).**

12. The Debtor's (and Empery's) failure to meet and confer, or attempt to do so, before filing, is a strong basis to deny the Motion to Quash and the joinder. This District's local rules require parties "to meet and confer regarding any discovery dispute before seeking court intervention." Bankr. D. Nev. Local Rule 7013(a). Furthermore, Civil Rule 26 provides that motions for protective orders "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1) (made applicable to contested matters by Fed. R. Bankr. P. 9014(c)).

13. Here, the Debtor merely asked if the Verizon Subpoena would be withdrawn based on the production of a handful of texts by Empery. Richman Decl. Ex. B. That was not a "meet and confer." Nor does the Motion to Quash (which also requests a protective order) include any certification that Debtor has conferred or attempted to confer with Drexler. *See In re Rhodes Companies, LLC*, 475 B.R. 733, 742 (D. Nev. 2012).

**B.     The Requested Discovery is Relevant to the Bidding Procedures Motion and the ISA Motion**

14. The subpoenaed information is within the broad scope of discovery rights to

---

[5] Empery's joinder argues that the Verizon Subpoena, and three issued to Verizon, AT&T, and T-Mobile for Mr. Lane's text messages, violates the Stored Communications Act (the "SCA"). ECF No. 584 at 4–5. Given the timing of Empery's joinder, Drexler's counsel cannot fully address the import of the SCA here. However, Drexler believe that even if the SCA precludes the production of the actual text messages, it would not preclude the production of a log of text messages that might verify the extent to which Mr. Rubin and Empery's principals exchanged text messages. Importantly, the SCA also allows a provider to divulge the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication[.]" 18 U.S.C. § 2702(b)(3). *See also In re Irish Bank Resol. Corp. Ltd. (In Special Liquidation)*, 559 B.R. 627, 549 (Bankr. D. Del. 2016). Thus, Mr. Rubin and the Debtor could have provided such consent when they received Drexler's original subpoena for Mr. Rubin on May 12, 2023. *See* ECF No. 495.

seek information that is likely to lead to the discovery of evidence that Rubin is beholden to Empery and of Empery's breach of section 10 of the ISA through its mistreatment of Drexler's secured claim and its involvement in negotiating and supporting the Plan Term Sheet (ECF No. 478), the Plan Support Agreement (ECF No. 524) and the Proposed plan (ECF No. 553), which actively harm Drexler's junior secured claim (if the ISA is enforceable). *See* Fed R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]") (made applicable to contested matters by Fed. R. Bankr. P. 9014(c)).

15. The Debtor argues that another basis for quashing the Verizon Subpoena is that "Drexler is patently using the [ISA Motion] to engage in discovery on the Trustee Motion" (which the Court has so far stayed). ECF No. 575 at 8. Many of the issues on the contested motions are intertwined. But the primary purposes of seeking the deleted texts at this time are (a) to show that the Debtor's business judgment underlying the Bidding Procedures Motion should be disregarded, and (b) to show for the contested ISA Motion multiple breaches by Empery of its duties and obligations under Section 10 of the ISA.[6]

---

[6] Empery also suggests that Drexler should be precluded from obtaining any party's personal information. ECF No. 584 at 6–8. This objection is a pretext for Empery to smear Drexler and has nothing to do with the Motion to Quash. Drexler is not interested in personal information, except to the extent it is contained in text messages that have been exchanged between Mr. Rubin, Mr. Lane, and other parties in interest in this case. As discussed above, a reasonable screening process could be adopted to assure the protection of legitimate privacy interests. But the real reason Empery appears to be interposing an unnecessary objection to obtaining personal information is to put unsupportable innuendo in the record. Empery thus alleges that "Drexler has antagonized Empery's principals and employees, specifically Mr. Lane and Mr. Silver, both before and after the Petition Date, not only through repeated baseless litigation, but also, it appears, through online harassment and with a campaign of anonymous letters." *Id.* at 6. Drexler has the right to and did file lawsuits against Empery and Mr. Silver. Prior to that, Empery sued Drexler. Litigation antagonizes people. That some people with Empery felt "antagonized" by Drexler's exercise of rights is not a discovery objection. Drexler vigorously denies the other allegations of "online harassment" and engaging in "a campaign of anonymous letters." No evidence has been provided by Empery to support this crass and derogatory accusation.

### C. Drexler Remains Willing to Negotiate a Stipulation for the Entry a Protective Order Allowing a Neutral Third Party to Review and Screen Information

16. The Debtor seeks to quash the Verizon Subpoena on the grounds that the text messages requested would necessarily encompass other irrelevant information, such as Rubin's communications with his family or with other clients on matters unrelated to the case. This is obviously true. There was no practical way for Drexler to explain to Verizon how to screen for relevancy.

17. Therefore, Drexler remains willing to negotiate a stipulation for a protective order allowing the requested text messages to be produced to a third-party neutral to screen for relevancy with a focus on excluding communications between Rubin and his family members, and communications regarding Force 10's engagement in matters *other than* Rubin's engagement as independent director in this case or other dealings with Empery. Any text messages to or from Debtor's counsel may then be furnished to the Debtor to screen for privilege and produce a privilege log under Civil Rule 45(e)(2) in an expeditious fashion so that Drexler can adequately review and challenge the grounds for withholding if necessary, with sufficient time before the Court sets an evidentiary hearing on the ISA Motion.[7] However, the text message detail report containing a list of text message events (without text message content) sought by Request for Production 2 should be produced directly to Drexler since that information will allow Drexler to determine the scope of Empery's June 2, 2023 text message production.[8]

---

[7] Empery makes the same complaint as the Debtor: "Drexler did not limit the subpoenas to communications with Mr. Rubin, but instead sought all communications, including those with counsel, spouses, friends and others." ECF No. 584 at 6. This concern can be resolved as proposed herein.

[8] Despite repeated written requests, at this writing Debtor has still failed (after nearly a month) to produce a privilege log pertaining to documents it withheld from a production of documents made on May 19, 2023, in advance of Mr. Rubin's deposition. Richman Decl. ¶ 4.

### III. Conclusion

18. For those reasons, Drexler respectfully requests that the Court deny the Motion to Quash, enter an order modifying the subpoena or protective order consistent with this Objection, and grant such other relief consistent with this Objection and as the Court deems just and appropriate.

Respectfully submitted this 12th day of June 2023.

**STEINHILBER SWANSON LLP**

/s/ Michael P. Richman
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Cristina Robertson
An employee of Carlyon Cica Chtd.