Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone:  702.385.5544
Facsimile:  702.385.2741

Attorneys for the Debtor

John D. Fiero, Esq. (admitted pro hac vice)
jfiero@pszjlaw.com
Jason H. Rosell, Esq. (admitted pro hac vice)
jrosell@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES, LLC
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone:  415.263.7000

Matthew C. Zirzow, Esq.
Nevada Bar No. 7222
mzirzow@lzlawnv.com
Zachariah Larson, Esq.
Nevada Bar No. 7787
zlarson@lzlawnv.com
LARSON & ZIRZOW LLC
850 East Bonneville Avenue
Las Vegas, NV 89101
Telephone: 702.382.1170

Counsel to the Official
Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 22-14422-nmc |
| | ) | |
| MUSCLEPHARM CORPORATION, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**FIRST AMENDED PLAN OF REORGANIZATION FOR MUSCLEPHARM CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED JUNE 19, 2023**

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ....................................................................................................... 1
    A.    Rules of Interpretation, Computation of Time and Governing Law ................................... 1
    B.    Defined Terms ..................................................................................................................... 1

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ...................................................... 9
    A.    Administrative Claims ......................................................................................................... 9
    B.    Priority Tax Claims ............................................................................................................ 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ............................................................................................................................ 11
    A.    Summary ............................................................................................................................. 11
    B.    Classification and Treatment of Claims and Equity Interests ........................................... 11
    C.    Discharge of Claims ........................................................................................................... 14

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................................ 15
    A.    Presumed Acceptance of Plan ............................................................................................ 15
    B.    Presumed Non-Acceptance of Plan .................................................................................... 15
    C.    Voting Classes .................................................................................................................... 15
    D.    Acceptance by Impaired Classes of Claims ....................................................................... 15
    E.    Cramdown ........................................................................................................................... 15
    F.    Elimination of Vacant Classes ........................................................................................... 15

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................... 15
    A.    General Settlement of Claims and Interests........................................................................ 15
    B.    Restructuring Transactions .................................................................................................. 16
    C.    New Corporate Existence .................................................................................................... 16
    D.    Vesting of Assets in the Litigation Trust ........................................................................... 16
    E.    Vesting of Assets in the Reorganized Debtor ..................................................................... 17
    F.    Securities Registration Exemption ..................................................................................... 17
    G.    Issuance and Distribution of New Equity Interests ............................................................ 17
    H.    Certificate of Incorporation and Bylaws ............................................................................ 17
    I.    Effectuating Documents, Further Transactions, Exemption from Certain Transfer Taxes ............ 17
    J.    Preservation of Public Entity Status ................................................................................... 18
    K.    Preservation of Tax Attributes ........................................................................................... 18

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 20
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....................... 20
    B.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ........... 21
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..................... 21

ARTICLE VII. ............................................................................................................................................. 22
    A.    Releases .............................................................................................................................. 22

ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 26
    A.    Distributions for Claims Allowed as of the Effective Date ................................................ 26
    B.    Distributions on Account of Claims Allowed After the Effective Date .............................. 26
    C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions ...................... 26
    D.    Compliance with Tax Requirements/Allocations ............................................................... 27
    E.    Timing and Calculation of Amounts to Be Distributed ..................................................... 27
    F.    Setoffs ................................................................................................................................. 27

ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ................................................................................................................. 28
    A.    Resolution of Disputed Claims ................................................................................ 28
    B.    Disallowance of Claims .......................................................................................... 29
    C.    Amendments to Claims ........................................................................................... 29

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ...................................................................................................................... 29
    A.    Conditions Precedent to Confirmation .................................................................... 29
    B.    Conditions Precedent to Consummation on the Effective Date ................................ 29
    C.    Waiver of Conditions ............................................................................................. 30
    D.    Effect of Non-Occurrence of Conditions to Consummation ..................................... 30

ARTICLE XI. ......................................................................................................................... 30
    A.    Compromise and Settlement ................................................................................... 30
    B.    Preservation of Rights of Action ............................................................................ 30

ARTICLE XII. BINDING NATURE OF PLAN ....................................................................... 31

ARTICLE XIII. RETENTION OF JURISDICTION .................................................................. 32

ARTICLE XIV. MISCELLANEOUS PROVISIONS ................................................................ 33
    A.    Payment of Statutory Fees ...................................................................................... 33
    B.    Modification of Plan .............................................................................................. 33
    C.    Revocation of Plan ................................................................................................. 33
    D.    Successors and Assigns .......................................................................................... 33
    E.    Reservation of Rights ............................................................................................. 33
    F.    Section 1146 Exemption ......................................................................................... 33
    G.    Further Assurances ................................................................................................ 34
    H.    Severability ........................................................................................................... 34
    I.    Service of Documents ............................................................................................. 34
    J.    Return of Security Deposits .................................................................................... 35
    K.    Filing of Additional Documents ............................................................................. 35
    L.    Default .................................................................................................................. 35

**FIRST AMENDED PLAN OF REORGANIZATION OF MUSCLEPHARM CORPORATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED JUNE 19, 2023**

MusclePharm Corporation (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, filed its petition for relief under Chapter 11 of the Bankruptcy Code on December 15, 2022. This Plan of Reorganization (as amended, supplemented, or modified, the "**Plan**") is proposed by the Plan Proponents, for the resolution of Claims against the Debtor pursuant to chapter 11 of the Bankruptcy Code.

The Plan sets forth a proposal for the resolution of all Claims against the Debtor and the Estate pursuant to the terms of this Plan.

PLEASE REFER TO THE SEPARATE DISCLOSURE STATEMENT FOR INFORMATION REGARDING THIS PLAN. THE DEBTOR ENCOURAGES ALL HOLDERS OF CLAIMS AND/OR INTERESTS THAT ARE OTHERWISE ELIGIBLE TO VOTE ON THIS PLAN TO READ <u>BOTH</u> THE DISCLOSURE STATEMENT AND PLAN <u>IN THEIR ENTIRETY</u> BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. QUESTIONS REGARDING YOUR RIGHTS SHOULD BE DIRECTED TO YOUR OWN COUNSEL. NO OTHER MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND THE VARIOUS EXHIBITS AND SCHEDULES ATTACHED TO OR INCORPORATED BY THE DISCLOSURE STATEMENT AND THE VARIOUS EXHIBITS AND SCHEDULES ATTACHED TO OR INCORPORATED THEREIN HAVE BEEN APPROVED FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.

# ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME,
## GOVERNING LAW AND DEFINED TERMS

*A.*      *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

*B.*      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and

allowable under sections 327, 328, 330(a), 331, or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.

2.      *"Administrative Claim"* means any Claim for costs and expenses of administration of the Estate and the Chapter 11 Case under sections 327, 328, 330, 331, 1103, 503(b), 507(a), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code (the Judicial Code), 28 U.S.C. §§ 1911-1930.

3.      *"Administrative Claim Bar Date"* means the end of the first Business Day occurring on or after the thirtieth (30th) calendar day after the Effective Date.

4.      *"Affiliate"* has the meaning set forth at section 101(2) of the Bankruptcy Code.

5.      *"Allowed"* means, with respect to Claims or Equity Interests: (a) any Claim or Equity Interest, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not Disputed (or disputed within the meaning of Section 1111(a) of the Bankruptcy Code), and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor, the Reorganized Debtor, or the Litigation Trustee and without any further notice to or action, order or approval of the Bankruptcy Court.

6.      *"Allowed Administrative Claim"* means an Administrative Claim as to which no objection has been filed or, if any objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

7.      *"Allowed Professional Compensation"* means all Accrued Professional Compensation Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

8.      *"Assets"* means all of the Debtor's right, title and interest of any nature in property, interests, assets, and/or effects, real and personal, tangible and intangible, wherever located or situated, as specified in section 541 of the Bankruptcy Code, including, without limitation, Causes of Action, and (for avoidance of doubt) the Avoidance Actions, provided, however, the Excluded Assets shall be specifically excluded from the Assets sold to the Purchaser at the Sale.

