**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

**LAW OFFICE OF BRIAN D. SHAPIRO, LLC**
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
510 S. 8th Street
Las Vegas, NV 89101
Telephone:    (702) 386-8600
Facsimile:    (702) 383-0994
brian@brianshapirolaw.com

*Counsel for Ryan Drexler*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re

MUSCLEPHARM CORPORATION,

Debtor.

Case No.: 22-14422-NMC
Chapter 11

**DREXLER'S POSITION STATEMENT ON DISCOVERY AND HEARING SCHEDULE FOR MOTION TO APPOINT CHAPTER 11 TRUSTEE, AND STATUS OF OTHER PENDING MATTERS**

Counsel to Ryan Drexler ("Drexler"), the Debtor, Empery Tax Efficient, LP ("Empery"), and the Official Committee of Unsecured Creditors (the "Committee") today filed a *Joint Status Report on Discovery and Hearing Schedule for Prosecution of Motion to Appoint Chapter 11 Trustee, and Status of Other Pending Matters* [ECF No. 636]. The parties agreed to file separate position statements on their competing discovery and hearing proposals for the *Motion for the Appointment of a Chapter 11 Trustee* [ECF No. 447] (the "Trustee Motion") in order to highlight the differences for the Court, advocate for their respective positions, and provide the Court with a basis to resolve their differences. For ease of reference, the Debtor, Empery, and the Committee are referred to herein as the "Opposing Parties."

These are the principal differences between the two discovery and hearing plans:

1

1. **Expedited Document and Information Production.** Drexler proposed a 9-day period (July 5 to July 14) between the service of (a) document production and interrogatory requests, and (b) the deadline to serve responsive documents and information, as well as objections, and privilege logs for any information withheld. The Opposing Parties agreed to the July 14 deadline, but require in their proposal that objections be filed by July 10, which is only two business days after the service of discovery. Drexler does not believe that a requirement to file objections (and privilege logs) in such a short time (and before the deadline for production of documents) is reasonable or efficient. The time is too short in and of itself. Parties should in most cases ascertain what is available for production before determining whether and to what extent to object, and that cannot reasonably be done in two days. A privilege log cannot be prepared until all responsive documents have been gathered.

2. **Entities/Persons Subject to Discovery.** Drexler identified for discovery, including depositions, the Debtor's independent director Nicholas Rubin, its President Eric Hillman, and two employees, Will Hovi and Jason Keenan, each of whom has discoverable information and evidence about the Debtor's business transactions and practices that are a key issue in the Trustee Motion. The Debtor seeks to limit these depositions by requiring that Drexler choose three of these persons. Drexler seeks to depose all four because Mr. Hillman has a prior (and perhaps continuing) business relationship with another witness, Mr. Jungsberger. His testimony about the Debtor's business transactions with Mr. Jungsberger's company, JW Nutritional LLC ("JWN") (Debtor's contract manufacturer, and a member of the Committee) may be inconsistent with the testimony provided by Debtor's employees Messrs. Hovi and Keenan, who have direct and personal knowledge of all of the Debtor's business transactions, but no known prior relationships with Mr. Jungsberger. Drexler agreed to limit the foregoing depositions to no more than four hours of testimony each, on the condition that all of them testify.

3. Drexler also identified for discovery, including depositions, the two key principals of Empery, relevant to the same issues, as well as to the misallocation of debtor-in-possession financing to professionals, and the lack of independence of the independent

director. Empery has agreed to this, on condition that the parties conduct a meet and confer (to which Drexler agreed) after the production of documents and information, to determine if the length of each of these depositions may be limited by agreement.

4. In addition, Drexler has identified as additional witnesses Peter Jungsberger (as discussed above, affiliated with JWN) and Brian Slater (affiliated with MHF Opco, LLC ("MHF")). Jungsberger and Slater are believed to have also been personally involved in business transactions with each other and with the Debtor that relate to the Trustee Motion allegations of business opportunity and transaction mismanagement, including pricing improprieties. The Opposing Parties have not objected to either of these witnesses, but as explained in a footnote to the Joint Status Report, Mr. Jungsberger has not yet appeared in this matter through counsel, and may need to be subpoenaed. At this writing, Drexler has not heard any objection from counsel to MHF to the discovery expected to be sought from Mr. Slater.

5. Drexler has also identified the Committee as an entity for document production and interrogatories only. The Committee is believed to have been a literal conduit for information about all the matters being adjudicated on the Trustee Motion. Drexler believes that non-privileged communications about all the issues in litigation have been exchanged by parties in this case, including members of the Committee, with Committee counsel. JWN and MHF, whose witnesses are identified by Drexler above, are members of the Committee.

