Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

MUSCLEPHARM CORPORATION,

Debtor.

Case No.: 22-14422-NMC

Chapter 11

Hearing Date: July 31, 2023
Hearing Time: 10:00 a.m. (PDT)

**SUPPLEMENT TO DEBTOR'S MOTION TO (I) APPROVE BIDDING PROCEDURES FOR THE SALE OF ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 AND (II) FOR WAIVER OF THE 14-DAY STAY UNDER BANKRUPTCY RULE 6004**

MusclePharm Corporation, the debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "**Debtor**"), by and through its counsel, Schwartz Law, PLLC, in accordance with the *Debtor's Motion to (I) Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§ 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and (II) for Waiver of the 14-Day Stay Under Bankruptcy Rule 6004* [ECF No. 497] (the "**Bidding Procedures Motion**") [1] hereby submit this supplement (the "**Supplement**") to the Bidding Procedures Motion.  Attached hereto as **Exhibits 1** and **2** are clean and redlined versions of the revised Bidding Procedures (the "**Revised Bidding Procedures**"), which amend and replace the original Bidding Procedures previously attached to the Bidding Procedures Motion as Exhibit 1.

---

[1]    Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Bidding Procedures Motion.

1

The Revised Bidding Procedures: (i) contain key dates consistent with those discussed with the Court and the parties at the status hearing on July 10, 2023; and (ii) add the role that Hilco Corporate Finance, LLC will serve in the marketing of the Debtor's Assets.

Dated: July 14, 2023.

Respectfully Submitted,

SCHWARTZ LAW, PLLC

By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV  89101

*Attorneys for the Debtors*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent electronically via the Court's CM/ECF system on July 14, 2023, to the following:

RYAN A. ANDERSEN on behalf of Interested Party ThermoLife International
ryan@aandblaw.com; tatiana@aandblaw.com; melissa@aandblaw.com; ecf-df8b00a4597e@ecf.pacerpro.com; valerie@aandblaw.com

OGONNA M. BROWN on behalf of Creditor Prestige Capital Finance, LLC
obrown@lewisroca.com; ogonna-brown-4984@ecf.pacerpro.com; dberhanu@lewisroca.com; ombcalendar@lewisroca.com; jhess@lewisroca.com; klopez@lewisroca.com; rcreswell@lewisroca.com

CANDACE C CARLYON on behalf of Interested Party Ryan Drexler
ccarlyon@carlyoncica.com; CRobertson@carlyoncica.com; nrodriguez@carlyoncica.com; 9232006420@filings.docketbird.com; Dcica@carlyoncica.com

CHAPTER 11 - LV
USTPRegion17.lv.ecf@usdoj.gov

SHAWN CHRISTIANSON on behalf of Creditor ORACLE AMERICA, INC.
schristianson@buchalter.com; cmcintire@buchalter.com

JOHN D. FIERO for Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
jfiero@pszjlaw.com

NEDDA GHANDI on behalf of Interested Party JW NUTRITIONAL LLC
nedda@ghandilaw.com; lks@ghandilaw.com; nedda@ecf.inforuptcy.com; r41525@notify.bestcase.com; shara@ghandilaw.com

ALLYSON JOHNSON on behalf of Creditor Excelsior Nutrition, Inc.
allyson@sylvesterpolednak.com; kellye@sylvesterpolednak.com

BART K. LARSEN on behalf of Creditor White Winston Select Asset Funds, LLC
BLARSEN@SHEA.LAW; 3542839420@filings.docketbird.com

WILLIAM M. NOALL on behalf of Defendants ALTIUM GROWTH FUND, LP; BIGGER CAPITAL FUND, LP; CVI INVESTMENT, INC; DISTRICT 2 CAPITAL FUND, LP; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY MASTER ONSHORE, LLC; EMPERY TAX EFFICIENT III; EMPERY TAX EFFICIENT, LP; INTRACOASTAL CAPITAL LLC; IONIC VENTURES, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MAASTER FUND; ROTH CAPITAL PARTNERS, LLC; and WALLEYE OPPORTUNITY MASTER FUND LTD
wnoall@gtg.legal; bknotices@gtg.legal
WILLIAM M. NOALL on behalf of Creditor EMPERY ASSET MANAGEMENT, LP
wnoall@gtg.legal; bknotices@gtg.legal

WILLIAM M. NOALL on behalf of Interested Party EMPERY TAX EFFICIENT, LP
wnoall@gtg.legal; bknotices@gtg.legal

TRACY M. O'STEEN on behalf of Interested Party Ryan Drexler
tosteen@carlyoncica.com; crobertson@carlyoncica.com; nrodriguez@carlyoncica.com; ccarlyon@carlyoncica.com

3

TERESA M. PILATOWICZ on behalf of Interested Party EMPERY TAX EFFICIENT, LP
tpilatowicz@gtg.legal; bknotices@gtg.legal

JASON H. ROSELL for Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
jrosell@pszjlaw.com

BRIAN D. SHAPIRO on behalf of Interested Party Ryan Drexler
brian@brianshapirolaw.com; kshapiro@brianshapirolaw.com;
6855036420@filings.docketbird.com

JAMES PATRICK SHEA on behalf of Creditor White Winston Select Asset Funds, LLC
jshea@shea.law; blarsen@shea.law; support@shea.law

ROBERT T. STEWART on behalf of Creditor NutraBlend Foods
rtstewart@foley.com; rgledhill@foley.com; robert-stewart-3880@ecf.pacerpro.com;
docketflow@foley.com

STRETTO
ecf@cases-cr.stretto-services.com; aw01@ecfcbis.com; pacerpleadings@stretto.com

MARK M. WEISENMILLER on behalf of Interested Party EMPERY TAX EFFICIENT, LP
mark@aandblaw.com; ecf-df8b00a4597e@ecf.pacerpro.com

JOSEPH G. WENT on behalf of Interested Parties MHF Opco, LLC and Brian Slater
jgwent@hollandhart.com, blschroeder@hollandhart.com; IntakeTeam@hollandhart.com

