GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Empery Tax Efficient, LP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: | Case No.: 22-14422-NMC |
|---|---|
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Date: July 31, 2023<br>Time: 10:00 a.m. |

**MOTION TO COMPEL COMPLIANCE WITH DISCOVERY REQUESTS TO RYAN DREXLER**

Empery Tax Efficient, LP ("Empery"), by its counsel of record, Garman Turner Gordon LLP, hereby moves (the "Motion") for entry of an order compelling Ryan Drexler ("Drexler") to respond to discovery requests pursuant to Fed. R. Civ. P. 37(a)(1) and (a)(3)(B)(iii) and (iv) and ordering that Drexler respond to depositions questions on the same topics addressed herein.

This Motion is made and based upon the following Memorandum of Points and Authorities, the declaration of Teresa M. Pilatowicz (the "Pilatowicz Decl."), the papers and pleadings on file, judicial notice of which is respectfully requested pursuant to Federal Rule of Evidence 201, and such further evidence and argument that may be presented and considered by this Court at any hearing on the Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

In furtherance of his patently baseless *Motion for the Appointment of a Chapter 11 Trustee* (the (the "Trustee Motion"), Drexler adds insult to injury by blatantly abusing the discovery process. On the one hand, Drexler has embarked on a fishing expedition in the vain hope of contriving some support for his groundless allegations while on the other, he has all but refused to respond to Empery's limited discovery requests which seek information directly related to the allegations that Drexler has made in the Trustee Motion—despite the fact that he has repeatedly assured the Court that his Trustee Motion is supported.

First, Drexler unilaterally declines to respond to numerous requests alleging relevance objections even though these requests clearly relate to the parties' respective claims and defenses. These objections are a mere pretext to prevent the disclosure of Drexler's prepetition mismanagement of Musclepharm Corporation ("Debtor") and his self-serving machinations during this Chapter 11 Case. Drexler, however, may not withhold relevant information simply because those disclosures contradict and undermine the false narrative in his Trustee Motion.

With respect to Empery's straight forward document requests, for the very few requests that Drexler agreed to produce any documents at all, Drexler belatedly provided an extremely limited production which fails to provide any colorable basis to continue to maintain the Trustee Motion. To be sure, while previously claiming that he had substantial evidence of his allegations, there is nothing that has been provided that would support the baseless allegations that have been made in the Trustee Motion.

Drexler's answers to Empery's interrogatories are likewise deficient. Again, Drexler's Trustee Motion includes numerous, specific, albeit baseless, allegations of misconduct by various persons and entities involved in this case, including Empery. Yet his interrogatory answers fail to adequately identify any actual facts related to these allegations but instead rely on his own personal opinions and theories regarding the Debtor's financial affairs.

Based on the foregoing, and as more fully set forth herein, Empery requests that the Court

enter an order compelling Drexler's immediate production of all documents and overruling each of his objections, and to clarify prior to Drexler's deposition that all pre-petition matters are relevant and therefor subject to discovery.

## II.
## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, Empery consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## BACKGROUND

1. On December 15, 2022, Debtor filed the above-captioned case (the "Chapter 11 Case") just minutes before Empery's scheduled Article 9 foreclosure sale. See ECF No. 1.

2. On April 28, 2023, Drexler filed his Trustee Motion. ECF No. 447.

3. In the Trustee Motion, Drexler primarily alleges that the Debtor's gross mismanagement and Empery's manipulation of this case have significantly reduced the value and profitability of the Debtor. Among other things, Drexler has specifically alleged that: (1) Empery is "misusing its power" [ECF No. 477, p. 3:25]; (2) "at least one supplier of protein power who is a member of the Committee has been charging the Debtor above-market prices" [ECF No. 4:24-25], (3) "this kind of price gouging from a member of the Committee is an effort to recoup pre-petition claims and losses" [ECF No. 477, 5:1-2], and (4) Empery has acted "to depress the Debtor's value and create the environment for a low-value 363 sale of the Debtor's assets" [ECF No. 447, 17:15-16]]. Drexler also argues that the fees and costs that the estate is incurring are a result of some sort of mismanagement or because of Empery's involvement [ECF No. 477, pp. 10-11].

