**STEINHILBER SWANSON LLP**
MICHAEL P. RICHMAN, ESQ.
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:     (608) 630-8990
Facsimile:      (608) 630-8991
mrichman@steinhilberswanson.com

**LAW OFFICE OF BRIAN D. SHAPIRO, LLC**
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
510 S. 8th Street
Las Vegas, NV 89101
Telephone:     (702) 386-8600
Facsimile:      (702) 383-0994
brian@brianshapirolaw.com

*Counsel for Ryan Drexler*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.  BK-22-14422-NMC |
| MUSCLEPHARM CORPORATION, | Chapter 11 |
| Debtor. | Hearing: August 23, 2023 |

**SUPPLEMENTAL OBJECTION TO DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER: (i) APPROVING THE DISCLOSURE STATEMENT; (ii) APPROVING THE FORM OF BALLOTS AND PROPOSED SOLICITATION AND TABULATION PROCEDURES; (iii) FIXING THE VOTING DEADLINE WITH RESPECT TO THE DEBTOR'S CHAPTER 11 PLAN; (iv) PRESCRIBING THE FORM AND MANNER OF NOTICE THEREOF; (v) FIXING THE LAST DATE FOR FILING OBJECTIONS TO THE CHAPTER 11 PLAN; (vi) SCHEDULING A HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN; AND (vii) APPOINTING STRETTO AS SOLICITATION AND TABULATION AGENT**

Creditor, equity holder, and interested party, Ryan Drexler ("Drexler"), by his undersigned counsel, hereby submits this supplemental objection to the *Debtor's Motion for the Entry of an Order: (i) Approving the Disclosure Statement; (ii) Approving the Form of Ballots and Proposed Solicitation and Tabulation Procedures; (iii) Fixing the Voting Deadline with Respect to the Debtor's Chapter 11 Plan; (iv) Prescribing the Form and Manner of Notice Thereof; (v) Fixing the Last Date for Filing Objections to the Chapter 11 Plan; (vi) Scheduling a Hearing to Consider Confirmation of the*

*Chapter 11 Plan; and (vii) Appointing Stretto as Solicitation and Tabulation Agent* (the "Plan Procedures Motion") [ECF No. 554]. This objection is based on the pleadings, papers, and records on file in this case, of which judicial notice is respectfully requested pursuant to Fed. R. Evid. 201, and any additional evidence and argument entertained by the Court at the time of the hearing on the Plan Settlement Motion. Drexler hereby incorporates his original objection the Plan Procedures Motion

## MEMORANDUM OF POINTS AND AUTHORITIES

On May 26, 2023, MusclePharm Corporation (the "Debtor") filed a disclosure statement and plan of reorganization that were the subject of the Plan Procedures Motion.[1] ECF Nos. 552 & 553. Drexler objected to the Plan Procedures Motion, which sought approval of the disclosure statement, because the proposed plan was unconfirmable on its face. The proposed plan classified Drexler's junior secured claim with "Other Secured Claims", treated his secured claim as "[u]nimpaired and not entitled to vote," failed the best interests of creditors test, violated the Bankruptcy Code's distribution scheme, violated the absolute priority rule, contained an impermissibly broad exculpation provision, and was not proposed in good faith. *See* Drexler's objection to the Plan Procedures Motion, at ECF No. 594 (the "Drexler Initial DS Objection"). Drexler also objected because, even if the plan were not facially unconfirmable, it lacked adequate information required to disclose the risks associated with prosecuting the proposed plan, and the plan proponents failed to disclose certain financial information, especially a liquidation analysis. *Id.* at 19–20.

On June 19, 2023, the Debtor and the Committee ("Plan Proponents") filed their *Joint Reply of the Plan Proponents to Drexler's Objection to the Plan Procedures Motion* (the "Joint Reply"), conceding the validity of Drexler's objections to the plan's improper classification (and omission) of his claims, the plan's mischaracterization of his secured claim as unimpaired, and their failure to provide a liquidation analysis. ECF No. 601. On the same day, the Plan Proponents filed an amended disclosure statement and plan of reorganization which sought to cure those defects. *See* ECF Nos. 602 & 602-1 at 15. However, the other important objections Drexler raised—principally that the plan would illegally bypass Drexler's junior secured claim in violation of the absolute priority rule by substantively "gifting"

---

[1] The Official Committee of Unsecured Creditors (the "Committee") was also a proponent of the Debtor's plan of reorganization.

property of the estate to a trust for the benefit of general unsecured creditors— remain unresolved and continue to render the plan unconfirmable on its face. Accordingly, other than the objection that Drexler's claims was classified with disparate claims, Drexler's claims were improperly characterized as "unimpaired," and lack of any liquidation analysis, Drexler incorporates the remainder of the Drexler Initial DS Objection.

