**ANDERSEN BEEDE WEISENMILLER**
Mark M. Weisenmiller, Esq.
Nevada Bar No. 12128
Email: *mark@abwfirm.com*
Tali J. Frey, Esq.
Nevada Bar No. 16537
Email: *tali@abwfirm.com*
3199 E Warm Springs Rd., Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax: 702-825-2824
*Counsel for Amy Lane*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| MP REORGANIZATION, | Case No: 22-14422-NMC |
| | Chapter 11 |
| Debtor, | |
| | Date:  June 10, 2026 |
| | Time: 9:30 a.m. |

**OPPOSITION TO RYAN DREXLER'S EMERGENCY**
**MOTION TO QUASH WRIT OF EXECUTION**

Judgment creditor Amy Lane ("**Mrs. Lane**"), by and through her undersigned counsel, hereby submits her opposition ("**Opposition**") to *Ryan Drexler's Emergency Motion to Quash Writ of Execution* [ECF No. 1756] ("**Motion**"), filed by judgment debtor Ryan Drexler ("**Drexler**") on May 21, 2026.

The Opposition is made and based upon the following Memorandum of Points and Authorities, the declaration of Mark Weisenmiller ("**Weisenmiller Decl.**") filed concurrently herewith, all papers and pleadings filed in the above-captioned case, judicial notice of which is requested pursuant to FRE[1] 201, and any argument of counsel offered during any hearing held on the Motion.

---

[1] When used herein, all references to "**ECF No.**" are to the numbers assigned to the documents filed in the case as they appear on the docket. All references to "**Section**" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "**Bankruptcy Rule**" are to the Federal Rules of Bankruptcy Procedure. All references to "**FRE**" are to the Federal Rules of Evidence. All references to "**Local Rule**" are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

The Motion should be denied.  On January 13, 2025, the Court entered its Quash Order, which granted Mrs. Lane's Quash Motion "in its entirety," quashed the Drexler Subpoena, and ordered that "Amy Lane is granted and awarded attorney's fees and costs" — with the dollar amount to be ordered by the Court following submission of a fee declaration.

Following the filing of the requested fee declaration, the Court entered the Fee Order, setting the amount of attorneys' fees and expenses awarded to Mrs. Lane pursuant to the Quash Order.  The Fee Order referenced Drexler by name, incorporated the Quash Motion, the Quash Order, and the findings and facts stated by the Court at the Hearing held on November 12, 2024, and awarded Mrs. Lane attorneys' fees and expenses of $103,112.14.  The Fee Order fixed liability against Drexler related to the contested Quash Motion and quashed the Drexler Subpoena, and awarded Mrs. Lane a specific amount of damages.

Under applicable law, the Fee Order constitutes a final judgment on its face.  The United States Supreme Court, in <u>Bullard</u>, held that an order entered in a contested matter in a bankruptcy case is a final judgment subject to immediate appeal when it fixes liability, awards damages, and finally adjudicates a discrete issue.  FRCP 54(a) and Bankruptcy Rule 9001 define "judgment" as any order upon which an appeal lies.  And a separate judgment was not required under FRCP 58(a) because the Fee Order was entered in a contested matter pursuant to Bankruptcy Rule 9014, which does not incorporate FRCP 58.

Furthermore, the Fee Order is a money judgment against Drexler.  The Fee Order specifically referenced Drexler and awarded Mrs. Lane a specific amount of attorneys' fees and expenses related to the successful prosecution of the contested Quash Motion filed against Drexler with respect to the Drexler Subpoena**.**  Moreover, even if the Court finds that the Fee Order is not clear on its face that Drexler is the payor, it is definite and certain and readily discernible through the mechanical task of applying the Fee Order.  The fact is Drexler is the only possible party to the Fee Order and nowhere in the Motion does Drexler argue that any other party is the payor.  Thus**,** the Fee Order included all of

the required elements to constitute a money judgment against Drexler (to the extent those elements even apply).

Finally, Drexler's accusations regarding Mrs. Lane's alleged "scheme" and "ex parte communications" with the Clerk's Office regarding the issuance of the Second Writ are unsupported, irrelevant, and only intended to distract from Drexler's egregious conduct and the flaws of the Motion. On December 11, 2025, before Mrs. Lane sought to execute upon the Fee Order, Mrs. Lane mailed a demand letter to Drexler with a copy of the Fee Order, demanding that Drexler satisfy the Fee Order within twenty-one (21) days or else she would execute. Drexler did not respond to the December 11, 2025, letter and failed to pay the amount awarded in the Fee Order. Thus, Drexler was served with a copy of the Fee Order and knew that Lane would execute upon it if not paid within twenty-one days, yet he did nothing.

Furthermore, Lane's counsel's communications with the Clerk's Office regarding the issuance of the Second Writ were entirely appropriate. The Clerk's Office is not the judge or chambers, and the issuance of writs by the Clerk's Office are ministerial acts. The Clerk's Office had already issued a writ with respect to the Fee Order on January 12, 2026 [ECF No. 1729], and the Fee Order is a final judgment as a matter of law. Consequently, there was nothing inappropriate with counsel's communications with the Clerk's Office, and the Court should deny the Motion.

## II.    BACKGROUND

1.    On October 24, 2024, Drexler caused a subpoena [ECF No. 1226, Ex. 1] ("**Drexler Subpoena**") to issue to Mrs. Lane in connection with a contested matter then pending in the above-captioned bankruptcy case ("**Bankruptcy Case**").