9.      *"Avoidance Actions"* means any and all claims and causes of action which any of the Debtor, the debtor in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 543, 544, 545, 547 through 553, or 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, regardless of whether or not such action has been commenced on the Effective Date.

10.     *"Ballot"* means the form of ballot or ballots accompanying, and distributed with, the Disclosure Statement approved by the Bankruptcy Court upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things,

indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

11.      *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, Title 11 United States Code, 11 U.S.C. §§ 101-1532 (as now in effect or hereafter amended), as applicable to the Chapter 11 Case.

12.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of Title 28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

13.      *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure (collectively), as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

14.      *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) and specifically excludes any other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the State of Nevada.

15.      *"Cash"* means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and other similar items.

16.      *"Causes of Action"* means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Case, including through the Effective Date.

17.      *"Chapter 11 Case"* means the chapter 11 case pending before the Bankruptcy Court for the captioned Debtor under chapter 11 of the Bankruptcy Code.

18.      *"Claim"* means any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

19.      *"Claims Bar Date"* means, as applicable, (a) <u>April 19, 2023</u>, as the general claims bar date and (b) the Governmental Bar Date of <u>June 13, 2023</u>, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claim(s).

20.      *"Claims Objection Bar Date"* means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided, however,* that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 5.

21.      *"Claims Register"* means the official register of Claims maintained by the Bankruptcy Court.

22.      *"Class"* means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

23.      *"Closing Date"* means the date of the closing of the Sale of the Debtor's Assets.

24.      *"Commencement Date"* means the date on which Debtor commenced the captioned Chapter 11 Case by Filing a voluntary petition for relief under Section 301 of the Bankruptcy Code, <u>December 15, 2022</u>.

25.      *"Committee"* means the Official Committee of Unsecured Creditors for MusclePharm Corporation.

26.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

27.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

28.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

29.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "*Consummation*" means the occurrence of the Effective Date.

31.     "*Creditor*" means a Holder of a Claim.

32.     "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

33.     "*Debtor*" means MusclePharm Corporation, a Nevada corporation, in its individual capacity as debtor in the Chapter 11 Case.

34.     "*Debtor in Possession*" means the Debtor, as debtor in possession in this Chapter 11 Case.

35.     "*DIP Factoring Purchase Agreement*" means that certain Debtor-in-Possession Factoring Purchase Agreement entered into by and between the Debtor and Empery in connection with the DIP Financing.

36.     "*DIP Financing*" means the post-petition financing between the Debtor, as borrower, and Empery, as lender, which authorizes the Debtor to: (i) borrow up to $4,500,000 from Empery, (ii) factor receivables up to $10,000,000 from Empery, and (iii) obtain an inventory acquisition line from JW Nutritional, LLC up to $1,000,000.

37.     "*DIP Loan Documents*" means the DIP Notes Purchase Agreement and the DIP Factoring Purchase Agreement, each of which are attached to the Final DIP Order [ECF No. 296, pp. 34-156].

38.     "*DIP Notes Purchase Agreement*" means that certain Debtor-in-Possession Notes Purchase and Security Agreement entered into by and between the Debtor and Empery in connection with the DIP Financing.

39.     "*DIP Obligations*" means all amounts due and owing to Empery under the DIP Loan Documents and as authorized by the Final DIP Order.

40.     "*Disclosure Statement*" means the *First Amended Disclosure Statement for the Plan of Reorganization of MusclePharm Corporation Under Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, which is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

41.     "*Disclosure Statement Motion*" means that certain *Motion for Order (i) Approving The Disclosure Statement; (ii) Approving The Form Of Ballots And Proposed Solicitation And Tabulation Procedures; (iii) Fixing The Voting Deadline With Respect To The Debtor's Chapter 11 Plan; (iv) Prescribing The Form And Manner Of Notice Thereof; (v) Fixing The Last Date For Filing Objections To The Chapter 11 Plan; (vi) Scheduling A Hearing To Consider Confirmation Of The Chapter 11 Plan; and (vii) Schwartz Law, PLLC as Solicitation and Tabulation Agent,* filed with the Bankruptcy Court on May 26, 2023, as the Motion may be amended from time to time.

42.        "*Disclosure Statement Order*" means that certain *Order (i) Approving The Disclosure Statement; (ii) Approving The Form Of Ballots And Proposed Solicitation And Tabulation Procedures; (iii) Fixing The Voting Deadline With Respect To The Debtor's Chapter 11 Plan; (iv) Prescribing The Form And Manner Of Notice Thereof; (v) Fixing The Last Date For Filing Objections To The Chapter 11 Plan; (vi) Scheduling A Hearing To Consider Confirmation Of The Chapter 11 Plan; and (vii) Appointing The Schwartz Law Firm, Inc. As Solicitation And Tabulation Agent,* approved by the Bankruptcy Court on [INSERT DATE], as the order may be amended from time to time.

43.        "*Disputed Claim*" means, with respect to any Claim or Equity Interests, any Claim or Equity Interests listed on (a) the Claims Register that is the subject of an objection to claim filed with the Bankruptcy Court, or (b) Scheduled as Disputed for which claim a proof of claim was filed.

44.        "*Distribution Agent*" means the Debtor, the Reorganized Debtor, or the Litigation Trustee.

45.        "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

46.        "*Drexler*" means Ryan Drexler, an individual, and the Debtor's former Chief Executive Officer and former Chairman of the Board of Directors.

47.        "*Drexler Prepetition Secured Claim*" means the prepetition secured claim of Drexler against the Debtor's Estate, which is based on and subject to that certain Drexler Intercreditor Agreement.

48.        "*Drexler Intercreditor Agreement*" means that certain Intercreditor Agreement dated October 13, 2021, by and between Empery, the Debtor and Drexler which, among other things, established the lien priority against the Debtor's assets between Drexler and Empery.

49.        "*Effective Date*" or "*Plan Effective Date*" means the day that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.B hereof have been: (i) satisfied; or (ii) waived pursuant to Article IX.C hereof.

50.        "*Effective Date Deadline*" means August 31, 2023, unless extended pursuant to the terms of the Plan Support Agreement.

51.        "*Empery*" means Empery Tax Efficient, LP, in its capacity as collateral agent for certain Secured Noteholders (as defined in the Empery Proof of Claim).

52.        "*Empery Parties*" means MP Collateral LLC, as successor to the claims of: (i) the Secured Noteholders (as defined in the Empery Proof of Claim); and (ii) Prestige Capital Finance, LLC, and Empery Tax Efficient, LP, in its capacity as MP Collateral's Financing Agent and as Collateral Agent.

53.        "*Empery Prepetition Secured Claim*" means the amount of $18,066,579.01 as set forth on the Empery Proof of Claim.

54.        "*Empery Proof of Claim*" means that certain proof of claim filed by MP Collateral and denominated on the Bankruptcy Court's official claim register as Proof of Claim No. 59 in the amount of $18,066,579.01.

55.        "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

56.        "*Equity Interest*" means any: (a) equity security in the Debtor as defined in Section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of stock, or membership interests in Debtor, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in the Debtor.

57.    "*Estate*" means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

58.    "*Exchange Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

59.    "*Excluded Assets*" means each of the following: (i) the Excluded IP; (ii) the Causes of Action; and (iii) the White Winston D&O Claims.

60.    "*Excluded IP*" means the intellectual property for Coco Protein™ which will remain property of the Estate. The Estate, however, shall provide the Purchaser with an exclusive one-year license of the Excluded IP.

61.    "*Exculpated Parties*" means, collectively, and in the Chapter 11 Case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the Committee; (c) the Empery Parties; (d) the White Winston Parties; and (e) the Retained Professionals; and (f) with respect to each of the foregoing Entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), and such Entity's and its current and former equity holders, officers, directors, managers, principals, members, managing members, employees, agents, advisory board members, subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, consultants, financial advisors, accountants, investment bankers, consultants, representatives, and attorneys (again, each in their capacity as such).

62.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code. A list of the Debtor's Executory Contracts is included in Schedule G of Debtor's Schedules (ECF Nos. 78 and 116, as applicable).