6. Committee counsel objected that discovery from a Committee is unprecedented. That is not the case. First, there is no immunity from discovery for a Creditors' Committee. We are unaware of any case or statute that so provides. *Compare* 11 U.S.C. § 1109(b) ("A party interest, . . . including . . . a creditors' committee . . . .") *with* Fed. R. Civ. P. 30 ("A party may . . . depose any person, including a party . . . .") *with* Fed. R. Civ. P. 34 ("A party may serve on another party a request . . . .") Second, a recent example of Committee improprieties that were subject to discovery occurred in the Nieman Marcus chapter 11 case. There, the United States Trustee prepared and sent requests for documents and interviews to the Committee's counsel and financial advisor. *Statement of the Acting United States Trustee Pursuant to Court Order Regarding the Conduct of Marble Ridge Capital LP and Dan*

*Kamensky*, ECF No. 1485 at 3, *In re Neiman Marcus Group Ltd LLC*, No. 20-32519 (Bankr. S.D. Tex., filed Aug. 19, 2020) (the "UST Statement"). The results of the United States Trustee's findings included evidence that a Committee Co-Chair attempted to interfere in an auction sale for his own benefit. *Id.* at 10–20. The findings led the Department of Justice to prosecute the Co-Chair for bankruptcy crimes and led to a guilty plea on one count of bankruptcy fraud. *Order*, ECF No. 19, *United State of America v. Daniel Kamensky*, No. 21-cr-67-DLC (S.D.N.Y. filed March 22, 2021).

7. Empery has requested up to three witnesses who were part of the SEC investigation of the Debtor's prepetition activities and settled with SEC. While Drexler believes this is excessive for what appears to be the purpose of this discovery (as explained in footnote 3 and the accompanying text below), he does not object to the discovery.

8. **Expedited Dispute Resolution for Expected Discovery Objections.**[1] Drexler proposed that the week immediately following document and interrogatory production be used to resolve anticipated discovery objections, including to privilege designations, with a meet and confer on July 17, the filing of unresolved objections and claimed privilege documents in camera on July 19, and a hearing on the objections on July 20. The purpose of this expedited dispute resolution is to assure that document and information production is completed prior to the commencement of depositions. Thus, any subsequent document or information production ordered in this expedited dispute resolution process would be required to be produced by the following Friday, July 28, and depositions would commence and be completed in the two following weeks of July 31 and August 7.

9. By contrast, in addition to an unreasonably short time of two business days to prepare and file discovery objections (without an intervening meet and confer), the Opposing Parties propose to begin depositions on July 17 (only a weekend after completion of the July 14 production of documents and interrogatory responses), which will prejudice Drexler's

---

[1] Virtually every subpoena and discovery request served by Drexler on Opposing Parties in this case has been met with motions to quash, motions for protective orders, and a full panoply of other discovery objections. There is no reason to assume that this will not continue to be the case with the discovery to be served for the Trustee Motion.

4

ability to review the production and prepare for the depositions, and also makes it unlikely that discovery objections will have been resolved first. The Opposing Parties request pre-set discovery dispute hearings on July 11, 18, and 25 (similar to Drexler's proposal). But two of the three pre-set hearings would take place after the rushed commencement of depositions, rather than before.

10. **Opposing Parties' Overall Schedule is Infeasible.** Besides the unreasonably short time provided by the Opposing Parties (a) between service of discovery requests and filing of discovery objections, and (b) between the deadline for document and information production and the commencement of depositions, there are several other substantial problems with this initial part of the schedule as proposed by the Opposing Parties.

11. First, requiring that depositions begin before objections to production are resolved, incentivizes "overwithholding" and damages the integrity of the depositions by requiring that they proceed without a complete record. This also means that witnesses who have already been deposed may need to be recalled, which is a completely unnecessary delay in an expedited schedule that will cause a wasteful increase in attorneys' fees and expenses.

12. Second, it is unreasonable as a matter of due process to limit Drexler's counsel to a mere weekend to review document production and information from as many as 16 entities and persons (if Drexler's and Empery's proposal is adopted, with the addition of three witnesses sought by Empery who entered consent settlements with the SEC) (discussed more fully below).

13. Third, as Drexler's counsel informed the Opposing Parties in an email on June 28, and in the meet and confer of June 29, he is required to have non-elective eye surgery on July 13 that will make it impossible for him to read for several days thereafter (and a similar procedure on August 1, with the same consequences).