MATTHEW C. ZIRZOW on behalf of Attorney JASON H. ROSELL
mzirzow@lzlawnv.com; carey@lzlawnv.com; trish@lzlawnv.com; jennifer@lzlawnv.com;
valentina@lzlawnv.com; zirzow.matthewc.r99681@notify.bestcase.com

MATTHEW C. ZIRZOW on behalf of Attorney JOHN D. FIERO
mzirzow@lzlawnv.com; carey@lzlawnv.com; trish@lzlawnv.com; jennifer@lzlawnv.com;
valentina@lzlawnv.com; zirzow.matthewc.r99681@notify.bestcase.com

MATTHEW C. ZIRZOW for OFFICIAL COMMITTEE OF UNSECURED CREDITORS
mzirzow@lzlawnv.com; carey@lzlawnv.com; trish@lzlawnv.com; jennifer@lzlawnv.com;
valentina@lzlawnv.com; zirzow.matthewc.r99681@notify.bestcase.com


/s/ *Brian J. Braud*
Brian J. Braud, an employee of
SCHWARTZ LAW, PLLC

# EXHIBIT 1

# EXHIBIT 1

**EXHIBIT 1**

**BIDDING PROCEDURES**

The following procedures (the "**Bidding Procedures**") shall govern the submission of bids for the purchase of any or all of the assets, other than the Excluded Assets (defined below) set forth on Schedule 2 annexed hereto (the "**Assets**") of MusclePharm Corporation ("**MusclePharm**" or the "**Debtor**"). The Assets consist of substantially all of Debtor's assets, including various trademarks and domain names used in the branded sports nutrition industry and identified on Schedule 1 annexed hereto. The Assets do not include the assets set forth on Schedule 2 annexed hereto ("**Excluded Assets**"). The Assets will be sold in connection with the Debtor's chapter 11 bankruptcy case, Case No. 22-14422-NMC, pending before the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**").

1.    Auction and Sale Hearing. Subject to the approval of the Bankruptcy Court, the Debtor seeks to sell the Assets at a live (in person) auction sale at the Bankruptcy Court commencing on September 21, 2023, at 9:30 a.m., and September 22, 2023, at 9:30 a.m. (Pacific Daylight Time) (the "**Auction**"), with a Bankruptcy Court hearing immediately following the Auction to approve the results of the Auction (the "**Sale Hearing**"). Persons interested in purchasing any of the Assets must submit a Qualifying Bid (as defined herein) in writing to the Notice Parties (as defined below) by September 15, 2023, at 5:00 p.m., (Pacific Daylight Time), (the "**Bid Deadline**"), unless such date is extended in the discretion of the Debtor with the consent of the Official Committee of Unsecured Creditors of the Debtor (the "**Committee**") and Empery Tax Efficient, LP, in its capacity as Collateral Agent and Administrative Agent for MP Collateral, LLC ("**Empery**" and together with the Committee, the "**Consultation Parties**").[1] The Auction sale shall be subject to a determination of the Debtor, in consultation with the Consultation Parties, of the highest and best bid for the Assets. The notice parties (the "**Notice Parties**") are as follows:

**HILCO**

_____
_____
_____
_____
_____

**Counsel to the Debtor:**    SCHWARTZ LAW, PLLC
Attention: Samuel A. Schwartz
601 East Bridger Ave., Suite 200
Las Vegas, Nevada 89101
E-mail: saschwartz@nvfirm.com

---

[1]    Empery shall cease being a Consultation Party upon submission of a bid on the Assets or being selected as the Stalking Horse Bidder until such time that Empery has both been outbid and indicates it is no longer bidding at the Auction and notwithstanding that Empery is a Backup Bid.

| **Counsel to the Committee:** | PACHULSKI STANG ZIEHL & JONES LLP<br>Attention: Jason H. Rosell<br>One Sansome Street, 34th Floor, Suite 3430<br>San Francisco, CA  94104<br>E-mail:  jrosell@pszjlaw.com |
|---|---|
| **Counsel to Empery:** | GARMAN TURNER GORDON LLP<br>Attention: William M. Noall<br>7251 Amigo Street, Suite 210<br>Las Vegas, NV 89119<br>E-mail:  bknotices@gtg.legal and notices@emperyam.com |

2. <u>Marketing of the Assets</u>.  The Debtor's Assets shall be marketed for sale through the Due Diligence Deadline by Hilco Corporate Finance, LLC ("**Hilco**").  Hilco will create a confidential information memorandum, management presentation and manage a virtual data room for solicitation of potential buyers.  Hilco will also identify and recommend to the Debtor potential buyers and capital sources in connection with a transaction.  Interested parties may contact Hillco for information and access to the data room.

3. <u>Due Diligence</u>.  Interested parties shall have until August 31, 2023 (the "**Due Diligence Deadline**"), to review information related to the Debtor or the Assets and to inspect the Assets.  The Debtor shall not be obligated to furnish any due diligence information after the Due Diligence Deadline. The Debtor also reserves the right not to provide due diligence information or access to any interested party that the Debtor concludes in its reasonable business judgment is not likely to become a Qualified Bidder.

4. <u>Stalking Horse Bidder and Bid Protections</u>.  The Debtor is authorized in the reasonable exercise of its business judgment and in consultation with the Consultation Parties, to enter into a stalking horse agreement with a Qualified Bidder for the sale of Assets (the "**Stalking Horse Bidder**") and provide such Stalking Horse Bidder (i) a break-up fee of up to two percent (2%) of the Stalking Horse Bidder's initial cash bid (the "**Break-Up Fee**") and (ii) reimbursement of the documented reasonable, actual, out-of-pocket costs and expenses paid or incurred by such Stalking Horse Bidder directly incident to, under, or in connection with the negotiation, execution and performance under its stalking horse agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed $50,000.00 (the "**Expense Reimbursement**" and together with the Break-Up Fee, the "**Bid Protections**").  Should a Stalking Horse Bidder be selected, the Debtor will file a notice of the selection of the Stalking Horse Bidder with the Bankruptcy Court by September 8, 2023.

5. <u>Bidder Eligibility; Form and Contents of Bids</u>.