4. On July 5, 2023, Empery served Drexler with its *First Set of Interrogatories to*

*Ryan Drexler* ("Interrogatories") and *First Set of Requests for Production of Documents to Ryan Drexler* ("Requests for Production," and with the Interrogatories, the "Discovery Requests"). The Discovery Requests consist of twenty-one Interrogatories and twenty-two Requests for Production, each aimed at discovering what, if any, evidence exists to support Drexler's theories. See Pilatowicz Decl. ¶ 4, Exs. "1" and "2."

5. On July 17, 2023, Empery received *Ryan Drexler's Objections to Empery Tax Efficient, LP's First Set of Interrogatories and Requests for Production* (the "Objections") wherein Drexler set forth his general objections and anticipated specific objections to the Discovery Requests. See Pilatowicz Decl. ¶ 5, Ex. "3."

6. On July 19, 2023, Empery received *Ryan Drexler's Responses to Empery Tax Efficient, LP's First Set of Interrogatories and Requests for Production* (the "Drexler Responses"), but Drexler did not, at that time, produce any responsive documents. See Pilatowicz Decl. ¶ 6, Ex. "4."

7. Drexler objected to and declined to provide any response to the following Discovery Requests (collectively, the "Unanswered Requests"):

| Discovery Request | Objection |
|---|---|
| **Interrogatory No. 6:** Identify and describe any complaints received from Costco related to Debtor's products before December 14, 2022, including but not limited to, the nature of the complaints and the resolution of the complaint. | Drexler objects to this interrogatory because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion because it requests information about the Debtor's pre-petition business affairs. ***Drexler does not anticipate responding to this interrogatory.*** |
| **Interrogatory No. 12:** Describe all communications You had with any party related to DIP financing for Debtor. | Drexler objects to this interrogatory because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this interrogatory improperly seeks information relating to allegations in other pending bankruptcy and non-bankruptcy matters, as well as to allegations in threatened matters. ***Drexler does not anticipate responding to this interrogatory***. |

| | |
|---|---|
| **Interrogatory No. 13:** As it pertains to the Debtor's bankruptcy case, identify the date of any settlement offers made by You to any other party to the bankruptcy proceedings and the terms of those settlement offers. | Drexler objects to this interrogatory because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion, and it seeks information which is not admissible in evidence nor reasonably calculated to lead to the discovery of admissible evidence. *Drexler does not anticipate responding to this interrogatory.* |
| **Interrogatory No. 16:** Describe in detail all disputes that Debtor had with vendors when You were Debtor's CEO, including but not limited to the identity of the vendor, the nature of the dispute, and the resolution of the dispute. | Drexler objects to this interrogatory because it is vague and ambiguous in that "vendor" is not defined and has an unclear scope. Drexler further objects to this interrogatory because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. *Drexler does not anticipate responding to this interrogatory.* |
| **Interrogatory No. 17:** When did you become aware of the allegations against defendants Brian H. Casutto, Matthew J. Zucco, and Kevin R. Harris, as alleged in Case No. 23-cv-05104? | Drexler objects to this interrogatory as irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this interrogatory improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well as to allegations in threatened matters. *Drexler does not anticipate responding to this interrogatory.* |
| **Request for Production No. 8:** Please produce all communications related to any investigation by the United States Security Exchange Commission into You or Debtor since January 1, 2018. | Drexler objects to this request for production as overbroad, unduly burdensome, and irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. Drexler further objects to this request for production to the extent it seeks information subject to the attorney-client privilege. Drexler further objects to this request for production to the extent it requests information outside his possession, custody, or control. *Drexler does not anticipate responding to this request for production.* |