Thus, the proposed disclosure statement should not be approved as it pertains to a proposed chapter 11 plan that remains on its face unconfirmable.

**A.    Illegal Class-Skipping "Gifting" Renders the Amended Plan Unconfirmable on its Face**

By their Joint Reply, the Plan Proponents now appear to argue they can use the artifice of a creditor trust to launder the "property of the estate" out of the realm of "gift" to be received by the unsecured creditors. They assert that their proposed litigation trust (the "Trust"), which admittedly is *for the benefit of unsecured creditors*, can make all plan distributions free of the Bankruptcy Code priority rules, and free of liens, paying off Empery's putative senior secured claim with $12 million, and retaining for unsecured creditors up to $6 million that otherwise would have gone to Drexler in the event the ISA is determined to be enforceable. (If the ISA is determined to be unenforceable, then as a matter of law the Net Sales Proceeds must be applied first to satisfy Drexler's secured claim in full before any value would be distributed to Empery or any other junior creditors.)

In substance, the proposed scheme is substantially the same as the improper class-skipping gift to the Trust for unsecured creditors that they proposed in their first plan. *See First Amended Plan of Reorganization for MusclePharm Corporation Under Chapter 11 of the Bankruptcy Code Dated June 19, 2023*, ECF No. 604 ("Plan No. 2"). Here is how the "gift" is now supposed to work in the amended plan:

- Create the Trust *for the benefit of unsecured creditors* and empower that Trust (instead of the bankruptcy estate) to make all distributions. *See* ECF No. 604 at 19, 29–30.

- Arrange for Empery to assign to the Trust its "economic interest" in the difference between its agreed payoff of $12 million and the allowed claim of $18 million.[2] *Id*. at

---

[2]  The Debtor, Empery and the Committee insist that the settlement they reached to resolve *White Winston Select Asset Funds, LLC v. Empery Tax Efficient, LP*, Adv. No. 23-1014-nmc (Bankr. D. Nev.) (the "Empery Adversary Proceeding"), allows Empery's claim for $18 million. That's just not

15. The plan describes this as a transfer to the Trust of Empery's lien to the extent of the $6 million difference. Either way, it purports to gift up to $6 million of estate property to junior secured creditors (which allegedly includes Drexler).

- Provide for the proceeds of the Debtor's asset sale to the Trust (which does not hold any classified claims), i.e., for the benefit of unsecured creditors, with the extinguishment of liens. *Id.* at 20, 26-27, and 30. The Trust would be an "agent" for the unsecured creditors, not for the estate, because *its beneficiaries are the unsecured creditors*. Thus, the distribution by the estate to the Trust violates the absolute priority rule and is improper under section 1129.

- By the device of distributions from the trust, instead of from the estate, Plan No. 2 has the same legally fatal flaw as the first plan: Empery gets a $12 million payoff, and the class of general unsecured creditors receives up to the next $6 million in sale proceeds, skipping Drexler's (allegedly junior) secured class.

The effect of the foregoing would be to impermissibly, and in violation of the absolute priority rule, launder the auction proceeds of their character as "property of the estate." ECF No. 604 at 26–27.

The Plan Proponents cannot use the artifice of nomenclature to evade the substantial case law prohibiting gifting, including the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017), in order to achieve the impermissible class-skipping gift to unsecured creditors. As analyzed in *Jevic*:

> The Code also sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate. Secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts. 11 U.S.C. § 725. Special classes of creditors, such as those who hold certain claims for taxes or wages, come next in a listed order. §§ 507, 726(a)(1). Then come low-priority creditors, including general unsecured creditors. § 726(a)(2). The Code places equity holders at the bottom of the priority list. They receive nothing until all previously listed creditors have been paid in full. § 726(a)(6).
>
> The Code makes clear that distributions of assets in a Chapter 7 liquidation must follow this prescribed order. §§ 725, 726. It provides somewhat more flexibility for distributions pursuant to Chapter 11 plans, *which may impose a different ordering with the consent of the affected parties*. But **a bankruptcy court cannot confirm a plan that contains priority-violating distributions over the objection of an impaired creditor class**. §§ 1129(a)(7), (b)(2).