2.    On November 7, 2024, Mrs. Lane filed her *Motion to Quash Subpoena to Amy Lane or, in the Alternative, for a Protective Order* [ECF No. 1225] ("**Quash Motion**") in relation to the Drexler Subpoena.

3.    The factual basis of the Quash Motion was that, Mrs. Lane, who had never met Drexler, knew nothing about Debtor, and had no information relevant to the Bankruptcy Case, was served with the Drexler Subpoena on stage at a sold-out breast cancer charity event while surrounded by breast

ANDERSEN
BEEDE WEISENMILLER
ABW

cancer survivors ***at Drexler's direction***, by the same process server who had previously served papers at her home eight months earlier, in furtherance of Drexler's nearly two-year campaign of targeted harassment aimed at inflicting emotional trauma on Mrs. Lane and her family in connection with grievances over a loan Drexler's company failed to repay.  Quash Motion, pp. 2-3.

4.      The Quash Motion requested that the Court: (i) issue an order quashing the Drexler Subpoena pursuant to FRCP 45(d)(3); (ii) issue a protective order pursuant to FRCP 26(c); and (iii) given the shocking nature of the motivation behind the Drexler Subpoena, order Drexler to pay for Mrs. Lane's reasonable attorneys' fees and costs in connection with the Drexler Subpoena and Quash Motion.  Quash Motion, p. 7.

5.      On October 25, 2024, Empery Tax Efficient, LP and MP Collateral, LLP (collectively, "**Empery**") filed an *Application for Order to Show Cause Why Pro Hac Admission of Michael G. Freeman Should Not be Revoked and Sanctions Entered* [ECF No. 118] ("**Show Cause Motion**").

6.      The factual basis of the Show Cause Motion was that Drexler's prior counsel, Michael Freedman, ignored communications and arranged for a process server to gain access to the sold-out breast cancer charity event that Mrs. Lane had spent a year planning in memory of her mother, where she was served with the Drexler Subpoena at the podium on stage while reading the names of survivors being honored, in the latest act of Drexler's nearly two-year pattern of harassment of the Lane family, including anonymous letters to Mrs. Lane falsely alleging infidelity by her husband, Ryan Lane ("**Mr. Lane**"), anonymous calls to the Lane's children's schools, letters to the Lane's neighbors alleging criminal behavior by Mr. Lane, a fake "Wendy Bloom" Facebook accounts telling the Lane's children's school board that Mr. Lane was a danger to children, and websites publishing the Lane family's photos and home addresses.  Show Cause Motion, pp. 2-4.

7.      On November 8, 2024, Drexler filed his *Opposition to Application for Order to Show Cause* [ECF No. 1233], which addressed the issues raised in the Quash and Show Cause Motions.

8.      On November 12, 2024, the Court held an in-person hearing at which Mrs. Lane appeared through counsel along with Drexler and his counsel ("**Hearing**").  See Ex. 1 to Weisenmiller

Decl. for the written transcript of the Hearing ("**Transcript**"), p. 4, ll. 11-13; p. 5, ll. 11-12; p. 28, ll. 19-21; and pp. 65-66.

9.      Drexler, Mrs. Lane, and Empery agreed to: (i) consolidate the hearings on the Show Cause Motion and Quash Motion because of the overlap in the issues [Transcript, pp. 9-10; and p. 72, ll. 1-5]; and (ii) convert the Show Cause Motion to a temporary restraining order motion [id., p. 6, ll. 19-24; p. 28, ll. 3-7; and pp. 75-76].

10.      Following the Hearing, the Court entered its *Temporary Retaining Order* [ECF No. 1262] ("**TRO**") on November 14, 2024, which enjoined Drexler, his agents (including Eric Brahms), attorneys, and anyone acting in concert with him from harassing or intimidating Empery, the Lanes, their families, or any witnesses, and barring them from coming within 20 miles of the Lanes' residences or within a reasonable distance of Empery's New York offices.  The TRO also directed Drexler to take down the websites ryanlanewestport.com and ryanmatthewlane.com and set a preliminary injunction hearing for December 6, 2024.

11.      On January 13, 2025, the Court entered the *Order Granting Motion to Quash* [ECF No. 1460] ("**Quash Order**"), granting Mrs. Lane's Quash Motion "in its entirety," quashing the Drexler Subpoena, and ordering that "Amy Lane is granted and awarded attorney's fees and costs" — with the dollar amount to follow upon submission of a fees declaration.  ECF No. 1460, p. 2.  The Quash Order disposed of every contested issue between Mrs. Lane and Drexler in that contested matter, other than liquidating the amount of attorneys' fees and expenses that Drexler would be ordered to pay Mrs. Lane.

12.      Ms. Lane submitted declarations in support of the fees incurred on January 10, 2025. [ECF Nos. 1454, 1455] ("**Supporting Declarations**").  Drexler did not oppose or contest the amount of fees sought in the Supporting Declarations.  See generally Docket.

13.      On February 19, 2025, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Creditors' Fourth Amended Plan of Reorganization for MP Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 1583] ("**Order Confirming Plan**").

14. On March 4, 2025, following entry of the Quash Order, Drexler filed a notice of appeal of the Order Confirming Plan to the United States Bankruptcy Appellate Panel of the Ninth Circuit ("**BAP**"), designated BAP No. NV-25-1044. ECF No. 1597.