63.    "*Fee Claim*" means a Claim under sections 327, 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

64.    "*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

65.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, re-argument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, re-argument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

66.    "*Final DIP Order*" means that certain order approving the DIP Financing on a final basis entered by the Bankruptcy Court on March 8, 2023 [ECF No. 296], which authorized the Debtor to: (i) borrow up to $4,500,000 from Empery, (ii) factor receivables up to $10,000,000 from Empery, and (iii) obtain an inventory acquisition line from Empery of up to $1,000,000.

67.    "*General Unsecured Claim*" means a claim against the Debtor that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) Priority Non-Tax Claim, (iv) Fee Claim, (v) Secured Claim or (vi) Warehouse Claim.

68.    "*Governmental Bar Date*" means June 13, 2023, or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claim(s) by governmental units encompassed by Section 101(27 of the Bankruptcy Code.

69.    "*Holder*" means an Entity holding a Claim or an Equity Interest.

70. "*Impaired*" means any Claims in an Impaired Class.

71. "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

72. "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

73. "*Insider*" shall have the meaning ascribed to it under Section 101(31) of the Bankruptcy Code.

74. "*Litigation Trust*" means that certain grantor trust created for the benefits of holders of Class 5 Claims and as further described in Article V(E) of this Plan

75. "*MP Collateral*" means MP Collateral LLC, as successor to the claims of: (i) the Secured Noteholders (as defined in the Empery Proof of Claim); and (ii) Prestige Capital Finance, LLC.

76. "*Net Sale Proceeds*" means the cash proceeds from the Sale *less* any fees and expenses related to such Sale, *less* the DIP Obligation Payoff, and *less* the Wind-down Budget.

77. "*New Equity Interests*" means the equity in Reorganized Debtor to be authorized, issued or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect equity of the Reorganized Debtor.

78. "*Official Actions*" means actions taken by the Exculpated Parties in their official capacities in the Chapter 11 Case after the Commencement Date through the Confirmation Date.

79. "*Other Secured Claims*" means all other Secured Claims against the Debtor, other than the Empery Prepetition Secured Claim, the Prestige Prepetition Secured Claim, and the Drexler Prepetition Secured Claim.

80. "*Periodic Distribution Date*" means, the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 days after the Initial Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than 180 days after the immediately preceding Periodic Distribution Date.

81. "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

82. "*Plan*" means this *First Amended Plan of Reorganization of MusclePharm Corporation Under Chapter 11 of the Bankruptcy Code Dated June 19, 2023*, as amended, supplemented, or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

83. "*Plan Administrator*" means the Litigation Trustee or such other Person appointed pursuant to the confirmed Plan and the Bankruptcy Court's order confirming the Plan to administer payments to Holders of Allowed Class 5 General Unsecured Claims.

84. "*Plan Proponents*" means the Debtor and the Committee.

85. "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.  The Plan Supplement shall be filed by the Debtor on a date that is fourteen (14) calendar days prior to the Confirmation Hearing.

86. "*Plan Support Agreement*" means that certain Plan Support Agreement dated May 18, 2023, by and between the Debtor, the Committee, the Empery Parties and the White Winston Parties.

87.    "*Prestige*" means Prestige Capital Finance, LLC.

88.    "*Prestige Prepetition Secured Claim*" means the amount of $2,737,003.11 and denominated on the Bankruptcy Court's official claim register as Proof of Claim No. 14.

89.    "*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

90.    "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

91.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

92.    "*Proof of Interest*" means proof of Equity Interest filed against the Debtor in the Chapter 11 Case.

93.    "*Pro Rata*" means the proportion that an Allowed Claim or Equity Interest in a particular Class bears to the aggregate amount of Allowed Claims or Equity Interests in that Class, or the proportion that Allowed Claims or Equity Interests in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Equity Interest under the Plan.

94.    "*Purchaser*" means the ultimate purchaser of the Debtor's Assets (less the Excluded Assets) at the Sale.

95.    "*Record Date*" means the close of business on June 13, 2023.

96.    "*Released Parties*" means Debtor, the Committee, the Empery Parties, and the White Winston Parties

97.    "*Releasing Parties*" means Debtor, the Committee, the Empery Parties, and the White Winston Parties.

98.    "*Reorganized Debtor*" means the Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

99.    "*Restructuring Transaction*" means any of those restructuring transactions and alternatives set forth in Article V.

100.    "*Retained Professional*" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; or (c) retained pursuant to Section 363(b) of the Bankruptcy Code and to be compensated for services rendered in accordance with compensated in accordance with Sections 330 and 331 of the Bankruptcy Code.

101.    "*Roll-Up*" means that certain roll-up of the prepetition Empery Loans on a dollar for dollar basis of the amounts loaned to the Debtor under the DIP Financing and the DIP Notes Purchase Agreement, up to a total roll-up of $4,500,000.

102.    "*Sale*" means the sale of certain of the Estate's Assets (except for the Excluded Assets, which shall not be sold) pursuant to section 363 of the Bankruptcy Code in accordance with the terms of the Plan and the Bidding Procedures.

103.    "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the

Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

104.    *"Securities Act"* means the United States Securities Act of 1933, as amended.

105.    "*SL*" means Schwartz Law, PLLC.

106.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.  A list of the Debtor's Unexpired Leases appears on Schedule G of the Schedules (*See* ECF Nos. 78 and 116).

107.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

108.    "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

109.    "*Voting Classes*" means, Classes 1, 3, 4, 5 and 6.

110.    *"Voting Deadline"* means [INSERT DATE] at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtor in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

111.    "*WW Adversary Proceeding*" means that certain Adversary Case No. 23-01014, entitled *White Winston Select Asset Funds, LLC v. Empery Tax Efficient, LP, et al.*

112.    "*WW Settlement Agreement*" means that certain settlement agreement dated December 5, 2022, by and between the Debtor and White Winston.

113.    "*White Winston*" means White Winston Select Asset Funds, LLC.

114.    "*White Winston D&O Claims*" means the Estate's causes of action (and associated rights to director and officer insurance) against directors and officers for breaches of their fiduciary duties of loyalty, care, and good faith that arose on or before December 31, 2018.

115.    "*White Winston Parties*" means White Winston Select Asset Funds, LLC and White Winston Select Asset Fund Series Fund MP-18, LLC.

116.    "*Wind-down Budget*" means that certain budget mutually agreed to between the Debtor, the Committee and Empery regarding the amount of cash required to fund the Estate through the Plan Effective Date, inclusive of amounts necessary to pay unclassified claims and Class 2 Claims.

## ARTICLE II.

### ADMINISTRATIVE AND PRIORITY TAX CLAIMS

*A.    Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by the Debtor or the Reorganized Debtor, the Plan Administrator or the Litigation Trustee, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business

during the Chapter 11 Case, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and Holders of Claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

Quarterly fees payable to the Office of the United States Trustee do not require allowance under section 503 and shall not be subject to the Administrative Expense Claim Bar Date.

1.  Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than forty-five (45) days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or the Estate and property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtor and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

2.  Professional Compensation and Reimbursement Claims

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtor or the Litigation Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; *provided* that the Debtor, the Reorganized Debtor or the Litigation Trustee, as applicable, shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed for the Debtor, Reorganized Debtor, or Litigation Trustee, as applicable, after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Debtor and the requesting party by fourteen (14) days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims. Each Holder of an Allowed Fee Claim shall be paid by the Debtor or the Litigation Trustee, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Fee Claim.

B.  *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor or the Litigation Trustee, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Commencement Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtor or the Litigation Trustee, and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

*A.      Summary*

1.    This Plan constitutes Debtor's chapter 11 plan of reorganization.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtor are placed in Classes.  Class 8 consists of Equity Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II above.

2.    The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.    The Allowed Claims and Interests will be paid or satisfied as set forth in Article V.