14. **Potential Need For Additional Discovery.** Drexler's plan also provides that after the two-week period for depositions,[2] the parties would meet and confer the next Tuesday, August 15 on any additional discovery Drexler might, for good cause, request. It is very common for initial waves of document production, interrogatories and depositions to disclose the existence of other relevant information not requested or previously produced. Drexler built an expedited dispute resolution process into this as well: joint status report on differences to be filed by Wednesday, August 16 and hearing to be held to resolve differences on Thursday, August 17.

15. **Pre-Trial Pleadings.** After accommodating any time needed for further supplemental discovery for good cause, Drexler proposed that simultaneous pre-trial briefs, and a joint pretrial order designating witnesses and exhibits (among other things) be filed by Drexler and the Opposing Parties on August 30, and that evidentiary hearings be held the following week. By contrast, the Opposing Parties do not allow for any additional discovery, regardless of cause. Instead of simultaneous pretrial briefs and a joint pretrial order, the Opposing Parties propose to file objections on July 31, to which Drexler would be required to reply three days later, on August 3, 2023. On their proposed schedule, that would be the day before they propose to start evidentiary hearings, on a schedule that also makes it unlikely the Court would have the opportunity to review Drexler's reply before hearings begin.

16. **Opposing Parties Seek Trial on Friday, August 4 and Monday, August 7.** This is exactly one month earlier than the hearing dates proposed by Drexler, and reflects the Opposing Parties' objective of forcing two months of virtually full-time expedited litigation into just one month. Drexler does not believe it possible to complete discovery and prepare for trial of this matter in less than two months. Drexler's discovery and hearing proposals were prepared by counsel with the good faith belief that it was the shortest possible time for adjudication of the Trustee Motion, in light of the issues presented, the number of entities and

---

[2] All Parties agree that two weeks are needed for depositions, with the difference being whether those two weeks were the weeks of July 17 and 24 as proposed by the Opposing Parties, or the weeks of July 31 and August 7, as proposed by Drexler.

witnesses involved, and the prior conduct of the Opposing Parties who have attempted to object to and otherwise obstruct discovery from Drexler at every single opportunity. Drexler's schedule also allows for the possibility of accommodating likely witness and lawyer summer vacation schedules, as well as medical interruptions. The duration proposed by Drexler's counsel was a function of each expedited step in discovery and dispute resolution, with appropriate time for the preparation of pleadings, including objections and pretrial submissions. It was not a negotiating strategy in anticipation that the Opposing Parties would propose to do everything in half the time, or to set up a "bid and ask" where the differences would just be split. Counsel submits that any further compression of the expedited schedule proposed by Drexler will compromise his ability to organize and present the evidence and law, and otherwise to adjudicate the Trustee Motion.

17. **<u>Opposing Parties Argue that Pendency of the SEC Civil Action Supports their Accelerated and Compressed Schedule.</u>** There is no evidence of any business or other legitimate reason for the accelerated and compressed schedule proposed by the Opposing Parties.[3] There is also no apparent prejudice to any party in the discovery and hearing schedule proposed by Drexler.

18. The Court has been previously advised by parties that the United States Securities and Exchange Commission ("SEC") was conducting an investigation of certain pre-bankruptcy matters involving the Debtor. ECF No. 506 at 13:18–25. A civil action complaint was filed on June 27, 2023. *Securities and Exchange Commission v. Ryan C. Drexler*, Case No. 2:23-cv-05102-MCS-RAO (C.D. Cal. June 27, 2023) ("SEC Civil Action"). The Opposing Parties now argue that this non-bankruptcy litigation, which has nothing to do with the

---

[3] There have been assertions by lawyers, not evidence, that the pendency of the Trustee Motion has had a negative impact on the Debtor's business performance. Drexler submits that there is no material difference in the Debtor's business performance comparing that performance before and after the Trustee Motion was filed on April 28, 2023.

7

allegations made in the Trustee Motion, is a compelling reason for the compression, acceleration and rushed hearing schedule they propose.[4]

19. A party does not lose its due process rights to the fair adjudication of a serious motion for relief when someone files a lawsuit against it. Some counsel to Opposing Parties have argued that the SEC Civil Action is a "cloud" over the Debtor's business that mandates their accelerated schedule. But if that is true, it will continue to be so, long after the Trustee Motion is adjudicated and regardless of the schedule. Furthermore, the request by Empery to add to the discovery schedule and the hearings as many as three witnesses who settled with SEC (to which Drexler has not objected), demonstrates a strategy of turning the Trustee Motion into a mini-trial of Drexler on conventional director and officer liability claims. If permitted, that will lengthen, not shorten, the discovery and the hearing, and is inconsistent with a claimed desire to rush to conclusion of the Trustee Motion.