(a)     Any person who desires to bid for the purchase of any of the Assets shall deliver a Qualifying Bid to the Notice Parties by the Bid Deadline.  A bid shall constitute a "**Qualifying**

**Bid**" if such bid includes the following, in form and substance reasonably satisfactory to the Debtor, in consultation with the Consultation Parties:

      i.      fully executed transaction documents pursuant to which the bidder proposes to effectuate the sale, including a definitive purchase agreement generally in form and substance similar to the purchase agreement submitted by any selected Stalking Horse Bidder (and marked against the purchase agreement submitted by the Stalking Horse Bidder) setting forth all material terms and conditions of the proposed purchase, including, without limitation, the Asset(s) to be purchased, the proposed consideration to be paid by the bidder, a customary provision providing for a closing adjustment to account for changes in value between the time of the Auction and the closing of the sale with respect to all purchased cash or accounts receivable, and all other material terms of the proposed transaction (as may be modified by overbids, the "**Transaction Documents**");

      ii.      all bids must clearly specify whether or not the bidder desires to purchase receivables factored with MP Collateral, LLC through Empery as the DIP Factoring Agent, and all bids must clearly state the purchase price offered for the Assets (which do not include factored receivables), and if the bidder is offering to purchase outstanding receivables factored with factored with MP Collateral, LLC through Empery as the DIP Factoring Agent, the bid shall state that purchase price for the outstanding factored receivables shall be equal the amount of factored receivables outstanding, including accrued interest and other amounts chargeable under the Debtor's DIP Factoring Facility on the proposed closing date;

      iii.      written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, that, if the bidder is an entity specially formed for the purpose of effectuating the transaction, then the bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the transaction by the equity holder(s) of such bidder;

      iv.      a cash deposit in the amount of ten percent (10%) of the bid's proposed purchase price to a non-interest bearing escrow account to be identified and established by the Debtor (the "**Deposit**"); and

      v.      written evidence that the Debtor reasonably concludes demonstrates that the bidder has the necessary financial ability to close the transaction and provides adequate assurance of future performance under all Designated Contracts (defined below). Such information should include, *inter alia*, the following:

            a) contact names and numbers for verification of financing sources;

b) evidence of the bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

c) the bidder's current financial statements (audited if they exist); and

d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such bidder has the ability to close the transaction; provided, however, that the Debtor shall determine, in its reasonable discretion, in consultation with the Debtor's advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a bidder's financial qualifications.

(b)     Additionally, in order to constitute a Qualifying Bid:

i.     the transaction proposed by the Transaction Documents may not be subject to any contingencies, including due diligence; *provided, however*, the transaction may be subject to the entry of the order approving the transaction by the Bankruptcy Court; and

ii.     the Transaction Documents shall identify any executory contracts and unexpired leases of the Debtor that the bidder wishes to have assumed and assigned to it pursuant to the transaction (collectively, the "**Designated Contracts**").

(c)     Finally, in order to be deemed a Qualifying Bid, the Definitive Agreement must be accompanied by a letter affirmatively:

i.     setting forth a full disclosure of the identity of the bidder (and any other person(s) subject to any agreement, arrangement or understanding with such bidder in connection with the bid), the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtor involved in such bid;

ii.     stating that the bidder is prepared to purchase the Asset(s) upon the terms and conditions set forth in its Definitive Agreement;

iii.     summarizing the consideration proposed under the Definitive Agreement (i.e., cash and assumed liabilities);

iv.     stating the value of the consideration allocated to the purchase of accounts receivable (if any);

4

v.　　　stating the aggregate value of the proposed consideration (which statement of value shall not be binding on the Debtor or the Bankruptcy Court);

vi.　　　stating that the bidder's bid shall remain open and binding on the bidder until and unless (A) the Debtor, in consultation with the Consultation Parties, accepts a higher bid as an overbid and (B) such overbid is not selected as a back-up bid;  and

vii.　　　stating the form of Deposit (either cashier's check or cash) made by the bidder.

(d)　　　Each bidder who submits a Qualifying Bid shall be deemed a "**Qualified Bidder**."

(e)　　　Any term in these Bid Procedures to the contrary notwithstanding, Empery shall be allowed to credit bid MP Collateral's secured claim against the Debtor at the Auction for the Assets, consistent with the terms set forth in that certain Plan Support Agreement filed with the Court on May 19, 2023 at ECF No. 524, Exhibit 1 ("**PSA**"), as may be amended; *provided*, *however*, that Empery shall comply with all other requirements under these Bidding Procedures, except sections 5(a)(iii)-(v) and 5(c)(i) and (vii), to be deemed a Qualified Bidder.

6.　　　Evaluation of Bids. The Debtor, in consultation with the Consultation Parties,  shall determine whether a bid is a Qualified Bid, taking into determination any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the transaction on any actual or potential litigation; and (g) the net after-tax consideration to be received by the Debtor's estate (collectively, the "**Bid Assessment Criteria**").

7.　　　Selection of Highest or Best Qualifying Bid.  Within three (3) calendar days of each bidder's timely delivery of all required materials as detailed in the preceding paragraph, the Debtor shall notify each bidder, in writing, as to whether its bid has been deemed a Qualifying Bid.  At the conclusion of the bid selection process by the Debtor, which shall be no later than three (3) calendar days prior to the Sale Hearing, the Debtor shall inform each Qualified Bidder of the value of the highest or best Qualifying Bid.

8.　　　The Sale of the Assets. The Debtor shall file one or more motions to approve the sale(s) of the Asset(s) and the assumption and assignment of Designated Contracts no later than September 11, 2023.

9.　　　Bidding Restrictions at Auction.  Qualified Bidders may submit subsequent bids for the purchase of the Assets at the Auction, provided: (i) the initial bid at the Auction must exceed

5

the highest or best Qualifying Bid (including any applicable Bid Protections) by at least One Hundred Thousand Dollars ($100,000) (the "**Initial Overbid**"); (ii) each subsequent bid must exceed the previous bid by Fifty Thousand Dollars ($50,000) (the "**Bidding Increment**"); and (iii) any Qualified Bidder (other than Empery) who submits a subsequent bid at Auction in excess of its Qualifying Bid must provide evidence that it has the financial capability to consummate the transaction at the new, higher purchase price.  The Debtor, in consultation with the Consultation Parties, may modify the Initial Overbid and Bidding Increment (or otherwise amend the Bidding Procedures) at any time during the Auction.