| | |
|---|---|
| **Request for Production No. 9**: Please produce all communications between You and White Winston Select Asset Funds, LLC, including its agents and counsel, since April 1, 2022. | Drexler objects to this request for production because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion because it requests information about the Debtor's pre-petition business affairs. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. ***Drexler does not anticipate responding to this request for production.*** |
| **Request for Production No. 10**: Please produce all communications between You and the Unsecured Creditor's Committee, including each of its members and counsel, since January 1, 2022. | Drexler objects to this request for production because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion because it requests information about the Debtor's pre-petition business affairs. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. ***Drexler does not anticipate responding to this request for production.*** |
| **Request for Production No. 12**: Please produce all documents and communications between You and any third-party regarding potential resolution of any claims held by You against Debtor, including but not limited to causes of action and proofs of claim, since December 14, 2022. | Drexler objects to this request for production because it is irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. Drexler further objects to this request for production to the extent it seeks documents and communications protected by the attorney-client privilege or documents subject to the work-product doctrine. This request for production is also objected to because it seeks information which is not admissible in evidence nor reasonably calculated to lead to the discovery of admissible evidence. ***Drexler does not anticipate responding to this request for production***. |

| | |
|---|---|
| **Request for Production No. 15:** Produce all communications, including emails and text messages, with Brian Casutto since January 1, 2018. | Drexler objects to this request for production as overbroad, unduly burdensome, and irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. Drexler further objects to this request for production to the extent it requests information outside his possession, custody, or control. ***Drexler does not anticipate responding to this request for production.*** |
| **Request for Production No. 16:** Produce all documents and communications in Your custody and control related to Empery or its agents, including but not limited to Ryan Lane and Tim Silver. | Drexler objects to this request for production as overbroad, unduly burdensome, and irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. Drexler further objects to this request for production to the extent it requests information outside his possession, custody, or control. ***Drexler does not anticipate responding to this request for production.*** |
| **Request for Production No. 17:** Produce all communications, including emails and text messages, with Matthew Zucco since January 1, 2018. | Drexler objects to this request for production as overbroad, unduly burdensome, and irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. Drexler further objects to this request for production to the extent it requests information outside his possession, custody, or control. ***Drexler does not anticipate responding to this request for production.*** |

| | |
|---|---|
| **Request for Production No. 18:** Produce all communications, including emails and text messages, with Kevin R. Harris since January 1, 2018. | Drexler objects to this request for production as overbroad, unduly burdensome, and irrelevant to any party's claim or defense relating to the evidentiary hearing on the Trustee Motion. In addition, this request for production improperly seeks information relating to allegations in other pending, non-bankruptcy matters, as well to allegations in threatened matters. Drexler further objects to this request for production to the extent it requests information outside his possession, custody, or control. ***Drexler does not anticipate responding to this request for production.*** |

8. In response to Interrogatory Nos. 1, 2, 5, 10, and 21, each of which asks Drexler to identify the factual basis for certain highly specific allegations in the Trustee Motion, Drexler vaguely answered as follows:

| **Interrogatory** | **Answer** |
|---|---|
| **Interrogatory No. 1**: Describe each and every way you contend that Empery is "misusing its power," as alleged on p. 3:25 of ECF No. 447. | Subject to the Objections, this interrogatory calls for legal argument, which will necessarily follow complete production of documents and information, and an evidentiary hearing on the Trustee Motion. Drexler has alleged and believes that the evidence will show that Empery has been misusing its substantial financial leverage over the Debtor and others, and its potential prospective ownership of the Debtor's business, to coerce the Debtor and its employees into restraining potential sales and transaction opportunities in order to facilitate it acquisition of the business through a credit bid at below-market value. |
| **Interrogatory No. 2**: Describe the facts and circumstances supporting or evidencing Your allegation that "at least one supplier of protein powder who is a member of the Committee has been charging the Debtor above-market prices," including but not limited to: 1) The identity of "the member of the Committee"; 2) The price being charged to Debtor; 3) The market price for protein powder; and 4) The basis or source of Your knowledge of the allegation. | Subject to the Objections, and to the production of documents and information, and other evidence to be presented at the evidentiary hearing of the Trustee Motion, Drexler believes that JW Nutritional, LLC ("JWN") has been charging the Debtor above-market prices. Drexler's allegations are based upon his review of prices being charged in the market by Muscle & Strength, one of the Debtor's customers. Drexler also reviewed the Debtor's monthly operating reports, which demonstrated that the Debtor was only earning approximately 30% gross margin on its products, when Drexler believes the Debtor should have |