580 U.S. at 457 (emphasis added).

---

plausible because the "settlement" hardly compromises Empery's claim. Instead, the "settlement" provides for the full amount of Empery's claim as if no adversary proceeding had been brought at all. The only reason for the agreement to "allow" their claim at $18 million is to support the fiction that they can assign their right to the proceeds above $12 million as a gift to unsecured creditors.

The economic reality of what the Plan Proponents call the "Empery Allowed Claim" is that Empery agreed to a payment of $12 million to settle the Empery Adversary Proceeding.[3] Under the "best interests of creditors" test, based on the agreed allowance of Empery's claim for $12 million, Empery would get $12 million in a liquidation, and any additional proceeds would then be distributed to Drexler (in the event the ISA were determined to be enforceable). Thus, on its face, Plan No. 2 violates the best interests test of section 1129(a)(7).

None of the case precedents which suggest that gifting may be permissible in limited contexts (relied on by the Plan Proponents) applies here, because they refer to debtor-in-possession financing and related carveouts where carveouts that skip classes are necessary to permit a debtor to pay administrative expenses and reorganize. That rationale does not apply to a litigation settlement or a plan. Where, as here, the gifting only benefits the parties to the gift, there is no benefit to the entire estate. The plan could be confirmed without any priority-violating gift. Administrative expenses can be paid without the gift. The business can be sold without the gift. The gift is solely in Empery's self-interest to get out from under the Empery Adversary Proceeding, to harm Drexler, and to serve the Committee's interest to assure that its out-of-the-money constituency can obtain the prospect of receiving significant value at the expense of secured creditors like Drexler.

The Plan Proponents also erroneously contend that a secured creditor cannot object to improper "gifting" as violating the absolute priority rule, that such rights belong only to unsecured creditors in a cramdown context under section 1129(b). That's not true. The best interests test under section 1129(a)(7), which can be (and which Drexler has) invoked to object that class-skipping deprives him of distributions to which he would be entitled in a chapter 7 liquidation, is another form of the absolute priority rule. It is expressly referred to in *Jevic*.

---

[3] The fact that this all stems from settlement of the Empery Adversary Proceeding is important too. In that proceeding, White Winston Select Asset Funds, LLC (joined by the Committee) asserted causes of action on behalf of the estate which challenged Empery's claim in amount and its liens, seeking to have its $18 million claim recharacterized as equity. The settlement of an estate cause of action is property of the estate, and a settlement of estate causes of action may not be used to evade the priority rules.

**B.    The Exculpation Provision is impermissibly broad such that it exculpates Empery from its post-petition violations of the Intercreditor and Subordination Agreement with Drexler.**

The Plan No. 2 does not remedy the defective and impermissibly broad expanse of the proposed exculpation provisions which would extend to insulate Empery and others from Drexler's claims, including, without limitation, "any cause of action for any claim related to any act or omission in connection with, relating to, or arising out of, … the formulation, preparation, … negotiation, filing, ... of the disclosure statement, the plan, or any restructuring transaction[.]" ECF No. 604 at 27.  This language should be curtailed as overbroad, as discussed in the Drexler Initial DS Objection, or otherwise expressly limited to not impair Drexler's claims or remedies arising from and relating to Empery's breach of the ISA.

## CONCLUSION

For these reasons, and the reasons stated in the Drexler Initial DS Objection, Drexler respectfully requests that that the Court deny the Plan Procedures Motion and grant such other relief as the Court deems just and appropriate.

Dated: August 10, 2023.

**STEINHILBER SWANSON LLP**

*/s/ Michael P. Richman, Esq.*
MICHAEL P. RICHMAN
*Admitted Pro Hac Vice*
122 W. Washington Ave., Suite 850
Madison, WI 53703
Telephone:    (608) 630-8990
Facsimile:    (608) 630-8991
mrichman@steinhilberswanson.com

*Counsel for Ryan Drexler*

**CERTIFICATE OF SERVICE**

Contemporaneously with the filing of this pleading, this document was served upon all registered users in this case by the Bankruptcy Court's CM/ECF Noticing System.

Dated  08-10-2023                              */s Brian D. Shapiro, Esq.*

                                                           Brian D. Shapiro, Esq.