15. On June 27, 2025, the BAP dismissed Drexler's appeal for "lack of prosecution" [ECF Nos. 1702, 1704], stating that "[Drexler] has not filed both the opening brief and excerpts as of the date of the entry of this order." ECF No. 1702.

16. The Order Confirming Plan constituted the outermost finality marker for any remaining appellate challenge to orders entered earlier in the Bankruptcy Case. By that date, Drexler had long since abandoned any alleged right to appeal the Quash Order.

17. On October 6, 2025, following submission of the Supporting Declarations pursuant to the Quash Order, the Court entered the Fee Order setting the dollar amount of Mrs. Lane's fees and costs at $103,112.14. The Fee Order completed the relief previously granted in the Quash Order — namely, "Amy Lane is granted and awarded attorney's fees and costs in the amount of [now $103,112.14]." *Compare* [ECF No. 1460, ¶ 4] *with* [ECF No. 1711].

18. Drexler did not appeal the Fee Order, did not move to alter or amend under Bankruptcy Rule 9023 the Fee Order, and did not seek relief from the Fee Order under Bankruptcy 9024. Every window for challenging the Fee Order's form, content, or substance closed long ago.

19. On December 11, 2025, counsel for Mrs. Lane sent a letter to Drexler via U.S. and Certified Mail, attaching a copy of the Fee Order and demanding payment ("**December 11 Letter**"). Ex. 2 to Weisenmiller Decl. for the December 11 Letter.

20. Drexler did not respond to the December 11 Letter or satisfy the Fee Order.

21. On January 8, 2026, Mrs. Lane requested issuance of a writ of execution to enforce the final Fee Order against Drexler. ECF No. 1725.

22. On January 12, 2026, the Clerk issued the *Writ of Execution* [ECF No. 1729] ("**Writ of Execution**").

23.     Following issuance of the Writ of Execution, counsel for Lane caused the United States Marshal's Office to serve the Writ of Execution upon the Court where Drexler's claims were pending, but the Clerk's Office refused to accept service.

24.     Following the Clerk's Office refusal to accept service of the Writ of Execution, the United States Marshal's Office caused the filing of the *Process Receipt and Return* [ECF No. 1733], which included handwritten notes **by the U.S. Marshal's Office** stating, "incorrect address" and that "Bankruptcy Court will not accept documents for Amy Lane." The Process Receipt and Return did not suggest in any way that the service of the Writ of Execution was not accepted by the Court Clerk because there was no judgment, as Drexler speculates in the Motion.

25.     On March 10, 2026, Mrs. Lane mailed the Writ of Execution to Drexler at his address of record. ECF No. 1737.

26.     On April 3, 2026, Mrs. Lane requested the re-issuance of a writ of execution [ECF No. 1744] to address some formatting concerns raised by the Clark County Sheriff's Office. Other than the change in format, Mrs. Lane's request to re-issue a writ of execution was identical in all respects to the first request that resulted in the issuance of the Writ of Execution.

27.     On April 13, 2026, the *Clerk's Notice of Deficiency* [ECF No. 1745] was filed. The Clerk's Office, performing its ministerial intake function, entered a Notice of Deficiency stating that the writ could not issue because there was "no judgment entered on docket." ECF No. 1745.

28.     On April 24, 2026, after counsel explained that the Clerk's Office had already issued the Writ of Execution with respect to the Fee Order and that the Fee Order was a final judgment entered in a contested matter, the Clerk's Office issued the second *Writ of Execution* [ECF No. 1750] ("**Second Writ**").

29.     The Second Writ, like the Writ of Execution, identifies Drexler as the judgment debtor, which was clear and apparent from entries on docket in the Bankruptcy Case, including the Quash Motion, findings of fact stated at the Hearing, Quash Order, and Fee Order.

30. Thereafter, Mrs. Lane caused the Sheriff's Office to serve upon Drexler's counsel the Second Writ and a Notice of Sheriff's Sale, providing notice to Drexler that a Sheriff's sale was scheduled for June 10, 2026.

### III. LEGAL STANDARDS

A motion to quash a writ of execution is governed by the equitable, inherent powers of the issuing court. See Orgain, Inc. v. N. Innovations Holding Corp. et al. Additional Party Names: Iovate Health Scis. Int'l U.S.A., Inc., Iovate Health Scis. Int'l, Inc., 8:18-CV-01253-JLS-ADS, 2025 WL 4739805, at *1 (C.D. Cal. Apr. 28, 2025). The movant bears the burden to show that the writ is facially invalid or that no judgment supports it. See Fed. Trade Comm'n v. Ivy Capital, Inc., 2:11-CV-00283-JCM-NJK, 2024 WL 365228, at *2 (D. Nev. Jan. 30, 2024), objections overruled, 2:11-CV-283 JCM (GWF), 2024 WL 3498181 (D. Nev. July 19, 2024) ("The party seeking to quash a writ of garnishment has the burden of proving the writ is invalid. *See United States v. Novak*, 476 F.3d 1041, 1064 (9th Cir. 2007).")

The threshold question raised by the Motion — whether the Fee Order is a "judgment" capable of supporting a writ — is governed in this contested matter by Bankruptcy Rule 9001(7) (defining "judgment") and FRCP 54(a) (a judgment "includes a decree and any order from which an appeal lies"), as construed by the Supreme Court's flexible bankruptcy-finality framework. See Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (2015).