4.    Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Drexler Prepetition Secured Claim | Impaired | Entitled to Vote |
| 2 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| 3 | Empery Prepetition Secured Claim | Impaired | Entitled to Vote |
| 4 | Prestige Prepetition Secured Claim | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | White Winston Claims | Impaired | Entitled to Vote |
| 7 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| 8 | Equity Interests | Impaired | Deemed to Reject |

*B.      Classification and Treatment of Claims and Equity Interests*

1.    Class 1 – Drexler Prepetition Secured Claim

(a)      *Classification:* Class 1 consists of the Drexler Prepetition Secured Claim against the Debtor.

(b)      *Treatment:*  On or as soon as practicable following the Plan Effective Date, the holder of the allowed Drexler Prepetition Secured Claim will be paid in cash the value of its collateral, unless otherwise agreed by such holder, and subject to any subordination agreements enforceable pursuant to section 510(a) of the Bankruptcy Code.

For the avoidance of doubt, the holder of the Drexler Prepetition Secured Claim shall receive, in accordance with the Drexler Intercreditor Agreement and the Prestige Intercreditor Agreement, the proceeds of the Net Sale Proceeds after payment in full of the Allowed Empery Secured Claim and the Allowed Prestige Secured Claim.

        (c)     *Voting:* Class 1 is an Impaired Class, and the Holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Priority Non-Tax Claims</u>

        (a)     *Classification:* Class 2 consists of Holders of Priority Non-Tax Claims.

        (b)     *Treatment:* On or as soon as practicable following the Plan Effective Date, each holder of an allowed Priority Non-Tax Claim will be paid in full in cash or otherwise left unimpaired, unless otherwise agreed to by such holder.

        (c)     *Voting:* Class 2 is an Unimpaired Class, and each Holder of a Class 2 Claim is not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – Empery Prepetition Secured Claim</u>

        (a)     *Classification*: Class 3 consists of the Empery Prepetition Secured Claim.

        (b)     *Treatment:* Empery shall compromise and settle with the Estate and have an allowed secured claim in the amount of $18 million (the "**Allowed Empery Secured Claim**"), which represents principal and accrued interest and fees through the Petition Date and excludes the Roll-Up.

              On or as soon as practicable following the Plan Effective Date, holders of the Allowed Empery Secured Claim shall receive their *pro rata share* of the Net Sale Proceeds, not to exceed $12.0 million *less* the Roll-Up and *less* the amount of Empery's credit bid (the "**Empery Payoff Amount**").

              Empery shall assign to the Litigation Trust, for the benefit of holders of Allowed Class 5 Claims, the economic interest in the difference between the Allowed Empery Secured Claim and the Empery Payoff Amount (the "**Empery Assigned Claim**"), including, for the avoidance of doubt, any monetary recovery on such Empery Assigned Claim.

              To the extent the Net Sale Proceeds (including the amount, if any, of Empery's credit bid) are insufficient to satisfy the Empery Payoff Amount in full, holders of Allowed Empery Secured Claims shall forego any further recovery.

              To the extent the Plan does not go effective by Effective Date Deadline, the Debtor and the Committee may extend the Effective Date Deadline by up to thirty (30) calendar days, without the consent of Empery on the condition precedent that the Empery Payoff Amount is paid in full from the Net Sale Proceeds on or before August 31, 2023; *provided*, *however*, to the extent Empery is the successful Purchaser pursuant to a credit bid and the Closing Date has occurred, the Effective Date Deadline may be extended, if necessary, to a date mutually agreed to by the Debtor, the Committee, and Empery.

        (c)     *Voting:* Class 3 is an Impaired Class, and each Holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – Prestige Prepetition Secured Claim</u>

        (a)     *Classification*: Class 4 consists of the Prestige Prepetition Secured Claim.

        (b)     *Treatment*: MP Collateral, as successor in interest to Prestige, shall have an allowed secured claim in the amount of $2,500,000 (the "**Allowed Prestige Secured Claim**"), which represents principal and accrued interest and fees through the Petition Date. The Allowed Prestige Secured Claim shall be subject to reduction from the proceeds of

collections on its prepetition collateral. As of May 18, 2023, the net reductions are $731,777.

On or as soon as practicable following the Plan Effective Date, holders of the Allowed Prestige Secured Claim shall receive (a) the return of the pre-petition accounts receivable collateral securing such Allowed Prestige Secured Claim, (b) cash proceeds of the prepetition accounts receivable collateral securing such Allowed Prestige Secured Claim, and (c) cash from the Net Sale Proceeds (if any such cash proceeds remain after paying the Allowed Empery Secured Claim in full). For the avoidance of doubt, the Allowed Prestige Secured Claim shall be subordinate in right to payment of the Empery Assigned Claim, except with respect to prepetition accounts receivable and cash proceeds therefrom.

Holders of the Allowed Prestige Secured Claim shall retain all rights and causes of action against third parties, including but not limited to the guarantees provided by Drexler.

(c)     *Voting*: Class 4 is an Impaired Class, and each Holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

5.     Class 5 – General Unsecured Claims

(a)     *Classification*: Class 5 consists of all General Unsecured Claims against the Debtor.

(b)     *Treatment*: Class 5 shall consist of all allowed non-priority general unsecured claims. None of the Empery Parties, any defendants in the WW Adversary Proceeding or White Winston Parties (nor any of their affiliates or any of the individual noteholders) shall have a Class 5 Claim.

The Litigation Trust reserves all rights, claims, and defenses with respect to Class 5 Claims, including all rights to seek subordination of such claims pursuant to section 510 of the Bankruptcy Code and to enforce any applicable subordination agreements pursuant to section 510(a) of the Bankruptcy Code.

Each holder of an Allowed General Unsecured Claim shall receive its *pro rata* share of a beneficial interest in the Litigation Trust.

(c)     *Voting*: Class 5 is an Impaired Class, and each Holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

6.     Class 6 – White Winston Claims

(a)     *Classification*: Class 6 consists of all claims of White Winston (if any) against the Debtor, including all claims arising from that certain *Settlement Agreement and Release* dated December 5, 2022 (the "**WW Settlement Agreement**"), by and between White Winston, the Debtor and Drexler (collectively, the "**White Winston Claims**"). All White Winston claims against the Debtor shall be treated as set forth in this Class 6.

(b)     *Treatment*: Subject to the occurrence of the Plan Effective Date (or, if both the Effective Date has not occurred and the Empery Payoff Amount is paid in full from the Net Sale Proceeds on or before August 31, 2023, upon entry of the Confirmation Order) the WW Settlement Agreement shall be deemed an executory contract that the Debtor shall reject under the Plan pursuant to section 365 of the Bankruptcy Code.

White Winston shall have an allowed unsecured claim of $8,630,261.00. The allowed unsecured claim shall be treated as follows:

a. 100% (or such other amount as White Winston in its sole discretion determines) of the New Equity Interests or, at White Winston's election, the prepetition equity interests in the Reorganized Debtor shall be issued to White Winston in full and final satisfaction of the claim in the amount of $4,630,261.00. The rights and powers of holders of New Equity Interests shall be as set forth in the Plan or in related documents by White Winston. It is the intention of the parties that the rights and powers of holders of New Equity Interests be determined by White Winston in connection with the "change of ownership" rules of section 382 of the IRS Tax Code, including the exceptions to the ordinary "change of ownership" rules found in sections 382(l)(v) and (vi) of the IRS Tax Code. All provisions of the Plan shall operate to effectuate this intention unless otherwise agreed to by White Winston.

b. The remaining $4,000,000 of the claim (the "**White Winston Retained Claim**") shall not be discharged and shall remain as a liability of the post-confirmation Reorganized Debtor. For the avoidance of doubt, White Winston shall not have a claim against the Litigation Trust.

(c) *Voting*: Class 6 is an Impaired Class, and each Holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

7. Class 7 – Other Secured Claims

(a) *Classification:* Class 7 consists of the Other Secured Claims against the Debtor, other than the Drexler Prepetition Secured Claim, the Empery Prepetition Secured Claim and the Prestige Prepetition Secured Claim.