20. **Other Pending Matters.** There appeared in the meet and confer process to be a consensus that, except for the *Application for Entry of an Order Authorizing Retention and Employment of Hilco Corporate Finance, LLC as Investment Banker as of June 6,* 2023 [ECF No. 624] ("Hilco Application") and the *Debtor's Motion to (I) Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§ 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and (II) for Waiver of the 14-Day Stay Under Bankruptcy Rule 6004* [ECF No. 497] ("Bidding Procedures Motion"), all other matters should be carried on a trailing calendar to be called for status at the conclusion of the hearings on the Trustee Motion, and, depending on the outcome of that motion, set for further supplemental pleadings and hearings.

21. However, the Opposing Parties want to accelerate the Court's adjudication of the Hilco Application and the Bidding Procedures Motion. In addition, in the *Status Report of*

---

[4] Drexler understands that allegations of pre-bankruptcy mismanagement could be used to question Drexler's credibility if he testifies about post-petition pricing and transaction irregularities which have been alleged in the Trustee Motion. But the Opposing Parties' proposal to add up to three witnesses and introduce evidence on such issues, demonstrates a need for more time for discovery and trial, not less.

8

*White Winston Select Asset Funds, LLC* [ECF No. 635], White Winston takes the position that all other pending matters, including the proceedings on the disclosure statement, the plan, and the sale, should proceed on a parallel track with the Trustee Motion. ECF No. 635 at 2–3.

22. There is no benefit to the estate – indeed there would be a profound detriment – in incurring the substantial administrative expenses that would be required to engage in parallel track contested litigation of any of the pending matters. All of them are likely to be mooted if Drexler's Chapter 11 Trustee Motion is granted,  It is also patently unreasonable to fair and reasonable due process for any of the Opposing Parties to request that other motions, pleadings, hearings and arguments be scheduled in the midst of what is already a nearly 24/7 accelerated litigation process on the Trustee Motion.

23. The Opposing Parties argue that the Hilco Application and Bidding Procedures Motion should be dual-tracked because the Debtor's business should be marketed at the same time the Trustee Motion is being adjudicated. They assert that the current status of the case and the pendency of the Trustee Motion is unsettling to vendors and potential vendors and is having a negative impact on the business. They contend that launching a sale process will mitigate these alleged business negatives.[5]

24. The reasons provided by the Opposing Parties for dual-tracking a sales process are actually powerful arguments against commencing a sale process until after the Trustee Motion is resolved. If in fact the pendency of the Trustee Motion has a negative impact on sales and values, then the marketing of the business sought by the Opposing Parties will be based on impaired values that do not reflect genuine market conditions, and may lead to lower bids and potential lower sales prices. The estate should not incur administrative expenses on a premature and tainted marketing program and sale process that is based on impaired values. The estate should also not incur administrative expenses on a sale process that would

---

[5] This summary is based on lawyer arguments in meet and confer discussions. Similar "lawyer advocacy" is given in the WW Status Report. There is no evidence before the Court to support any of these arguments.

necessarily be mooted or delayed by the appointment of a chapter 11 trustee, if Drexler's motion is granted.

25. Another powerful reason against dual-tracking the Hilco Application and the Bidding Procedures Motion is that the trial of the Trustee Motion will focus considerably on Debtor mismanagement in fulfilling sales orders and pursuing sales opportunities, which have operated to restrain product sales and revenues. This is directly related to auction values, as purchasers typically value companies like this on the basis of sales performance. Such mismanagement, if proved, leads to the inevitable conclusion that the Debtor should be managed without such artificial restraints for a time in order that the market is able to value the company on the basis of true market conditions.

26. For the reasons stated, Drexler respectfully submits that his expedited discovery and hearing plan on the Trustee Motion be adopted by the Court and so ordered, that the Hilco Application and the Bidding Procedures Motion be carried on the docket to trail the Trustee Motion as status conferences, and the Court grant such other and further relief as is just and proper.

Respectfully submitted this 30th day of June, 2023.

**STEINHILBER SWANSON LLP**

By: */s/ Michael P. Richman*
MICHAEL P. RICHMAN, ESQ.
Admitted Pro Hac Vice
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:     (608) 630-8990
Facsimile:     (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

10