10.    Selection of Winning Bidder and Back-Up Bidder.  At the conclusion of Auction, the Debtor, in consultation with the Consultation Parties and subject to the Bankruptcy Court's approval, shall determine (i) which bid constitutes the highest or best offer (the "**Winning Bid**" and such bidder, the "**Winning Bidder**"); and (ii) the next highest or best bid (the "**Back-Up Bid**" and such bidder, the "**Back-Up Bidder**").

11.    Bankruptcy Court Approval of the Winning Bid; Return of Deposits.  Promptly after the Bankruptcy Court's entry of an order approving the sale of the Assets, the Deposits submitted by all Qualifying Bidders (other than the Winning Bidder and the Back-Up Bidder) shall be returned to the respective Qualifying Bidders.  The Deposit of the Winning Bidder shall be applied to the sale price set forth in the Winning Bidder's Definitive Agreement, as may be modified by the Winning Bid.  If a Winning Bidder fails to consummate the purchase of the Assets designated in its Definitive Agreement, as may be modified by the Winning Bid, and such failure is not caused by the Debtor's failure to meet all closing conditions of the Winning Bidder's Definitive Agreement, the Deposit of such Winning Bidder shall be forfeited to the Debtor. Notwithstanding this forfeiture, the Debtor specifically reserves the right to seek all additional available damages from any defaulting Winning Bidder. In the event the Winning Bidder does not close on the sale of the Assets designated in such Winning Bidder's Definitive Agreement, the Debtor shall pursue a sale of the Assets to the Back-Up Bidder. The Debtor will retain the Back-Up Bidder's Deposit until the sale to the Winning Bidder closes and the Back-up Bidder shall remain obligated to close a sale transaction with the Debtor based on the Back-Up Bidder's Definitive Agreement until the Sale to the Winning Bidder closes. Within seven (7) calendar days of the closing of the Sale to the Winning Bidder, the Debtor shall return the Deposit to the Back-Up Bidder.

12.    Additional Procedures. The Debtor, in consultation with the Consultation Parties, may announce additional procedural rules for the submission of bids that are reasonable under the circumstances, so long as such rules are not inconsistent with these Bidding Procedures and subject to the review of the Bankruptcy Court.

13.    Consent to Jurisdiction. All Qualified Bidders, and all bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the United States Bankruptcy Court for the District of Nevada and waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or the construction and enforcement of the Transaction Documents.

# SCHEDULE 1

## Assets

DOCS_SF:108929.4 59184/001

INTELLECTUAL PROPERTY AND LICENSES; TRADE NAMES

A.    COPYRIGHTS

    None.

B.    PATENTS

    None.

C.    TRADEMARKS

| Country | Title | Application or Registration No. | Filing Date | Registration Date |
|---------|-------|--------------------------------|-------------|-------------------|
| USA | BCAA 3:1:2 THE FOUNDATION OF YOUR TEMPLE MP MUSCLEPHARM    4948843 | | 11/21/2013 | 5/3/2016 |
| USA | BIZZY DIET    4125619 | | 10/3/2011 | 4/10/2012 |
| USA | COMBAT 100% WHEY    6072063 | | 3/23/2016 | 6/9/2020 |
| USA | COMBAT BLACK    n/a | | 86512633 | n/a |
| USA | COMBAT 100% CASEIN    4756998 | | 2/21/2014 | 6/16/2015 |
| USA | COMBAT 100% ISOLATE    4913165 | | 7/29/2015 | 3/8/2016 |
| USA | CONFIDENCE BUILT HERE    3969126 | | 5/4/2010 | 5/31/2011 |
| USA | Fitmiss    4444437 | | 1/27/2012 | 12/3/2013 |
| USA | Fitmiss    n/a | | 6/23/2021 | n/a |
| USA | FITMISS BURN    4716743 | | 1/30/2012 | 4/7/2015 |
| USA | FITMISS DELIGHT    4498164 | | 9/7/2013 | 3/18/2014 |
| USA | FUEL THE ATHLETE INSIDE    3969123 | | 5/3/2010 | 5/31/2011 |
| USA | FUEL YOUR ACTIVE LIFESTYLE    4077223 | | 6/9/2011 | 12/27/2011 |
| USA | MP    4186812 | | 1/4/2012 | 8/7/2012 |
| USA | MP (stylized black and white)    5200085 | | 12/22/2016 | 5/9/2017 |
| USA | MP Essentials    5746636 | | 12/19/2017 | 5/7/2019 |

Sched. II-2

| | | | | |
|---|---|---|---|---|
| USA | MP Stealth | n/a | 12/19/2017 | n/a |
| USA | MUSCLEPHARM | 3933441 | 12/8/2009 | 3/22/2011 |
| USA | MUSCLEPHARM SPORTSWEAR | 4077205 | 6/3/2011 | 12/27/2011 |
| USA | MUSCLEPHARM ENERGY SPORT ZERO | 5191681 | 12/23/2014 | 4/25/2017 |
| USA | MP MUSCLEPHARM | 4767066 | 4/29/2014 | 7/7/2015 |
| USA | CREATINE BLACK | 5284138 | 10/10/2016 | 9/12/2017 |
| USA | CLEAN MASS | 5179223 | 2/10/2016 | 4/11/2017 |
| USA | VASO SPORT | 5083129 | 6/22/2015 | 11/15/2016 |
| USA | OXYSPORT | 5032380 | 6/18/2014 | 8/30/2016 |
| USA | #FUELYOURGRIND | 4970643 | 1/23/2015 | 5/31/2016 |
| USA | REAL ATHLETES. REAL SCIENCE. | 4924979 | 11/11/2013 | 3/29/2016 |
| USA | Z-CORE PM | 4922324 | 7/29/2015 | 3/22/2016 |
| USA | CLA CORE | 4913163 | 7/29/2015 | 3/8/2016 |
| USA | CARNITINE CORE | 4913160 | 7/29/2015 | 3/8/2016 |
| USA | THE FOUNDATION OF YOUR TEMPLE | 4891161 | 1/16/2014 | 1/26/2016 |
| USA | BUILD YOUR LEGACY | 4879294 | 1/13/2014 | 1/5/2016 |
| USA | STRONG IS THE NEW SEXY | 4709769 | 4/4/2014 | 3/24/2015 |
| USA | HYBRID SERIES | 4694743 | 4/25/2014 | 3/3/2015 |
| USA | LIVE SHREDDED | 4077218 | 6/9/2011 | 12/27/2011 |
| USA | WEAK ENDS HERE | 4317212 | 9/19/2012 | 4/9/2013 |
| USA | ENERGY ON THE GO | 4131623 | 8/23/2011 | 4/24/2012 |
| USA | RE-CON | 3934299 | 7/19/2010 | 3/22/2011 |
| European Union | DR⭕PZ ENERGY | | 14/05/2014 | |
| European Union | MP | 012875985 | 14/05/2014 | 29/06/2017 |
| European Union | MUSCLEPHARM | 012876058 | 14/05/2014 | 09/01/2015 |
| European Union | COCO PROTEIN NATURE'S RECOVERY DRINK | 013713656 | 05/02/2015 | 19/06/2015 |
| European Union | MP | 017818048 | 15/02/2018 | 29/01/2019 |
| European | ASSAULT | | 05/02/2015 | |