| | |
|---|---|
| | been earning at least 40% gross margin. Drexler prepared a cost model to make this determination. Drexler further observed that the Debtor had increased prices of its products for sale, which made them more expensive than competitor prices for similar products. Drexler has requested documents from the Debtor and JWN to obtain more specific information relating to JWN's pricing to the Debtor, and the impact of that pricing on the Debtor's resulting sales. |
| **Interrogatory No. 5**: Describe the factual basis for your assertion that "this kind of price gouging from a member of the Committee is an effort to recoup pre-petition claims and losses." | Subject to the Objections, and to the production of documents and information, and other evidence to be presented at the evidentiary hearing of the Trustee Motion, JWN filed a proof of claim in the amount of $842,799.19 based on various unpaid invoices between JWN and the Debtor. As discussed above, Drexler believes that JWN is purchasing protein powder at the same cost at which the Debtor could buy it directly, and then marking it up as part of the price it charges the Debtor for manufacturing the Debtor's products. In contrast, prior to the bankruptcy, JWN passed on to the Debtor the costs of protein without marking it up. In effect, this means that the Debtor is making post-petition payments to a "middleman" unsecured creditor that are completely unnecessary, and would not likely be tolerated by the Debtor in a non-bankruptcy environment. The argument that this conduct constitutes price-gouging and is in substance a recouping by JWN of its unpaid prepetition unsecured claim is legal argument, based on evidence and inferences, which will necessarily follow complete production of documents and information, and a trial on the Trustee Motion. |
| **Interrogatory No. 10**: Describe any evidence or facts supporting Your allegation that Empery has acted to "depress the Debtor's value and create the environment for a low-value 363 sale of the Debtor's assets." | Subject to the Objections, and to the production of documents and information, and other evidence to be presented at the evidentiary hearing of the Trustee Motion, Drexler respectfully refers Empery to his response to Interrogatory No. 1. |
| **Interrogatory No. 21**: Describe and specifically identify any and all decisions or actions taken by Nick Rubin that You | Subject to the Objections, this interrogatory calls for legal argument, which will necessarily follow complete production of documents and |

| | |
|---|---|
| contend were improperly influenced in any way by Empery or its counsel, including but not limited to the specific decision or action, and how that decision or action was impacted by Empery or its counsel. | information, and a trial on the Trustee Motion. However, Drexler contends that the prior and ongoing relationship between Rubin and Empery's lead counsel renders every decision or action taken by Rubin as "independent director" to be the result of improper influence by Empery and its counsel, essentially making Rubin beholden to Empery's interests. |

9. On July 21, 2023, two days after the deadline by which parties were supposed to produce documents, Drexler belatedly produced 744 pages of documents in response to the Requests for Production, although 537 pages consisted of a single spreadsheet as follows:

| | |
|---|---|
| Drexler 000001-124 | Emails between counsel regarding bk filing, discussions re financial advisor, and gathering information for IDI and schedules |
| Drexler 125-131 | Texts between Drexler, Eric Hillman, and Rita Mikel |
| Drexler 132-134 | Texts between Drexler and Jason Keenan |
| Drexler 135-141 | Texts between Drexler and Eric Hillman |
| Drexler 142-144 | Texts between Drexler and Will Hovi |
| Drexler 145-146 | Texts between Drexler and Peter Junsberger |
| Drexler 147-170 | Texts between Drexler and Ryan Lane/ Tim Silver |
| Drexler 171-708 | Cost Sheet Summary |
| Drexler 709-751 | Screenshots of apparent Instagram DMs and Texts with unknown third parties and Eric Hillman |

See Pilatowicz Decl ¶ 7.

10. By email dated July 22, 2023, Empery's counsel contacted Drexler's counsel concerning the deficiencies in the Drexler Responses. See Pilatowicz Decl. ¶ 8, Ex. "5."

11. On July 24, 2023, the parties held a telephonic meet and confer (the "Meet and Confer") and the parties did not reach a resolution on the issues addressed herein. See Pilatowicz Decl. ¶ 9.

12. On July 24, 2023, Drexler provided a supplemental response to Interrogatory No. 4. No other responses were supplemented. See Pilatowicz Decl. ¶ 10; Ex. "6."

# IV.
# LEGAL ARGUMENT[1]

### A. Drexler's Outright Refusal to Respond to Thirteen of the Discovery Requests is Improper as the Requests are Relevant to the Trustee Motion.