### IV. LEGAL ARGUMENT

**A. The Fee Order is a Final Judgment.**

***1. The Quash Order is the Merits Judgment in this Discrete Dispute and is Conclusively Final.***

In bankruptcy, an order is final if it "alters the status quo and fixes the rights and obligations of the parties." Bullard, 575 U.S. at 501. And the Supreme Court has emphasized that "[o]rders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 36 (2020). A motion to quash a subpoena to a third party in a bankruptcy contested matter is the paradigm of a

"discrete dispute" — bounded in scope, severable from the rest of the case, and resolvable on its own terms.

Here, on January 13, 2025, the Quash Order resolved every contested issue between Mrs. Lane and Drexler in the discrete Drexler Subpoena dispute: it granted the Quash Motion "in its entirety," quashed the Drexler Subpoena, awarded Mrs. Lane her fees and costs, and directed the filing of a fee declaration so the amount could be set. ECF No. 1460, p. 2. Nothing in that contested matter remained for the Court to do except set the dollar amount of the fees following submission of a fee declaration.

The US Supreme Court is clear that "a claim for attorney's fees is not part of the merits of the action to which the fees pertain." Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). Attorneys' fees "associated with the litigation at hand are indeed *always* collateral," and do not toll the filing of appeal on the underlying merits decision, here the Quash Order. Nutrition Distribution LLC v. IronMag Labs, LLC, 978 F.3d 1068, 1076 (9th Cir. 2020).

Moreover, "an order confirming a plan is a final order from which an appeal can be properly taken." In re Giesbrecht, 429 B.R. 682, 687 (B.A.P. 9th Cir. 2010); In re Manuel Mediavilla, Inc., 568 B.R. 551, 566 (B.A.P. 1st Cir. 2017) (citing Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.), 370 B.R. 452, 459 (1st Cir. BAP 2007) (citation omitted). In addition, "[u]nder the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and ... may be reviewed on appeal from the final order." In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996) (citations omitted); Brandt v. Wand Partners, 242 F.3d 6, 14 (1st Cir. 2001) ("[W]here the [trial] court has made interlocutory decisions before entering a final judgment, an appeal from the final judgment brings up the interlocutory decisions for review by [the appellate] court."). And when a final order disposing of a matter is entered, earlier interlocutory orders "merge" into the final order." In re Klein, 2025 WL 1591289, at *5 (B.A.P. 9th Cir. June 5, 2025).

Here, the Order Confirming Plan was entered on February 19, 2025, such that a final order was undoubtedly entered in the Bankruptcy Case. Although Drexler appealed the Order Confirming Plan, the BAP dismissed his appeal "for lack of prosecution" on July 18, 2025. ECF No. 1702. Accordingly,

the Order Confirming Plan and all other orders preceding it in the Bankruptcy Case, including the Quash Order, became conclusively final without a doubt.

The Quash Order is therefore final by virtue of two independent procedural mechanisms. First, the time for appeal under Bankruptcy Rule 8002(a) (fourteen days from entry) ran in late January 2025. Second, the plan was confirmed on February 19, 2025, which represents the latest possible outside date for any further appellate challenge to orders entered earlier in the Bankruptcy Case. Drexler took an appeal and the appeal was dismissed on July 18, 2025. The merits judgment is now beyond appellate reach by every conceivable measure, and Drexler cannot dispute the quashing of the Drexler Subpoena or Mrs. Lane's entitlement to fees.

### 2.     The Fee Order is Independently and Conclusively a Final Judgment.

The Fee Order is also final under the flexible bankruptcy-finality doctrine. Drexler's reliance on Bullard — which he invokes to argue against finality — gets Bullard exactly backward. The Supreme Court in Bullard held that bankruptcy finality is "more flexible" than civil finality precisely because a bankruptcy case is "an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." Bullard, 575 U.S. at 501-02. "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." Id. at 501. Ritzen Group reaffirmed and clarified the rule: "[o]rders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." Ritzen Grp., 589 U.S. at 36.

Yet, Drexler argues in his Motion that "in *Bullard* the Court was not even considering the question of whether a judgment was entered" — that the case was about plan-confirmation orders, and that the cited language is "dicta." Motion, p. 13. That is a misreading. The proposition Mrs. Lane invokes from Bullard — that an order is final when it "alters the status quo and fixes the rights and obligations of the parties," Bullard, 575 U.S. at 502 — is the holding of Bullard. The Supreme Court found a denial of plan confirmation non-final precisely because it did not alter the status quo or fix the parties' rights: the debtor remained "free to propose an alternate plan." Id.

Here, by contrast, the Quash Order and Fee Order altered the status quo (the Drexler Subpoena was quashed; Mrs. Lane was awarded fees) and fixed the parties' rights and obligations (the Drexler Subpoena was extinguished; Mrs. Lane's right to fees was established; and the specific amount was awarded). Bullard compels finality of the Quash Order and Fee Order — not the opposite.

Moreover, Bankruptcy Rule 9001(7) and FRCP 54(a) define a "judgment" to include "any order from which an appeal lies." The Quash Order was appealable under 28 U.S.C. § 158(a)(1). It is therefore a "judgment" within the meaning of Bankruptcy Rule 9001(7) and FRCP 54(a). Similarly, the Fee Order was appealable. Drexler failed to appeal. As such, it is a final judgment.