(b) *Treatment:* On or as soon as practicable following the Plan Effective Date, each holder of an allowed Other Secured Claim will be paid in full in cash or otherwise realize the value of its collateral, unless otherwise agreed by such holder, and subject to any subordination agreements enforceable pursuant to section 510(a) of the Bankruptcy Code. Class 7 will include separate sub-classes for each applicable secured creditor.

(c) *Voting:* Class 7 is an Unimpaired Class, and the Holder of the Class 7 Claim is not entitled to vote to accept or reject the Plan.

8. Class 8 – Equity Interests

(a) *Classification*: Class 8 consists of the Equity Interests of the Debtor.

(b) *Treatment*: Subject to the treatment of the Class 6 Claims, all existing Equity Interests in the Debtor shall be cancelled and holders of such Equity Interests shall neither receive nor retain anything on account of their existing Equity Interests.

(c) *Voting*: Class 8 is Impaired under this Plan. The Holders of Class 8 Equity Interests are not entitled to vote on this Plan and are deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code.

C. *Discharge of Claims*

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation. Upon Confirmation, the Debtor and all property dealt with herein, including the Assets, shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances, except as provided in the Plan.

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

*A.    Presumed Acceptance of Plan*

Classes 2 and 7 are unimpaired classes of claims, therefore, Classes 2 and 7 are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

*B.    Presumed Non-Acceptance of Plan*

Class 8 is Impaired under the Plan and is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

*C.    Voting Classes*

Each Holder of an Allowed Claim as of the Record Date in each of the Voting Classes (Classes 1, 3, 4, 5, and 6) shall be entitled to vote to accept or reject the Plan.

*D.    Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

*E.    Cramdown*

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan in accordance with Article XIII.B hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

*F.    Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by a Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.    General Settlement of Claims and Interests*

As discussed in detail in Section III(E) of the Disclosure Statement and as described in Article V, Section B pursuant to sections 1123 and 1124 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, and other benefits provided under the Plan, and as a result of arms' length negotiations among the Debtor and its creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  Solely to the extent otherwise necessary, Confirmation of the Plan also cures defaults under all prepetition contracts paid or maintained pursuant to this Plan, in accordance with section 1124 of the Bankruptcy Code.

*B.      Restructuring Transactions*

Prior to, on or after the Effective Date, and pursuant to the Plan, the Debtor, the Reorganized Debtor and the Litigation Trust may enter into the restructuring transactions that are not inconsistent with the Plan Support Agreement (each, a "**Restructuring Transaction**"), and may take any actions as may be necessary or appropriate to affect a restructuring of its business or the overall organizational structure of the Reorganized Debtor. The Restructuring Transactions, provided they are not inconsistent with the Plan Support Agreement may include one or more sales, mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the Debtor or the Reorganized Debtor to be necessary or appropriate.  As of the date hereof, the actions to effect the Restructuring Transaction may include:

- the execution and delivery of appropriate instruments of sale, transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;
- the filing of appropriate certificates or articles of formation, reformation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and
- all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions and the Plan.

The documents and agreements necessary to finalize the Debtor's ultimate Restructuring Transaction shall be set forth in the Plan Supplement.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

*C.      New Corporate Existence*

The Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company or limited partnership, with all the powers of a corporation, limited liability company or limited partnership pursuant to laws of the State of Nevada and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

*D.      Vesting of Assets in the Litigation Trust*

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, the Litigation Trust shall be created.  A litigation trustee (the "**Litigation Trustee**") shall be appointed in the sole discretion of the Committee, and the Litigation Trust shall be governed by a three (3) member oversight committee, which members shall be appointed in the sole discretion of the Committee.

On the Plan Effective Date, the Litigation Trust shall be vested with all assets of the Debtor not sold to the Purchaser, nor paid to MP Collateral, and not transferred to, or vested in, the Reorganized Debtor. The assets transferred to the Litigation Trust shall include all unsold claims, causes of action, and interests of the Debtor, including all rights, claims, and causes of action relating to insurance policies, other than the White Winston D&O Claims.

After the Plan Effective Date, the Reorganized Debtor shall pay the Litigation Trust an amount equal to thirty percent (30%) of the Net Collected Proceeds (defined below) of the White Winston D&O Claims.  "**Net Collected Proceeds**" means the gross collected proceeds actually collected by the Reorganized Debtor on account of the White Winston D&O Claims less any fees and expenses incurred by the Reorganized Debtor to recover such proceeds.

On the Plan Effective Date, the Litigation Trust shall receive all cash held by the estate, including the Net Sale Proceeds *less* the Empery Payoff Amount *less* amounts due to Holders of Class 4 Claims pursuant to the Plan (the "**Litigation Trust Cash Balance**"). For the avoidance of doubt, any remaining funds in the Wind-Down Budget shall vest in the Litigation Trust. To the extent the Litigation Trust Cash Balance is *less than* $500,000 on a net basis after deducting anticipated accrued and unpaid administrative and priority claims (including professional fees), Empery shall fund the difference to the Litigation Trust (the "**Empery Litigation Trust Loan**"). The Empery Litigation Trust Loan shall be repaid from the proceeds of the Litigation Trust Assets ahead of any distributions to holders of Allowed Class 5 Claims. For the avoidance of doubt, Empery's obligation to fund the Empery Litigation Trust Loan shall be a binding obligation upon the Closing Date (*i.e.*, the closing of the Sale) and such amounts shall be paid to the Litigation Trust on the Plan Effective Date, even if such Effective Date Deadline is extended beyond August 31, 2023 as provided in the Plan.

E.    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise agreed to by White Winston or as provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, the Excluded IP and the White Winston D&O Claims shall vest in the Reorganized Debtor.

F.    *Securities Registration Exemption*

The New Equity Interests to be issued hereunder and pursuant to the Plan Support Agreement will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

G.    *Issuance and Distribution of New Equity Interests*

To the extent applicable after the Sale, on or immediately after the Effective Date, all New Equity Interests in the Reorganized Debtor shall be issued as set forth herein and in the Plan Support Agreement.

All of the New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Article VII hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

H.    *Certificate of Incorporation and Bylaws*

The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies and limited partnerships) of the Debtor shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Reorganized Debtor. On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file a new certificate of incorporation or organization with the secretary of state (or equivalent state officer or entity), which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities. After the Effective Date, the Reorganized Debtor may file a new, or amend and restate its existing, certificate of incorporation, charter and other constituent documents as permitted by the relevant state corporate law.

I.    *Effectuating Documents, Further Transactions, Exemption from Certain Transfer Taxes*

The Debtor and the Reorganized Debtor, as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto. The secretary and any assistant secretary of the Debtor or Reorganized Debtor, as applicable, shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or partners of the Debtor, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any ad valorem, stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the sale of the Assets or the issuance of New Equity Interests, including any Distributions made, or actions undertaken by, the Debtor, the Reorganized Debtor, and/or the Litigation Trustee.

*J.     Preservation of Public Entity Status*

On and after the Effective Date, the Reorganized Debtor intends it will continue to exist as a public corporation and in such event shall retain all of the powers of public corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence. As of the Effective Date, the Debtor's Articles of Incorporation shall be deemed amended to conform to the requirements of Section 1123(a)(6) of the Bankruptcy Code. Furthermore, as of the Effective Date, the Debtor shall take appropriate action to assure compliance with applicable securities laws.

Pursuant to Section 1145 of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer or, underwriter of, or broker or dealer in, a security shall apply to the offer or sale of a security or registration or licensing of the Reorganized Debtor, or an underwriter of, or broker or dealer in, a security of the Reorganized Debtor, including, without limitation, the New Equity and/or the offer of any security of the Reorganized Debtor through any warrant, option, right to subscribe or conversion privilege that is sold in exchange for a claim against the Debtor, including, without limitation, the New Equity.. For purposes of section 1145(a)(1)(A) of the Bankruptcy Code, the New Equity shall be deemed to be in exchange for White Winston's claims against the Debtor. Neither the Debtor nor the Reorganized Debtor shall be an underwriter for any purpose under section 2(a)(11) of the Securities Act of 1933 and/or Section 1145 of the Bankruptcy Code. The offer and sale of securities of the kind and in the manner specified under Section 1145(a)(1) of the Bankruptcy Code, including, without limitation, the New Equity, shall be deemed to be a public offering pursuant to section 1145(c) of the Bankruptcy Code.