| Union | | | | |
|---|---|---|---|---|
| European Union | ASSAULT in Class 5 | | 14/11/2018 | |
| European Union | COMBAT CRUNCH BAR | | 05/02/2015 | |
| European Union | COMBAT PROTEIN POWDER | 013712344 | 05/02/2015 | 24/06/2015 |
| European Union | FITMISS | 014594477 | 24/09/2015 | 12/02/2016 |
| European Union | MUSCLEPHARM | 014580625 | 22/09/2015 | 27/04/2016 |
| European Union | MUSCLEPHARM | 017817867 | 15/02/2018 | 29/01/2019 |

D.    OTHER PROPRIETARY RIGHTS

   None.

E.    TRADE NAMES

   MusclePharm

   MSLP

F.    NAME OF, AND EACH TRADE NAME USED BY, EACH PERSON FROM WHICH A GRANTOR HAS ACQUIRED ANY SUBSTANTIAL PART OF THE COLLATERAL WITHIN THE PRECEDING FIVE YEARS

   None.

MusclePharm Case No. 22-1442- NMC

## Domain Names for MusclePharm Corporation

AMINOONE.COM
COCONUT-PROTEIN.COM
COCONUTPROTEIN.CO
COCONUTPROTEIN.INFO
COCONUTPROTEIN.NET
COCONUTPROTEINDIET.COM
COCONUTPROTEINPOWDER.COM
COCONUTPROTEINSHAKE.COM
COCOPROTEIN.COM
COMBATCRUNCH.COM
COMBATCRUNCH.INFO
COMBATCRUNCH.NET
COMBATCRUNCH.ORG
COMBATPROBAR.COM
COMBATPROTEIN.COM
COMBATPROTEIN.INFO
COMBATPROTEIN.NET
COMBATPROTEIN.ORG
FITFOODS.BIZ
FITFOODS.CO
FITFOODS.RECIPES
FITMISS.COM
FUELSPORT.COM
IAMFITMISS.COM
IAMFITMISS.NET
IAMFITMISS.ORG
IRON-ADDICT.COM
IRONADDICT.BIZ
IRONADDICT.CA
IRONADDICT.CO
IRONADDICT.CO
IRONADDICT.ORG
IRONADDICT.US
MMAELITEPOWEREDBYMUCLEPHARM.COM
MMAELITEPOWEREDBYMUCLEPHARM.NET
MMAELITEPOWEREDBYMUSCLEPHARM.COM
MMAELITESERIES.COM
MMAELITESERIES.NET
mmusclepharm.com
MPFITFOODS.CA
MPFITFOODS.CO
MPFITFOODS.COM
MPFITFOODS.INFO
MPFITFOODS.NET
MPFITFOODS.ORG
MPFITFOODS.US
mpnatural-series.com
mpnaturalseries.com
MPPOWERED.COM
MPPOWERED.NET
MPSSI.BIZ
MPSSI.CO
MPSSI.COM
MPSSI.NET
MPSSI.ORG
MPTRAINER.COM
mussclepharm.com
muscle-pharm.co
muscle-pharm.org
musclephaarm.com
musclepharm.cloud
musclepharm.club
MUSCLEPHARM.COM
musclepharm.info
musclepharm.mobi
musclepharm.net
musclepharm.pro
musclepharm.tech
musclepharm.website
musclepharm.xyz
musclepharmcorp.biz
musclepharmcorp.club
musclepharmcorp.com
MUSCLEPHARMCORP.COM
musclepharmcorp.com.cn
musclepharmcorp.info
musclepharmcorp.mobi
musclepharmcorp.net
musclepharmcorp.net.cn
musclepharmcorp.online
musclepharmcorp.org.cn
musclepharmcorp.shop
musclepharmcorp.us
MUSCLEPHARMCROSSFIT.COM
MUSCLEPHARMED.COM
musclepharmm.com
MUSCLEPHARMPOWERED.COM
MUSCLEPHARMPOWERED.NET
musclepharms.com
MUSCLEPHARMU.BIZ
MUSCLEPHARMU.CO
MUSCLEPHARMU.COM
musclepharrm.com
musclepharm.com
musclephparm.com
musclpharm.com
mussclepharm.com
MYCOCOPROTEIN.COM
MYCOCOPROTEIN.INFO
MYCOCOPROTEIN.NET
NATURESPORT.CO
NATURESPORT.COM
NATURESPORT.NET
NATURESPORT.ORG
NATURESSPORT.COM
POWEREDBYMP.COM
POWEREDBYMP.NET
POWEREDBYMUCLEPHARM.COM
POWEREDBYMUCLEPHARM.NET
SKINNYMISS.COM
thepharm.la
WORKOUTDRINK.COM
WORKOUTDRINK.NET

# SCHEDULE 2

# Excluded Assets

## SCHEDULE 2

### Excluded Assets

1.      The "Coco Protein" trademark and related intellectual property.

2.      Unless otherwise agreed to by the Debtor and the Committee, the estate's causes of action, including, but not limited to, (i) any claims against the Debtor's current and former directors and officers and (ii) any claims arising under chapter 5 of the Bankruptcy Code; *provided*, *however*, the sale may include preference claims against trade vendors that, upon determination by the Debtor and the Committee, are less than $100,000 as to each trade vendor.