#### 1. Drexler's Prepetition Management Is Relevant to His Allegations of Post-Petition Mismanagement.

Drexler has refused to answer and respond to Interrogatory Nos. 6, 16 and 17 and Requests for Production Nos. 8, 15, 17 and 18, each of which seeks information related to Drexler's pre-petition management of the Debtor, including Debtor's relations with its vendors and customers, as well as the fraud allegations against him in the Securities and Exchange Commission's recently filed complaint. See Securities and Exchange Commission v. Ryan C. Drexler, Case No. 2:23-cv-05102-MCS-RAO (C.D. Cal.) (the "SEC Complaint").

Drexler's objections make an arbitrary distinction between the Debtor's pre-petition and post-petition financial affairs, a distinction without basis under Fed. R. Civ. P. P 26(b) and thus insufficient to make relevance an issue here.

In any event, it was Drexler that put pre-petition operations, and their comparisons to post-petition operations, in issue. Specifically, in support of the Trustee Motion, Drexler drew comparisons to Debtor's pre-petition sales projections and post-petition operations. *See* Trustee Motion, Ex. 4. Drexler cannot seek to rely on his pre-petition projections, and then balk when other parties want to ask him about his pre-petition conduct.

Moreover, the Debtor's pre-petition business affairs are clearly relevant to Drexler's claim that the Debtor's post-petition management, rather than Drexler's own malfeasance, has resulted in lost value and profits, especially given then SEC's serious allegations:

- Drexler, during his tenure as Chairman, President, and Chief Executive Officer ("CEO") of MusclePharm, a publicly-traded nutritional supplement company, engaged in a scheme to defraud MusclePharm's investors about the strength of the company's controls over financial reporting and disclosures and the devastating impact of MusclePharm's debt default in the third quarter of 2022. His conduct also ran afoul of critical rules regarding

---

[1] This Court previously requested that the parties not cite to general concepts of discovery and direct briefing to the disputes at issue. See May 9, 2023 Transcript, p. 18, ll. 19-23.

- the processes, controls, and procedures that public companies, like MusclePharm, must have in place to provide assurance that their accounting and public reports are accurate.

- Drexler's fraudulent and deceptive conduct manifested itself in two specific ways. First, Drexler failed to ensure that, and made false statements about whether, MusclePharm had basic processes, controls, and procedures in place to ensure that its accounting for revenue, profit, and other important financial metrics – all of which was reported to and relied on by investors – was correct. . . Second, in the third quarter of 2022, Drexler engaged in deceptive conduct and made misleading statements by hiding from investors that a $10 million debt to MusclePharm creditors had been automatically accelerated and was presently due, resulting in immediate and catastrophic consequences for the company and its investors.

***

- In August 2015, MusclePharm announced a restructuring plan focused on reducing costs and reallocating the company's resources for profitable growth. In its Form 10-K filed on April 2, 2018, MusclePharm announced that this restructuring plan was substantially complete.

- During the earnings call for the fourth quarter of 2017, Drexler highlighted the completion of the restructuring program and proclaimed that the company was now on a path to consistent profitable growth.

- In order to achieve consistent growth, Drexler pushed MusclePharm's sales team to meet unrealistic quarterly sales targets, and threatened to, and did, fire employees who challenged him or failed to achieve the targets.

- In this environment, MusclePharm reported quarter over quarter revenue growth from the fourth quarter of 2017 through the third quarter of 2018. Drexler highlighted this achievement in each of the Company's press releases and earnings calls during that period.

- MusclePharm reported its financial results for these periods in its Form 10-K for 2017 and Forms 10-Q for the first three quarters of 2018, which Drexler signed and certified as MusclePharm's CEO, President, Chairman of the Board of Directors, Principal Executive Officer ("PEO"), PFO, and PAO.

- During its 2018 audit work, the company's external auditor detected that MusclePharm had recognized revenue at the end of the fourth quarter of 2018 that it should have recorded in later periods because certain inventory had been temporarily stored off-site in trailers rather than being shipped to MusclePharm's customers prior to year-end.