### 3.    Drexler Forfeited his Right to Appeal the Quash Order and Fee Order.

As set forth above, the Fee Order, like the Quash Order, was independently appealable. The requirement to file a timely appeal is jurisdictional, and an appeal must be timely to be heard. Parrish v. United States, 145 S. Ct. 1664, 1670 (2025); Nutrition Distribution, 978 F.3d at 1076. Bankruptcy Rule 8002 is abundantly clear that "a notice of appeal must be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree to be appealed is entered."

Here, more than 220 days have passed since the entry of the Fee Order, and 162 days have passed since Mrs. Lane's December 11, 2025, notice of the Fee Order. Moreover, nearly 60 days have passed since the Court's March 31, 2026, status hearing where Drexler's counsel first argued his objection to the Fee Order. To date, Drexler still has not filed a notice of appeal of the Fee Order. By any and all stretch of the rules, Drexler has failed to meet Bankruptcy Rule 8002 jurisdictional threshold, such that the Fee Order is now unappealed and final for all purposes.

To the extent Drexler claims he was unaware of the entry of the Fee Order when it was entered, Drexler was served with the Fee Order on December 11, 2025. Local Rule 9022 (providing that "Lack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted under Fed. R. Bankr. P. 8002."). Although no certificate of service was filed with respect to the December 11, 2025, service of the Fee Order at the time, "failure to file the proof of service does not affect the validity of service." Local

Rule 2002(3). Once the issue was raised by Drexler's counsel, a certificate of service with respect to the December 11, 2025, service of the Fee Order was filed on May 6, 2026. ECF No. 1752.

Further, to the extent that the deadline to appeal the Fee Order, setting the amount of fees, had not run, Drexler lacks any grounds upon which an appeal could be maintained. On January 10, 2025, Mrs. Lane and her counsel, Andrew Gladstein, submitted declarations in support of their request for $103,112.14 in legal fees and costs. ECF No. 1454, 1455. Drexler neither opposed nor responded to the submitted proof. See generally Docket. On October 6, 2025, the Court entered the Fee Order.

As such, Drexler forfeited any appeal right when he failed to contest the Fee Order. The Ninth Circuit is clear, "non-jurisdictional matters not properly presented and considered by the district court may not be raised for the first time on appeal." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998). Accordingly, because Drexler did not oppose let alone respond to the Supporting Declarations, any objection or argument he had thereto was waived and cannot be raised on appeal. Thus, even if the time to appeal the amount of fees awarded had not run, Drexler has no actual basis for an appeal because he waived any opposition thereto.

### 4.    FRCP 58 Does Not Apply to the Quash Order or Fee Order.

Drexler's entire Motion proceeds from a single, mistaken premise: that the Fee Order must satisfy the separate-document requirements of FRCP 58(a) — standing alone, divorced from any other order — before any writ can issue. However, Drexler's separate-document argument under FRCP58(a) fails as a matter of bankruptcy procedure. The Quash Order and Fee Order were both entered in a contested matter governed by Bankruptcy Rule 9014. Bankruptcy Rule 9014(c) enumerates the Part VII rules that apply to contested matters. The list expressly incorporates Bankruptcy Rules 7009, 7017, 7021, 7025, 7026, 7028 through 7037, 7041, 7042, 7052, 7054 through 7056, 7064, 7069, and 7071. See FED. R. BANKR. P. 9014(c). FRCP 7058 is conspicuously absent, and courts hold that "in a contested matter, Federal Rule of Bankruptcy Procedure 7058 does not apply as a matter of course." In re Stream TV Networks, Inc., 675 B.R. 1, 11 (Bankr. E.D. Pa. 2025); In re Sepehry-Fard, BAP NC-17-1118-BTAF, 2018 WL 2709718, at *6 (B.A.P. 9th Cir. June 5, 2018), aff'd, 829 Fed. Appx. 274 (9th Cir. 2020) (holding that an argument that the bankruptcy court erred by failing to enter a separate

judgment in addition to the order in violation of Civil Rule 58 "lacks merit" because Bankruptcy Rule 7058 "does not apply to contested matters such as this under Rule 9014(c)"); In re Evjenth, 3:16-BK-30329-HLB, 2018 WL 2671433, at *3, n.5  (B.A.P. 9th Cir. June 4, 2018).

This procedural reality alone disposes of Drexler's authorities. Baker v. Southern Pacific Transportation Co., 542 F.2d 1123 (9th Cir. 1976) was a non-bankruptcy personal-injury action in which the Ninth Circuit interpreted Rule 58(a)'s separate-document rule in ordinary federal civil litigation.  It said nothing about bankruptcy contested matters, the bankruptcy-finality doctrine, or Bankruptcy Rule 9014 — because none of those issues were before the court.  Similarly, United States v. Indrelunas, 411 U.S. 216 (1973) was a federal civil case decided more than four decades before Bullard established the modern flexible bankruptcy-finality framework.  Neither Baker nor Indrelunas has any force in a bankruptcy contested matter, and Drexler cites no authority extending FRCP 58(a)'s mechanical separate-document rule into the Bankruptcy Rule 9014 context — because none exists.