*K.     Preservation of Tax Attributes*

It is the intention of the Plan Proponents that the Debtor's tax attributes, particularly its net operating losses ("**NOL's**"), be preserved for use by the Reorganized Debtor after the Effective Date. Accordingly, the Plan has been structured to comply with 26 U.S.C. §382(l)(5), and the Plan provides it is treated under Internal Revenue Code section 382(l)(5).

Generally, Internal Revenue Code ("**IRC**") section 382 provides that, after an ownership change, the amount of a loss corporation's taxable income for any post-change year that may be offset by pre-change losses shall not exceed the IRC section 382 limitation for that year. Pursuant to IRC Section 382(g), an "ownership change" occurs when, on a particular testing date the percentage stock ownership of one or more 5-percent shareholders has increased by more than 50 percentage points over the lowest percentage stock ownership held by such shareholder at any time during the prescribed "testing period," as defined in IRC section 382(i). A loss corporation is defined in IRC section 382 as a corporation entitled to use an NOL carryover, have an NOL for the taxable year in which the ownership change occurs, or any corporation with a net unrealized built-in loss within the meaning of section 382(h)(3).

IRC section 382(l)(5) provides an exception for ownership changes that occur in Title 11 or similar cases, provided certain qualification requirements (discussed below) are met. If applicable, section 382(l)(5) generally

provides that although the loss corporation experiences an ownership change, the section 382 limitation does not apply to limit the tax attributes of the loss corporation. However, any limitation caused by a prior or subsequent ownership change would continue to apply.

There are two statutory requirements which must be satisfied in order for the loss corporation to qualify under section 382(l)(5):

(i)      The old loss corporation (the Debtor) must have been under the jurisdiction of the Bankruptcy Court (which clearly the Debtor has been since the Petition Date), and

(ii)     the former shareholders and qualified creditors of the bankrupt loss corporation (determined immediately before a section 382(g) ownership change) must own (after such ownership change and as a result of being shareholders or creditors immediately before such change) an amount of stock constituting 50 percent "control" (as defined under section 1504(a)(2)) after the ownership change.

According to the Debtor's 2021 federal tax form 1040, the Debtor identified the following tax attributes:

| | |
|---|---|
| Non-SRLY NOL ............................................ | $15,921,560 |
| Net operating loss carryforward ................... | $107,897,654 |
| Charitable contributions ................................ | $24,031 |
| Sec. 1231 losses ............................................ | $276,583 |
| Disallowed business interest expense ............. | $10,452,345 |
| Total general business credits ........................ | $421,312 |
| Credit for increasing research activities (Form 6765) … | $421,312 |

As a result of the net operating loss carryforward, general business credit ("**GBC**"), and other tax attributes listed above, the Debtor is "loss corporation" as defined in Treas. Reg. § 1.382-2(a) and Treas. Reg. § 1.1502-91(c).

Early in the Case, the Debtor considered the formulation of a reorganization plan, rather than a liquidating plan based on the use of the Debtor's NOLs. In theory, the Debtor could enter into a transaction whereby a third party would provide consideration to the Debtor in exchange for its corporate shell and NOLs. A potential purchaser's ability to use the Debtor's NOLs, however, was subject to many risk factors and prevailing law that would have reduced or eliminated the utilization of the NOLs under certain circumstances.

Accordingly, to prevent the potential loss of NOLs, on February 8, 2023, the Debtor filed its "*Debtor's Motion Pursuant to 11 U.S.C. 362 & 105(a) for Entry of an Order Establishing Notification and Hearing Procedures and Approving Restrictions on Certain Transfers of Interests in the Debtor's Estate* (ECF 215]" (the "**NOL Motion**"). The relief requested in the NOL Motion was designed to provide the Debtor with advance notice of certain transfers that may jeopardize its NOLs, and to enable the Debtor, if necessary, to obtain substantive relief from this Bankruptcy Court to protect those NOLs.  The Bankruptcy Court allowed the NOL Motion by order dated February 27, 2023 [ECF 259].

To preserve these NOL's for use by the Reorganized Debtor, the Plan provides that White Winston will receive, in full payment and satisfaction of its Class 6 Allowed Claim to the extent of $4,630,261.00 all of the New Equity in the Debtor.  Thus, White Winston will be the sole shareholder of the Reorganized Debtor.  Generally, this transaction would have triggered an ownership change (as defined in section 382(g) on the Effective Date) with respect to the Debtor's stock.  However, this Plan meets all of the requirements of Internal Revenue Code section 382(l)(5) and thus the NOL's should be preserved.  The Debtor shall not make an election under section 382(l)(5)(G) to elect out of the application of Internal Revenue Code section 382(l)(5) such that the provisions of Internal Revenue Code section 382(l)(5) do not apply (see also Treas. Reg. 1.382-9(i)).  Finally, the Debtor shall not take any reporting position otherwise under the Plan Support Agreement.

Pursuant to the Plan Support Agreement, this Plan provides that pursuant to Treas. Reg. § 1.382-2T(k)(3) and Treas. Reg. 1.382-9(d)(1), White Winston has been the holder of all Class 6 Claims continuously for at least 18 months before the Petition Date, thereby satisfying the second condition described above. Further, the Plan provides that no person or entity other than the Reorganized Debtor shall use or impair any of the Debtor's tax attributes determined as of the Petition Date (including the NOL's).

The Plan Proponents make no representation regarding the value of the NOL's to the Reorganized Debtor, or whether the NOL's can be successfully challenged and disallowed in whole or in part by the Internal Revenue Service pursuant to Internal Revenue Code section 269.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.    Assumption and Rejection of Executory Contracts and Unexpired Leases*

   1.   Assumption and Rejection of Executory Contracts and Unexpired Leases

Subject to the right of the Reorganized Debtor to elect to assume any Executory Contract or Unexpired Lease as to which there is no objection to the proposed cure, each Executory Contract or Unexpired Lease identified in the Plan Supplement as an Executory Contract and/or Unexpired Lease not designated for assumption shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

   (a)   has been previously assumed by the Debtor by Final Order of the Bankruptcy Court;

   (b)   has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

   (c)   is the subject of a motion to assume pending as of the Effective Date;

   (d)   is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement; or

   (e)   is otherwise assumed pursuant to the terms herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  The Debtor reserves the right to amend the schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Effective Date.  To the extent any Executory Contract or Unexpired Lease is not specifically identified and designated as an Executory Contract or Unexpired Lease to be assumed, any such Executory Contract(s) and/or Unexpired Lease(s) shall be deemed to be rejected pursuant to the terms of this Plan and the Confirmation Order.

   2.   Approval of Assignments (if any)

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and assignment of Executory Contracts or Unexpired Leases.

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court. Additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtor, and its counsel, SL, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor in its sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

3.   Rejection of Executory Contracts or Unexpired Leases

All Executory Contracts and Unexpired Leases not listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement or not assumed and assigned otherwise in accordance with this Plan shall be deemed rejected as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.   *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtor, any Reorganized Debtor or Debtor's Estate and property, including the Assets, and the Litigation Trustee, and the Debtor or the Reorganized Debtor and Debtor's Estate and property, including the Assets, and the Litigation Trustee shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

C.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (1) list the applicable cure amount, if any; (2) describe the procedures for filing objections thereto; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assumed and the proposed cure amounts.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtor, and its counsel, SL, and counsel to the Committee, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented

to such matters. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to Cure is sustained by the Bankruptcy Court, the Reorganized Debtor in its sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

# ARTICLE VII.

## SETTLEMENT AND RELEASES

*A.    Releases*

This Plan contains certain releases of third parties. The discharge, release, exculpation, and injunction provisions that are contained herein are copied in pertinent part below. The Plan Proponents believe that all of the Released Parties (defined below) and Exculpated Parties (defined below) made substantial and valuable contributions to the Debtor's restructuring, including the compromising of their Claims, which Claim treatment under the Plan will help maximize and preserve the going-concern value of the Debtor for the benefit of all parties in interest. Accordingly, each of the Released Parties warrants the benefit of the Plan's release provisions.