3.      Unless otherwise agreed to by White Winston, the estate's causes of action (and associated rights to director and officer insurance) against directors and officers for breaches of their fiduciary duties of loyalty, care, and good faith that arose on or before December 31, 2018.

# EXHIBIT 2

# EXHIBIT 2

**EXHIBIT 1**

**BIDDING PROCEDURES**

The following procedures (the "**Bidding Procedures**") shall govern the submission of bids for the purchase of any or all of the assets, other than the Excluded Assets (defined below) set forth on Schedule 2 annexed hereto (the "**Assets**") of MusclePharm Corporation ("~~MuscleParm~~MusclePharm" or the "**Debtor**").  The Assets consist of substantially all of Debtor's ~~Assets~~assets, including ~~cash which will be subject to a customary closing adjustment, with the exclusion of the following Assets~~various trademarks and domain names used in the branded sports nutrition industry and identified on Schedule 1 annexed hereto.  The Assets do not include the assets set forth on Schedule 2 annexed hereto ("**Excluded Assets**"): ~~(i) the sale shall not include the intellectual property for Coco Protein which will remain property of the estate ("~~**~~Excluded IP~~**~~"); (ii) the sale shall not include any of the estate's causes of action, unless otherwise agreed to by the Debtor and the Committee, including, but not limited to, any claims against the current or former directors and officers and any claims arising under chapter 5 of the Bankruptcy Code; provided, however, the sale may include preference claims against going forward trade vendors that, upon determination by the Committee, are less than $100,000 as to each trade vendor; provided further, however, that, unless otherwise agreed to by White Winston, the sale shall not include the White Winston D&O Claims (defined herein); and (iii) "~~**~~White Winston D&O Claims~~**~~" means the estate's causes of action (and associated rights to director and officer insurance) against directors and officers for breaches of their fiduciary duties of loyalty, care, and good faith that arose on or before December 31, 2018.~~").  The Assets will be sold in connection with the Debtor's ~~Chapter~~chapter 11 bankruptcy case, Case No. 22-14422-~~nmc~~NMC, pending before the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**").

1.    Auction and Sale Hearing.  Subject to the approval of the Bankruptcy Court, the Debtor seeks to sell the Assets at a live (in person) auction sale at the Bankruptcy Court commencing on September 21, 2023, at 9:30 a.m., and September 22, 2023, at 9:30 a.m. (Pacific Daylight Time) (the "**Auction**"), with a Bankruptcy Court hearing immediately following the Auction to approve the results of the Auction (the "**Sale Hearing**"). Persons interested in purchasing any of the Assets must submit a Qualifying Bid (as defined herein) in writing to the Notice Parties (as defined below) by September 15, 2023, at 5:00 p.m., (Pacific Daylight Time), (the "**Bid Deadline**"), unless such date is extended in the discretion of the Debtor with the consent of the Official Committee of Unsecured Creditors of the Debtor (the "**Committee**") and Empery Tax Efficient, LP, in its capacity as Collateral Agent and Administrative Agent for MP Collateral, LLC ("**Empery**" and together with the Committee, the "**Consultation Parties**").[1]  The Auction sale shall be subject to a determination of the Debtor, in consultation with the Consultation Parties, of the highest and best bid for the Assets. The notice parties (the "**Notice Parties**") are as follows:

~~MusclePharm Corporation~~
~~c/o Samuel A. Schwartz, Esq.~~

---

[1]    Empery shall cease being a Consultation Party upon submission of a bid on the Assets or being selected as the Stalking Horse Bidder until such time that Empery has both been outbid and indicates it is no longer bidding at the Auction and notwithstanding that Empery is a Backup Bid.

DOCS_SF:108929.4 59184/001

Schwartz Law, PLLC
601 East Bridger Ave.
Suite 200
Las Vegas, Nevada 89101

2.      Expression of Interest.  Any person interested in reviewing information pertaining to the Assets should contact the Debtor's bankruptcy counsel, Schwartz Law, PLLC, 601 E. Bridger Ave., Las Vegas, Nevada 89101, to receive preliminary information relating to the Debtor's proposed sale of the Assets.

**HILCO**                              _____
                                       _____
                                       _____
                                       _____
                                       _____

**Counsel to the Debtor:**             SCHWARTZ LAW, PLLC
                                       Attention: Samuel A. Schwartz
                                       601 East Bridger Ave., Suite 200
                                       Las Vegas, Nevada 89101
                                       E-mail:  saschwartz@nvfirm.com

**Counsel to the Committee:**          PACHULSKI STANG ZIEHL & JONES LLP
                                       Attention: Jason H. Rosell
                                       One Sansome Street, 34th Floor, Suite 3430
                                       San Francisco, CA  94104
                                       E-mail:  jrosell@pszjlaw.com

**Counsel to Empery:**                 GARMAN TURNER GORDON LLP
                                       Attention: William M. Noall
                                       7251 Amigo Street, Suite 210
                                       Las Vegas, NV 89119
                                       E-mail:  bknotices@gtg.legal and notices@emperyam.com

2.      Marketing of the Assets.  The Debtor's Assets shall be marketed for sale through the Due Diligence Deadline by Hilco Corporate Finance, LLC ("**Hilco**").  Hilco will create a confidential information memorandum, management presentation and manage a virtual data room for solicitation of potential buyers.  Hilco will also identify and recommend to the Debtor potential buyers and capital sources in connection with a transaction.  Interested parties may contact Hilco for information and access to the data room.