- The company opened an internal investigation to identify the scope and cause of the errors. The internal investigation uncovered similar errors with unshipped orders impacting the third quarter of 2018, and the company filed a Form 8-K on March 14, 2019, announcing that its previously reported financial statements for the three and nine months ended September 30, 2018, should no longer be relied upon. In April 2019, the company announced on Form NT 10-K that it would be unable to timely file its 2018 annual report, and in May 2019, the company's external auditor resigned without completing the 2018 audit work.

- More than a year later, on August 25, 2020, MusclePharm filed a Form 10-K that restated its financial statements for year-end 2017 and the first three quarters of 2018 (the "Restatement Period") and included the overdue financial statements for 2018 and 2019.

- The restatement disclosed that, during the Restatement Period, MusclePharm inflated its previously reported quarterly revenues by 9 to 25 percent and materially misstated various other aspects of its financial statements.

- MusclePharm disclosed in its August 25, 2020 Form 10-Q that its management concluded that MusclePharm had numerous material weaknesses in its internal control over financial reporting and that its disclosure controls and procedures were not effective.

- Drexler signed and certified MusclePharm's August 25, 2020 Form 10-K as MusclePharm's CEO, President, Chairman of the Board of Directors, and PEO.

- The Form 10-K filed on August 25, 2020, included a plan to remediate these material weaknesses, but MusclePharm did not correct the material weaknesses.

***

- Drexler obtained reimbursement for significant commuting expenses and other expenses not integrally and directly related to his job that should have been classified as perquisites.

- Based on this conduct, Drexler received undisclosed perquisites in 2017 comprised of approximately $129,200 in personal legal fees, $66,200 of tax gross-ups on restricted stock, $22,800 in commuting and living expenses, $8,300 in furniture expenses, and $4,500 of other personal expenses.

*See* SEC Complaint ¶¶ 5-6, 10, 16-27, 73-74

Having failed to meaningfully respond to Empery's Discovery Requests, Drexler's only recourse is now his own professional opinion of the Debtor's financial affairs. These requests are therefore also relevant in assessing Drexler's credibility as a witness. Drexler objects to these requests not because they seek irrelevant information but because they seek relevant information that may contradict or disprove his allegations and undermine his general credibility. Because parties do not get to pick and choose which discovery requests they will respond to, the Court should compel Drexler to answer Interrogatory Nos. 6, 16 and 17 and to produce all nonprivileged documents in his possession custody or control that are responsive to Request for Production Nos. 8, 15, 17 and 18.

Finally, Drexler's pre-petition conduct is relevant to the alleged acrimony in this case, as well as the substantial increase in fees and costs, which Drexler now contends form the basis for his Trustee Motion. Pre-petition and during the early stages of the case: (1) Drexler chose to not

engage with Empery and place Debtor into an organized chapter 11 proceeding (despite that Debtor's CRO, selected and hired by Drexler, and bankruptcy attorney stated that Debtor was insolvent and required a reorganization), even though Empery agreed to provide DIP financing and (2) Drexler refused to have Debtor sign a negotiated forbearance agreement (to which all lenders agreed and executed in writing) after the documents were fully negotiated and Drexler and Debtor's counsel confirmed they had signed off and Drexler was prepared to execute the forbearance agreement on behalf of the Debtor. Instead Drexler spent Debtor's funds to retain separate counsel to fight Empery to stop the Article 9 sale and cause Debtor to execute a settlement agreement with White Winston (the "WW Settlement") for his own benefit. Drexler also coordinated with White Winston to prepare adversary actions against Empery. These pre- and post-petition actions, by Drexler, have been the cause of increased costs in this Chapter 11 Case. Drexler's pre-petition conduct, especially as it relates to communications with White Winston [Request No. 9], are therefore relevant to the Trustee Motion.

2. Drexler's Communications with Other Stakeholders Are Relevant to His Claims that Empery's Actions Have Undermined the Debtor's Ability to Reorganize.

Interrogatory Nos. 12 and 13 and Request for Production Nos. 9, 10, 12, and 16 each seek information concerning Drexler's communications with other parties in interest in this Chapter 11 Case and, specifically, Empery's requests are aimed at obtaining information related to Drexler's allegations of acrimony.