Drexler's reliance on Garland v. Estate of Maloney (In re Garland), 295 B.R. 347 (BAP 9th Cir. 2003) fares no better.  Garland addresses the obligation of counsel preparing a proposed order to do so "in accordance with governing rules." Id. at 352.  It does not transform a final, entered, docketed merits order into a non-judgment for execution purposes — nor could it, because that would conflict with the Supreme Court's holdings in Bullard, Ritzen Group, Haluch, and Budinich.  Whatever drafting concerns the Court may have noted with respect to Mrs. Lane's proposed order were not raised by Drexler on appeal within the time available to him under Bankruptcy Rule 8002, were not raised in a Bankruptcy Rule 9023 motion to alter or amend, and were not raised in a Bankruptcy Rule 9024 motion for relief from order.  They cannot be raised now, eighteen months later, as a collateral attack on a final judgment.

Additionally, under Haluch and Budinich, the Fee Order is collateral to the merits judgment — not a stand-alone judgment subject to FRCP 58.  The Supreme Court has held — twice — that an unresolved attorney's fees issue is collateral to the merits and does not delay (or alter) the finality of a merits judgment.  See Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating

Eng'rs & Participating Emp'rs, 571 U.S. 177 (2014); Budinich v. Becton Dickinson & Co., 486 U.S. 196 (1988).  The Supreme Court's reasoning in Ray Haluch directly governs this case:

> In *Budinich*, this Court addressed the question whether an unresolved issue of attorney's fees for the litigation prevents a judgment from being final. There, a District Court in a diversity case had entered a judgment that left unresolved a motion for attorney's fees based on a Colorado statute providing attorney's fees to prevailing parties in certain cases. The Court held that the judgment was final for purposes of § 1291 despite the unresolved issue of attorney's fees.

Ray Haluch, 571 U.S. at 184 (citations omitted).  The Supreme Court then explained why this rule must apply uniformly:

> The decision in *Budinich* made it clear that the uniform rule there announced did not depend on whether the statutory or decisional law authorizing a particular fee claim treated the fees as part of the merits. . . . [T]he issue of attorney's fees was still collateral for finality purposes under § 1291.  The Court was not then, nor is it now, "inclined to adopt a disposition that requires the merits or nonmerits status of each attorney's fee provision to be clearly established before the time to appeal can be clearly known."

Id. at 185 (quoting Budinich, 486 U.S. at 202). And the Supreme Court tied that uniform rule directly to the operation of FRCP 58:

> Rule 58(e) . . . provides that the entry of judgment ordinarily may not be delayed, nor may the time for appeal be extended, in order to tax costs or award fees. This accords with *Budinich* and confirms the general practice of treating fees and costs as collateral for finality purposes.

Id. at 186-87.

Haluch and Budinich fatally undermine the central premise of the Motion.  The Quash Order — the merits judgment — was final on January 13, 2025, and remained final regardless of whether the fee amount was set.  The later Fee Order quantified the fees, but the merits judgment was independently final from the moment it was entered.  By the time Drexler abandoned his BAP appeal in July 2025, the merits judgment had become final without further possibility of challenge.  The Fee Order, when entered on October 6, 2025, operated as the collateral, ancillary fee determination that completed the relief — it did not need to satisfy FRCP 58(a)'s separate-document requirement on its own because the merits judgment to which the fees were collateral already existed and had become final.

That is precisely the procedural posture Haluch describes.  The Supreme Court explained that the Rules deliberately treat fees and costs as collateral: a fee award is not part of the merits, does not

delay the finality of the merits judgment, and operates on top of an already-final merits judgment to make it executable. Id. at 779-81. The Fee Order here functions exactly as Haluch contemplates.

**B.      The Fee Order is a Money Judgment Enforceable by Writ of Execution.**

*1.      Drexler's "No Identified Payor" Argument Is a Forfeited, Six-Month-Late Motion to Reconsider Cloaked as a Motion to Quash.*

Drexler's argument that the Fee Order does not identify a payor is, in substance, a Bankruptcy Rule 9023 or 9024 challenge to the form and content of the Fee Order — forfeited by his failure to raise it within the time those rules afford. *Cf.* FED. R. BANKR. P. 9023 (motion to alter or amend must be filed within 14 days); FED. R. BANKR. P. 9024 (motion for relief subject to Rule 60(c)(1) reasonable-time requirement).

Further, Drexler's authorities on what constitutes a "money judgment" — United States ex rel. Thrower v. Acad. Mortg. Corp., 172 F.4th 695 (9th Cir. 2024), and Ministry of Def. & Support v. Cubic Def. Sys., 665 F.3d 1091 (9th Cir. 2011) — do not transform a bankruptcy contested-matter Fee Order into a non-judgment. In any event, the Court's findings of fact and conclusions of law in the underlying contested matter — incorporated by reference into the Quash Order and Fee Order — make unmistakably clear that Drexler is the party against whom the fee award was entered. The contested matter involved Drexler's improper Subpoena; the fees were incurred opposing Drexler; and the order was directed at Drexler. No other party could possibly be the payor on this Fee Order. Reading the Quash Order, the findings, and the Fee Order together — as they must be read — leaves no doubt.

The "missing payor" objection is precisely the kind of formal-defect concern that FRCP 60(a) is designed to correct — not the kind that justifies extinguishing an already-final merits judgment.

*2.      The Identity of the Payor Is Obvious.*

The Fee Order is a final determination, on the merits of Mrs. Lane's fee request, that awards a specific dollar amount ($103,112.14) against the only party Mrs. Lane opposed. Drexler's contention that the order is unenforceable because it does not contain the talismanic phrase "Ryan Drexler shall pay" is a tactic that elevates form over substance. Drexler leans on United States ex rel. Thrower v. Academy Mortgage Corp., 172 F.4th 695 (9th Cir. 2026), for the proposition that a money judgment must "identify" the parties for and against whom judgment is being entered. Motion, p. 6.