"**Released Parties**" means, collectively, and in this case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the Committee and each of its respective members (in their capacity as such); (c) the Empery Parties; (d) the White Winston Parties; and (e) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, consultants, financial advisors, and attorneys (each in their capacity as such); *provided*, *however*, the Released Parties do not include Drexler, his Affiliates, successors or assigns, or any of the Debtor's prepetition officers and board of directors and their Affiliates, successors or assigns.

"**Exculpated Parties**" means, collectively, and in this case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the Committee and each of its respective members (in their capacity as such); (c) the Empery Parties; (d) the White Winston Parties; and (e) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, consultants, financial advisors, and attorneys (each in their capacity as such); provided however, the Exculpated Parties do not include Drexler (on account of his prepetition acts and omissions), his Affiliates, successors or assigns, or any of the Debtor's prepetition officers and board of directors and their Affiliates, successors or assigns.

### 1.    Discharge of Claims and Termination of Interests

This Plan is not a liquidating Plan and does not provide for the liquidation of all or substantially all of the property of the Debtor. The Reorganized Debtor intends to engage in business after the Effective Date. Accordingly, the Debtor is entitled to a discharge. This Plan provides that the Debtor shall receive a discharge to the maximum extent not prohibited by law other than for the White Winston Retained Claim, including pursuant to section 1141(d)(1) of the Bankruptcy Code. All property dealt with in the Plan, including the Excluded IP and the White Winston D&O Claims and all property vested in the Reorganized Debtor under the Plan, shall be free and clear of all claims and interest of creditors (other than the White Winston Retained Claim), equity security holders and of general partners (if any) in the debtor as set forth in section 1141(c) of the Bankruptcy Code. Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released and discharged.

The discharge shall not affect or impair any claims by any person or entity against any non-debtor.

ACCORDINGLY, PURSUANT TO SECTION 1141(d) OF THE BANKRUPTCY CODE, AND EXCEPT WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIMS AND AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN OR IN ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, AND EXCEPT WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM, THE DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THE PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, EFFECTIVE AS OF THE EFFECTIVE DATE, OF CLAIMS (INCLUDING ANY INTERCOMPANY CLAIMS RESOLVED OR COMPROMISED AFTER THE EFFECTIVE DATE BY THE REORGANIZED DEBTOR), INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN, THE DEBTOR OR ANY OF ITS ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES PERFORMED BY EMPLOYEES OF THE DEBTOR BEFORE THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT, ANY CONTINGENT OR NON-CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), OR 502(i) OF THE BANKRUPTCY CODE, IN EACH CASE WHETHER OR NOT: (1) A PROOF OF CLAIM BASED UPON SUCH DEBT OR RIGHT IS FILED OR DEEMED FILED PURSUANT TO SECTION 501 OF THE BANKRUPTCY CODE; (2) A CLAIM OR INTEREST BASED UPON SUCH DEBT, RIGHT, OR INTEREST IS ALLOWED PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE; OR (3) THE HOLDER OF SUCH A CLAIM OR INTEREST HAS ACCEPTED THE PLAN. EXCEPT WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM, ANY DEFAULT OR "EVENT OF DEFAULT" BY THE DEBTOR OR ITS AFFILIATES WITH RESPECT TO ANY CLAIM OR INTEREST THAT EXISTED IMMEDIATELY BEFORE OR ON ACCOUNT OF THE FILING OF THE CHAPTER 11 CASES SHALL BE DEEMED CURED (AND NO LONGER CONTINUING) AS OF THE EFFECTIVE DATE. THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS EXCEPT FOR THE WHITE WINSTON RETAINED CLAIM SUBJECT TO THE EFFECTIVE DATE OCCURRING.   NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE WHITE WINSTON RETAINED CLAIM SHALL NOT BE DISCHARGED AND SHALL REMAIN UNIMPAIRED.

2.      **Releases of Liens**

EXCEPT AS OTHERWISE PROVIDED IN THE CONFIRMATION ORDER, SALE ORDER, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE REORGANIZED DEBTOR AND ITS SUCCESSORS AND ASSIGNS. ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER) SHALL BE AUTHORIZED AND DIRECTED, AT THE SOLE COST AND EXPENSE OF THE REORGANIZED DEBTOR, TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTOR (INCLUDING ANY CASH COLLATERAL AND POSSESSORY COLLATERAL) HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE REORGANIZED DEBTOR TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL, OR LOCAL AGENCY

23

OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.

THIS PLAN SHALL CONSTITUTE A TERMINATION STATEMENT WITH RESPECT TO ALL LIENS, SECURITY INTERESTS AND ENCUMBRANCES THAT IS EFFECTIVE UPON THE PLAN EFFECTIVE DATE PURSUANT TO SECTION 9-513 OF THE UNIFORM COMMERCIAL CODE ("**UCC**"). ALL LIENS, SECURITY INTERESTS AND ENCUMBRANCES IN AND TO THE DEBTOR'S ASSETS SHALL TERMINATE, BE DISCHARGED AND SHALL NOT ATTACH TO ANY ASSETS OF THE REORGANIZED DEBTOR FROM AND AFTER THE EFFECTIVE DATE.  THE REORGANIZED DEBTOR IS AUTHORIZED AND EMPOWERED TO RECORD ANY AND ALL TERMINATION STATEMENTS OR SIMILAR DOCUMENTS TO TERMINATE ANY AND ALL LIENS, SECURITY INTERESTS AND ENCUMBRANCES, INCLUDING AS SET FORTH IN SECTION 9-509 OF THE UCC.  UPON REQUEST OF THE REORGANIZED DEBTOR, ALL HOLDERS OF SUCH LIENS, SECURITY INTERESTS AND ENCUMBRANCES SHALL EXECUTE AND DELIVER TO THE REORGANIZED DEBTOR APPROPRIATE AUTHORIZATIONS TO RECORD SUCH TERMINATION STATEMENTS OR SIMILAR DOCUMENTS INCLUDING PURSUANT TO SECTION 9-513 OF THE UCC.

3. **Exculpation**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, AN OFFICIAL ACTION, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR TERMINATION OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE DISCLOSURE STATEMENT, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT (INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR ANY OFFICIAL ACTION, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF, AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  NOTWITHSTANDING THE FOREGOING, THE EXCULPATED PARTIES DO NOT INCLUDE DREXLER (ON ACCOUNT OF HIS PREPETITION ACTS AND OMISSIONS), HIS AFFILIATES, SUCCESSORS OR ASSIGNS, OR ANY OF THE DEBTOR'S PREPETITION OFFICERS AND BOARD OF DIRECTORS AND THEIR AFFILIATES, SUCCESSORS OR ASSIGNS.

4. **Releases by the Debtor**

PURSUANT TO SECTIONS 105 AND 1123(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE RELEASED PARTIES' FACILITATION OF THE EXPEDITIOUS REORGANIZATION OF THE DEBTOR, COMPROMISING OF THEIR CLAIMS, AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THIS

PLAN, ON AND AFTER THE EFFECTIVE DATE: THE RELEASED PARTIES (EXCEPT FOR THE REORGANIZED DEBTOR WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM, WHICH SHALL NOT BE RELEASED) ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, THE REORGANIZED DEBTOR, AND THE ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, AVOIDANCE ACTIONS, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR WHICH COULD BE ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT THE DEBTOR, THE REORGANIZED DEBTOR, AND/OR THE ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY), OR IN ANY MANNER ARISING FROM ANY MATTER OR TRANSACTION, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S RESTRUCTURING, THE DEBTOR'S CHAPTER 11 CASE, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR OR THE REORGANIZED DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY OF THE RELEASED PARTIES, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS BEFORE OR DURING THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION OR PREPARATION OF THIS PLAN, THE DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTOR TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THIS PLAN. NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES DO NOT INCLUDE DREXLER, HIS AFFILIATES, SUCCESSORS OR ASSIGNS, OR ANY OF THE DEBTOR'S PREPETITION OFFICERS AND BOARD OF DIRECTORS AND THEIR AFFILIATES, SUCCESSORS OR ASSIGNS.