3.      Due Diligence.  Interested parties shall have from the date the Bankruptcy Court approves these Bidding Procedures and through [XXX], until August 31, 2023 (the "**Due Diligence Deadline**"), to review information related to the Debtor or the Assets and to inspect the Assets.  The Debtor shall not be obligated to furnish any due diligence information after the Due

2

Diligence Deadline. The Debtor also reserves the right not to provide due diligence information or access to any interested party that the Debtor concludes in its reasonable business judgment is not likely to become a Qualified Bidder.——

4.      Stalking Horse Bidder and Bid Protections.  The Debtor is authorized in the reasonable exercise of its business judgment and in consultation with the Consultation Parties, to enter into a stalking horse agreement with a Qualified Bidder for the sale of Assets (the "**Stalking Horse Bidder**") and provide such Stalking Horse Bidder (i) a break-up fee of up to two percent (2%) of the Stalking Horse Bidder's initial cash bid (the "**Break-Up Fee**") and (ii) reimbursement of the documented reasonable, actual, out-of-pocket costs and expenses paid or incurred by such Stalking Horse Bidder directly incident to, under, or in connection with the negotiation, execution and performance under its stalking horse agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed $50,000.00 (the "**Expense Reimbursement**" and together with the Break-Up Fee, the "**Bid Protections**").  Should a Stalking Horse Bidder be selected, the Debtor will file a notice of the selection of the Stalking Horse Bidder with the Bankruptcy Court by September 8, 2023.

4.5.      Bidder Eligibility; Form and Contents of Bids.

()(a)      Any person who desires to bid for the purchase of any of the Assets shall deliver a Qualifying Bid to the Notice Parties by [XXX].the Bid Deadline.  A bid shall constitute a "**Qualifying Bid**" if such bid includes the following, in form and substance reasonably satisfactory to the Debtors:Debtor, in consultation with the Consultation Parties:

i.      fully executed transaction documents pursuant to which the bidder proposes to effectuate the sale, including a definitive purchase agreement generally in form and substance similar to the purchase agreement submitted by any selected Stalking Horse Bidder (and marked against the purchase agreement submitted by the Stalking Horse Bidder) setting forth all material terms and conditions of the proposed purchase, including, without limitation, the Asset(s) to be purchased, the proposed consideration to be paid by the bidder, a customary provision providing for a closing adjustment to account for changes in value between the time of the Auction and the closing of the sale with respect to all purchased cash or accounts receivable, and all other material terms of the proposed transaction (as may be modified by overbids, athe "**Transaction Documents**");

-.ii.      all bids must clearly specify whether or not the bidder desires to purchase receivables factored with MP Collateral, LLC through Empery as the DIP Factoring Agent, and all bids must clearly state the purchase price offered for the Assets (which do not include factored receivables), and if the bidder is offering to purchase outstanding receivables factored with factored with MP Collateral, LLC through Empery as the DIP Factoring Agent, the bid shall state that purchase price for the outstanding factored receivables shall be equal the amount of factored

3

receivables outstanding, including accrued interest and other amounts chargeable under the Debtor's DIP Factoring Facility on the proposed closing date;

iii.        written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, that, if the ~~Bidder~~bidder is an entity specially formed for the purpose of effectuating the transaction, then the ~~Bidder~~bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the transaction by the equity holder(s) of such ~~Bidder~~bidder;

iv.        a cash deposit in the amount of ten percent (10%) of the bid's proposed purchase price to a non-interest bearing escrow account to be identified and established by the Debtor (the "**Deposit**"); and

v.        written evidence that the Debtor reasonably concludes demonstrates that the bidder has the necessary financial ability to close the transaction and provides adequate assurance of future performance under all Designated Contracts (defined below).  Such information should include, *inter alia*, the following:

> a) contact names and numbers for verification of financing sources;
>
> b) evidence of the bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;
>
> c) the bidder's current financial statements (audited if they exist); and
>
> d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such bidder has the ability to close the transaction; provided, however, that the Debtor shall determine, in its reasonable discretion, in consultation with the Debtor's advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a bidder's financial qualifications.

(b)        Additionally, in order to constitute a Qualifying Bid:

i.        the transaction proposed by the Transaction Documents may not be subject to any contingencies, including due diligence; *provided, however*, the transaction may be subject to the entry of the order approving the transaction by the Bankruptcy Court; and

4

ii.        the Transaction Documents shall identify any executory contracts and unexpired leases of the Debtor that the bidder wishes to have assumed and assigned to it pursuant to the transaction (collectively, the "**Designated Contracts**").

(c)    Finally, in order to be deemed a Qualifying Bid, the Definitive Agreement must be accompanied by a letter affirmatively:

i.        setting forth a full disclosure of the identity of the bidder (and any other person(s) subject to any agreement, arrangement or understanding with such bidder in connection with the bid), the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtor involved in such bid;

ii.        stating that the bidder is prepared to purchase the Asset(s) upon the terms and conditions set forth in its Definitive Agreement;

iii.        summarizing the consideration proposed under the Definitive Agreement (i.e., cash and assumed liabilities);

iv.        stating the value of the consideration allocated to the purchase of accounts receivable (if any);

v.        stating the aggregate value of the proposed consideration (which statement of value shall not be binding on the Debtor or the Bankruptcy Court);

vi.        stating that the bidder's bid shall remain open and binding on the bidder until and unless (A) the Debtor, in consultation with the Consultation Parties, accepts a higher bid as an overbid and (B) such overbid is not selected as a back-up bid; and

vii.        stating the form of Deposit (either cashier's check or cash) made by the bidder.

(d)    Each bidder who submits a Qualifying Bid shall be deemed a "**Qualified Bidder**."

(e)    Any term in these Bid Procedures to the contrary notwithstanding, Empery Tax Efficient, LP, in its capacity as Collateral Agent and Administrative Agent ("**Empery**") shall be allowed to credit bid itsMP Collateral's secured claim against the Debtor in accordanceat the Auction for the Assets, consistent with the terms set forth in that certain Plan Term Sheet,Support Agreement filed with the Court on May 819, 2023 at ECF No. 478524, Exhibit 1, ("**PSA**"), as may be amended; *provided*, *however*, that Empery compliesshall comply with all other requirements under these Bidding Procedures, except sections 5(a)(iii)-(v) and 5(c)(i) and (vii), to be deemed a Qualified Bidder.