As set forth above, prior to the Petition Date, Drexler entered into the WW Settlement. It is Drexler's actions, both before and after the Chapter 11 Case was filed, that have caused intense acrimony among parties. Following the WW Settlement, Drexler sought to box out Empery and give White Winston some sort of senior right to provide DIP financing to Debtor (which contradicted the terms of the Intercreditor Agreement between Drexler and Empery) and caused the increase in fees related to DIP financing that Drexler now seeks to blame on Empery. Drexler is also believed to have been lobbying other creditors (pre and post-petition) to aid in increasing challenges in the case or improperly negotiate a settlement in his favor notwithstanding the

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Intercreditor Agreement. Discovery with respect to communications with creditors are directly relevant to the claims that Drexler is making in his Trustee Motion.

To be clear, documents responsive to these request will reveal the extent that Drexler's own misconduct, rather than that of Empery or the Debtor, has negatively affected the administration of this Chapter 11 Case while also bearing on Drexler's credibility as a witness. Because Drexler's perfunctory objections to Interrogatory Nos. 12 and 13 and Request for Production Nos. 9, 10, 12, and 16 are not well taken, the Court should compel him to provide full and sufficient responses to these Discovery Requests.

3. **Drexler's Interrogatory Answers Are Non-Responsive as they Fail to Identify Responsive Facts and Instead Continue to Rely on Pure Speculation.**

Despite telling this Court that he had evidence to support his Trustee Motion, the responses to the Interrogatories reflect that Drexler has no evidence at all other than pure supposition and his faulty opinion. In fact, despite being asked the basis for his "information and belief" allegations and for the source of his knowledge in five separate interrogatories, Drexler simply asserts as to the basis for his fantastical theories: "Drexler obtained this information from Jason Keenan or Will Hovi," vague references to conversations therewith, and then Drexler's analysis of websites and MORs. See Interrogatory Responses 4 and 11. However, little detail on what information Jason Keenan or Will Hovi purportedly provided, or which one actually provided the information, is supplied in the responses. Following a request to supplement these responses, Drexler provided an update that confirms evidence to support the Trustee Motion still amounts to rank speculation:

> Subject to the Objections, the "other sources" referenced in *Drexler's Objection to Emergency Motion to Enforce Intercreditor and Subordination Agreement Under Section 510(a) of the Bankruptcy Code* were Jason Keenan and Will Hovi. To the best of his recollection, between January 2023 to April 2023, Drexler had approximately six or seven telephone conversations with each of Mr. Keenan and Mr. Hovi. Drexler remembers from his conversations that Mr. Keenan stated that the Debtor was paying one all-inclusive unit price for product; that JW Nutritional ("JWN") was not delivering product on time; that Mr. Keenan could not determine the Debtor's gross margin, but he believed that the Debtor's pricing was high on the websites on which the Debtor sold its products; and that Ryan Lane had regular communications with Eric Hillman. Drexler remembers from his conversations with Mr. Hovi that JWN was not delivering product on time. Drexler further remembers that either Mr. Keenan or Mr. Hovi suggested that Mr. Hilman was too

focused on creatine, 200-pound protein, and shaker cups than he was in ensuring that the Debtor's products were delivered on time to its accounts and that the Debtor's gross margin was sufficient to support the Debtor's operations. Based on this information, together with other public sources of information described in Drexler's responses to the Debtor's other interrogatories, Drexler determined that the Debtor was being charged above-market prices for protein.

See Pilatowicz Decl. ¶ 10, Ex. 6 (Supp. Response to Interrogatory No. 4).

In other words, Drexler apparently contends he does not have any information that supports his serious allegations other than suggestions that JWN was not delivering product on time, that Mr. Hovi believed prices were high on websites, and that Hillman was not focused on ensuring that the margins were sufficient to support business. Drexler then opines on what he thinks the operations should be and what margins should be achieved (again, while at the same time trying to prevent any discovery related to his own operations of the business). This is not the narrative that Mr. Drexler has been touting and he must provide what actual facts he has (or ever thought he had), if any, that have caused all parties, including the estate, to incur substantial fees and delay much needed relief.