First, <u>Thrower</u> addresses a fundamentally different problem: there, the question was whether a particular order qualified as a "money judgment" for purposes of post-judgment interest under 28 U.S.C. § 1961(a).  Second, <u>Thrower</u> does not hold that an attorneys' fee award against a clearly identified adverse party is unenforceable merely because the Fee Order does not explicitly state "the award is from Drexler."  Third, the <u>Thrower</u> court expressly included that "[o]f course, an order may be sufficiently 'definite and certain' without itself spelling out the exact dollar amount if the designation is 'readily discernible' through the 'mechanical task' of applying the order." <u>U.S. ex rel. Thrower v. Acad. Mortg. Corp.</u>, 172 F.4th 695, 699–700 (9th Cir. 2026).

The Supreme Court has held that the only essential elements of a final judgment to specify the amount due or provide a formular to so compute.

> The Supreme Court has cautioned that "no statute or rule ... specifies the essential elements of a final judgment," *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958), and "[n]o form of words and no peculiar formal act is necessary to evince" a final judgment, *United States v. Hark*, 320 U.S. 531, 534, 64 S.Ct. 359, 88 L.Ed. 290 (1944). But the Court has held that "a final judgment for money must, at least[ ] determine, or specify the means for determining, the amount" of the judgment. 356 U.S. at 233, 78 S.Ct. 674. At the very least, therefore, a money judgment lacks finality when it fails to "specify either the amount of money due the plaintiff or a formula by which the amount of money could be computed in mechanical fashion." *Buchanan v. United States*, 82 F.3d 706, 707 (7th Cir. 1996) (per curiam) (citing *F. & M. Schaefer Brewing Co.*, 356 U.S. at 227, 78 S.Ct. 674).

<u>U.S. v. King Mt. Tobacco Co., Inc.</u>, 899 F.3d 954, 959 (9th Cir. 2018) (finding a judgment final where the judgment sufficiently specified "the amount of money due the plaintiff").  If the exact dollar amount – the essential element of a money judgment – must only be readily discernible through the mechanical task of applying the order, why would the identity of the payor be any more stringent?

Here, the Fee Order clearly specifies the amount of money, $ 103,112,14.00, due to Mrs. Lane. Fee Order, p. 2, ll. 20-21.  The party required to pay that award is also identified or can reasonably be discerned.  The Fee Order states that fees are awarded in connection with Mrs. Lane's Quash Motion to the subpoena issued by "Ryan Drexler." <u>Id.</u>, p. 2, ll. 3-4.

The Fee Order arose from a discrete motion practice with exactly two parties on the relevant axis: Mrs. Lane (movant) and Drexler (respondent).  Drexler knows this.  Drexler's Motion is evidence of his knowledge.  Nowhere in the Motion is Drexler arguing that any other party is the payor.  The

Fee Order incorporates the Court's findings at the Hearing on the Quash Motion at which Drexler and his counsel were present and argued against entry of the TRO and Quash Order. Id., p. 2, ll.10-13.

The record forecloses any genuine doubt about who owes the money. The Court Clerk was able to accurately determine the payor and payee as evidenced by the two writs issued in the Bankruptcy Case. To the extent the Court finds that Thrower requires an express statement of "amount to payee from payor," the Court may readily so confirm by entering a brief clarifying order or, more simply, by overruling Drexler's Motion on the ground that the identity of the obligor is apparent from the record.

**C.      The Court's Entry of the Fee Order is Evidence that it is a Valid Judgment.**

On October 6, 2025, at 11:12 a.m., the Court entered the *Order Granting Fee Request* which included, "This case is before the Court on Andrew Gladstein's Declaration, ECF1454" then ordered that counsel resubmit the proposed order to "identify the proper ECF number and identify the payor." ECF No. 1710. Less than four (4) hours later, the Court entered the Fee Order which, as ordered, includes both the proper ECF No. 1454 for Andrew Gladstein's Declaration and also Drexler's identity. The Fee Order clearly complies with the Court's earlier stated requirements to include ECF No. 1454 and identify Drexler. Further, the Second Writ accurately reflects the parties' identities.

The Second Writ should be read for what it is: an enforcement instrument tied to the final merits judgment in ECF No. 1460 (the Quash Order, including its express award of fees and costs to Mrs. Lane), as supplemented by the dollar amount set in ECF No. 1711 (the Fee Order). Drexler's identification on the Second Writ as the "Judgment Debtor" reflects the Court's express finding that the fee award was granted to Mrs. Lane (i.e., she is the judgment creditor); the only party against whom that award could conceivably have been entered — given that the contested matter was Drexler's improper Subpoena to Mrs. Lane — is Drexler himself. The Second Writ is properly anchored, properly identifies the parties, and properly identifies the sum due.

Drexler attempts to elevate the Court Clerk's April 13, 2026, Notice of Deficiency [ECF No. 1745] into a judicial ruling that the Fee Order is not a judgment. It is no such thing. Clerks of bankruptcy courts perform ministerial functions; they do not adjudicate the legal sufficiency of orders. See FED. R. BANKR. P. 5003 (describing clerk's ministerial recordkeeping duties); In re Reynoso, 477

F.3d 1117, 1120 (9th Cir. 2007) (recognizing clerk's role as ministerial); In re Midwest Livestock Comm'n Co., 292 F. Supp. 955, 958 (D. Nev. 1967) ("The issuance of the writ by the clerk and its levy by the sheriff are ministerial acts, not judicial proceedings."). A clerk's notation that a particular order has not been separately indexed as a "judgment" reflects a docketing convention, not a determination that the order is unenforceable as a matter of law.