PURSUANT TO SECTIONS 105 AND 1123(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE RELEASED PARTIES' FACILITATION OF THE EXPEDITIOUS REORGANIZATION OF THE DEBTOR AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THIS PLAN, INCLUDING THE COMPROMISING OF THEIR CLAIMS PURSUANT TO THE PLAN, ON AND AFTER THE EFFECTIVE DATE, EXCEPT WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM (WHICH SHALL NOT BE RELEASED), THE RELEASING PARTIES HEREBY RELEASE THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, AVOIDANCE ACTIONS, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR WHICH COULD BE ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE.

### 5.    Injunction

EXCEPT WHITE WINSTON, AND SOLELY WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM, AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTOR, OR THE REORGANIZED DEBTOR: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS.

EXCEPT WITH RESPECT TO THE WHITE WINSTON RETAINED CLAIM, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR

WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

# ARTICLE VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order, the Litigation Trust or as agreed to by the relevant parties, the Reorganized Debtor or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, shall make initial distributions under the Plan on account of Claims Allowed on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date may commence on the Effective Date.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, the Litigation Trust or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, shall establish appropriate reserves for potential payment of any such Disputed Claims.

C.      *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2. <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, the Litigation Trustee shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's or the Litigation Trustee's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor, the Reorganized Debtor, or the Litigation Trustee, as applicable; and *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

The Litigation Trustee shall make all distributions in accordance with the terms of the Litigation Trust Agreement.  The Plan provides that the Reorganized Debtor has no obligations of any kind under the Plan to the Liquidating Trustee, the Distribution Agent or Agents, any creditor other than White Winston or equity security holder (including, without limitation, on account of claims or equity interests) from and after the Effective Date.

D.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Litigation Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.    *Timing and Calculation of Amounts to Be Distributed*

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.    *Setoffs*

The Litigation Trustee may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Litigation Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor and/or Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release, of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, may possess against any such Holder, except as specifically provided herein.

# ARTICLE IX.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.    *Resolution of Disputed Claims*

    1.    <u>Allowance of Claims</u>

After the Effective Date, the Litigation Trustee shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

    2.    <u>Prosecution of Objections to Claims</u>

After the Confirmation Date the Litigation Trustee shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; <u>provided</u>, <u>however</u>, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Litigation Trustee may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

    3.    <u>Claims Estimation</u>

After the Confirmation Date the Debtor, the Litigation Trustee, as applicable, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Litigation Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

    4.    <u>Expungement or Adjustment to Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Litigation Trustee, and any Claim that has been amended may be adjusted thereon by the Litigation Trustee, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

    5.    <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.      *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

C.      *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

# ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.      *Conditions Precedent to Consummation on the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof.

1.      The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor, the Committee and the Plan Sponsor, if any.

2.      The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan, and the dismissal all pending litigation between the White Winston Parties and the Empery Parties, with each party to bear its own fees and costs, including the WW Adversary Proceeding and that certain litigation pending before the New York Superior Court entitled *Empery Tax Efficient, LP v. MusclePharm Corporation, et al.*, Index No. 654789/2022.

3.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.    *Effect of Non-Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

# ARTICLE XI.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, its Estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to sections 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  The Confirmation Order shall approve the exculpation and releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

In accordance with the provisions of this Plan, including Article VIII hereof, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtor or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtor or the Litigation Trustee, as otherwise appropriate and consistent with the terms of this Plan, may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.    *Preservation of Rights of Action*

1.    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, and provided all Allowed non-Insider Claims are paid in full, Litigation Trust shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action except for the WW D&O Claims, whether existing as of the Commencement Date or thereafter arising, in any court or other tribunal including, without limitation, in any adversary proceeding Filed in the Chapter 11 Case.

2.    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, exculpated, compromised or settled as set forth in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtor (and to the extent applicable, the Reorganized Debtor) and the Litigation Trust expressly reserve such claim or Cause of Action for later adjudication by the Debtor, the Reorganized Debtor, the Litigation Trust, or, as otherwise appropriate and consistent with the terms of this Plan, the Litigation Trustee (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply toany such claims or Causes of Action (including, without limitation, the WW D&O Claims) upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtor, the Reorganized Debtor, and, as otherwise appropriate and consistent with the terms of this Plan, the Litigation Trustee, expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is or could be a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

3.    Limitation of Liability.

The Exculpated Parties will neither have nor incur any liability to any person or entity for any Official Actions in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case, the investigations of potential claims or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case, provided that, the foregoing shall not exonerate any of the Exculpated Parties from any liability that results from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. In addition, notwithstanding any other provision of the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any Official Actions made in good faith from and after the Petition Date through the Confirmation Date in connection with, relating to or arising out of the Chapter 11 case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any Exculpated Party that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, (b) the liability of any Exculpated Party that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and (c) actions taken by Exculpated Parties who are holders of a Claim and are taking actions in pursuit of their allowance or payment of such Claim; for the avoidance of doubt there shall be no liability limitation for the  Debtors, their insiders, and affiliates for their actions or omissions occurring before the Petition Date, or their actions or omissions after the Petition Date that are not Official Actions made in good faith.

# ARTICLE XII.

## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

# ARTICLE XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor or, as otherwise consistent and appropriate with the terms of the Plan, the Litigation Trustee after the Effective Date, _provided_ that the Reorganized Debtor or, as otherwise consistent and appropriate with the terms of the Plan, the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.    enforce the terms of the Plan;

12.    enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan, the Disclosure Statement or the Plan Supplement; and

14.  enter an order concluding the Chapter 11 Case.

# ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.    *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to

33

such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

G.     *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.     *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtor, the Reorganized Debtor or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.     *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

> MusclePharm Corporation
> c/o Eric Hillman
> 8275 South Eastern Avenue
> Las Vegas, Nevada 89123
>
> **with copies to**:
>
> Schwartz Law, PLLC
> 601 East Bridger Avenue
> Las Vegas, Nevada 89101
>
>   and
>
> MHF Opco, LLC (solely in its capacity as Chair of the Committee)
> Attention: Brian Slater, CEO
> Email: brian@millhavenfoods.com
>
> **with copies to**:
>
> Pachulski Stang Ziehl & Jones LLP
> One Sansome Street, Suite 3430
> San Francisco, CA 94104
> Attention: Jason Rosell
> Email: jrosell@pszjlaw.com

J.       *Return of Security Deposits*

Unless the Debtor has agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtor to any Person or Entity at any time after the Commencement Date shall be returned to the Reorganized Debtor within twenty (20) days after the Effective Date, without deduction or offset of any kind.

K.       *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.       *Default*

Upon the Effective Date of the Plan, in the event the Debtor or any party hereunder fails to timely perform any of the obligations set forth in the Plan, the Debtor, a creditor, or party-in-interest shall notify the defaulting party, the Debtor and Debtor's counsel of the default in writing in accordance with the notice provisions herein, after which the defaulting party shall have thirty (30) calendar days from the date of written notification to cure the default.  In the event the Debtor defaults, however, and the Debtor requires more than thirty (30) calendar days to cure, so long as: (i) the Debtor initiates steps to cure the default within thirty (30) calendar days of receipt of a notice of a default; (ii) provide notice to the non-defaulting party of the efforts taken to cure within thirty (30) calendar days; and (iii) the Debtor continues to complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical, the Debtor's default shall be deemed cured.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.  In the event of litigation with respect to the enforcement of the provisions of this Plan, the non-defaulting party shall be entitled to recover its reasonable legal fees and costs of enforcement, subject to the approval of the Bankruptcy Court or a court of competent jurisdiction.


Dated: June 19, 2023

                                        Respectfully submitted,

                                        MusclePharm Corporation

                                        By:     /s/
                                        Title:     Eric Hillman, Chief Executive Officer