5

5.6.    Evaluation of Bids. The Debtor, in consultation with the Consultation Parties, shall determine whether a bid is a Qualified Bid, taking into determination any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the transaction on any actual or potential litigation; and (g) the net after-tax consideration to be received by the Debtor's estate (collectively, the "**Bid Assessment Criteria**").

6.7.    Selection of Highest or Best Qualifying Bid.  Within two (2) businessthree (3) calendar days of each bidder's timely delivery of all required materials as detailed in the preceding paragraph, the Debtor shall notify each bidder, in writing, as to whether its bid has been deemed a Qualifying Bid.  At the conclusion of the bid selection process by the Debtor, which shall be no later than three (3) businesscalendar days prior to the Sale Hearing, the Debtor shall inform each Qualified Bidder of the value of the highest or best Qualifying Bid and the identity of the Qualified Bidder who submitted the highest or best Qualified Bid.   .

8.    The Sale of the Assets. The Debtor shall file one or more motions to approve the sale(s) of the Asset(s) and the assumption and assignment of Designated Contracts no later than [XXX]. The Sale Hearing shall also serve as an auction (the "**Auction**").September 11, 2023.

9.    Bidding Restrictions at Auction.  Qualified Bidders may submit subsequent bids for the purchase of the Assets at the Auction, provided: (i) the initial bid at the Auction must exceed the highest or best Qualifying Bid (including any applicable Bid Protections) by at least five percent (5%)(One Hundred Thousand Dollars ($100,000) (the "**Initial Overbid**"); (ii) each subsequent bid must exceed the previous bid by at least three percent (3%)Fifty Thousand Dollars ($50,000) (the "**Bidding Increment**"); and (iii) any QualifyingQualified Bidder (other than Empery) who submits a subsequent bid at the Sale HearingAuction in excess of its Qualifying Bid must provide evidence that it has the financial capability to consummate the transaction at the new, higher purchase price.  The Debtor, in consultation with the Consultation Parties, may modify the Initial Overbid and Bidding Increment (or otherwise amend the Bidding Procedures) at any time during the Auction.

7.10.    Selection of Winning Bidder and Back-Up Bidder.  At the conclusion of Auction, the Debtor, in consultation with the Consultation Parties and subject to the Bankruptcy CourtCourt's approval, shall determine (i) which bid constitutes the highest or best offer (the "**Winning Bid**" and such bidder, the "**Winning Bidder**"); and (ii) the next highest or best bid (the "**Back-Up Bid**" and such bidder, the "**Back-Up Bidder**").

8.11.    Bankruptcy Court Approval of the Winning Bid; Return of Deposits.  Promptly after the Bankruptcy Court's entry of an order(s) approving the sale of the Debtor's Asset(s),Assets, the Deposits submitted by all Qualifying Bidders (other than the bid of the Winning Bidder(s) and the Back-Up Bidder, as defined below) shall be returned to the respective

6

Qualifying Bidders.  The Deposit(s) of the Winning Bidder(s) shall be applied to the sale price set forth in the Winning Bidder's Definitive Agreement, as may be modified by the Winning Bid.  If a Winning Bidder fails to consummate the purchase of the ~~Asset(s)~~Assets designated in its Definitive Agreement, as may be modified by the Winning Bid, and such failure is not caused by the Debtor's failure to meet all closing conditions of the Winning Bidder's Definitive Agreement, the Deposit of such Winning Bidder shall be forfeited to the Debtor.  Notwithstanding this forfeiture, the Debtor specifically reserves the right to seek all additional available damages from any defaulting Winning Bidder. In the event the Winning Bidder does not close on the sale of the ~~Asset(s)~~Assets designated in such Winning Bidder's Definitive Agreement, the Debtor shall pursue a sale of the ~~Asset(s)~~Assets to the Back-Up Bidder. The Debtor will retain the Back-Up Bidder's Deposit until the sale to the Winning Bidder closes and the Back-up Bidder shall remain obligated to close a sale transaction with the Debtor based on the Back-Up Bidder's Definitive Agreement until the Sale to the Winning Bidder closes. Within ~~two business~~seven (7) calendar days of the closing of the Sale to the Winning Bidder, the Debtor shall return the Deposit to the Back-Up Bidder.

~~9.      Stalking Horse Bidder, Break-up Fee and Expense Reimbursement.  The Debtor is authorized, in the reasonable exercise of its business judgment, to enter into a stalking horse agreement with a Qualified Bidder for the sale of Assets (the "**Stalking Horse Bidder**") and provide such Stalking Horse Bidder (i) a break-up fee of up to two percent (2%) of the Stalking Horse Bidder's initial bid (the "**Break-Up Fee**"), (ii) reimbursement of the reasonable, actual, out-of-pocket costs and expenses paid or incurred by such Stalking Horse Bidder directly incident to, under, or in connection with the negotiation, execution and performance under its stalking horse agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed two percent (2%) of the Stalking Horse Bidder's initial bid (the "**Expense Reimbursement**"), and (iii) an initial overbid protection such that the minimum initial amount of any overbid for the Assets must be of a value equal to the sum of (x) the Break-Up Fee, (y) the Expense Reimbursement, and (z) the amount that is three percent (3%) greater than the initial bid of the Stalking Horse Bidder or such other amount determined by the Debtors in their discretion (the collectively with the Break-Up Fee and the Expense Reimbursement, the "**Stalking Horse Bid Protections**").~~

~~10.~~12.  Additional Procedures. The Debtor, in consultation with the Consultation Parties, may announce additional procedural rules for the submission of bids that are reasonable under the circumstances, so long as such rules are not inconsistent with these Bidding Procedures and subject to the review of the Bankruptcy Court.

~~11.~~13.  Consent to Jurisdiction. All Qualified Bidders, and all bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the United States Bankruptcy Court for the District of Nevada and waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or the construction and enforcement of the Transaction Documents.

7

## SCHEDULE 1

### Assets

DOCS_SF:108929.4 59184/001

## SCHEDULE 2

## Excluded Assets

DOCS_SF:108929.4 59184/001