Drexler has also provided incomplete and evasive answers to Interrogatory Nos. 1, 2, 5 and 10, even though each of these requests directly quote allegations made by Drexler in the Trustee Motion. For example, Interrogatory No. 1 requires Drexler to "Describe each and every way you contend that Empery is "misusing its power," as alleged [in the Trustee Motion"]" to which Drexler responds:

> Subject to the Objections, this interrogatory calls for legal argument, which will necessarily follow complete production of documents and information, and an evidentiary hearing on the Trustee Motion. Drexler has alleged and believes that the evidence will show that Empery has been misusing its substantial financial leverage over the Debtor and others, and its potential prospective ownership of the Debtor's business, to coerce the Debtor and its employees into restraining potential sales and transaction opportunities in order to facilitate it acquisition of the business through a credit bid at below-market value.

Drexler's response (consistent with Interrogatory Nos. 2, 4, and 10) is entirely non-responsive and undermines the purpose and utility of Fed. R. Civ. P. 33. If Drexler "believes that the evidence will show that Empery has been misusing its substantial financial leverage over the Debtor and

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

others" he must identify and disclose the factual basis for that belief. If he cannot do so, Drexler must admit as much. Interrogatory Nos. 2, 5 and 10 are similarly deficient.

Interrogatory No. 21 asks Drexler to "identify any and all decisions or actions taken by Nick Rubin that You contend were improperly influenced in any way by Empery or its counsel, including but not limited to the specific decision or action, and how that decision or action was impacted by Empery or its counsel." Though this interrogatory unambiguously asks Drexler to identify specific decisions and actions, Drexler's answer is again non-responsive. If there are any such decisions or actions, Drexler is required to identify them. If he is unaware of such decisions or actions, he should say so. Either way, this issue would be narrowed as envisioned by Fed. R. Civ. P. 33 rather than being left open due to Drexler's inadequate response.

**4.     Drexler's Minimal Document Production Is Deficient on Its Face as It Fails to Support the Allegations Being Made.**

Despite making serious allegations in the Trustee Motion, and thus it being reasonable to expect that responsive documents would readily be available for production if, in fact, a factual basis for Drexler's claims existed, no documents actually providing a factual underpinning for the Trustee Motion have been produced. In particular, Requests for Production Nos. 13, 14, and 20 respectively seek documents: showing that Empery has acted to "depress the Debtor's value and create the environment for a low-value 363 sale of the Debtor's assets;" identifying "valuable assets" that the Debtor missed out on; and showing that any person or party has in any way acted to "depress the Debtor's value and create the environment for a low value 363 sale of the Debtor's assets," all as alleged by Drexler in the Trustee Motion. No responsive documents appear to have been produced.

Drexler's limited production, consisting of approximately 124 pages of emails (mostly between counsel) related to the filing of the bankruptcy and initial debtor interview; approximately 20 pages (a portion of which was redacted) of text messages with Rita Mikel, Eric Hillman, Will Hovi, Jason Keenan, and Peter Junsberger); 23 pages of text messages between Drexler and Ryan Lane or Tim Silver; a 556 page "cost sheet summary" spreadsheet; and approximately 40 pages of apparent Instagram direct messages and text messages with unknown third parties and Eric

Hillman, does not support the Trustee Motion. If this is all of the documentation that Drexler has to support his claim, this entire exercise has been, and will continue to be a waste of estate resources.

Either Drexler is in possession of documents responsive to the Requests for Production, in which case such documents should have been readily produced, or he is not, in which case Drexler brought the Trustee Motion without any evidentiary support. In either case, Drexler should be compelled to either produce all responsive documents or confirm that he does not have any responsive documents in his possession, custody or control.

## V.
## CONCLUSION

For the reasons stated above, Empery requests that the Court enter an order compelling Drexler to respond to Empery's Discovery Requests and grant such other and further relief that is just and proper under the circumstances.

DATED this 24th day of July, 2023.

                                                 GARMAN TURNER GORDON LLP

                                                 */s/ Teresa Pilatowicz*
                                                 GREGORY E. GARMAN, ESQ.
                                                 WILLIAM M. NOALL, ESQ.
                                                 TERESA M. PILATOWICZ, ESQ.
                                                 DYLAN T. CICILIANO, ESQ.
                                                 7251 Amigo Street, Suite 210
                                                 Las Vegas, Nevada 89119
                                                 *Attorneys for Empery Tax Efficient, LP*