The Notice of Deficiency on its face does no more than communicate that the Clerk's Office had a question about how to process the writ request. Indeed, Drexler concedes that the issuance of a writ of execution is a "ministerial act." Motion, p. 5. Drexler cannot have it both ways: if the issuance of a writ is ministerial, then so is the Clerk's Notice of Deficiency. The Clerk's Office's subsequent issuance of the Second Writ on April 24, 2026, simply reflects the Clerk's correct understanding that an order awarding fees in a sum certain against an identifiable adverse party is enforceable under FRCP 69. See Unified Data Servs., LLC v. FTC, 39 F.4th 1200, 1207 (9th Cir. 2022) (clerk's docketing actions are "probative" of finality, but not dispositive). At most, the Clerk's deficiency notice was a request for additional administrative information; that request having been satisfied, the Second Writ was properly issued.

**D.      Drexler's Accusations of "Ex Parte Communications" Lack Merit and are Not Relevant.**

Drexler's accusations of improper "ex parte communications" with the Clerk's Office (Motion, pp. 5-6) are baseless and irrelevant to the Motion. LR IA 7-2(a)[2] provides that:

> Ex Parte Defined. An ex parte motion or application is a motion or application that is filed with the court but is not served on the opposing or other parties. ***An ex parte communication is a communication between a pro se party or attorney and a judge or chambers*** when the opposing party or attorney is not present or copied, including telephone calls, letters, or emails.

Moreover, the issuance of a writ by a clerk's office is not a substantive judicial act; it is a ministerial act. See Midwest Livestock, 292 F. Supp. at 958; Seattle Fishing Services LLC v. Bergen Indus. & Fishing Co., 242 Fed. Appx. 436, 438 (9th Cir. 2007) (the issuance of writs are purely ministerial acts).

---

[2] LR IA 7-2 is applicable here pursuant to Local Rule 1001(b)(2), which provides "[t]he Federal Rules of Bankruptcy Procedure and these local rules govern procedure in all bankruptcy cases and proceedings in the District of Nevada. ***Except for those matters contained in Part IA of the Local Rules of Practice for the United States District Court for the District of Nevada, no other local rules apply unless they are specifically adopted by reference in these bankruptcy Local Rules.***" (emphasis added).

See also UA Local 342 Joint Labor-Mgmt. Comm. v. Roeber's, Inc, C 11-04225 LB, 2013 WL 6073504, at *1 (N.D. Cal. Nov. 8, 2013) ("In most cases, the issuance of the writ is a ministerial act which the clerk has no discretion to refuse. [] Judicial action is only required if the judgment is conditional, or if there is some question regarding the value of the judgment. [].") (citations omitted).

Thus, communications with the Clerk's Office regarding the reissuance of a writ are not ex parte communications under the Local Rules of the Court and applicable law. They are the ordinary means by which counsel and the Clerk's Office resolve filing-office questions. As such, there is no merit to Drexler's contention that the Second Writ should be quashed because of ex parte communications between counsel for Mrs. Lane and the Clerk's Office.

**E. To the Extent Form Is at Issue, FRCP 60(a) and the Court's Inherent Powers Provide the Remedy — Not Quashing the Second Writ.**

If the Court has any concern that the Quash Order or Fee Order should more expressly identify Drexler as the payor in their operative provisions, the remedy is not to quash the Second Writ. FRCP 60(a), made applicable in bankruptcy by Bankruptcy Rule 9024, expressly authorizes correction of clerical mistakes and the resolution of "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." That is precisely the relief — if any is needed — that would address the issue Drexler now raises. The Court could, on its own motion or on Mrs. Lane's motion, enter a clarifying order making explicit what the findings of fact and conclusions of law (incorporated by reference into the Quash Order and Fee Oder) already establish: Drexler was the party against whom the fee award was entered.

Quashing the Second Writ would be an extraordinary remedy out of all proportion to any drafting concern. It would reward Drexler for an issue he never raised on direct appeal (which he abandoned), never raised by Bankruptcy Rule 9023 motion (which he never filed), and never raised by Bankruptcy Rule 9024 motion (which he also never filed) — until execution became imminent.

…

…

…

…

## V. CONCLUSION

For the foregoing reasons, Mrs. Lane respectfully requests that the Court: (i) deny the Motion in its entirety; (ii) confirm that the Quash Order [ECF No. 1460] and Fee Order [ECF No. 1711] constitute a final judgment supporting the Second Writ [ECF No. 1750]; (iii) confirm that the Fee Order is a valid money judgment; and (iv) allow the Sheriff's sale presently set for June 10, 2026 to proceed. In the alternative, Mrs. Lane respectfully requests that the Court enter a corrective order under FRCP 60(a) (made applicable in bankruptcy by Bankruptcy Rule 9024) making express the Court's prior finding that Drexler is the payor on the Fee Order, and otherwise deny the Motion.

DATED the 26th day of May, 2026.

**ANDERSEN BEEDE WEISENMILLER**

By:*Mark M. Weisenmiller*
Mark M. Weisenmiller, Esq.
Tali J. Frey, Esq.
*Counsel for Amy Lane*